## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN GREENE, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>        vs.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,<br><br>               Defendants. | 1:03-cv-12628 (NG)<br><br>RELATED ACTIONS:<br>  1:04-cv-10046 (NG)<br>  1:04-cv-10055 (NG)<br>  1:04-cv-10065 (NG)<br>  1:04-cv-10077 (NG)<br>  1:04-cv-10078 (NG)<br>  1:04-cv-10090 (NG)<br>  1:04-cv-10144 (NG)<br>  1:04-cv-10155 (NG)<br>  1:04-cv-10179 (NG)<br>  1:04-cv-10189 (NG)<br>  1:04-cv-10190 (NG)<br>  1:04-cv-10202 (NG) |
| JOHN G. ESPOSITO, JR., Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>       vs.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,<br><br>               Defendants. | 1:04-cv-10013 (NG) |
| JOSEPH L. KING, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>       vs.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,<br><br>               Defendants. | 1:04-cv-10038 (NG) |

**CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS, AND IN FURTHER SUPPORT OF THE MOTION OF THE HOMEYER GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL AND <u>LIAISON COUNSEL</u>**

**PRELIMINARY STATEMENT**

Presently before the Court are six motions for consolidation appointment as lead plaintiff and for approval of selection of lead counsel, pursuant to the Private Securities Litigation Reform Act (the "PSLRA"). The movants and their reported losses are as follows:

| MOVANT | REPORTED LOSSES |
| --- | --- |
| Biopure Lead Plaintiff Group | $545,780 |
| Erickson Group | $323,199 |
| Homeyer Group | $185,298 |
| Bhaskar Group | $105,485 |
| Mentz Group | $60,212 |
| McCardie Group | $51,815 |

The Biopure Lead Plaintiff Group and the Erickson Group reported larger losses than any other movants. However, as set forth herein, certain of their members fail to meet the PSLRA's adequacy and typicality requirements. Therefore, the Homeyer Group submits that this Court should, in accordance with the PSLRA, exercise its discretion to select as co-lead plaintiffs one member from each of the movant groups who both have the largest financial interest in the litigation *and* meet the PSLRA's adequacy and typicality requirements. *See, e.g. In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 45 (S.D.N.Y. 1998). The proposed lead plaintiffs are Ronald W. Erickson (of the Erickson Group) ("Erickson"), Robert Powell (of the Biopure Lead Plaintiff Group) ("Powell") and Richard Acuna (of the Homeyer Group) ("Acuna") who reported losses of $259,709, $121,112, and $91,227.34, respectively. The Homeyer Group further submits that the Court should appoint as lead counsel Milberg Weiss and one of the lead counsel proposed by each of the Erickson and Biopure Lead Plaintiff groups as determined by the members of those groups.

# ARGUMENT

## POINT I

### THIS COURT SHOULD APPOINT AS CO-LEAD PLAINTIFFS ONE MEMBER FROM EACH OF THE BIOPURE LEAD PLAINTIFF GROUP, THE ERICKSON GROUP, AND THE HOMEYER GROUP

The appointment of Co-Lead Plaintiffs consisting of a member of each of the three movant groups with the largest financial interest in the Actions is consistent with the PSLRA which expressly provides for appointment of multiple lead plaintiffs, 15 U.S.C. § 78u-4(a)(3)(B)(i) (the court "shall appoint as lead plaintiff the ***member or members*** of the purported plaintiff class that the court determined to be most capable of adequately representing the interests of class members") (emphasis added), and with the SEC recommendation that lead plaintiff groups be no larger than three to five members. *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) (quoting memorandum submitted by SEC). Moreover appointment of a small and cohesive group of three lead plaintiffs "will allow for pooling, not only of the knowledge and experience, but also of the resources of the plaintiffs' counsel in order to support what could prove to be a costly and time-consuming litigation." *See Oxford Health Plans*, 182 F.R.D. at 46, 49; *In re Cable & Wireless, PLC*, 217 F.R.D. 372, 379 (court exercised discretion in appointing co-lead plaintiffs where "neither movant, standing alone, is a particularly ideal plaintiff"). The co-leadership structure is especially appropriate here, where, as set forth herein, certain members of the two groups with the largest reported financial interest ---- the Biopure Lead Plaintiff Group and the Erickson Group --- are facially inadequate and atypical and therefore ineligible for appointment as lead plaintiff.[1] Appointing three movants as lead plaintiff

---

[1] If only one entity is appointed as lead plaintiff and it is not certified as a class representative, the adverse impact upon the class could potentially be catastrophic. At a minimum, the Court could be faced with going back to square one and finding another lead plaintiff - one that has not

is also desirable to make certain that, when this action reaches the class certification stage, a lead plaintiff will be certified to represent the class. Accordingly, this Court should appoint as co-lead plaintiffs Erickson, Powell and Acuna, each of whom has a substantial financial interest in the litigation and satisfies the PSLRA's adequacy and typicality requirements.

