UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CAROLYN GREENE, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:03-CV-12628 (NG) |
| BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS, | ) ) ) ) | |
| Defendants. | ) | |
| JOHN G. ESPOSITO, JR., on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:04-CV-10013 (NG) |
| BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS, | ) ) ) ) | |
| Defendants. | ) | |

[Captions continued on next page]

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE BIOPURE LEAD PLAINTIFF GROUP TO CONSOLIDATE ACTIONS, TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

| | |
|---|---|
| JOSEPH L. KING, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS, )<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10038 (NG) |
| MICHAEL E. CRIDEN, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, and CARL W. RAUSCH, )<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10046 (NG) |
| ISRAEL SHURKIN and SHARON SHURKIN, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, and CARL W. RAUSCH, )<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10055 (NG) |

[Captions continued on next page]

| | |
|---|---|
| JAMES J. NIZZO, VIRGINIA C. NIZZO, and CARLO CILIBERTI, on behalf of themselves and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS, )<br>)<br>)<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10065 (NG) |
| BARRY BROOKS, on behalf of himself and all others similarly situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS, )<br>)<br>)<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10077 (NG) |
| ANASTASIOS PERLEGIS, individually and on behalf of all others similarly situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS, )<br>)<br>)<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10078 (NG) |

[Captions continued on next page]

| | |
|---|---|
| MARTIN WEBER, on behalf of himself and all others similarly situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,  )<br>)<br>)<br>)<br>Defendants.  ) | Civil Action No. 1:04-CV-10090 (NG) |
| BRUCE HAIMS, individually and on behalf of all others similarly situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,  )<br>)<br>)<br>)<br>Defendants.  ) | Civil Action No. 1:04-CV-10144 (NG) |
| MODEL PARTNERS LIMITED, individually and on behalf of all others similarly situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,  )<br>)<br>)<br>)<br>Defendants.  ) | Civil Action No. 1:04-CV-10155 (NG) |

[Captions continued on next page]

| | |
|---|---|
| JUNE E. PATENAUDE, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS, )<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10179 (NG) |
| NANCY L. PINKNEY and GERTRUDE PINCKNEY, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, and CARL W. RAUSCH, )<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10189 (NG) |
| W. KENNETH JOHNSON, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS, )<br>)<br>Defendants. ) | Civil Action No. 1:04-CV-10190 (NG) |

[Captions continued on next page]

| | |
|---|---|
| GREGOEY KRUSZKA, on behalf of himself and all others similarly situated,  )<br>)<br>) | |
| Plaintiff,  )<br>) | |
| v.  ) | Civil Action No.  1:04-CV-10202 (NG) |
| )<br>BIOPURE CORPORATION, THOMAS  )<br>A. MOORE, CARL W. RAUSCH, and  )<br>RONALD F. RICHARDS,  )<br>) | |
| Defendants.  ) | |

Lead Plaintiff movants Neil & Susan Fineman, Michael Navilio, Robert Powell, and Edward P. Collins (collectively, the "Biopure Lead Plaintiff Group") respectfully submit this reply memorandum of law in further support of their motion for appointment as Lead Plaintiff and approval of their selection of Lead Counsel and in reply to the oppositions of Ronald W. Erickson and Benjamin J. Joseph (collectively, the "Erickson Group") and Richard Acuna, William Homeyer, Gernot Buerger, Thomas Echlin, and William Kim (collectively, the "Homeyer Group").

## PRELIMINARY STATEMENT

The Biopure Lead Plaintiff Group incurred the largest losses of any Lead Plaintiff movant and is otherwise adequate and typical to serve as Lead Plaintiff. Accordingly, under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Biopure Lead Plaintiff Group is entitled to the presumption of "most adequate plaintiff," unless one of the other movants provides **proof** that it is somehow inadequate or atypical to serve as Lead Plaintiff. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II). However, neither the Erickson Group nor the Homeyer Group has provided any proof to defeat the statutory presumption favoring the Biopure Lead Plaintiff Group.

