FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2003 DEC -5 AM 9:48

| IN RE: CATALINA MARKETING CORP. SECURITIES LITIGATION | Case No. 8:03-CV-1582-T-27TBM |

## ORDER

**BEFORE THE COURT** are Motion of Howard Noble to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel (Dkt. 13) and Proposed Lead Plaintiffs' Motion for Appointment as Lead Plaintiffs and Approval of Lead Counsel (Dkt. 11). Upon consideration, the Court finds as follows.

### Introduction

Plaintiffs have sued Catalina Marketing Corporation ("Catalina") and certain of its officers, directors and control persons for allegedly committing securities fraud. Specifically, Plaintiffs have alleged violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The actions are brought on behalf of those who purchased or otherwise acquired Catalina's common stock between January 17, 2002 and August 25, 2003 inclusive.

### Appointment of Lead Plaintiff

Two groups of Plaintiffs have moved for the appointment of lead plaintiff and for approval of their selection of counsel pursuant to 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). Before a lead plaintiff can be appointed, notice must be provided to all putative class members in accordance with 15 U.S.C. § 78u-4. The notice requirements have been satisfied here as the notices were published

30

on July 31, 2003 and on August 1, 2003 on PR Newswire and on the Businesswire, respectively to announce that the securities class actions herein had been filed. (Dkt. 12, Declaration of Maya Saxena, ¶ 3); (Dkt. 15, Affidavit of Jonathan Stein, ¶ 3). The notices advised putative class members that the deadline for filing a motion to seek appointment as lead plaintiff in the actions was September 29, 2003. (Dkt. 12, Ex. B); (Dkt. 15, Ex. B).

In response to the notices, Virginia P. Anderson and the Alaska Electric Pension Fund (hereinafter, the "Alaska Group Plaintiffs") have filed their Motion for Appointment as Lead Plaintiffs and Approval of Lead Counsel. (Dkt. 11). Additionally, Howard Noble has also filed his Motion to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel. (Dkt. 13).[1] The Alaska Group Plaintiffs and Nobel have each filed memoranda in opposition to the pending motions for the appointment of lead plaintiff and lead counsel. (Dkts. 18, 19).

The Private Securities Litigation Reform Act of 1995 (hereinafter, the "PSLRA") provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members. . . ." 15 U.S.C. § 78u-4(a)(3)(B). Additionally, the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that "(aa) has either filed the complaint or made a motion in response to a notice . . .(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-

---

[1] The Teamsters Local No. 115 Pension Fund filed its Motion for Consolidation, Appointment as Lead Plaintiff Under Section 21D(a)(3)(B) of the Securities Act of 1934 and Approval of Lead Plaintiff's Selection of Lead and Liaison Counsel (Dkt. 8), but has withdrawn that motion (Dkt. 17).

2

4(a)(3)(B)(iii)(I). This presumption may be rebutted upon proof that the presumptively most adequate plaintiff "(aa) will not fairly and adequately represent the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Considering the motions for the appointment of lead plaintiff, the Alaska Group Plaintiffs have suffered the greatest combined estimated losses as a result of Defendants' alleged conduct; an amount totaling $92,380.80.[2] (Dkt. 18 at 1). Additionally, the Alaska Group Plaintiffs include an individual investor as well as an institutional investor who have allegedly suffered damages as a result of Defendants' conduct during the relevant time period. See (Dkt. 11, 12, 18). The Alaska Group Plaintiffs' claims otherwise satisfy the requirements of Federal Rule of Civil Procedure 23. Having the largest financial interest in the relief sought and meeting the requirements of Rule 23, the Alaska Group Plaintiffs are presumed to be the most adequate plaintiffs herein. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (establishing a rebuttable presumption concerning the most adequate plaintiff); In re Cendant Corporation Litigation, 264 F.3d 201, 262 (3rd Cir. 2001).

Nobel maintains that although the Alaska Group Plaintiffs have the largest financial interest in the relief sought in this action, they will not fairly and adequately protect the class and are subject to unique defenses. (Dkt. 19 at 2). According to Nobel, the Alaska Group Plaintiffs are "subject to a crippling unique defense" because they cannot "demonstrate loss causation - an element of a 10b-5 claim."[3] Id. In Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1448-49 (11th Cir. 1997), which

---

[2] Nobel suffered estimated losses of $52,710. (Dkt. 14 at 6); (Dkt. 15, Stein Aff. Ex. C).

[3] To establish a Rule 10b-5 fraud claim, a plaintiff must allege and prove that the defendant(s) made a false statement that proximately caused the plaintiff's injury. Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1447 (11th Cir. 1997). To prove causation, a plaintiff must prove "loss causation," *i.e.*

3

was cited by Nobel, the Eleventh Circuit concluded that the defendants' Federal Rule of Civil Procedure 50(a) motion for judgment as a matter of law should have been granted when the evidence presented at a trial did not establish a connection between the defendant's misrepresentations and the decline in the price of a corporation's stock. The Robbins case is not directly applicable here since there has yet to be evidence presented concerning causation. At this early stage, it cannot be said that the Alaska Group Plaintiffs' claims lack evidence of loss causation.

