UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Max Bruckner, et al. | Civil No. 02-2677(DSD/FLN) |
| Jonathan Miller | Civil No. 02-2774(DSD/FLN) |
| Sayers Investment Partners | Civil No. 02-2787(DSD/FLN) |
| Francis John Pease | Civil No. 02-2832(DSD/FLN) |
| Norma Kegg | Civil No. 02-2889(DSD/FLN) |
| Eastside Holdings, Ltd. | Civil No. 02-2921(DSD/FLN) |
| Edith Gottlieb | Civil No. 02-2931(DSD/FLN) |
| James G. Thomas | Civil No. 02-2933(DSD/FLN) |
| Glen R. Laws | Civil No. 02-3053(DSD/FLN) |
| Chips Investments, Ltd. | Civil No. 02-3508(DSD/FLN) |
| William Potter | Civil No. 02-3574(DSD/FLN) |
| Dorothy Potash | Civil No. 02-3715(DSD/FLN) |
| Catholic Workman | Civil No. 02-3755(DSD/FLN) |
| Eliot B. Gersten | Civil No. 02-3798(DSD/FLN) |

v.

Xcel Energy, Inc.

## PRETRIAL ORDER NO. 1

    This matter is before the court on motions brought by several

plaintiffs competing for lead plaintiff designation under 15 U.S.C.

§ 7u-4(a)(3)(B)(i) of the Private Securities Litigation Reform Act

of 1995 ("PSLRA").  Before the court are thirteen securities fraud

class actions[1] and one shareholder derivative action[2] naming as

---

    [1] The securities fraud actions include Bruckner v. Xcel
Energy, 02-2677; Miller v. Xcel Energy, 02-2774; Sayers v. Xcel
Energy, Inc., 02-2787; Pease v. Xcel Energy, Inc., 02-2832; Kegg v.
Xcel Energy, 02-2889; Eastside Holdings v. Xcel Energy, Inc., 02-
2921; Thomas v. Xcel Energy, Inc., 02-2933; Laws v. Xcel Energy,
Inc., 02-3053; Chips Investments v. Xcel Energy, Inc., 02-3508;
                                              (continued...)

FILED 11-13-0 2
RICHARD D. SLETTEN, CLERK
Judgment En:'d.
Deputy Cler::'s Initials _____

defendants Xcel Energy, Inc. ("Xcel") and some or all of its directors and officers.[3]

Putative class members of the securities fraud actions Victor Sakal ("Sakal"), United Brotherhood of Carpenters and Joiners of America Local 3127 Pension Fund ("Pension Fund"), Donald Christ, LeRoy Faser, Leon Fiegel, Lewis and Elizabeth Fisher, Kevin C. Frye, Joseph and Lucia Press and the Tillery Family ("Frye Group") and Private Asset Management ("PAM") have each brought motions to consolidate all the related actions.  Each has also moved to be named lead plaintiff in the consolidated action, and for the court's approval of their respective selections of lead and liaison counsel.[4]  Plaintiffs Chips Investments Limited Partnership and its partners Steven C. Aanenson and Beverly K. Aanenson, together with

---

[1](...continued)
Potter v. Xcel Energy, Inc., 02-3574; Potash v. Xcel Energy, Inc., 02-3715; Workman v. Xcel Energy, Inc., 02-3755; Gersten v. Xcel Energy, Inc., 02-3798.  One securities fraud action, Visioneering Res v. Xcel Energy, Inc., 02-3509, was voluntarily dismissed.

[2] The shareholder derivative action is captioned Gottlieb v. Xcel Energy, Inc., 02-2931.

[3] The securities fraud actions name as defendants Xcel Energy, Inc. and individuals James J. Howard (Xcel Board Chairman), Wayne H. Brunette (Xcel President and CEO.) and Edward J. McIntyre (Xcel Vice President and CFO.).  Gottlieb, as a shareholder derivative action, names Xcel Energy, Inc., these same three individuals and all the other directors as well.

[4] An additional putative class member, Jack Edwin Bissey, George A.N. Coppedge II, George W. Keros, Randall Allan Pratt and Merrick Seabourn ("Coppedge Group") also moved for consolidation, appointment as lead plaintiff and approval of selection of lead counsel.  Those motions have been withdrawn.

