265. Here, the claims of Chips mirror those of the other movants and filing plaintiffs. They base their allegations on the same actions of defendants, cite the same class period and raise the same legal theories as the other plaintiffs. Therefore, the court finds that the Chips group meets the PSLRA's initial Rule 23 typicality requirement.

### 2. Adequacy

The court's step two inquiry into Chips' adequacy yields a similar finding. There is nothing in Chips' pleadings, motion papers or affidavit that suggests it is unable or unwilling "to prosecute the action competently and vigorously." In re Wirebound Boxes, 128 F.R.D. at 270. Similarly, the interest of Chips in the litigation is, as a preliminary matter, not at odds with the interests of the other putative class members. See id. Though Chips consists of a group of investors, the PSLRA clearly envisions such groups serving as lead plaintiffs. The Act states "the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person *or group of persons* that...." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). Further, there is no indication that the Chips group is so large or unwieldy that it will be unable to adequately perform the responsibilities of lead plaintiff. Finally, the court finds nothing about the selection of counsel by Chips to call into question its ability to serve in a lead plaintiff capacity.

18

Therefore, the court finds that Chips has made a *prima facie* showing that it is presumptively the most adequate lead plaintiff pursuant to the PSLRA. However, that finding is preliminary in nature. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The act permits competing movants to show that the presumptively most adequate plaintiff will not adequately protect the class or is subject to unique defenses that render it inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

   h.   **Cavanaugh Step Three: Other Movant's Challenges to the Prima Facie Showing**

   The court turns to step three of the analysis and considers the objections raised by competing movants. See Cavanaugh, 306 F.3d at 730. Initially, it is important to separate the other movants' actual challenges to Chips' eligibility from their averments regarding their own suitability for the role of lead plaintiff. Even if another plaintiff is somehow better qualified, the court must appoint Chips, the largest stakeholder, as lead plaintiff unless it is disqualified under the requirements set out in Section 78u-4(a)(3)(B)(iii)(II) of the Act. See Cavanaugh, 306 F.3d at 730; Cendant, 264 F.3d 201, 267.

   Competing movants may challenge the presumptive lead plaintiff either on the grounds that it "will not fairly and adequately protect the interests of the class" or that it "is subject to unique defenses" rendering it unable to adequately represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and (bb).

19

1.  **Pension Fund and PAM**

Pension Fund raises two objections to the motion of Chips for appointment. First, Pension Fund asserts that Chips consists of a group of unrelated investors and therefore should not, and by some holdings, cannot be appointed lead plaintiff.[12]    PAM raises a similar objection. Pension Fund and PAM cite a several decisions finding aggregations of previously unrelated plaintiffs contrary to the intent of Congress in promulgating the Act.[13]  They argue that permitting such groups may encourage lawyers to create, direct and control securities actions. See In re Donnkenny, Inc. Securities Litigation, 171 F.R.D. 156, 157-58 (S.D. N.Y. 1997). They further assert that such groups may be unable to provide cohesive, unified direction of the action. See Crawford v. Onyx Software, 2002 U.S. Dist. LEXIS 1101, at *4 (W.D. Wash. 2002).

Pension Fund's second objection states that Chips is atypical and inadequate because its initial motion included erroneous calculations.

---

[12] The Chips group consists of Chips Investment Limited Partnership, including Steven C. Aanenson, its sole general partner, Steven C. and Beverly K. Aanenson, husband and wife, Harry C. Andrews, Thomas R. Perry, Jr. and Lloyd Amundson, as president of both the Lloyd and Barbara Amundson Charity Foundation, Inc. and Lake Benton Bancorporation, Inc., and for L.A. Amundson Scholarships, Inc.

[13] Pension Fund cites eight district court decisions supporting these propositions and PAM cites an additional four.

