**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____ )
                                          )
**IN RE BIOPURE CORPORATION**             )    **Civil Action No.  03-CV-12628-NG**
**SECURITIES LITIGATION**                 )
                                          )
_____ )

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT RONALD F. RICHARDS' MOTION TO**
**DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**ATTORNEY FOR DEFENDANT**
**RONALD F. RICHARDS**

Christopher F. Robertson (BBO # 642094)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:    (617) 946-4801

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .............................................................................................................. 4

I.  THE STRICT PLEADING REQUIREMENTS OF RULE 9(b) REQUIRE
    DISMISSAL OF PLAINTIFFS' SECTION 10(b) CLAIMS. ............................. 4

    A.  Plaintiffs' Section 10(b) Claims are  Defective under the PSLRA
        and Rule 9(b)..................................................................................................... 4

        1.  The PSLRA and Rule 9(b) Mandate Rigorous Pleading
            Standards in Securities Fraud Cases. ............................................ 4

        2.  The Consolidated Complaint Lacks the  Specificity Required
            by the PSLRA and Rule 9(b). ....................................................... 5

    B.  The Consolidated Complaint Fails Adequately To Plead Scienter......................... 7

        1.  The Reform Act Enacted a Stringent Standard for Pleading
            Scienter. ....................................................................................... 7

        2.  Plaintiffs Have Failed to Plead Specific Facts Giving Rise to a Strong
            Inference of Scienter. .................................................................... 9

II.  THE CONSOLIDATED COMPLAINT MUST BE DISMISSED AGAINST
     RICHARDS IN ITS ENTIRETY BECAUSE IT DOES NOT ALLEGE ANY
     MISREPRESENTATIONS OR OMISSIONS OF MATERIAL FACT. .......................... 12

    A.  The Complaint Fails to Allege any Actionable Misrepresentations
        of Material Fact................................................................................................ 12

        1.  Accurate Statements of  Historical Fact are not Actionable. ..................... 13

        2.  Vague and Indefinite Forward-Looking  Statements are
            Immaterial as a Matter of Law. .................................................... 13

        3.  The PSLRA Safe Harbor Provisions Protect Forward- Looking
            Statements Accompanied by Cautionary Language. ................................ 15

Page

B.    The Consolidated Complaint Fails to Allege  any Actionable Omissions
        of Material Fact....................................................................................................18

III.    PLAINTIFFS SECTION 20(a) "CONTROL PERSON" CLAIMS MUST BE
        DISMISSED AGAINST RICHARDS..............................................................................19

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Ageloff v. Kiley,
  318 F. Supp. 2d 1157 (S.D. Fla. 2004) ...........................................................................6

Aldridge v. A.T. Cross Corp.,
  284 F.3d 72 (1st Cir. 2002)......................................................................................20

Backman v. Polaroid Corporation,
  910 F.2d 10 (1st Cir. 1990)......................................................................................18

Barr v. Matria Healthcare, Inc.,
  324 F. Supp. 2d 1369 (N.D. Ga. 2004) ...........................................................................6

Berliner v. Lotus Development  Corporation,
  783 F. Supp. 708 (D. Mass. 1992) ..............................................................................20

Boguslavsky v. Kaplan,
  159 F.3d 715 (2d Cir. 1998)......................................................................................20

Capri Optics Profit Sharing v. Digital Equip. Corp.,
  950 F.2d 5 (1st Cir. 1991)...................................................................................13, 19

Carney v. Cambridge Tech. Partners, Inc.,
  135 F. Supp. 2d 235 (D. Mass. 2001) ...................................................................9, 10, 12

Central Bank v. First Interstate Bank,
  511 U.S. 164 (1994).............................................................................................18

Coates v. Heartland Wireless Committee, Inc.,
  26 F. Supp. 2d 910 (N.D. Tex. 1998) ............................................................................6

Employers Teamsters Local Nos. 175 and 505 Pension Trust
  Fund v. Clorox Co.,
  353 F.3d 1125 (9th Cir. 2004) ..................................................................................10

Fraioli v. Lemcke,
  328 F. Supp. 2d 250 (D. R.I. 2004)..............................................................................20

Glassman v. Computervision Corp.,
  90 F.3d at 626  ..........................................................................................14, 16, 19

Page

Gompper v. VISX, Inc.,
    298 F.3d 893 (9th Cir. 2002) .................................................................10

Greebel v. FTP Software, Inc.,
    182 F.R.D. 370 (D. Mass. 1998), aff'd, 194 F.3d 185
    (1st Cir. 1999) ...............................................................................8, 12

Greebel v. FTP Software, Inc.,
    194 F.3d 185 (1st Cir. 1999)...........................................................1, 4, 5,
        .................................................................................9, 10, 16,
        .................................................................................20

Greenberg v. Compuware Corp.,
    889 F. Supp. 1012 (E.D. Mich. 1995).......................................................13

Greenstone v. Gambex Corporation,
    975 F.2d 22 (1st Cir. 1992).....................................................................3

Gross v. Summa Four, Inc.,
    93 F.3d 987 (1st Cir. 1996)................................................................3, 4, 7,
        ...........................................................................................19

Gross v. Summa Four, Inc.,
    No. C-94-364-B, 1995 WL 806823 (D.N.H. Nov. 8, 1995),
    aff'd, 93 F.3d 987 (1st Cir. 1996)..........................................................14

Guerra v. Teradyne, Inc.,
    2004 WL 1467065 (D. Mass. Jan. 16, 2004).......................................12, 15

Haft v. Eastland Finance Corp.,
    772 F. Supp. 1315 (D.R.I. 1991)............................................................14

Harris v. Ivax Corporation,
    No. 98-4818, 1999 WL 542319 (11th Cir. July 27, 1999)........................16

Hayduk v. Lanna,
    775 F.2d 441 (1st Cir. 1985)..................................................................7

Hoffman v. Optima System, Inc.,
    683 F. Supp. 865 (D. Mass. 1988)...........................................................7

In re BMC Software, Inc. Sec. Litigation,
    183 F. Supp. 2d 860 (S.D. Tex. 2001).......................................................9

Page

In re Boston Tech. Inc. Sec. Litigation,
8 F. Supp. 2d 43 (D. Mass. 1998) ........................................................5, 8, 9,
........................................................................................18

In re Burlington Coat Factory Sec. Litigation,
114 F.3d 1410 (3d Cir. 1997)........................................................11

In re Cabletron Systems, Inc.,
311 F.3d 11 (1st Cir. 2002)........................................................10

In re Columbia Laboratories, Inc. Securities Litigation,
144 F. Supp. 2d 1362 (S.D. Fla. 2001) ........................................15

In re Copley Pharm., Inc. Sec. Litigation, [1995 Transfer Binder],
Fed. Sec. L. Rep. (CCH) ¶ 98,695 (D. Mass. 1995) ....................12