> **A.  The Biopure Lead Plaintiff Group And The Erickson Group Each Contain Members Who Are Inadequate, Atypical And, Therefore, Ineligible For Appointment As Lead Plaintiff.**
>
> **1. Neil and Susan Fineman of the Biopure Lead Plaintiff Group and Benjamin Joseph of the Erickson Group Are In-And-Out Traders, And, Therefore, Are Arguably Subject To Unique Defenses**

Neil and Susan Fineman (the "Finemans") of the Biopure Lead Plaintiff Group and Benjamin Joseph ("Joseph") of the Erickson Group, sold their holdings in Biopure securities *before* the end of the Class Period when the alleged fraud was disclosed. As "in-and-out traders" they maybe atypical, and ineligible for appointment as lead plaintiff under these circumstances, because they are subject to the unique defense that they lack standing to pursue their claims because they were not harmed by the fraudulent conduct *See, e.g., In re Carreker Corp. Sec. Litig.*, Civil Action No. 3:03-CV-0250-M, slip op. at 2-3 (N.D. Tex. Aug. 14, 2003) (denying motion of in-and-out trader for appointment as lead plaintiff because he "may or may not have actually been damaged, and a great deal of time, effort and expense will undoubtedly be incurred to determine if he is subject to a unique no damage defense that cannot be asserted against those who still held Carreker stock at the end of the class period") (*see* Exhibit A hereto, attaching opinion); *In re Cable & Wireless, P.C. Sec. Litig.*, No. Civ.A.02-1860, 2003 WL 2202601, at *7 (E.D. Va. Apr. 21, 2003) (rejecting lead plaintiff application of institutional investor that sold all of its shares before the alleged fraud was revealed because it "could not have suffered any loss as

---

been previously involved in the litigation. See Oxford, 182 F.R.D. at 50 ("it is far less likely that any potential defenses would successfully rebut a finding of typicality where more than one investor ... is appointed as class representative").

3

a result of the defendants' alleged fraud"); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1998) (same).

If Neil and Susan Fineman or Benjamin Joseph are appointed as lead plaintiff, defendants will undoubtedly argue, at the motion to dismiss or class certification stage, that they cannot adequately plead or establish loss causation and/or that they are subject to unique defenses and are inadequate. This will result in substantial briefing and argument on an issue that does not affect other members of the class and will sidetrack the litigation for something affecting only Neil and Susan Fineman and Benjamin Joseph. If defendants' argument succeeds, the action could be dismissed or, at the very least, new leadership will have to be selected for the class, resulting in an unnecessary waste of both private and judicial resources. The Lead Plaintiff should not be a liability -- or even a potential liability -- to the class it seeks to represent. There is no reason for the Court to take a chance on the Finemans, Joseph, the Biopure Lead Plaintiff Group or the Erickson Group when Erickson, Powell and Acuna, who suffer from none of these infirmities, and who also have a substantial financial interest in the litigation, stand ready and able to serve as co-lead plaintiffs.

### 2. Michael Navilio of the Biopure Lead Plaintiff Group Failed to Demonstrate His Financial Loss

Section 21D of the PSLRA requires that in order for the court to determine their financial interest in the litigation, each movant submit a certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(iv). As set forth below, Michael Navilio ("Navilio") of the Biopure Lead Plaintiff Group failed to meet the PSLRA certification requirement because he did not submit a certification that sets forth all of his relevant transactions in Biopure securities.

Navilio's certification lists the following transactions in Biopure securities as follows:

4

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 40,000 | | Aug. 19-03 | 7.29 |
| Sold | 20,000 | 10-31-03 | 3.55[2] |

Based on this certification, counsel for the Biopure Group contends that Navilio purchased 40,000 shares of Biopure on August 19, 2003. However, as shown above, the record does not support this conclusion because Navilio's certification does not identify the 40,000 share transaction as a purchase or a sale. Under similar circumstances, where movants have submitted ambiguous and/or incomplete evidence of their transactions, or failed to adequately certify their transactions, courts have routinely rejected lead plaintiff applications and motions for class certification . In *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38 (D Mass. 2003) (Harrington, S.D.J.) the court denied a motion for certification as a class representative on the ground that the movant failed to file a certification with his complaint. *Id.* at p. 42. In *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998).the court rejected lead plaintiff motions of two movants who had not provided adequate information with respect to their financial interest in the action, reasoning as follows:

> Weichman, while she moves to be appointed as lead plaintiff of the consolidated action, offers no information with respect to the magnitude of her financial interest, other than stating that she obtained her 116 Olsten shares in exchange for her 200 Quantum shares. ***Even though Cannold argues that he has the largest financial interest in the outcome of the litigation, he does not present any facts to support this assertion***.