Recognizing that its group did not have the greatest financial interest, the Erickson Group's counsel resorted to lawyer-driven machinations in an ill-fated attempt to resurrect its motion. First, in its opposition memorandum, the Erickson Group suddenly and inexplicably dropped Benjamin J. Joseph from its group so that Ronald W. Erickson, alone, can seek lead plaintiff appointment. This "withdrawal" - which was relegated to a footnote in the Erickson Group's opposition memorandum (*see* Opposition of Proposed Lead Plaintiff Ronald W. Erickson**,** dated March 16, 2004, at n.1) - accomplished nothing, but arming the Erickson

Group's counsel with the hollow argument that it **now** is no longer a "group." It is not surprising then that the Erickson Group's opposition memorandum devotes considerable argument to the issue of whether "groups" are appropriate lead plaintiff movants. Conspicuously absent from this argument, however, is an explanation as to why the Erickson Group, originally constituted as a two-member group, believed that groups were appropriate lead plaintiff candidates in its initial papers. As set forth herein, the vast bulk of authority (including the SEC) supports the appointment of groups as appropriate lead plaintiff movants. In any event, no matter how the Erickson Group reformulates its motion, it cannot escape the fact that the Biopure Lead Plaintiff Group has the largest financial interest of any lead plaintiff movant in this case.

The Homeyer Group takes a different tack. First, the Homeyer Group attempts to rebut the presumption favoring the Biopure Lead Plaintiff Group by arguing that certain of its members are subject to unique defenses. In particular, the Homeyer Group argues that Neil and Susan Fineman are subject to unique defenses since they sold their shares of Biopure stock before the end of the Class Period. This is wrong. Importantly, a review of the complaints filed in this litigation reveals that the truth about the problems at Biopure was made known in a series of disclosures, each of which caused the price of Biopure stock to decline. Neil and Susan Fineman sold their stock **after** the negative disclosure concerning Hemopure – the exact issue at the core of this case. Thus, this is not a situation where the truth about the problems at a company were completely concealed until the end of the Class Period. Rather, the Finemans suffered losses as a direct result of the concealed fraud. *See In re Catalina Marketing Corp. Secs. Litig.*, 8:03-cv-1582-T-27TBM, slip. Op. At *5 (M.D. Fla. Dec. 5, 2003) (attached hereto as Exhibit A) (court appointed as lead plaintiff movant which sold after partial disclosure).

The Homeyer Group also argues that Michael Navilio has failed to demonstrate his financial interest because his certification does not explicitly state whether one of his transactions was a purchase or a sale. A simple review of Mr. Navilio's certification and corresponding loss chart, however, makes it clear that his first transaction was a purchase of 40,000 shares of Biopure stock. Nevertheless, in order to remove any doubt, Mr. Navilio has provided a corrected certification, which is attached hereto as Exhibit B.

Finally, the Homeyer Group baldly asserts that the Court should cobble together its own group from among the moving individuals. As detailed in its papers, the Homeyer Group picks and chooses who, in its view, should be appointed Lead Plaintiff and then who should be Lead Counsel. Not surprisingly, the Homeyer Group cites to no authority which supports this approach. Indeed, this approach is directly contradicted by the procedure mandated by the PSLRA, which was advocated by the Homeyer Group in its initial application. *See* Homeyer Memorandum of Law In Support of Its Motion ("Homeyer Memo in Support") at 6-7; *see also* 15 U.S.C. § 78u-4 *et seq*. At a minimum, the Homeyer Group's pick-and-choose method exemplifies the sort of lawyer-driven conduct, which Congress hoped to eliminate by enacting the clear and precise lead plaintiff provisions of the PSLRA. *See In re Lernout & Hauspie Securities Litigation*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) ("One key aim [of the PSLRA] was to empower investors so that they - not their lawyers - exercise primary control over private securities litigation.") (*quoting* S. Rep. No. 104-98, at 4, reprinted in 1995 U.S.C.C.A.N. 679, 683).

Accordingly, for the reasons set forth herein, as well as in its prior submissions, the Biopure Lead Plaintiff Group respectfully submits that its motion for appointment as Lead

3

Plaintiff and its selection of Lead Counsel be approved in all respects.

## **PROCEDURAL HISTORY**

The initial complaint in this litigation was filed on December 30, 2003 by Carolyn Greene (the "Greene Action"). Later that same day, plaintiff Greene issued the statutory notice over *PR Newswire*. Thereafter, fourteen additional actions were filed each of which arises out of the same facts and circumstances as the Greene Action.

On March 1, 2004, seven lead plaintiff motions were filed. The losses reported in those motions were as follows:

| MOVANT | REPORTED FINANCIAL LOSSES |
|---|---|
| BIOPURE LEAD PLAINTIFF GROUP | $545,780 |
| ERICKSON GROUP | $323,199 |
| HOMEYER GROUP | $185,298 |
| BHASKAR GROUP | $105,485 |
| ELIOPOULOS GROUP | $60,212 |
| MCCARDIE GROUP | $51,815 |
| THE CHAOS | $51,625 |

Notably, all of the lead plaintiff movants but one consisted of a group of Biopure investors. Further, every movant initially asserted that the PSLRA mandated that the Court appoint the person *or group of persons* with the largest financial interest as Lead Plaintiff and approve their selection of counsel.