Nobel also contends that the fact that the Alaska Group Plaintiffs sold their shares of Catalina stock during the class period before the alleged fraud was revealed to the marketplace precludes them from serving as lead plaintiffs. (Dkt. 19 at 5). The Alaska Electric Pension Fund purchased shares of Catalina stock both before and after the designated class period. (Dkt. 12, Maxena Decl. Ex. C). It sold those shares on October 2 and 3, 2002. Id. Anderson purchased her shares of Catalina stock on May 30, 2002 and sold those shares on December 30, 2002. Id. According to the Complaint, "the truth" about Catalina's deteriorating financial condition was fully disclosed on April 15, 2003. (Dkt. 1, Compl. ¶ 52). The Plaintiffs also allege in the Complaint, however, that on "October 1, 2002, defendants issued a press release announcing shocking news. Defendants announced that revenue and earnings for the quarter ended September 30, 2002 and fiscal year ending March 31, 2003 were far less than investors had been repeatedly assured." (Dkt. 1, ¶ 44). Additionally, in the Complaint, Plaintiffs further allege, in "response to the news, Catalina stock plunged over trading on unusually large volumes. The truth concerning defendants' fraudulent accounting and the magnitude of the

---

"that the untruth was in some reasonably direct, or proximate, way responsible for his loss." Id. at 1447. The Eleventh Circuit has further explained that in this circuit proof of a causal connection between the misrepresentation and the investment's subsequent decline in value is required to prove loss causation. Id. at 1448.

4

problems at Health Resource were still unknown to the market." (Dkt. 1, ¶ 46).

The fact that the Alaska Group Plaintiffs sold their Catalina stock prior to the time the alleged fraud was fully disclosed does not indicate an absence of loss causation and does not pose an obstacle, in and of itself, to meeting the requirements in Fed. R. Civ. P. 23(a). See Blackie v. Barrack, 524 F.2d 891, 908-10 (9th Cir. 1975); Cheney v. Cyberguard Corp., 213 F.R.D. 484, 493-94 (S.D. Fla. 2003); Schwartz v. Harp, 108 F.R.D. 279, 282-83 (C.D. Calif. 1985); Koenig v. Smith, 88 F.R.D. 604 (E.D. N.Y. 1980); Kassover v. Coeur D'Alene Mines Corp., 1992 W.L. 509995 (D. Idaho 1992). Although the Alaska Group Plaintiffs' damages may be affected by the timing of the sale of their stock, this does not render them unable to prove loss causation. See Robbins, 116 F.3d at 1447; PSS World Medical, Inc. Securities Litigation, 250 F.Supp2d 1335, 1343 (M.D. Fla. 2002). Further, the Court is unpersuaded by Nobel's arguments that it has not been established that the Alaska Group Plaintiffs will not be able to work together in litigating this matter. Finding that Nobel has not rebutted the presumption that the Alaska Group Plaintiffs are the most adequate plaintiffs, Virginia P. Anderson and the Alaska Electric Pension Fund are appointed as Lead Plaintiffs. Additionally, the Lead Plaintiffs' motion to approve Milberg Weiss Bershad Hynes & Lerach LLP as lead counsel is granted. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1.  Proposed Lead Plaintiffs' Motion for Consolidation, Appointment as Lead Plaintiffs and Approval of Lead Counsel (Dkt. 11) is **GRANTED**.

2.  Virginia P. Anderson and the Alaska Electric Pension Fund are appointed as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934.

3.  The law firm of Milberg Weiss Bershad Hynes & Lerach LLP is appointed Lead

Counsel.

4. Lead counsel shall assume and exercise the following powers and responsibilities:

   a. To coordinate the briefing and argument of motions;

   b. To coordinate the conduct of written discovery proceedings;

   c. To coordinate the examination of witnesses in depositions;

   d. To coordinate the selection of counsel to act as spokesperson at the pre-trial conferences;

   e. To call meetings of Plaintiffs' counsel as they deem necessary and appropriate;

   f. To conduct all settlement negotiations with counsel for the Defendants;

   g. To receive orders, notices, correspondence and telephone calls from the Court on behalf of all Plaintiffs, and to transmit copies of such orders, notices, correspondence and memorandum of such telephone calls to Plaintiffs' counsel; and

   h. To supervise any other matters concerning the prosecution or resolution of the Consolidated Actions.

5. With respect to scheduling and/or procedural matters, Defendants' counsel may rely upon all agreements with lead counsel.

6. No pleadings or other papers shall be filed or discovery conducted by any Plaintiff except as directed or undertaken by lead counsel.

7. Service by the Defendants on Plaintiffs of any papers shall be deemed to be complete for all purposes when a copy is served on lead counsel.