2

individuals Harry C. Andrews, Thomas R. Perry, Jr. and Lloyd
Amundson ("Chips") and Catholic Workman ("Workman") have similarly
moved for appointment as lead plaintiff and approval of lead and
liaison or co-lead counsel.   For the reasons set forth below,
Sakal's motion to consolidate the related actions is granted in
part and denied in part, Chips motion to be appointed lead
plaintiff is granted, Chips motion for approval of co-lead counsel
is granted and the remaining motions before the court are denied.


### BACKGROUND

On July 31, 2002, Max Bruckner and Steven Herod brought a
class action claim against Xcel Energy, Inc. in this district.
They also name individual defendants James J. Howard, Xcel's
Chairman of the Board of Directors, Wayne H. Brunette, its
President and Chief Executive Officer and Edward J. McIntyre, its
Vice President and Chief Financial Officer, as "controlling
persons" within the meaning of Section 20 of the Securities
Exchange Act of 1934.[5]   Bruckner and Herod claim that the
defendants violated Sections 10(b) and 20(a) of the Act (15 U.S.C.
§§ 78j(b) and 78t(a)) and Rule 10b-5 of the rules and regulations

---

[5] 15 U.S.C. § 77(a) et seq.

3

promulgated under the Act (17 C.F.R. § 240.10b-5). With the exception of the Gottlieb action, all of the related complaints allege the same or substantially the same violations.

Specifically, they allege, *inter alia*, that between January 31, 2001 and July 26, 2002 (the class period), Xcel and the other named defendants filed false and misleading reports with the Securities and Exchange Commission and made false and misleading public statements pertaining to Xcel's subsidiary, NRG Energy, Inc. ("NRG"). They further allege that these false and misleading statements, together with defendants' failure to disclose material adverse information, led to a significant overstatment of Xcel's financial condition. All plaintiffs claim that they and the putative class members suffered extensive financial losses resulting from the market's negative reaction when the true nature of the company's financial condition became clear.

Xcel is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. It provides electricity, natural gas and other energy-related products to commercial and residential customers in twelve midwestern states. Xcel is registered with the Securities and Exchange Commission and its stock is publicly traded on the New York Stock Exchange.

4

## DISCUSSION

The court notes initially that when, as here, more than one action has been filed raising claims under the Exchange Act and any party thereto has moved to consolidate related actions, the PSLRA requires that "the decision on the motion to consolidate" be made prior to consideration of motions for appointment of lead plaintiff and lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Therefore, the court responds first to the various motions to consolidate.

### I.    Consolidation

#### a.    The Securities Fraud Actions

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the court may consolidate actions when there are common questions of law or fact. See Enterprise Bank v. Saettele, 21 F.3d 233, 235 (8th Cir. 1994). Rule 42(a) states:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). The trial court has broad discretion in electing to consolidate related actions. See United States E.P.A. v. City of Green Forest, Ark., 921 F.2d 1394, 1402 (8th Cir. 1990). And as Rule 42(a) suggests, "consolidation is permitted as a matter of convenience and economy in administration." Johnson v. Manhatten Ry., 289 U.S. 479, 496 (1933).

5

In the actions before the court, all fourteen of the complaints identify the same class period, name all or substantially all the same defendants, and with the exception of Gottlieb, set forth the same or substantially the same factual and legal claims. As a shareholder derivative action, Gottlieb differs significantly from the other related actions, and will be discussed separately below.

The court finds that all of the security fraud actions share sufficient questions of both fact and law that consolidation will "tend to avoid unnecessary costs and delays." Fed. R. Civ. P. 42(a). Further, none of the parties opposes consolidation of the securities fraud actions. Therefore, Sakal's motion to consolidate the related securities fraud cases is granted.

**b.    The Gottlieb Shareholder Derivative Action**

As a shareholder derivative action, Gottlieb differs from the securities fraud actions in several respects. Central to the consolidation analysis is whether Gottlieb and the other cases share important questions of law or fact. Fed. R. Civ. P. 42(a); see also Enterprise Bank, 21 F.3d at 235.

Gottlieb alleges many of the same facts as are asserted in the securities fraud actions. Like the other actions, Gottlieb refers to the individual defendants' conduct leading up to and during the period between January 31, 2002 and July 26, 2002. However, in alleging a breach of the board of director's fiduciary

6

responsibilities, <u>Gottlieb</u> looks back as a far as 1992.  Further, as a shareholder derivative action, the focus of the factual allegations is not the dilatory conduct of the individual defendants named in the securities fraud cases, but rather the board of director's actions and inaction relative to that conduct.