As to the initial objection of Pension Fund and PAM and the decisions upon which they rely, the court respectfully disagrees. First, nearly half of the Chips group's claimed losses ($1,137,432) were suffered by the limited partnership and Steven and Beverly Aanenson.  There is no dispute that there is a preexisting relationship between Mr. and Mrs. Aanenson and between the Aanenson's and the limited partnership. Because their losses alone significantly exceed the next highest movant's claimed interest, it cannot be said in this case that, but for the aggregation, Chips would not be the presumptive lead plaintiff.  Second, Chips has cited a similar number of contrary district court decisions where lead plaintiff status was awarded to groups ranging in size from three to twenty-one persons, including two decisions from this district.  See Chill, 171 F.R.D. 398, 414-15; D'Hondt, 1997 WL 405668 at **4-5.  Neither does the court find the second objection raised by Pension Fund persuasive in light of the explanation of the errors offered by Chips and their quick amendment of the motion upon receipt of corrected certifications from the individual members' various brokerages.  Therefore, the court finds that Pension Fund and PAM have failed to rebut the presumption that Chips is the most adequate lead plaintiff.

### 2.    Workman and Sakal

Workman and Sakal take a somewhat different tack.  Rather than challenging the adequacy of Chips to represent the entire class,

21

they challenge its ability to represent purported sub-classes. Workman seeks appointment as lead plaintiff of a proposed "Noteholder Class," pointing out that it is the only plaintiff to have filed a claim on behalf of Senior Noteholders as opposed to equity stock purchasers. It claims that because of differences between the relative rights and positions of bondholders and stockholders, only a bondholder can adequately represent the interests of other bondholders. Finally, Workman contends that a struggle between bondholders and stockholders over an inadequate settlement or award is likely, if not inevitable. In support of it argument, Workman cites decisions creating independently represented bondholder and shareholder subclasses. See e.g., In re Livent, Inc. Noteholders Litigation, 151 F. Supp. 2d 371 (S.D. N.Y. 2001); In re Oxford, 182 F.R.D. at 42; In re Cendant, 264 F.3d. 201; Chill, 181 F.R.D. 398; Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146 (N.D. Cal. 1999). Finally, Workman submits a recent district court order granting separate lead plaintiff status to a Section 11 plaintiff group in a case where a substantial portion of the class brought Section 10(b) claims. See In re Peregrine Systems, Inc. Securities Litigation, Civ. No. 02cv870-J (S.D. Cal. 2002) [Doc. No. 145.]

The court finds the competing movant's arguments unpersuasive, at least at this stage of the litigation. Each of Workman's cited cases is distinguishable. In Oxford, the court appointed three

22

competing groups as co-lead plaintiffs because, in its opinion, the scope of the litigation was too great a burden for any one of them individually. See In re Oxford, 182 F.R.D. at 49. That is not the case here. The court noted that the appointment of lead and co-lead plaintiff status is not subject to hard and fast rules, and is best considered on a "case-by-case basis, taking account of the unique circumstances of each case." Id. The Cendant court also elected to split the putative class, but in that case there was a potentially extreme conflict of interest not present in this case. See In re Cendant, 182 F.R.D. at 149. In Chill, the court quite understandably appointed co-lead plaintiffs because the options actions were not consolidated with the securities actions due to the Eighth Circuit's limitations on option-holder standing. See Chill, 181 F.R.D. at 407. Finally, the District Court for the Southern District of California recently appointed co-lead plaintiffs in In re Peregrine, Civ. No. 02cv870-J [Doc. No. 145.], because competing movants had entirely different, and possibly competing, claims. The court appointed one group to lead the Section 10(b) plaintiffs and while the other would lead the Section 11 claimants.[14] See id.

---

[14] Workman has informed the court, both in its brief and at oral argument, that it is preparing to file an amended complaint, adding Section 11 claims. While such claims, if properly raised, would be factored into the court's analysis, no amended complaint has yet been filed.