In re Criimi Mae, Inc. Sec. Litigation,
94 F. Supp. 2d 652 (D. Md. 2000) ...............................................11

In re First Union Corp. Securities Litigation,
128 F. Supp. 2d 871 (W.D.N.C. 2001) ..........................................6

In re K-Telegraph International, Inc. Sec. Litigation,
300 F.3d 881 (8th Cir. 2002) .......................................................11

In re Livent, Inc. Noteholders Sec. Litigation,
151 F. Supp. 2d 371 (S.D.N.Y. 2001)...........................................19

In re Medimmune, Inc. Securities Litigation,
873 F. Supp. 953 (D. Md. 1995)..............................................15, 16

In re PLC Systems, Inc. Sec. Litigation,
41 F. Supp. 2d 106 (D. Mass. 1999) ............................................15

In re Peritus Software Services, Inc. Sec. Litigation,
52 F. Supp. 2d 211 (D. Mass. 1999) ................................11, 12, 15

In re Rospatch Sec. Litigation,
760 F. Supp. 1239 (W.D. Mich. 1991) ...........................................6

In re SeaChange Interm, Inc.,
2004 WL 240317 (D. Mass. 2004) ...............................................17

In re Software Publishing Sec. Litigation, [1993-1994 Transfer Binder],
Fed. Sec. L. Rep. (CCH) ¶ 98,094 (N.D. Cal. Feb. 2, 1994) .......13

Page

In re Stone & Webster, Inc. Sec. Litigation,
    253 F. Supp. 2d 102 (D. Mass. 2003) ........................................................9

In re Stratus Computer, Inc. Sec. Litigation,
    1992 WL. 73555 (D. Mass. Mar. 27, 1992)...............................................6

In re Time Warner Inc. Sec. Litigation,
    9 F.3d 259 (2d Cir. 1993) .........................................................................19

In re Turbodyne Tech., Inc. Sec. Litigation,
    2000 WL. 33961193 (C.D. Cal. Mar. 15, 2000).........................................6

Konstantinakos v. FDIC,
    719 F. Supp. 35 (D. Mass. 1989) ...............................................................7

Laser Asset Management Inc. v. Asset Securitization Corp.,
    Civ. No. 00-8100, 2001 WL. 1029407 (S.D.N.Y. Sept. 5, 2001)..............20

Lirette v. Shiva Corp.,
    27 F. Supp. 2d 268 (D. Mass. 1998) ...............................................4, 5, 7,
                      ....................................................................................8, 12

Lirette v. Shiva Corp.,
    999 F. Supp. 164 (D. Mass. 1998) .............................................................5

Loan v. FDIC,
    717 F. Supp. 964 (D. Mass. 1989) .............................................................7

Maldonado v. Dominguez,
    137 F.3d 1 (1st Cir. 1998).................................................................5, 12

Mishkin v. Ageloff,
    No. 97 Civ. 2690, 1998 WL. 651065 (S.D.N.Y. Sept. 23, 1998) ..............20

Nathenson v. Zonagen Inc.,
    267 F.3d 400 (5th Cir. 2001) ...................................................................11

Raab v. General Physics Corp.,
    4 F.3d 286 (4th Cir. 1993) .......................................................................15

Rasheedi v. Cree Research,
    1997 WL 785720 (M.D.N.C. Oct. 17, 1997)............................................16

Roeder v. Alpha Industrial, Inc.,

Page

  814 F.2d 22 (1st Cir. 1987)................................................................19

Romani v. Shearson Lehman Hutton,
  929 F.2d 875 (1st Cir. 1991)..........................................................4, 5

Ronconi v. Larkin,
  253 F.3d 423 (9th Cir. 2001) ............................................................11

San Leandro Emergency Medical Group v. Philip Morris Co., Inc.,
  75 F.3d 801 (2d Cir. 1996)................................................................11

Serabian v. Amoskeag Bank Shares, Inc.,
  24 F.3d 357 (1st Cir. 1996)..................................................................8

Shapiro v. Cantor,
  123 F.3d 717 (2d Cir. 1997)..............................................................18

Shaw v. Digital Equipment Corp.,
  82 F.3d 1194, 1213 (1st Cir. 1996)..........................................15, 16, 19

Smith v. Circuit City Stores, Inc.,
  286 F. Supp. 2d 707 (E.D. Va. 2003) ...............................................12

Suna v. Bailey Corp.,
  107 F.3d 64 (1st Cir. 1997)................................................13, 14, 15,
        ...........................................................................20

Van Ormer v. Aspen Tech., Inc.,
  145 F. Supp. 2d 101 (D. Mass. 2000) ..................................................5

Zishka v. American Pad & Paper Co., No. CIV.A. 398CV0660M,
  2001 WL. 1645500 (N.D. Tex. Dec. 20, 2001),
  aff'd 72 Fed. Appx. 130 (5th Cir. 2003)............................................11

Zishka v. Amer. Pad & Paper Co.,
  72 Fed. Appx. 130, 132 (5th Cir. 2003)............................................12

## STATUTES

15 U.S.C. § 78(5)(A)................................................................................16

15 U.S.C. § 78u-4(b)(1)............................................................................4

 15 U.S.C. § 78u-4(b)(2) .......................................................................4

                                                                                    Page

15 U.S.C. § 78u-4(f)(2)....................................................................................................20

Fed. R. Civ. P. 9(b) .........................................................................................................1

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67,
    15 U.S.C. § 78u-4 (the "PSLRA") ...............................................................................4

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), Defendant Ronald F. Richards ("Richards") hereby submits this Memorandum of Law in Support of his Motion to Dismiss the Complaint in its Entirety, with prejudice.[1]

## PRELIMINARY STATEMENT

Congress enacted the Private Securities Litigation Reform Act of 1995 (the "PSLRA") in order to "deter baseless and extortionate securities lawsuits." H.R. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. The legislation was:

> prompted by significant evidence of abuse in private securities lawsuits . . . [which] include . . . the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in the issuer's stock price, without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action[.]

Id. at 32, reprinted in 1995 U.S.C.C.A.N. at 730 (emphasis added). The PSLRA "marked a bipartisan effort to curb abuse in private securities lawsuits, particularly the filing of strike suits." Greebel v. FTP Software, Inc., 194 F.3d 185, 191 (1st Cir. 1999). As to the Defendant Richards, the former Chief Financial Officer of Biopure, this litigation is exactly the type of securities "strike suit" that the PSLRA was designed to prevent.