*Id*. At 295 (Emphasis added). *See also In re Williams Sec. Litig.*, 02-CV-72-H(M) (N.D. Ok. Jul. 8, 2002) at * 10 (rejecting the motion of a movant who had not demonstrated its financial interest in the litigation and explaining that "***Market Street's original certification and loss calculation, unlike those of other lead plaintiff movants, failed to provide sufficient information for the***

---

[2] *See* Declaration of David Pastor In Support of the Motion of the Biopure Lead Plaintiff Group To Consolidate The Action, To Be Appointed Lead Plaintiffs And For Approval of Lead Plaintiffs' Selection of Lead Counsel And Liaison Counsel, Exhibit A. ("Pastor Decl.")

*Court to analyze the basis for its claimed financial interest* ") (Emphasis added). *See* Exhibit B (attaching the opinion). Like the lead plaintiffs proposed in *Olsten* and *Williams,* Navilio has failed to comply with the PSLRA's certification requirement and consequently, his motion should be denied on the grounds that he is inadequate and has not demonstrated the largest financial interest in the litigation.

### 3. The Erickson Group's Selection of Counsel As Sole Lead Counsel Should Not Be Approved

Courts must consider the complexity of the litigation, the amount of money at stake, parties involved, and the law firm's available resources in appointing lead counsel. *See In re Lernout & Hauspie Sec. Litig.,* 138 F. Supp. 2d 39, 46-47 (D. Mass. 2001). Lead Counsel must be "qualified, experienced and vigorously able to conduct the litigation." *Id.* at 45. In addition, recent amendments to Rule 23 of the Federal Rules of Civil Procedure call upon the judiciary to scrutinize with ever increasing vigor the selection of counsel to represent the class:

(1) Appointing Class Counsel.

    (A)    Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.

    (B)    An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.

    (C)    In appointing class counsel, the court

        (i)    must consider:

- the work counsel has done in identifying or investigating potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class;

6

        (ii)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the class;

        (iii)    may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

        (iv)    may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g).

It is imperative, thus, that the Court consider the complexity of this Action, the complicated facts and scientific data concerning the biotechnology industry from which the allegations against Biopure arise, and the resources required to litigate this Action. Acuna's selection of Milberg Weiss as Co-Lead Counsel will benefit the class substantially. Milberg Weiss, which is well known to this Court, is by far the largest plaintiffs' class action firm and is the only firm before the Court that employs the dozens of in-house investigators, forensic accountants and paralegals that are indispensable to the successful prosecution of these types of actions. In addition, because securities class actions lawyers are paid on contingency at the successful resolution of the case, which can take years, a firm's ability to fund a case, and to bear the risk of loss over time, is an important factor that is proportional to the firm's assets, ability to expand or contract its workforce, and funds from operations. For these reasons, the participation of Milberg Weiss as Lead or a Co-Lead Counsel will result in tangible benefits to the class. The participation of the Mr. Powell, Erickson, and Acuna as Co-Lead Plaintiff will also ensure that the Class is adequately represented and will make it more likely that a class will be certified. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 50 ( "[I]t is far less likely that any potential defenses would successfully rebut a finding of typicality where more than one investor or group of investors who made the decision to purchase the security is appointed as class representative.").

The Class would be best represented by a team of law firms, each of whom is experienced in the prosecution of securities class actions and have the resources available to do so. This approach ensures "pooling . . . of the resources of the plaintiffs' counsel in order to support what could be a costly and time-consuming litigation." *In re Oxford Health Plans Sec. Litig.*, 182 F.R.D. at 46. Given the magnitude of this Action, this Court should appoint as Co-Lead Counsel the team of Milberg Weiss, and one law firm selected by each of the Erickson and Biopure Lead Plaintiff Groups. Together, Co-Lead Counsel shall work together, provide superior and effective representation, and maximize any recovery for the Class.

### B. Powell, Erickson and Acuna Should Be Appointed Co-Lead Plaintiffs

At the lead plaintiff stage of the litigation, the Rule 23 inquiry "focuses on ... typicality and adequacy". *Lax v. First Merchants Acceptance Corp*., 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997). Adequacy, requires that, among other things, "plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation." *In re Lernout & Hauspie Sec. Litig.,* 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (Saris, J.). Courts have the authority to handpick movants and counsel, that filed separate motions, to ensure that the class receives the best representation even if the selected lead plaintiffs/lead counsel filed separate motions. For example, in *In re Oxford Health Plans*, the court appointed an institutional investor and a group of individuals as lead plaintiffs and approved the selection of each movants' choice of lead counsel, even though the two sets of movants had filed separate motions, because doing so was in the best interest of the class:

> It should also be noted that the lead plaintiff movants are not in fact competing with each other. Each is seeking the same result-- the greatest recovery for the class consistent with the merits of the claims raised, the defenses asserted and the burdens and risks of litigation. ***The rebuttable presumption created by the***

8

> ***PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions.*** Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.