Then, on or about March 15, 2004, the Biopure Lead Plaintiff Group, the Homeyer Group and the Erickson Group each filed opposition papers. In its opposition, the Erickson Group reports that Benjamin J. Joseph has "withdrawn" from consideration and that its lone remaining

4

movant, Ronald W. Erickson, now challenges the appropriateness of groups as lead plaintiff. Also, the Homeyer Group attempts to challenge, without success, the typicality and adequacy of several members of the Biopure Lead Plaintiff Group and alternatively, that the Court should appoint its own makeshift group.

## ARGUMENT

**A.    THE BIOPURE LEAD PLAINTIFF GROUP IS AN APPROPRIATE GROUP FOR PURPOSES OF THIS MOTION**

Notwithstanding the Erickson Group's about-face on this issue, it is clear that small cohesive groups of investors are proper lead plaintiff movants. *See* Memorandum in Further Support of the Biopure Lead Plaintiff Group's Motion at 10-11. Indeed, as the Erickson Group argued in its opening motion papers, the PSLRA expressly authorizes a "group of persons" to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Memorandum of Law in Support of the Motion of Ronald Erickson and Benjamin Joseph ("Erickson Group Memo in Support") at 5.

The Biopure Lead Plaintiff Group consists of four individual investors in Biopure who have demonstrated that they are small enough to effectively manage the litigation. Joint Declaration In Support Of The Biopure Lead Plaintiff Group's Motion To Consolidate Actions, To Be Appointed Lead Plaintiffs And For Approval Of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Joint Declaration") at ¶¶ 2, 4 (attached as Exhibit D to Declaration of David Pastor in Support of Motion of the Biopure Lead Plaintiff Group to Consolidate Actions, To Be Appointed Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Pastor Declaration")); *In re Lernout,* 138 F.

Supp. 2d at 44. More specifically, before filing their motion, each and every member of the Biopure Lead Plaintiff Group attested to their interest in pursuing this litigation as a group and their commitment to working together in the best interests of the class. *See* Joint Declaration.

      The appointment of small cohesive groups is also consistent with the position adopted by the Securities & Exchange Commission, which has publically endorsed the appointment of groups of 3-5 members as lead plaintiffs. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) (citing the SEC's amicus brief stating small groups of three to five may serve as lead plaintiff). Moreover, courts in this District (and elsewhere) routinely appoint groups of unrelated investors as lead plaintiffs. *See Miller v. Parametric Technology Corp.*, 03-cv-10290-WGY (D. Mass. May 20, 2003) (Young, J.) (attached as Exhibit A to Biopure Lead Plaintiff Group's Memo in Opposition); *In re Lernout,* 138 F. Supp. 2d at 44 (appointing a group of investors as lead plaintiff and their selected co-counsel as lead counsel) (citing cases); *Greebel v. FTP Software, Inc.,* 939 F. Supp. 57, 60-61 (D. Mass. 1996); *see also In re Versata*, *Inc., Litig.*, 2001 U.S. Dist. LEXIS 24270, *17 (N.D. Cal. Aug. 17, 2001) (finding small groups of unrelated individuals or entities may aggregate); *Piven v. Sykes Enter.*, 137 F. Supp. 2d 1295, 1306 (M.D. Fla. 2000) (appointing group of unrelated movants with the largest losses as co-lead plaintiffs and approving selection of co-lead counsel)*; In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) (appropriate to appoint unrelated groups); *Weltz v. Leee*, 199 F.R.D. 129 (S.D.N.Y. 2001) (appointing group with largest financial losses as lead plaintiff); *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) (same); *In re Am. Banknote Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 434, 436 (S.D.N.Y. 2000) (same).

      Accordingly, it is respectfully submitted that the Court should appoint the Biopure Lead

Plaintiff Group, the movant with the largest financial interest and which otherwise satisfies the requirements of Fed. R. Civ. P. 23, as Lead Plaintiff.

**B.    BIOPURE LEAD PLAINTIFF GROUP
MEMBERS NEIL AND SUSAN FINEMAN ARE
NOT SUBJECT TO UNIQUE DEFENSES**

The Homeyer Group contends that Neil and Susan Fineman are atypical lead plaintiffs because they sold all of their Biopure shares before the end of the class period and are, therefore, subject to the unique defense that they "lack standing to pursue their claims because they were not harmed by the fraudulent conduct." Homeyer Group's Corrected Memorandum of Law In Opposition to the Competing Motions at 3. This argument is wrong because: (a) the truth about the problems at Biopure were made known through a series of partial disclosures, each of which caused the price of Biopure stock to decline; and (b) Neil and Susan Fineman, as demonstrated by the chart below, sold **after** one such disclosure and, as a result, can properly allege loss causation.