<u>Gottlieb's</u> legal claims also necessarily differ both procedurally and substantively from those raised in the other actions.  Procedurally, shareholder derivative actions fall under the ambit of Rule 23.1 of the Federal Rules of Civil Procedure, while securities fraud class actions are controlled by Rule 23.  This alone creates significantly different threshold pleading and proof questions for the respective actions.  Substantively, <u>Gottlieb</u> raises a common law claim that is not within the coverage of the Exchange Act or related regulations.  Further, the action is brought on behalf of the corporation itself, rather than on Gottlieb's behalf. <u>See generally</u>, Charles A. Wright and Arthur R. Miller, <u>7C Federal Practice and Procedure, Civ. 2d</u>, § 1821 (1986) (noting same).  For these reasons, the court finds that consolidation of the shareholder derivative action with the securities fraud actions is inappropriate.

However, even where complete consolidation is inappropriate, it remains within the court's discretion to consolidate limited parts of related actions for limited purposes. <u>See</u> <u>EEOC v. H.B.E. Corp.</u>, 153 F.3d 543, 550 (8th Cir. 1998); <u>see also</u> <u>Magnavox Co. v.</u>

APF Electronics, Inc., 469 F. Supp. 29, 32 (D.C. Ill. 1980)
(stating "Rule 42(a) ... also contemplates consolidation for
purposes of particular parts of the litigation, such as pretrial
proceedings").

Bearing in mind the purpose of Rule 42(a) to avoid unnecessary
costs and delays, the court finds that it is in the interest of all
parties to the related actions to consolidate Gottlieb with the
other related cases for pretrial purposes only, as more fully set
forth below.

## II. Designation of Lead Plaintiff Under the PSLRA

The PSLRA sets forth three principal requirements that must be
met by plaintiffs seeking to be appointed as lead plaintiff. 15
U.S.C. § 78u-4. First, the earliest filing plaintiff must publish
notice of the pendency of the action within twenty days of filing
the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I) and (ii). Any
member of the putative class may, within sixty days of publication
of that notice, move to serve as lead plaintiff. 15 U.S.C. § 78u-
4(a)(3)(A)(i)(II). Second, any plaintiff seeking to serve as a
"representative party on behalf of a class" must personally provide
a certification of willingness, ability and appropriateness for
that role to the court.[6] 15 U.S.C. § 78u-4(a)(2)(A). Third, the

_____

[6] The court recognizes that a literal reading of Section
(2)(A) would limit its application to plaintiffs seeking class
representative status, which is not synonymous with lead plaintiff
appointment. While some district courts have found otherwise, see
(continued...)

8

PSLRA establishes a rebuttable presumption that the most appropriate lead plaintiff is the person or group of persons with "the largest financial interest in the relief sought by the class" that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb) and (cc). While the Eighth Circuit Court of Appeals has had little opportunity to pass on the lead counsel provisions of the PSLRA, a significant body of decisional law has evolved in the other circuits.

### a. Publication of the Pendency of the Action

The PSLRA requires that the first filing plaintiff in an Exchange Act class action publish notice of the pendency of the action in a "widely circulated national business-oriented publication," stating the claims alleged, the purported class period and advising potential plaintiffs of the opportunity to move

---

[6](...continued)
e.g. Greebel v. FTP Software, Inc., 939 F. Supp. 57, 61 (D. Mass. 1996), the court agrees with the reasoning of Chill v. Green Tree Financial Corp.,181 F.R.D. 398, 409-10 (D. Minn. 1998). There, Magistrate Judge Raymond L. Erickson explains that the legislative history of the PSLRA demonstrates Congress' intent that the Act deter so-called "professional plaintiffs." See id. at 410. As he notes, "[i]n the absence of such certifications, the entire scheme of the PSLRA could be displaced, as inventive law firms would still be allowed to recruit 'professional plaintiffs,' and foist them on an unsuspecting, and uniformed Court, in the context of a Lead Plaintiff Motion." Id.

for appointment as lead plaintiff within sixty days of its publication.[7]  15 U.S.C. § 78u-4(a)(3)(A)(i)(I) and (II).

In this case, Bruckner filed his action on July 31, 2002. He published the required notice in Business Wire on August 1, 2002.[8] The publication noted the pendency of the action, identified the claims raised in his complaint and set forth the purported class period. Further, it informed potential class members of their right to move for appointment as lead plaintiff within sixty days. Therefore, the court finds that the publication issued in conjunction with the Bruckner action satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(A)(i)(I) and (II).