23

In a similar vein, Sakal seeks appointment as lead plaintiff of the putative class of plaintiffs who received Xcel securities in exchange for shares of NRG, which he refers to as "the NRG Class." He argues that the NRG Class requires separate representation from the other Xcel shareholders because its interests may differ from, and possibly compete with, those of the rest of the class.    Like Workman, Sakal cites decisions appointing multiple lead plaintiffs representing differing groups within the action.    See e.g., In re PSINet, Inc. Securities Litigation, CA 00-1850-A (E.D. Va. 2001); In re Penncorp Financial Group, Inc. Securities Litigation, Nc. 98 Civ. 5995 (S.D. N.Y. 1998); In re Painewebber Limited Partnerships Litigation, 171 F.R.D. 104 (S.D. N.Y. 1997) (each bifurcating classes and appointing independent counsel).

Sakal's reliance on Painewebber is misplaced. There the court permitted each of the various plaintiff partnerships to be represented by independent counsel and experts.    See id. at 124. It is not clear at what point in the litigation that took place. More important, that court's analysis centered on the Rule 23(a)(4) adequacy of the representative plaintiffs in relation to a certified class and the Rule 23(e) validity of a proposed settlement.    Unlike the more intense scrutiny required at that stage of the litigation, "searching inquiry" into typicality and adequacy for PSLRA lead plaintiff purposes is not appropriate. Skwortz, 2001 WL 1160745 at *5.    The court therefore finds that

24

neither Workman nor Sakal have met the PSLRA's burden of proving that Chips "will not fairly and adequately protect" their respective interests. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The court believes the better course is to appoint one lead plaintiff for the consolidated class. See e.g., In re Tyco Int'l Ltd. Securities Litigation, 2000 WL 1513772 (D.N.H. 2000) (holding "while the potential for conflict ... is real, the lead plaintiff determination is not the appropriate stage in the litigation to address this concern." Id. at *8).

First, to subdivide the class at this point would defeat to some extent both the purposes of consolidation and Congress' intent in passing the largest stakeholder provisions of the PSLRA. "[P]laintiff's arguments do not fully take into account that the Reform Act establishes a procedure for the court's speedy consolidation of all pending claims." Aronson, 79 F. Supp. 2d at 1151. "[Plaintiff's] speculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories." Id. (Emphasis in original.) And ultimately, "every warrior in this battle cannot be a general." Cendant, 182 F.R.D. at 148.

Second, the court notes that, once appointed, the lead plaintiff becomes a fiduciary obligated to advance the interests of all putative class members. See In re Quintas Securities

Litigation, 201 F.R.D. 475, 482 (N.D. Cal. 2001); In re Lucent
Technologies, Inc. Securities Litigation, 194 F.R.D. 137, 155
(D.N.J. 2000). The court believes that the Chips group will not
take that responsibility lightly.

Third, upon consideration of an eventual motion for class
certification, the court's Rule 23 inquiry is necessarily more
rigorous. If at that time Workman, Sakal or any other putative
class member demonstrates that Chips cannot meet the requirements
of Rule 23, the court will then take appropriate remedial action.
See In re Enron Corp. Securities Litigation, 206 F.R.D. 427, 451
(S.D. Tex. 2002). Said the Enron court:

> [I]t is centrally important to the litigants
> on both side and to this Court, especially
> because there are so many parties involved and
> all are entitled to equal access to the
> evidence, that the discovery process not
> disintegrate into chaos and harassment. At
> the same time diligent and efficient
> prosecution of the causes of action must be
> encouraged. To accomplish such and to provide
> all parties with more information through
> discovery to flesh out, or perhaps even
> eliminate, concerns regarding conflicts of
> interest, the Court believes that the
> litigation should proceed as a unified class
> with a strong Lead Plaintiff, at least until
> the time for class certification. At that
> point, if still appropriate or if newly
> appropriate, the parties may reurge or file
> new requests for subclasses and separate
> representatives.

Id. For these reasons, Workman's and Sakal's motions for
appointment as lead plaintiff of unique subclasses and their
corollary attacks on the adequacy of Chips as presumptive lead

plaintiff are denied. Having met the prima facie requirements of the PSLRA and overcome the competing movants' objections, the motion of Chips for appointment as lead plaintiff in the consolidated actions is granted.