Specifically, the Complaint does not allege *any* misstatement or omission of any *financial* information prepared by Richards. The Complaint does not allege *any* violation of Generally Accepted Accounting Principals or Generally Accepted Accounting Standards. The Complaint does not allege any misstatement or omission related to any financial forecast or statement of anticipated revenues or profits. In short, the Complaint does not allege any misstatement of any

---

[1] In addition to the grounds contained herein, defendant Richards joins the arguments of Defendants Biopure, Corp., Thomas A. Moore, Carl W. Rausch, Howard P. Richman, Charles A. Sanders, and Jay. Richard Crout, as set forth in their Memorandum of Law.

kind that would be considered within the province of the Chief Financial Officer of a publicly traded company. Nonetheless, Richards is accused of securities fraud.

The Complaint not only fails to provide any evidence whatsoever of Richards' scienter, it demonstrates exactly the opposite. Significantly, the central allegation at the core of this lawsuit and advanced for demonstrating the scienter of the named defendants is the allegation that the United States Securities and Exchange Commission ("SEC") issued "Wells" notices to Biopure and certain of its officers and directors in connection with its ongoing investigation of possible securities law violations. According to the Consolidated Complaint, the SEC issued Wells notices not once, but twice, after an extensive and comprehensive investigation lasting several months. Nonetheless, despite this intensive investigation, the SEC issued no Wells notice to Richards. Thus, the SEC, which has had access to significant amounts of Biopure internal documents and communications about the matters alleged in the Complaint, determined that there was absolutely no evidence of any wrongdoing by Richards. This possible wrongdoing is not just limited to fraud, but could include negligence as well.

In light of the SEC's conclusion that facts do not exist to suggest charging Richards with even negligence, the Plaintiffs' burden to allege additional facts supporting their unfounded charge of fraud is even more acute. Nonetheless, any such supporting facts as to Richards are entirely absent from the Complaint. Consistent with the SEC's determination that there is no basis to charge Richards with any wrongdoing, the Plaintiffs fail to identify any specific document or meeting in which Richards was told or informed of any allegedly undisclosed information. Plaintiffs also do not allege that Richards sold any Biopure stock or otherwise personally profited from the alleged scheme, because no such sales ever occurred.

Based on the foregoing, it is clear that the Plaintiffs' case against Richards amounts to nothing more than an unsupported claim of "fraud by hindsight," which the First Circuit has long held to be legally defective.  See Gross v. Summa Four, Inc., 93 F.3d 987, 991 (1st Cir. 1996) ("a securities plaintiff does not satisfy the requirements of Rule 9(b) merely by pleading 'fraud by hindsight'") (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992)).  Plaintiffs' Complaint is devoid of a single specific fact supporting its central, conclusory, allegation:  i.e., that Richards "knew earlier what later turned out badly."  Greenstone, 975 F.2d at 25 (affirming grant of motion to dismiss federal securities fraud claim).

Finally, the *only* statement that is directly attributed to Richards is a single forward looking statement contained within certain 2003 Biopure SEC filings.  As noted above, there is no allegation that any of the historical financial information in these filings is inaccurate in any way.  Rather, the single statement that is alleged to be inaccurate in these filings is not an affirmative statement of any historical fact, but is a clear statement of "belief" contained within a *risk factor* discussing the reasons why Biopure might fail to be profitable in the future.  These statements, specifically disclaimed as guarantees of any kind, are simply not actionable.  Rather, they are forward-looking statements protected by the statutory safe harbor contained within the PSLRA.  Moreover, in the overall context of the relevant filings, which make no affirmative statement about the possible success or failure of Hemopure, these statements are not materially misleading in any way.

In short, the Consolidated Complaint should be dismissed in its entirety as to Defendant Richards because:  (1) it fails to satisfy the First Circuit's strict pleading requirements under the PSLRA and Rule 9(b); and (2) it does not allege any actionable misrepresentations or omissions of material fact by Richards in any Biopure SEC filing.

<u>ARGUMENT</u>

I.    **THE STRICT PLEADING REQUIREMENTS OF RULE 9(B)
      <u>REQUIRE DISMISSAL OF PLAINTIFFS' SECTION 10(B) CLAIMS.</u>**

    A.    **Plaintiffs' Section 10(b) Claims are
          <u>Defective under the PSLRA and Rule 9(b).</u>**

        1.    **The PSLRA and Rule 9(b) Mandate Rigorous
              <u>Pleading Standards in Securities Fraud Cases.</u>**

The First Circuit has always "been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions." <u>Greebel</u>, 194 F.3d at 189. <u>See</u> <u>Summa Four</u>, 93 F.3d at 991 (noting strict standard).[2] Moreover, the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 15 U.S.C. § 78u-4 (the "PSLRA"), "makes the pleading standard in securities fraud cases even more rigorous than Rule 9(b) traditionally has required." <u>Lirette v. Shiva Corp.</u>, 27 F. Supp. 2d 268, 274 (D. Mass. 1998) (Young, C.J.) ("<u>Shiva II</u>"). As Chief Judge Young explained in <u>Shiva II</u>:

> Under the PSLRA a complaint alleging securities fraud must set forth "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In addition, in order sufficiently to allege scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). When a complaint fails to meet the above two requirements, dismissal is required. <u>See</u> 15 U.S.C. § 78u-4(b)(3)(A).

<u>Id.</u> at 274-75.

Furthermore, in a securities fraud action alleging misrepresentations, merely alleging specifics relating to the content, time, place and speaker does not provide enough detail to survive a motion to dismiss under Rule 9(b). <u>See</u> <u>Romani</u>, 929 F.2d at 878. A plaintiff "must

---

[2] <u>See also</u> <u>Romani v. Shearson Lehman Hutton</u>, 929 F.2d 875, 878 (1st Cir. 1991) ("We have been especially rigorous in demanding such factual support in the securities context to minimize the chance 'that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement, rather than in the hopes that the process will reveal relevant evidence.'") (quoting <u>New England Data Serv., Inc. v. Becher</u>, 829 F.2d 286, 288 (1st Cir. 1987)).

also specify <u>why</u> [the] statements were fraudulent, and, moreover, must rely on more than 'information and belief' in doing so."  <u>Shiva II</u>, 27 F. Supp. 2d at 276 (citations omitted).  In addition, where a complaint's allegations are based on information and belief, the complaint must specify "the source of the information and the reasons for the belief . . . ."  <u>Id.</u> at 275.  <u>See also</u> <u>Romani</u>, 929 F.2d at 878; <u>In re Boston Tech. Inc. Sec. Litig.</u>, 8 F. Supp. 2d 43, 57 (D. Mass. 1998) (Lasker, J.) (granting motion to dismiss securities fraud claims).  "And this holds true even when the fraud relates to matters particularly within the knowledge of the opposing party." <u>Greebel</u>, 194 F.3d at 193.  Mere conclusory allegations that a defendant "must have known" of the fraudulent nature of his conduct fail to pass muster under the PSLRA and Rule 9(b).  <u>Shiva II</u>, 27 F. Supp. 2d at 282-83 (<u>quoting</u> <u>Maldonado v. Dominguez</u>, 137 F.3d 1, 9 (1st Cir. 1998)).