182 F.R.D. at 49 (emphasis added). This Court therefore should appoint one member from each of the movant groups which have demonstrated a significant financial stake in this litigation to serve as Co-Lead Plaintiffs. Each Co-Lead Plaintiff should be free from unique defenses or other attacks on his or her adequacy to represent the purported Class. Robert Powell of the Biopure Lead Plaintiff Group, Ronald Erickson of the Erickson Group, and Richard Acuna of the Homeyer Group, have each sustained substantial losses in their transactions in Biopure stock and are committed to undertake their responsibilities as Co-Lead Plaintiff. Accordingly, this Court should appoint them as Co-Lead Plaintiff.

## POINT II

### THE FINANCIAL INTEREST OF OTHER MOVANTS IS SUBSTANTIALLY SMALLER AND THEY FAIL TO PROPERLY DOCUMENT THEIR LOSSES

The losses reported by the Bhaskar Group, the Mentz Group, and the McCardie Group are substantially less than the losses alleged by the Biopure Lead Plaintiffs, the Erickson Group, and the Homeyer Group, and therefore, this Court should deny their motions. In addition, it is inappropriate to appoint any movant from the Bhaskar Group, Mentz Group, or McCardie Group as Co-Lead Plaintiff given that the largest individual loss alleged among them is merely $53,300, compared to Richard Acuna's $91,227.34--the smallest loss alleged by the proposed Co-Lead Plaintiffs. The motion of the Bhaskar Group, the Mentz Group, and the McCardie Group are also plagued with inaccuracies, deficiencies, and unsubstantiated claims that unequivocally

demonstrate that they are not the presumptive most adequate plaintiff in this Action. For example, Michael Lane of the Bhaskar Group falsely certified that he purchased Biopure securities on October 17, 2003 at $6.51 per share, when in fact, the trading range of Biopure stock on that day never exceeded $6.47. (*See* Exhibit C hereto, attaching historical price chart of Biopure securities). Likewise, Ken Isherwood of the same group, certifies purchases of Biopure stock on May 15, 2003 and June 4, 2003 at prices outside their actual trading range on those days (*see* Exhibit C hereto). Isherwood also inflated his reported losses by including two pre-Class Period transactions on March 5, 2003. Moreover, the McCardie Group failed to submit the certification of Bill McCardie as required by the PSLRA. 15 U.S.C. § 78u-4(a)(2)(iv). Therefore, the McCardie Group failed to substantiate how its financial interest was calculated. In addition, the Mentz Group would be subject to unique defenses arising from both George Eliopoulous's and Dale Self's status and in-and-out traders.

For these reasons, the Bhaskar Group, Mentz Group, and the McCardie Group are not entitled to the presumption of the most adequate plaintiff under the PSLRA.

## **CONCLUSION**

For all the foregoing reasons, the Homeyer Group respectfully requests that the Court: (i) appoint Robert Powell, Ronald Erickson, and Richard Acuna as Co-Lead Plaintiffs in the Action; (ii) approve the Homeyer Group's selection of Milberg Weiss as Co-Lead counsel, along with one law firm selected by each of the Erickson and Biopure Lead Plaintiff Groups, and approve the Homeyer Group's selection of Moulton & Gans, P.C. to serve as Liaison Counsel as set forth herein; and (iii) grant such other such relief as the court may deem just and proper.

DATED:  March 19, 2004                    Respectfully submitted,

**MOULTON & GANS, P.C.**

By: /s/ Nancy Freeman Gans
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA  02109-4216
Telephone:  (617) 369-7979

*Proposed Liaison Counsel*

**MILBERG WEISS BERSHAD HYNES  & LERACH LLP**
Steven G. Schulman
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Proposed Co-Lead Counsel*

**RABIN MURRAY & FRANK LLP**
Eric J. Belfi
275 Madison Avenue
New York, NY  10016
(212) 682-1818
(212) 682-1892

**LAW OFFICES OF BRUCE G. MURPHY**
Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL  32963
(772) 231-4202

*Attorneys for Plaintiff*

11

## **CERTIFICATE OF SERVICE**

     I, Nancy Freeman Gans, hereby certify that I served a copy of the foregoing document upon counsel for all parties by mailing a copy of same, postage prepaid, to each attorney of record, this 19th day of March, 2004.

                                            /s/ Nancy Freeman Gans
                                            Nancy Freeman Gans