Contrary to the conclusory argument advanced by the Homeyer Group, the losses sustained by Neil and Susan Fineman on their purchases of Biopure stock were directly attributable to Defendants' allegedly false and misleading statements. Indeed, as demonstrated by the chart below, the Finemans suffered losses as a result of the Company's announcement on March 30, 2003 that the Food & Drug Administration wanted Biopure to clarify data in certain of its studies of Hemopure, which in turn would cause a further delay in its approval. As demonstrated by the chart below, Neil and Susan Fineman sold their Biopure stock **only after** the stock price declined 39% in one day in response to that surprise disclosure:

7



Thus, it is clear that the Finemans sold their stock after the disclosure of adverse news concerning Hemopure, the exact issue at the core of this case. Accordingly, the Finemans can properly allege loss causation for their purchases.[1]

Because of the existence of a partial disclosure in this action, the cases cited by the

---

[1] In this District, plaintiff need only overcome a "minimal burden" to satisfy the pleading requirements for loss causation. *See In re Allaire Corp. Sec. Litig.,* 224 F. Supp. 2d 319, 339 (D. Mass. 2002) ("[S]cienter requires a 'strong showing'' [of facts]. . . . Loss causation, however, does not.").

8

Homeyer Group are inapposite. In *In re Carreker Corporation Secs. Litig.*, 03-CV-0250-M (N.D. Tex. Aug. 14, 2003) (attached hereto as Exhibit C), the court rejected a sole lead plaintiff movant who was an "in-and out-purchaser" of Carreker stock, holding that he "may or may not have actually been damaged" by defendants' alleged materially false and misleading statements.[2] *Id.* at 2-3. The important distinction in that case, however, was that the adverse news was not revealed until the end of the class period (as compared to the partial disclosure during the class period in the instant action).

Similarly, in *In re Cable & Wireless, PLC, Secs. Litig.*, 217 F.R.D. 372 (E.D.Va. 2003), the American Public Pension Funds Group sold all of its shares before any negative disclosures by the Company which caused a decline in the price of the stock. The Finemans, however, sold their shares after a partial disclosure which distinguishes the fact pattern in this action.

In fact, counsel for the Homeyer Group, in a separate case, advocated the position that a plaintiff is not an "in-and-out" trader if he sells his shares after a partial disclosure. *See In re Catalina*, slip. op. at *5 (the Alaska Group was appointed as lead plaintiff despite the fact that its members had sold their shares prior to the end of the Class Period, but after a negative disclosure which caused the stock to decline 36% in one day). This precise factual scenario exists here. Thus, the argument that the Finemans are somehow atypical by virtue of their selling shares

---

[2] Indeed, the court in *Carreker* explicitly stated that it "accepts the argument that an in and out trader could conceivably suffer recoverable damages, depending upon the extent to which, compared to the purchase price, the stock's value was inflated at the time of sale." *Id.* at 2.

9

during the class period, but after a partial disclosure, is without merit.[3]

### C. MICHAEL NAVILIO HAS ADEQUATELY DEMONSTRATED HIS FINANCIAL INTEREST IN THIS LITIGATION

The argument advanced by the other movants that Michael Navilio, a member of the Biopure Lead Plaintiff Group, has not provided this Court with sufficient information regarding his transactions in Biopure is without merit. Mr. Navilio's certification and corresponding loss chart make it abundantly clear that Mr. Navillo purchased 40,000 shares of Biopure stock at $7.29 per share on August 19, 2003. *See* Pastor Decl. at Exhibits A, C. Nevertheless, in order to remove any doubt, Mr. Navilio has provided a new certification, which clarifies the transaction in question.[4]

### D. RONALD W. ERICKSON IS AN INADEQUATE LEAD PLAINTIFF

The fact that Ronald W. Erickson (or his counsel) abandoned Benjamin J. Joseph - who conveniently had claimed the lesser financial interest of the two - reveals Mr. Erickson's own inadequacy. *See Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 848 (S.D. Ind. 1999) (because

---

[3] Nevertheless, even if the Finemans were rejected by this Court, the Biopure Lead Plaintiff Group would still have the largest financial interest. *See In re Surebeam Corp. Secs. Litig.*, 2003 U.S. Dist. LEXIS 25022, at *23 (S.D. Cal. Jan. 4, 2004) (if one group member is rejected, it is appropriate to consider remaining members).