Following the Bruckner publication, several putative class members and two additional plaintiffs filed motions for appointment as lead plaintiff. Sakal, Pension Fund, the Frye Group, PAM, Chips and Workman all filed their respective motions for appointment on September 30, 2002. Each of the motions was brought within sixty days of the publication, as required by 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), and is therefore timely.

------------------------------------------------------------

[7] Under the Act, subsequent parties filing related actions or moving for appointment as lead plaintiff are not required to publish notice. 15 U.S.C. § 78u-4(3)(A)(ii).

[8] Business Wire, a national publication, has been accepted in this district as satisfying the requirements of Section 78u-4(a)(3)(A)(i). See Chill v. Green Tree Financial Corp., 181 F.R.D. 398, 403 (D. Minn. 1998).

**b.  Plaintiff Certification**

Section 78u-4(a)(2)(A) of the Act requires that plaintiffs seeking representative status file sworn certification that

> (i) states that the plaintiff has reviewed the complaint and authorized its filing;
>
> (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;
>
> (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;
>
> (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;
>
> (v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and
>
> (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered by the court in accordance with paragraph (4).

15 U.S.C. § 78u-4(a)(2)(A)(i-vi). The court finds that each of the movants has filed a sworn certification, signed by the plaintiff or

putative plaintiff, in accordance with the requirements of the Act.[9]

c.    **The Rebuttable Presumption of Most Adequate Plaintiff**

The PSLRA requires that the court appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members...." 15 U.S.C. § 78u-4(a)(3)(B)(i). To that end, the Act creates a rebuttable presumption that the plaintiff or putative plaintiff who timely files a motion for appointment as lead plaintiff, has "the largest financial interest" in the class relief and otherwise satisfies the requirements of Rule 23, is the most adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). That presumption may be challenged by a member of the purported plaintiff class offering proof that the presumptively most adequate plaintiff-

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The PSLRA does not define "largest financial interest" or describe the means by which it is to be calculated. Courts

---

[9] See note 6, supra, for the court's analysis of the applicability of the certification provisions to subsequent motions for appointment as lead plaintiff.

considering that question have looked at four factors: (1) number of shares purchased during the class period, (2) net shares purchased during the class period, (3) net funds expended during the class period, and (4) the approximate loss experienced during the class period. See Lax v. First Merchants Acceptance Corp., 1997 WL 461036 at *5 (N.D. Ill. 1997); In re Olsten Corp. Securities Litigation, 3 F. Supp. 2d 286, 296 (E.D. N.Y. 1998); Skwortz v. Crayfish Co., Ltd., 2001 WL 1160745 at *5 (S.D. N.Y. 2001). These are frequently referred to at the Lax factors.

In addition to showing the greatest financial interest, the Act also requires that the presumptive lead plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Courts have consistently held that at this stage the Rule 23 considerations are limited to the questions of typicality and adequacy. See In re Cendant Corp. Litigation, 264 F.3d 201, 263 (3rd Cir. 2001); In re Oxford Health Plans, Inc. Securities Litigation, 182 F.R.D. 42, 50 (S.D. N.Y. 1998); Gluck v. Cellstar Corp., 976 F. Supp. 542, 546 (N.D. Tex. 1997); D'Hardt v. Digi International, Inc., 1997 WL 405668 at *2 (D. Minn. 1997). Thus, the searching inquiry that will follow a Rule 23 motion for class certification is not appropriate this early in the litigation. See In re Advanced Tissue Sciences Securities Litigation, 184 F.R.D. 346, 349 (S.D. Cal. 1998). Rather, the presumptive lead plaintiff "need only make

a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." Skwortz, 2001 WL 1160745 at *5 (citing In re Olsten, 3 F. Supp. 2d at 296).

Because the PSLRA specifically incorporates Rule 23, courts have applied traditional Rule 23 principles in considering typicality and adequacy. See Cendant, 264 F.3d at 264-5. As for typicality, the court "should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differs from that upon which the claims of other class members will perforce be based.'" Id. at 265 (citing Hassine v. Jeffes, 846 F. 2d 169, 177 (3rd Cir. 1988) (internal citations omitted)). "[P]erfect identity [of claims] is not required. In re Wirebound Boxes Antitrust Litigation, 128 F.R.D. 268, 270 (D. Minn. 1989).