### i. Motions for a Document Retention Order

The motion of the Frye Group and the proposed order of Pension Fund urge the court to issue an order requiring the parties preserve all documents relative to the related actions. The PSLRA requires that all parties to an action under the Act retain relevant documents "[d]uring the pendency of any stay of discovery" and provides for appropriate sanctions for willful failures to retain such documents. 15 U.S.C. § 78u-4(b)(3)(C)(i) and (ii). Such stays are common in Exchange Act actions, because the Act specifically provides for a stay of discovery during the pendency of any motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B).

Even though those provisions of the Act have not been triggered by a motion to dismiss, the court believes an order for document retention is unnecessary at this time. However, the court reminds all the parties that "[s]anctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information." Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir. 1993). The court

27

therefore denies the motions requesting an order for document
retention.

### III. Approval of Lead Counsel Under the PSLRA

The PSLRA states, "[t]he most adequate plaintiff shall,
subject to the approval of the court, select and retain counsel to
represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts have
exercised varying degrees of discretion and focused on differing
factors in applying this provision. See e.g., Singer v. Nicor,
Inc., 2002 WL 31356419 at *4 (N.D. Ill. 2002) (deferring approval
of counsel pending submission of fee arrangements, staffing plans,
plans to allocate work to other firms and planned role of local
counsel in the litigation); Johnson v. Telltabs, Inc., 2002 WL
31163670 at *3-4 (N.D. Ill. 2002) (approving selection only on
showing that fees were reasonable); Richard NMI Bell v. Acendant
Solutions, Inc., 2002 WL 638571 at *6 (N.D. Tex. 2002) (requiring
lead plaintiff to eliminate two of three proposed co-counsel);
Newman v. Eagle Building Technologies, 209 F.R.D. 499, 506 (S.D.
Fla. 2002) (approving counsel because no plaintiff or defendant
objected and court found no independent basis to reject); Naicitch
v. Applied Micro Circuits Corp., 2001 WL 1659115 at *4 (S.D. Cal.
2001) (approving after review of counsel's résumé).

The court agrees with those finding that judicial inquiry in
this regard should be limited. As the Ninth Circuit points out,
"... Congress gave the lead plaintiff, and not the court, the power

28

to select a lawyer for the class. <u>Cavanaugh</u>, 306 F.3d at 733, note 11. The Third Circuit commented in <u>Cendant</u>, "we think that the Reform Act evidences a strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel...." <u>In re Cendant</u>, 264 F.3d at 276. This view affirms the importance of client autonomy in selection of counsel, a significant value in the court's view. <u>See</u> <u>Cavanaugh</u> at 734.

Some courts have elected to review proposed fee agreements in the approval of counsel process. <u>See</u> <u>e.g.</u>, <u>Cavanaugh</u>, 306 F.3d at 732; <u>In re Quintus Securities Regulation</u>, 201 F.R.D. 475, 492-93 (N.D. Cal. 2001); <u>In re Bank One Shareholders Class Actions</u>, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000). However, because the court retains the authority to protect the interests of the entire class, for example by approving or denying proposed settlements and fee awards, the court finds that it unnecessary to review proposed fee arrangements at this time. Fed. R. Civ. P. 23(e); <u>see also</u> <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation</u>, 55 F.3d 768, 819 (3rd Cir. 1995) (stating "a thorough judicial review of fee applications is required in all class action settlements").

Additionally, the PSLRA itself works to protect the plaintiff class in this regard. Section 78u-4(a)(6) of the Act requires that "attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the

29

amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). For these reasons, the court finds it unnecessary to review proposed fee arrangements at this time.

Finally, the choice of counsel by Chips was among the factors the court considered at step two of the <u>Cavanaugh</u> analysis because the selection is an indicator of plaintiff's adequacy to serve in the lead plaintiff role. The court reviewed proposed co-counsel's résumés, and further, is familiar with proposed local counsel's qualifications. The court found nothing calling into question proposed counsel's ability to represent the putative plaintiff class. At step three of the <u>Cavanaugh</u> analysis, competing movants could have raised the issue as well, but did not. Therefore, the court grants the motion of Chips for approval of the law firms of Chestnut & Cambronne, P.A. and Berger & Montague, P.C. as co-lead counsel for the consolidated action.