## 2.    The Consolidated Complaint Lacks the Specificity Required by the PSLRA and Rule 9(b).

As a threshold matter, the Consolidated Complaint here, like the original complaint in <u>Shiva</u>, fails to specify which allegations are based upon personal knowledge and which are based upon information and belief; instead, it alleges that all are based on "investigation of counsel."  Consolidated Complaint ("Cons Compl."), at 1.  For that reason alone, the Consolidated Complaint here -- like the original complaint in <u>Shiva</u> -- is defective.  <u>See</u> <u>Lirette v. Shiva Corp.</u>, 999 F. Supp. 164, 165 (D. Mass. 1998) (Young, C.J.) ("<u>Shiva I</u>") (allegations based on "investigation by plaintiffs' counsel" are "no longer an acceptable approach to pleading").  <u>See</u> <u>Van Ormer v. Aspen Tech., Inc.</u>, 145 F. Supp. 2d 101, 104 (D. Mass. 2000) (same).[3]

---

[3] That said, the bulk of the Consolidated Complaint's substantive allegations could only have been based on "information and belief," as they relate to internal Biopure matters.  Yet the Consolidated Complaint fails to allege a <u>single</u> <u>specific</u> <u>fact</u> that either:  (1) identifies "the source of the information and the reasons for the belief;" or (2) explains <u>why</u> any misstatement or omission asserted was false or misleading when made.  <u>Shiva II</u>, 27 F. Supp. 2d at 275.  <u>See also</u> <u>Boston Technology</u>, 8 F. Supp. 2d at 57 (granting motion to dismiss securities fraud claims).

The Court of Appeals emphasizes that, "[w]e have been especially rigorous in demanding … factual support in the securities context." Indeed, even prior to the passage of the PSLRA, courts in the First Circuit required Section 10(b) plaintiffs to plead with particularity the facts establishing scienter for *each individual defendant*.[4] In re Stratus Computer, Inc. Sec. Litig., 1992 WL 73555, at *4-5 (D. Mass. Mar. 27, 1992).[5] Here, Plaintiffs generally allege that all of the collective "Defendants" were aware of the details of the Company's communications with the FDA, but fail to cite to *a single* specific communication to Richards or a *single* specific meeting that Richards attended which would support this broad allegation. Plaintiffs do not cite to any specific internal report that Richards allegedly reviewed, or any specific corporate meeting at which he learned the allegedly undisclosed information. No such communication or meeting is alleged because, as the SEC concluded after its comprehensive investigation, no such communication or meeting ever occurred. Plaintiffs' failure to plead this information with specificity as to Richards individually is fatal to their complaint.[6]

When there are multiple defendants, Rule 9(b) requires plaintiffs to plead fraud with particularity for *each* individual defendant, which the Consolidated Complaint fails to do. See

---

[4] As the Court stated in In re Rospatch Sec. Litig., 760 F. Supp. 1239, 1254 (W.D. Mich. 1991), "each individual defendant must be apprised separately of the specific acts of which he is accused, especially in a case involving multiple defendants." Where the "who, what, why and when" as to each individual outside director is "fatally sparse," the complaint must be dismissed for lack of particularity. Id.

[5] See also Ageloff v. Kiley, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004) (Rule 9(b) requires the pleading of specific facts as to each individual defendant); In re First Union Corp. Securities Litig., 128 F.Supp.2d 871, 884 (W.D.N.C. 2001) (plaintiff must set forth specific facts as to each individual defendant's culpable conduct). Moreover, even where courts have accepted the "group pleading" doctrine with regard to attribution of certain statements, such doctrine does not obviate the requirement that scienter be pled with specificity as to each individual defendant. See, e.g., In re Turbodyne Tech., Inc. Sec. Litig., 2000 WL 33961193, at *12 n. 102 (C.D. Cal. Mar. 15, 2000) (group pleading doctrine cannot be used to establish that a particular defendant made an alleged misrepresentation with scienter).

[6] As noted in Barr v. Matria Healthcare, Inc., 324 F. Supp. 2d 1369, 1377 (N.D. Ga. 2004), the PSLRA pleading requirements serve the additional purpose "of protecting defendants from unfounded harm to their reputations." It is from this goal of protecting each individual's reputation that the requirement to plead specific facts as to each individual's scienter arises. See Coates v. Heartland Wireless Comm., Inc., 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) (to protect the reputations of individual defendants, "[p]laintiffs must properly plead wrongdoing and scienter as to each individual defendant and cannot merely rely on the individuals' positions").

Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985) (Rule 9(b) requires pleading that apprises defendants "of the individual charges against them").  "The purpose of the rule is to give notice of plaintiff's claim of fraud and to inform each individual defendant of what role he is alleged to have played in the fraud." Konstantinakos v. FDIC, 719 F. Supp. 35, 38 (D. Mass. 1989) (dismissing securities fraud complaint under Rule 9(b)).  As Judge Tauro held in Loan v. FDIC, "[w]here multiple defendants are involved, each person's role in the alleged fraud must be particularized in order to satisfy Rule 9(b)." 717 F. Supp. 964, 968 (D. Mass. 1989).[7]  Here, although the Plaintiffs assert claims against seven separate Defendants, the vast majority of the allegations in the Consolidated Complaint impermissibly refer to the alleged conduct of all "Defendants." See Cons. Compl., passim.  This form of pleading is unacceptable.

> **B.    The Consolidated Complaint
> Fails Adequately To Plead Scienter.**

> **1.    The Reform Act Enacted a
> Stringent Standard for Pleading Scienter.**

In the First Circuit, "general averments of defendants' knowledge of material falsity [do] not suffice." Summa Four, 93 F.3d at 991.  Rather, the PSLRA and Rule 9(b) require that a plaintiff asserting a claim under Section 10(b) of the 1934 Act "not only allege specific facts supporting the claim that the statements at issue were false or misleading … but also specific facts from which defendants' knowledge of those events or conditions can reasonably be inferred." Boston Technology, 8 F. Supp. 2d at 57 (citing Greenstone v. Gambex Corporation, 975 F.2d 22, 25 (1st Cir. 1992).

As the Court explained in Boston Technology:

---

[7] See also Hoffman v. Optima Sys., Inc., 683 F. Supp. 865, 868 (D. Mass. 1988) (plaintiffs must allege the nature of each defendant's role in the fraud, *including the facts establishing scienter*) (emphasis added).  Cf. Shiva II, 27 F. Supp. 2d at 276 n. 7 ("[A] complaint does not sufficiently identify the speaker of an allegedly misleading statement if it refers to a defendant in an 'and/or' manner.").