[4] That Mr. Navilio has elected to file a clarifying certification - especially considering it does not change his previously reported losses whatsoever - does not preclude his appointment as lead plaintiff. *See Max Bruckner et. al. v. Xcel Energy, Inc.*, No. 02-2677(DSD/FLN), slip op. at 20-21 (D. Minn. Nov. 12, 2002) (attached as Exhibit D) (court permitted corrected certification and rejected faulty certification as basis to disqualify lead plaintiff); *Chill v. Green Tree*, 181 F.R.D. 398, 410-11 (D. Minn. 1999) (court allowed lead plaintiff movant to correct "technical deficiencies" in initial certification with supplemental filing); *Vangsgard v. Ariba, Inc., et al.*, No. C-03-00277 JF, slip op. at 7-8 (N.D. Cal. July 11, 2003) (attached hereto as Exhibit E) (court found no prejudice to competing movants and accepted amended loss calculation that decreased previously reported financial losses).

of rotating group membership, remaining group members found inadequate); *Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 249 (E.D. Va. 1999) (same). Moreover, such maneuvering simply to tee-up a feeble attack against the Biopure Lead Plaintiff Group for being a group (which blatantly contradicts his prior position) reeks of lawyer-driven manipulation - the exact behavior the PSLRA intended to curb. *See In re Lernout*,138 F. Supp. 2d at 43 ("One key aim [of the PSLRA] was to empower investors so that they - not their lawyers - exercise primary control over private securities litigation.") (*quoting* S. Rep. No.104-98, at 4, reprinted in 1995 U.S.C.C.A.N. 679, 683).

Furthermore, the "withdrawal" of Benjamin J. Joseph raises numerous questions, such as whether Erickson was even aware that he was initially a member of a group (let alone a lead plaintiff), whether he was aware of Benjamin J. Joseph's withdrawal and the reasons for the withdrawal? In light of these unanswered questions, we can only assume that the Erickson Group's counsel is pulling the strings, rendering him an inadequate lead plaintiff candidate.

E.  **THE HOMEYER GROUP'S COUNSEL IS IMPROPERLY SEEKING TO DECIDE WHO SHOULD BE LEAD PLAINTIFF AND LEAD COUNSEL**

Finally, without citing to any binding authority, the Homeyer Group argues that the Court should cobble together its own group from all the moving individuals. This approach circumvents the express provisions of the PSLRA for appointing lead plaintiffs and approving lead counsel. *See* 15 U.S.C. § 78u-4 *et seq.* No good reason or authority is provided to support this Court's concocting a lead plaintiff group, especially when the Biopure Lead Plaintiff Group has demonstrated that it has the greatest financial interest and otherwise satisfies the requirements of Fed. R. Civ. P. 23.

**CONCLUSION**

For the reasons stated herein, as well as in the its prior submissions to the Court, the Biopure Lead Plaintiff Group respectfully requests that this Court: (1) consolidate the above-captioned, and all subsequently-filed, related actions; (2) appoint the Biopure Lead Plaintiff Group as Lead Plaintiff in this action; (3) approve Schiffrin & Barroway, LLP and Geller Rudman, PLLC[5] as Lead Counsel to represent the Class; and (4) approve Gilman and Pastor, LLP as Liaison Counsel for the Class.

Dated: May 12, 2004

        Respectfully submitted,

        **GILMAN AND PASTOR, LLP**

        By:    /s/ David Pastor
              David Pastor (BBO # 391000)
              Peter A. Lagorio (BBO # 567379)
              Stonehill Corporate Center
              999 Broadway, Suite 500
              Saugus, MA 01906
              Telephone:   (781) 231-7850
              Facsimile:   (781) 231-7840

        **Proposed Liaison Counsel**

        **SCHIFFRIN & BARROWAY, LLP**
        Andrew L. Barroway
        Stuart L. Berman
        Darren J. Check
        Sean M. Handler
        Three Bala Plaza East, Suite 400
        Bala Cynwyd, PA  19004
        Telephone:   (610) 667-7706
        Facsimile:   (610) 667-7056

---

[5] On May 1, 2004, Cauley Geller Bowman & Rudman LP was reorganized and the firm of Geller Rudman PLLC now serves as counsel for the Biopure Lead Plaintiff Group.

**GELLER RUDMAN, PLLC**
Samuel H. Rudman
David A. Rosenfeld
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone:     (631) 367-7100
Facsimile:     (631) 367-1173

**Proposed Lead Counsel**