Rule 23(a) adequacy has four principal requirements. "First, the representatives and their attorneys must be able and willing to prosecute the action competently and vigorously. Second, each representative's interests must be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." In re Wirebound Boxes, 128 F.R.D. at 270. Third, in the context of lead plaintiff motions, courts have factored the size and composition of the presumptive lead plaintiff group into the adequacy inquiry. See Cendant, 264 F.3d at 266. The court may determine under its preliminary Rule 23 analysis that "the way in

14

which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff...." Id. See also Chill, 181 F.R.D. 398, 408 (stating that the larger the lead plaintiff group, the greater the dilution of control over the action). Finally, courts may consider whether a movant's selection of counsel is so wholly incompetent or so rife with conflict as to demonstrate the movant's inadequacy to lead the collective action. See In re Cavanaugh, 306 F.3d 732-3 (9th Cir. 2002).

### d. Applying the PSLRA Lead Plaintiff Provisions: In re Cavanaugh

The Ninth Circuit Court of Appeals recently brought the various PSLRA lead plaintiff provisions into a coherent whole by establishing a three-step process for identifying the most adequate lead plaintiff. See Cavanaugh, 306 F.3d at 729. In step one, the court must consider the adequacy of the notice, filing and motion in accordance with the Act. See id. In step two, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." Id. at 729-30. The court "must then focus its attention on that plaintiff and determine, based on ... his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" Id. Only if that plaintiff does not, prima facie, meet the requirements of Rule 23(a) is the court to consider the adequacy of the plaintiff with

15

the next greatest financial stake. <u>See</u> <u>id.</u> at 730; <u>see also</u> <u>Cendant</u>, 264 F.3d 201, 268 (same). Finally, at step three, competing movants may challenge the presumptive lead plaintiff's *prima facie* showing that it satisfies the Rule 23(a) requirements.[10] <u>See</u> <u>Cavanaugh</u>, 386 F.3d at 730.

It is implicit in the three part process, and explicit in <u>Cavanaugh</u>, that the appointment of lead plaintiff "is not a beauty contest." <u>Id.</u> at 732. The plaintiff with the largest stake <u>is</u> the presumptive lead plaintiff, provided he meets the Rule 23 requirements, even if the court considers another plaintiff somehow better suited to lead the action. <u>See</u> <u>id.</u> The Act does not permit the court to consider any other plaintiffs' motions unless and until the plaintiff with the largest stake has been disqualified. <u>See</u> <u>id.</u> at 730-31.

### e.   <u>Cavanaugh</u> Step One: Notice, Certification and Motion

Applying <u>Cavanaugh</u> to the present motions, the court finds that all movants have satisfied the requirements of step one, having properly certified and timely moved for appointment following Bruckner's proper publication of notice.

### f.   <u>Cavanaugh</u> Step Two: Financial Stake

Turning to step two, the court must first evaluate each movant's financial stake in the matter. Of the six movants

---

[10] Under the Act, only members of the putative plaintiff class may challenge the appropriateness of the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

competing for designation as lead plaintiff, Chips purports to have
the largest stake in the relief sought.   In support of its motion
for appointment as lead plaintiff, Chips claimed its collective
interest in the litigation was based on calculated losses of
$3,810,508 during the class period.   After competing movants
challenged that total, Chips filed an amended affidavit reducing
its claimed losses to $2,566,794.   If correct, that amount exceeds
the next nearest movant's claimed interest by at least $1,700,000.[11]
Applying the Lax factors, the court finds that Chips interest in
the relief sought satisfies the financial interest requirement of
step two.   See Lax, 2002 WL 461036 at *5.

   g.   **Cavanaugh Step Two continued: Rule 23 Analysis**

   Step two also requires that the court make an initial finding
that the movant with the largest stake meets the typicality and
adequacy requirements of Rule 23(a).   See Cavanaugh, 306 F.3d at
730.   The court reiterates that the typicality and adequacy
determination at this preliminary stage is not a "searching
inquiry."   Skwortz, 2001 WL 1160745 at *5.

   1.   **Typicality**

   Rule 23 typicality is generally not a formidable threshold, so
long as plaintiff's circumstances and legal theories are not
"markedly different" than those of the class.   Cendant, 264 F.3d at

---

   [11] Pension Fund claims an interest of $775,874.80, PAM claims
losses of $633,718, Workman alleges losses of $464,093.02 and Sakal
claims losses of $6,137.75.