### CONCLUSION

Having found that (1) the related securities fraud actions share significant questions of fact and law and should therefore be consolidated, (2) the shareholders derivative action shares sufficient questions of fact with the related securities fraud actions that is should be consolidated with them for pretrial purposes only, (3) the Chips group meets the requirements of the

30

PSLRA and therefore should be appointed as lead plaintiff in the consolidated securities fraud actions, (4) Workman's motion for appointment as lead plaintiff for a subclass of noteholders and related motion for approval of counsel is premature and should therefore be denied, (5) Sakal's appointment as lead plaintiff for a subclass known as the NRG Class and related motion for approval of counsel is premature and should therefore be denied, (6) Frye Group's motion and Pension Fund's request for a document retention order is unnecessary and therefore should be denied, and (7) the Chips group's selection of Chestnut & Cambronne, P.A. and Berger & Montague, P.C. as co-lead counsel should be approved, **IT IS HEREBY ORDERED**:

1.    That Sakal's motion to consolidate [Doc. No. 16 in 02-2677; Doc. No. 8 in 02-2774; Doc. No. 7 in 02-2787; Doc. No. 8 in 02-2832; Doc. No. 8 in 02-2889; Doc. No. 7 in 02-2921; Doc. No. 7 in 02-2931; Doc. No. 11 in 02-2933; Doc. No. 7 in 02-3053; Doc. No. 12 in 02-3508; Doc. No. 7 in 02-3574] is **GRANTED IN PART** to the extent that:

> Bruckner v. Xcel Energy, 02-2677; Miller v. Xcel Energy, 02-2774; Sayers v. Xcel Energy, Inc., 02-2787; Pease v. Xcel Energy, Inc., 02-2832; Kegg v. Xcel Energy, 02-2889; Eastside Holdings v. Xcel Energy, Inc., 02-2921; Thomas v. Xcel Energy, Inc., 02-2933; Laws v. Xcel Energy, Inc., 02-3053; Chips Investments v. Xcel Energy, Inc., 02-3508; Potter v. Xcel Energy, Inc., 02-3574; Potash v. Xcel Energy, Inc., 02-3715; Workman v. Xcel Energy, Inc., 02-3755; Gersten v. Xcel Energy, Inc., 02-3798

31

are hereby consolidated for all purposes into one consolidated securities fraud action and **DENIED IN PART**, to the extent that Gottlieb v. Xcel Energy, Inc., 02-2931, is consolidated with the above consolidated securities fraud actions for pretrial purposes only.

2.    That, hereinafter, the caption of the consolidated securities fraud action shall be as follows:

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Xcel Energy, Inc. Securities Litigation
Master File No. 02-2677 (DSD/FLN).

3.    That a copy of this order shall be docketed in all of the constituent files, but the files in this consolidated action shall be maintained under Master File No. 02-2677 (DSD/FLN), and all orders, pleadings, motions and other documents will, when filed and docketed in the Master File, be deemed to be filed and docketed in each applicable constituent file.

4.    That this order shall apply to the consolidated securities fraud action and to each case that relates to the same subject matter that is subsequently filed in this court or is transferred to this court and is consolidated with the consolidated securities fraud action.

5.    That the motion of Chips for appointment as lead plaintiff in the consolidated action on behalf of potential plaintiffs in the putative class of purchasers of Xcel Energy, Inc.

32

securities from January 31, 2001 through July 26, 2002, the
putative class period [Doc. No. 6 in 02-3508], is **GRANTED**.

6. That the motion of Chips for approval of Chestnut &
Cambronne, P.A. and Berger & Montague, P.C. as co-lead counsel for
plaintiffs in the consolidated action [Doc. No. 6 in 02-3508] is
**GRANTED**.