A 10b-5 plaintiff must allege "details of [defendants'] alleged fraudulent involvement," including specifics as to what defendants had knowledge of and when. Id. To satisfy this requirement, complaints typically identify internal reports, memoranda, or the like, and allege both the contents of those documents and defendants' possession of them at the relevant time. See, e.g., Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 368 (1st Cir. 1996) (plaintiffs' "cit[ing] to reports and documents presented to defendants at relevant times that were inconsistent with the defendants' public statements . . . satisfies the necessary pleading requirements.") Moreover, such citation must be "specifically" made.

8 F. Supp. 2d at 57.

Applying this standard, the court held in Boston Technology that, because "[n]ot a single report, memorandum, meeting, minute, or like item is referred to or specified in the Complaint," the complaint there failed adequately to allege scienter. Id. at 58. Securities fraud complaints that fail to identify such documents or other contemporaneous facts tending to show that the defendant knew the statements in question were false when made are subject to dismissal. See id.; see also Shiva II, 27 F. Supp. 2d at 283 (plaintiff "has not directed the Court to any particular documents drafted by, or available to, the defendants that would indicate the defendants' knowledge of [the company's] problems"); Greebel v. FTP Software, Inc., 182 F.R.D. 370, 374 (D. Mass. 1998), aff'd, 194 F.3d 185 (1st Cir. 1999) (dismissing complaint for failure to identify how defendants actually became aware of facts indicating that the statements in question were false when made).

Moreover, the First Circuit has reiterated that "merely pleading motive and opportunity, regardless of the strength of the inferences to be drawn of scienter, is not enough" to meet the pleading standard under the PSLRA and Rule 9(b). Greebel, 194 F.3d at 195-96.[8] See In re Stone & Webster, Inc. Sec. Litig., 253 F. Supp. 2d 102, 112 (D. Mass. 2003) (evidence, taken as a whole, must create a strong, and not merely a reasonable inference of scienter). In Greebel, the

---

[8] See also In re BMC Software, Inc. Sec. Litig., 183 F. Supp. 2d 860, 899-90 (S.D. Tex. 2001) (discussing Greebel and holding that "mere motive and opportunity to commit fraud would not be sufficient" under the PSLRA to demonstrate scienter).

First Circuit further cautioned that "allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are [not] sufficient."  194 F.3d at 196 (quoting In re Advanta Corp. Sec. Litig., 180 F.3d 525, 535 (3d Cir. 1999)).  See Carney v. Cambridge Tech. Partners, Inc., 135 F. Supp. 2d 235, 242-243 (D. Mass. 2001) (same).

**2.    Plaintiffs Have Failed to Plead Specific Facts
Giving Rise to a Strong Inference of Scienter.**

Here, the Plaintiffs fail to plead any specific facts supporting any inference -- let alone a *strong* inference -- of Richards' scienter.  The Consolidated Complaint literally does not particularize *one fact* tending to support any inference that, during the Class Period, Richards knowingly misrepresented or omitted any material fact respecting any matter addressed in the Consolidated Complaint.  As in Boston Technology, Plaintiffs fail to identify a single specific "report, memorandum, meeting, minute, or like item" as evidence that Richards knew – or was even in possession of – the FDA correspondence or scientific data that the Plaintiffs allege was received by the company.  8 F. Supp. 2d at 57-58 (dismissing complaint).  Without such "details of [defendants'] alleged fraudulent involvement, including specifics as to what defendants had knowledge of and when," the Consolidated Complaint fails to plead facts sufficient to support the requisite strong inference of scienter.  Id. at 57 (citation omitted).

Unable to cite to any specific documents, meetings or other contemporaneous facts to demonstrate Richards' scienter, Plaintiffs rely instead on insufficient conclusory allegations to infer scienter on behalf of Richards.  These allegations not only do not give rise to a strong inference of scienter as a matter of law, they *affirmatively defeat* any conclusion that Richards possessed the fraudulent intent required by the PSLRA.  See Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1134 (9th Cir. 2004) ("when determining whether the plaintiffs have shown a strong inference of scienter, the court must

-9-

consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs."), quoting Gompper v. VISX, Inc., 298 F.3d 893, 897 (9th Cir. 2002). As noted in Greebel and its progeny, the First Circuit has adopted a fact specific *individual* analysis of securities law complaint. 194 F.3d at 196, 204. Where that individual analysis belies any inference, never mind a *strong* inference, of fraudulent intent by a particular defendant, that defendant must be dismissed. See Cambridge Tech. Partners, 135 F. Supp. 2d at 242 ("the critical issue is whether the facts are sufficient to raise a *strong* inference of scienter"), citing Greebel, 194 F.3d at 196.

Here, the two most significant facts alleged by the Plaintiffs to demonstrate scienter are (1) the Wells notices issued by the SEC and (2) the existence of trading by certain Defendants. As to Richards, these allegations undermine, rather than support, the Plaintiffs' claims of fraudulent intent. First, while the complaint alleges that the SEC engaged in a months-long investigation and issued Wells notices to numerous individual officers and directors of the company – not once, but twice – the one senior officer that is not alleged to have been identified by the SEC as culpable is Richards.[9] See Cons. Comp. ¶¶ 108, 109. Second, there is no allegation that Richards engaged in any personal sales of Biopure stock during the class period, further defeating any inference – never mind a strong inference – that he possessed the requisite scienter. Cons. Comp. ¶ 114.[10] See In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 894 (8th Cir.

---

[9] In In re Cabletron Systems, Inc., 311 F.3d 11, 33 (1st Cir. 2002), the First Circuit recognized that "under our circuit law, the procedural posture of the case matters, and we will scrutinize a post-discovery motion to dismiss even more stringently than a pre-discovery motion." As conceded by Plaintiffs in the Consolidated Complaint, the SEC's comprehensive months-long investigation is the equivalent of full discovery into the matters at issue. Thus, the SEC's conclusion that there were insufficient facts to bring even negligence claims against Richards is entitled to substantial weight and undermines completely Plaintiffs' unsupported allegations of fraud.

[10] See, e.g., Nathenson v. Zonagen Inc., 267 F.3d 400, 420-21 (5th Cir. 2001) (sales by outside director defendant did not support inference of fraud where insiders did not make similar sales); Ronconi v. Larkin, 253 F.3d 423, 436 (9th Cir. 2001) ("One insiders' well-timed sales do not support the 'strong inference' required by the statute where the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations

2002) ("evidence that the individual defendants abstained from trading may undercut allegations of motive").  Applying the "totality of the circumstances" test set forth by the Court of Appeals, those circumstances undermine entirely the conclusion that Richards engaged in any fraudulent conduct.