7. That Sakal's motions for appointment as lead plaintiff
and for approval of counsel in the consolidated action [Doc. No. 16
in 02-2677; Doc. No. 8 in 02-2774; Doc. No. 7 in 02-2787; Doc. No.
8 in 02-2832; Doc. No. 8 in 02-2889; Doc. No. 7 in 02-2921; Doc.
No. 7 in 02-2931; Doc. No. 11 in 02-2933; Doc. No. 7 in 02-3053;
Doc. No. 12 in 02-3508; Doc. No. 7 in 02-3574] are **DENIED**.

8. That Pension Fund's motions for consolidation,
appointment as lead plaintiff and approval of counsel in the
consolidated action [Doc. No. 19 in 02-2677; Doc. No. 11 in 02-
2774; Doc. No. 10 in 02-2787; Doc. No. 11 in 02-2832; Doc. No. 11
in 02-2889; Doc. No. 10 in 02-2921; Doc. No. 10 in 02-2931; Doc.
No. 14 in 02-2933; Doc. No. 10 in 02-3053; Doc. No. 15 in 02-3508;
Doc. No. 10 in 02-3574] are **DENIED**.

9. That PAM's motions for consolidation, appointment as lead
plaintiff and approval of counsel in the consolidated action [Doc.
No. 24 in 02-2677; Doc. No. 13 in 02-2774; Doc. No. 13 in 02-2787;
Doc. No. 14 in 02-2832; Doc. No. 14 in 02-2889; Doc. No. 13 in 02-
2921; Doc. No. 13 in 02-2931; Doc. No. 18 in 02-2933; Doc. No. 13

in 02-3053; Doc. No. 18 in 02-3508; Doc. No. 13 in 02-3574] are **DENIED**.

10.   That Workman's motions for appointment as lead plaintiff for a subclass of plaintiffs in the consolidated action and approval of counsel [Doc. No. 2 in 02-3755] are **DENIED**.

11.   That the Frye Group's motion for consolidation, appointment as lead plaintiff and approval of counsel in the consolidated action [Doc. No. 5 in 02-2933] is **DENIED**.

12.   That Frye Group's motion for a document retention order [Doc. No. 5 in 02-2933] is **DENIED**.

13.   That within 45 days after the entry of this order, lead plaintiffs in the consolidated securities fraud action shall file a "Consolidated Amended Complaint" and serve it upon counsel for defendants, and that within 30 days after service, defendants shall serve and file an answer or otherwise respond to the Consolidated Amended Complaint.

14.   That any counsel of record for a party in the related actions who is not a member of the Bar of this District and who otherwise conforms to all requirements of this District is hereby admitted to practice *pro hac vice* for the related actions.

15.   That Gottlieb's motion for consolidation of <u>Gottlieb v. Xcel Energy, Inc.</u>, 02-2931, with the consolidated securities fraud actions (Master File No. 02-2677 (DSD/FLN)) for all pretrial purposes, but not for trial [Doc. No. 16 in 02-2931] is **GRANTED**.

34

16.  The Master File for the consolidated securities fraud actions (Master File 02-2677 (DSD/FLN)) shall also serve as the Master File for <u>Gottlieb</u> and any subsequently filed shareholder derivative action, but a separate docket shall be maintained for <u>Gottlieb</u> and any other subsequently filed shareholder derivative actions.

17.  Every document filed in the shareholder derivative action shall bear the same Master File number as the consolidated securities fraud action <u>and</u> the individual case number to which it pertains, but each shareholder derivative action shall bear the caption:

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Xcel Energy, Inc. Shareholder Derivative Action
Master File No. 02-2677(DSD/FLN)
Civil No. 00-0000 (e.g.).

18.  That this order shall apply to each related shareholder derivative action subsequently filed or transferred to this court.

19.  That Gottlieb's motion to be appointed representative plaintiff of the shareholder derivative action pursuant to Rule 23.1 of the Federal Rules of Civil Procedure [Doc. No. 16 in 02-2931] is **DENIED** as premature.


Dated: November 12, 2002

David S. Doty, Judge
United States District Court

35