Ignoring the SEC's conclusion that Richards did not engage in any wrongdoing and the fact that Richards did not engage in any sales of Biopure stock, Plaintiffs instead rely on blanket allegations that the collective "Defendants" knew about certain developments and communications with the FDA solely by virtue of their positions within Biopure.[11]  See Cons. Compl., passim.  However, rote allegations such as these, regarding what Defendants must have known solely by virtue of their status or position within the Company are not sufficient to meet the strict pleading requirements of the PSLRA and Rule 9(b).  See, e.g., In re Peritus Software Servs., Inc. Sec. Litig., 52 F. Supp. 2d 211, 228 (D. Mass. 1999) (Young, C.J.) (granting motion to dismiss and rejecting broad status allegations).[12]  That is particularly true where the other allegations of the complaint affirmatively defeat any inference of fraudulent intent.

---

of the company's affairs were known to be false when made"); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1423 (3d Cir. 1997) (no inference of scienter is possible from insider trading allegations where numerous insider defendants did not make any sales); San Leandro Emergency Medical Group v. Philip Morris Co., Inc., 75 F.3d 801, 814 (2d Cir. 1996) ("the fact that other defendants did not sell their shares during the relevant class period sufficiently undermines plaintiffs' claim regarding motive."); Zishka v. American Pad & Paper Co., No. CIV.A. 398CV0660M, 2001 WL 1645500, at *3 (N.D. Tex. Dec. 20, 2001) ("the inference of scienter is undercut by the fact that other insiders did not sell during the same period"), aff'd 72 Fed. Appx. 130 (5th Cir. 2003).

[11] As recognized by the court in In re Criimi Mae, Inc. Sec. Litig., 94 F. Supp. 2d 652, 661 (D. Md. 2000), allegations that individual defendants held senior positions within the company, were involved in the day-to-day operations of the company, and signed SEC filings are insufficient, standing alone, to infer scienter.  "If they were, every corporate executive who participates in day-to-day management of his company would be exposed to liability for securities fraud."  Id.

[12] See, e.g., Zishka v. Amer. Pad & Paper Co., 72 Fed. Appx. 130, 132 (5th Cir. 2003) ("The defendants' positions within the company are not sufficient to presume knowledge of the company's difficulties"); Smith v. Circuit City Stores, Inc., 286 F. Supp. 2d 707, 715 (E.D. Va. 2003) (allegations of scienter based on individual defendant's position within the company insufficient under PSLRA); Shiva II, 27 F. Supp. 2d at 283 (allegations which "consisted solely of general inferences that the defendants, by virtue of their position within the Company, must have known about the company's problems when they undertook allegedly fraudulent actions," are "'precisely the types of inferences which this court, on numerous occasions, has determined to be inadequate' to withstand the special pleading requirements in securities fraud cases")(citing Maldonado, 137 F.3d at 9); Greebel, 182 F.R.D. at

For all of the foregoing reasons, Plaintiffs have failed to allege specific facts giving rise to a strong inference of Richards' scienter.  On that basis alone, the Court should dismiss the Consolidated Complaint.

## II.    THE CONSOLIDATED COMPLAINT MUST BE DISMISSED AGAINST RICHARDS IN ITS ENTIRETY BECAUSE IT DOES NOT ALLEGE ANY <u>MISREPRESENTATIONS OR OMISSIONS OF MATERIAL FACT.</u>

In the First Circuit, "securities fraud cases are decided by a statement-by-statement analysis in which the inquiry made is restricted to the immediate context of each statement – namely, the balance of what was said on the particular occasion, and the immediate circumstances in which the particular statement was made."  <u>Guerra v. Teradyne, Inc.</u>, 2004 WL 1467065, at *7 (D. Mass. Jan. 16, 2004).  <u>See also</u> <u>Cambridge Tech. Partners</u>, 135 F. Supp. 2d at 243; <u>In re Peritus</u>, 52 F. Supp. 2d at 219 n.1.  Here, Plaintiffs attribute just one allegedly misleading statement to Richards directly, set forth in a series of Biopure SEC filings between March 17, 2003 and July 2, 2003.  This one statement, however, when read in the context of those SEC filings as required by the PSLRA, is not actionable as a matter of law.

### A.    The Complaint Fails to Allege any <u>Actionable Misrepresentations of Material Fact.</u>

During their few days of "investigation" following Biopure's December 26, 2003 stock drop, Plaintiffs – like most strike suit plaintiffs – combed the public records in search of any statements that they could allege, in hindsight, were untrue when made.  For the reasons that follow, none of the alleged statements set forth in the Consolidated Complaint can sustain a securities fraud claim against Richards.  The statements either constitute unchallenged accurate

---

374 ("generalized allegations" that "[d]efendants, solely by virtue of their positions" at FTP, participated in the alleged fraud "do not satisfy Rule 9(b) or the PSLRA"); <u>In re Copley Pharm., Inc. Sec. Litig.</u>, [1995 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,695, at 92,258 n.8 (D. Mass. 1995) (Young, C.J.) (allegation that the defendants were aware of fraud by virtue of their "positions as senior corporate personnel" were not pled with the particularity required by Rule 9(b)).

statements of historical fact, are vague and immaterial forward-looking statements, are protected

by the Safe Harbor provisions of the PSLRA, or are not legally attributable to Richards.  As

such, they are not actionable as a matter of law.

### 1.    Accurate Statements of Historical Fact are not Actionable.

It is well-settled that accurate statements of historical fact about a company's prior

financial results are not actionable under Section 10(b).  See Suna v. Bailey Corp., 107 F.3d 64,

68 (1st Cir. 1997) ("defendants may not be held liable under the securities laws for accurate

reports of past successes, even if present circumstances are less rosy") (citations omitted); Capri

Optics Profit Sharing v. Digital Equip. Corp., 950 F.2d 5, 7-8 (1st Cir. 1991) ("if [a corporation]

report[s], correctly, without more, 'this is our eighth consecutive quarter in which our gross has

increased,' there [is] no duty to add, for the benefit of market buyers, '[w]e are concerned about

the next one.'").[13]  As noted, there is no allegation that any statement in Biopure's public filings

concerning a historical fact is false or misleading in any way.  Specifically, the Plaintiffs do not

contend that any financial information is inaccurate, or that Biopure did not file an application

with the FDA or that the application was accepted for review on October 1, 2002.

### 2.    Vague and Indefinite Forward-Looking Statements are Immaterial as a Matter of Law.

As a general rule, "statements about future events that are plainly expressions of opinion

and not guarantees are not actionable under the federal securities laws."  Haft v. Eastland Fin.

Corp., 772 F. Supp. 1315, 1320 (D.R.I. 1991) (statement "Eastland's stock should trade in the

---

[13] As one federal court explained:  "[A]ccurate historical financial reports of financial success are not actionable even though followed by periods of financial decline, because such accurate reporting does not, in and of itself, carry with it a projection of future financial success."  In re Software Publishing Sec. Litig., [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,094 at 98,756-57 (N.D. Cal. Feb. 2, 1994).  See also Greenberg v. Compuware Corp., 889 F. Supp. 1012, 1017 (E.D. Mich. 1995) ("[t]o give . . . credence [to claims based on such statements] would be akin to imposing liability for truthfully saying the 'sky was blue yesterday' when the sky turns out to be gray the next day").

"$10.50 to $11.00 range" held immaterial as a matter of law) (citations omitted).  See Suna, 107

F.3d at 70 (statements of optimism, not worded as guarantees, held not actionable).

Furthermore, as the First Circuit stressed in Glassman v. Computervision Corp.:  "Forecasts are

not guarantees of, or insurance policies for, a firm's future performance, nor are they understood

as such by reasonable investors."  90 F.3d at 626.

      Moreover, statements that are "general, vague or lack specificity, *or are not guarantees*,

even if made without a reasonable basis, are not actionable because a reasonable investor would

not rely on them."  Gross v. Summa Four, Inc., No. C-94-364-B, 1995 WL 806823, at *30

(D.N.H. Nov. 8, 1995) (emphasis added), aff'd, 93 F.3d 987 (1st Cir. 1996) (holding optimistic

statements concerning defendant's "opportunity to grow" and "market leadership position"

immaterial as a matter of law).  As the First Circuit explained in Shaw v. Digital Equipment

Corp.:

> In particular, courts have demonstrated a willingness to find immaterial as a
> matter of law a certain kind of rosy affirmation commonly heard from corporate
> managers and numbingly familiar to the marketplace – loosely optimistic
> statements that are so vague, so lacking in specificity, or so clearly constituting
> the opinions of the speaker, that no reasonable investor could find them important
> to the total mix of information available.

83 F.3d 1194, 1217 (1st Cir. 1996).  Such statements are regarded as nonactionable "puffery,"

and the puffery "rule covers loose optimism about both an issuer's current state of affairs and its

future prospects."  Peritus, 52 F. Supp. 2d at 219-20 (quoting Boston Technology, 8 F. Supp. 2d

at 54).

      These principles squarely apply in this case.  In In re Medimmune, Inc. Securities Litig.,

873 F. Supp. 953, 964 (D. Md. 1995), for example, the court recognized that "Mere expressions

of hope regarding future [FDA] approval, *not worded as guarantees*, are not actionable."  See In

re Columbia Laboratories, Inc. Securities Litig., 144 F. Supp. 2d 1362, 1368 (S.D. Fla. 2001)

-14-

(finding statement that defendants "believed" that company would receive FDA approval within six months to be nonactionable). Likewise, in In re PLC Systems, Inc. Sec. Litig., 41 F. Supp. 2d 106, 117-118 (D. Mass. 1999), a case directly on point, Judge Stearns cited Medimmune with approval, stating that the following statements were not actionable as a matter of law:

> "The Company *believes* that this data will satisfy the FDA's request;"

> "PLC *believes* its … application … is on track for approval this year;"

> "We *believe* the recent filing … allows PLC Systems to remain on track for an FDA approval this year;"

> "We *believe* the FDA's decision … is a positive indication.

873 F. Supp. at 964. The Court held that "while it is true that a 'guarantee' of approval of a product by a federal agency might be actionable, … the key word is 'guarantee.' Mere expressions of hope or expectation regarding future approval, *not worded as guarantees*, are not actionable." PLC Systems, 41 F. Supp. 2d at 118. Similarly, in Baron v. Smith, -- F.3d --, 2004 WL 1847751, at *3 (1st Cir. Aug. 18, 2004), the First Circuit held that statements of "belief" by the defendants contained in SEC filings were not actionable as a matter of law.[14] Reading the challenged statements in context, "since Plaintiffs have failed to plead facts that even suggest [Richards was] guaranteeing approval of [Hemopure] by the FDA, insofar as plaintiffs would proceed on that theory, their claim is insufficiently pled" and should be dismissed. Medimmune, 873 F. Supp. at 965.

### 3.    The PSLRA Safe Harbor Provisions Protect Forward-Looking Statements Accompanied by Cautionary Language.

As the First Circuit recognized in Glassman, "when statements of 'soft' information such as *forecasts, estimates, opinions or projections* are accompanied by cautionary disclosures that

---

[14] See also Suna v. Bailey Corp., 107 F.3d 64, 70 (1st Cir. 1997) (stating, in a pre-PSLRA case, that "no reasonable investor would have read these statements, especially as they are accompanied by cautionary language, as promises or guarantees of future performance."); Raab v. General Physics Corp., 4 F.3d 286, 290 (4th Cir. 1993).

adequately warn of the possibility that actual results or events may turn out differently, the "soft" statements may not be materially misleading."  90 F.3d at 626 (quoting Shaw, 82 F.3d at 1213). This doctrine -- termed the "bespeaks caution" doctrine -- "has been codified in the Securities Litigation Reform Act," under its Safe Harbor provisions.  Shaw, 82 F.3d at 1213 n.23. Specifically, the statutory Safe Harbor under the PSLRA immunizes corporations and individual defendants from liability for forward-looking statements, and from statements  of the assumptions underlying or relating to those statements, that are:  "(1) identified as forward-looking; and (2) accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." See 15 U.S.C. § 78(5)(c)(1)(A)(i).[15]  See Greebel, 194 F.3d at 201 (discussing the safe harbor for forward-looking statements).

As recognized in Columbia Labs, "in determining whether a statement is forward looking, the court must read the statements  not in isolation but in the context of the entire document."  Moreover, forward-looking statements not only include the aspirative statements themselves, but also specifically include statements of the assumptions underlying or relating to the aforementioned statements.  Thus, the statement of Biopure's "beliefs" regarding Hemopure, found among statements that are clearly forward-looking and expressly disclaim any guarantees regarding ultimate approval – or even the success of the company – falls squarely within the safe harbor, and cannot be somehow surgically removed from its context as Plaintiffs attempt to do here.

---

[15] See also Harris v. Ivax Corporation, No. 98-4818, 1999 WL 542319, at * 2 (11th Cir. July 27, 1999) (affirming dismissal of securities claims on grounds that forward looking statements were accompanied by meaningful cautionary language and protected by safe harbor); Rasheedi v. Cree Research, Nos. 1:96CV00890 and 1:96CV04069, 1997 WL 785720, at *1-2 (M.D.N.C. Oct. 17, 1997) (same).

Crucially, the only statement alleged in the Consolidated Complaint that is actually attributable to Richards is the statement contained in Biopure's SEC filings under "Risk Factors" stating that there are significant risks inherent in Biopure's business. The same risk factor disclosure also confirms that "obtaining FDA approval generally takes years and consumes substantial capital resources *with no assurance of ultimate success*." Despite this dire warning, among the other paragraphs making clear that Biopure is an early stage company with no guarantee of scientific or financial success, Plaintiffs argue that the statement that Biopure "believes" its product complies with FDA protocols is somehow materially misleading. By the express language of the PSLRA, and the bespeaks caution doctrine from which it emanates, this statement simply is not actionable as a matter of law. See In re Seachange Int'l, Inc. Sec. Litig., Civ. Act. No. 02-12116-DPW, 2004 WL 240317, at * 7 (D. Mass. Feb. 6, 2004) ("Given the abundance of cautionary language and the forward-looking tone of the "Risk Factors" section, I find that the statements that plaintiffs identify within the section … were not materially misleading because they are protected under the safe harbor provisions of the PSLRA").

Finally, even if Plaintiffs could convince the Court that this forward-looking statement of belief – clearly not worded as a guarantee and sandwiched among a sea of risk factors inherent in the FDA approval process – is somehow actionable, Plaintiffs must then demonstrate that Richards made the statement with scienter. See Boston Technology, 8 F. Supp. 2d at 54 (complaint must allege either a lack of good faith or a lack of reasonableness). As noted previously, Plaintiffs do not plead any specific facts supporting any inference -- let alone a strong inference -- that Richards possessed such fraudulent intent. Moreover, the fact that the SEC has thoroughly investigated this matter and determined that even negligence charges against Richards are not warranted, belies any such scienter. For all of the foregoing reasons, Plaintiffs

have failed adequately to allege a single actionable misrepresentation of material fact in the Consolidated Complaint against Richards.

### B. The Consolidated Complaint Fails to Allege any Actionable Omissions of Material Fact.

As a preliminary matter, it is well settled that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." Backman v. Polaroid Corporation, 910 F.2d 10, 13 (1st Cir. 1990) (en banc) (quoting Chiarella v. United States, 445 U.S. 222, 235 (1980)). Moreover, it is well established that Section 10(b) prohibits only the making of a material misstatement or omission and that "persons who do not engage in the proscribed activities [under § 10(b)] . . . but who give a degree of aid to those who do" are not liable for securities fraud. See Central Bank v. First Interstate Bank, 511 U.S. 164, 176-77 (1994) (prohibiting secondary liability for aiding and abetting). Accordingly, "[i]f Central Bank is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1997) (affirming dismissal of complaint).

Moreover, to the extent that alleged statements constitute nothing more than loosely optimistic statements about management's hopes for the future -- not worded as guarantees -- such statements cannot give rise to any duty to disclose or to update in the future. See Glassman, 90 F.3d at 636 (statements did not rise to a level of certainty creating a duty of disclosure); Shaw, 82 F.3d at 1219 n. 33 (cautiously optimistic statements, expressing at most a hope for a positive future, do not trigger a duty to update); In re Time Warner Inc. Sec. Litigation, 9 F.3d 259, 267 (2d Cir. 1993) (statements at issue lacked "definite positive projections" of the sort that would require later correction). In addition, it is well-settled that "the fact that a company makes an

affirmative true statement about past results does not give rise to a duty to comment on its current status." Summa Four, 93 F.3d at 994. See Capri Optics, 950 F.2d at 7-8 (holding that accurate report of historical results does not create duty to comment on current results). Nor does a duty to disclose arise merely because investors may be interested in allegedly withheld information. Roeder v. Alpha Indus., Inc., 814 F.2d 22, 26 (1st Cir. 1987).

Here, the only statements actually attributed to Richards are loose statements of belief contained in SEC filings, couched in terms that clearly state that these statements are forward-looking statements of belief, not worded as guarantees. Every other alleged actionable statement in the complaint was made by someone other than Richards, and Richards' alleged role was solely as a silent "participant." See, e.g., Cons. Comp. ¶ 61. This role created absolutely no independent duty of disclosure, even if Plaintiffs had alleged any specific facts demonstrating Richards' scienter, which they have not.

## III.    PLAINTIFFS SECTION 20(A) "CONTROL PERSON" CLAIMS MUST BE DISMISSED AGAINST RICHARDS.

Plaintiffs allege that Richards was a control person within the meaning of Section 20(a) of the 1934 Act. However, "[o]fficer or director status alone does not constitute control for purposes of § 20(a) liability." In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 436 (S.D.N.Y. 2001). Rather, because Section 20(a) is a joint and several liability provision, the PSLRA requires intentional conduct for liability to attach. See 15 U.S.C. § 78u-4(f)(2) (stating that a party "shall be liable for damages jointly and severally only if the trier of fact specifically determines that such [party] knowingly committed a violation of the securities law") (emphasis added). Consequently, as the Court held in Mishkin v. Ageloff, No. 97 Civ. 2690, 1998 WL 651065, at *23 (S.D.N.Y. Sept. 23, 1998), the complaint must allege specific facts demonstrating that a defendant acted with actual knowledge of the alleged violations. This statutory

-19-

requirement is consistent with the standards that have been adopted by several Courts of

Appeals, including the Second Circuit, requiring plaintiffs to plead a defendant's "culpable

participation" in the securities violation in order to state a § 20(a) claim.  See Boguslavsky v.

Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) ("In order to establish a prima facie case of liability

under § 20(a), a plaintiff must show . . . that the controlling person was in some sense a culpable

participant in the primary violation.") (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450,

1472 (2d Cir. 1996).[16]

Here, there are no specific facts alleged that would demonstrate Richards culpable

participation in any securities law violations.  See Laser Asset Mgmt. Inc. v. Asset Securitization

Corp., Civ. No. 00-8100, 2001 WL 1029407, at * 11 (S.D.N.Y. Sept. 5, 2001) (Section 20(a)

claim "is subject to the heightened pleading requirement of the PSLRA").  In addition, because

Plaintiffs have failed adequately to allege that any of the statements attributable to Richards

violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, their Section 20(a)

"control person" claim against Richards also fails.  See Greebel, 194 F.3d at 195 (affirming

district court's dismissal of Section 20(a) claim because appellants failed to allege an underlying

violation of the securities laws); Suna, 107 F.3d at 72 (same); Berliner v. Lotus Development

Corporation, 783 F. Supp. 708, 712-13 (D. Mass. 1992) (insufficiency of 10b-5 allegations

against Lotus required dismissal of control person claims against individual defendants).

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Consolidated Complaint should be dismissed

with prejudice, in its entirety.

---

[16] The First Circuit has not spoken on the precise question of culpable participation, see Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002).  See Fraioli v. Lemcke, 328 F. Supp. 2d 250, 271-72 (D. R.I. 2004) (noting that the First Circuit has recognized, but not decided, the question of culpable participation).

Dated: October 6, 2004                    Respectfully submitted,


_____/s/ Christopher Robertson_____
Christopher F. Robertson (BBO # 642094)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Facsimile:   (617) 946-4801

Attorney for Defendant Ronald F. Richards

-21-