UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BIOPURE CORPORATION SECURITIES LITIGATION | Civ. No. 03-12628 - NG |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO PARTIALLY LIFT THE AUTOMATIC STAY OF DISCOVERY WITH RESPECT TO
DOCUMENTS THAT DEFENDANTS HAVE ALREADY PRODUCED TO THE SEC**

Plaintiffs respectfully submit this Memorandum of Law in Support of Their Motion to Partially Lift the Automatic Stay of Discovery pursuant to Section 21(D)(b)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4(b)(3)(B). Plaintiffs note that the relief sought by this Motion will be become moot if the Court denies two now-pending motions that were filed on October 6, 2004: (1) Defendant Ronald F. Richards' Motion To Dismiss The Consolidated Class Action Complaint (docket # 62) and (2) Defendants' Motion To Dismiss The Consolidated Amended Class Action Complaint (docket # 64), filed by Defendants Biopure Corporation, Thomas A Moore, Carl W. Rausch, Howard P. Richman, Charles A Sanders and J. Richard Crout.

Plaintiffs seek the lifting of the automatic stay to enable them to obtain from the Defendants **only** copies of the documents that Defendants have **already produced** to the United States Securities and Exchange Commission ("SEC") and transcripts of testimony given during the SEC's investigation of the Defendants, which transcripts are in the possession, custody or control of the Defendants. The SEC's investigation has culminated with the filing by the SEC of a securities fraud complaint against the Defendants Biopure,

Moore and Richman, and Biopure's General Counsel, Jane Kober, on September 14, 2005. A copy of the Complaint in *SEC v. Biopure Corporation, et al.*, No. 05-CA-11853-PBS (the "SEC Action"), is attached hereto as Exhibit 1 (the "SEC Complaint").

As discussed more fully below, the proposed discovery would involve a limited universe of documents identified with particularity, does not offend the purposes of the PSLRA automatic stay, is necessary to prevent undue prejudice faced by the Plaintiffs, and would impose no burden on Defendants insofar as the documents sought have already been gathered, organized, reviewed, screened for privilege, and produced to the SEC. To produce these documents, the Defendants would only have to have them photocopied, at Plaintiffs' expense.

## FACTUAL BACKGROUND

Defendant Biopure Corporation is essentially a one-product biologic agent development company which, during its entire 20-year history, has been engaged solely in developing, and attempting to gain regulatory approval for, its artificial blood substitute called "Hemopure." Hemopure has not been approved for human use in the United States.[1] Though Biopure has lost money during each year of its existence, the company has continued to fund its development of Hemopure and cover its losses by selling additional shares of its stock in the public and private equity markets.

Biopure's Hemopure development effort culminated with its filing with the Food & Drug Administration ("FDA"), on July 31, 2004, of its biologic license application for use of Hemopure in orthopaedic surgery patients (the "BLA" or the "Hemopure BLA"). This

---

[1] Hemopure has been approved only in South Africa for use in severely anemic surgery patients. Biopure also sells a Hemopure variation, under the brand name Oxyglobin, for use in dogs.

followed the completion of extensive, and very costly, Phase III clinical trials. Extensive data from the Phase III trials was submitted in the BLA, which focused on the safety and efficacy of Hemopure.

The gravamen of Plaintiffs' claims in this Action is that the Defendants, during the period from March, 2003 to December, 2003, issued materially false and misleading statements regarding the FDA's communications with the Defendants regarding Hemopure and the BLA, and regarding the prospects for FDA approval of the BLA. In March 2003, while the BLA was pending, Biopure notified the FDA of its intention to conduct a Phase II clinical study on the use of Hemopure in trauma victims. Shortly thereafter, the FDA advised Biopure that, due to *significant safety concerns arising from data submitted in the Hemopure BLA*, it had placed an indefinite clinical hold on that proposed study. Specifically, the FDA informed Biopure that the clinical hold on the proposed trauma trials was being put in place because "subjects would be exposed to an unreasonable and significant risk of injury" and that "**results of a pivotal human trial, used in support of the Hemopure BLA...indicated that use of Hemopure, compared to human blood, was associated with a higher incidence of life-threatening SAE's [Serious Adverse Events] including death and cardiac arrest.**" SEC Complaint, ¶34, emphasis added. Thereafter, the Defendants continued to make optimistic public statements regarding the Hemopure BLA and the prospective use of Hemopure in trauma patients, without disclosing the FDA's clinical hold on the trauma trials or the FDA's reasons therefore, which negatively implicated the prospects for FDA approval of the Hemopure BLA. In contrast, the investing public first learned of the clinical hold on the trauma trial on December 24, 2003 from a

Biopure press release, which also disclosed for the first time that the Defendants at bar were the subjects of an ongoing SEC investigation and that each of them had received a "Wells Notice" from the SEC.

The first of the consolidated actions now before this Court was filed on December 30, 2003. Lead Plaintiff and Lead Counsel were appointed on May 14, 2004, and the Consolidated Amended Complaint was filed on July 23, 2004. Briefing on motions to dismiss has been completed.[2] In the interim, Plaintiffs have remained subject to the PSLRA's automatic discovery stay, but the SEC continued its investigation of the Defendants, which culminated in the filing of the SEC Complaint. As reflected in the docket sheet for the SEC Action, attached hereto as Exhibit 2, the SEC Action is on a "fast track," and is scheduled for trial on May 8, 2006. (*See* Docket No. 42 in Exhibit 2).

A filing by the Defendants in the SEC Action reflects that during the SEC investigation the Defendants in this action produced a large number of documents to the SEC and each Defendant and many other persons testified under oath.[3] The Plaintiffs at bar have not had access to any of those documents or testimony because of the PSLRA automatic stay.

The SEC Complaint reflects that the documents produced by the Defendants to the

---

[2] A hearing on the motions to dismiss is scheduled for January 12, 2006.

[3] In Defendants' Memorandum of Law in Support of Joint Motion to Shorten Response Time to Requests For Admission and to Expedite Summary Judgment Hearing, the Defendants said:

> The SEC took testimony under oath from numerous witnesses in this action, including each of the individual Defendants. During the course of its investigation, the SEC received reams of documents from...parties to this action...

Id. at 5, Exhibit 2, Docket No. 28.

SEC provide significant additional evidence of the severity and blatant nature of the fraud perpetrated by the Defendants. In particular, the SEC Complaint demonstrates that the FDA's extensive and detailed July 30, 2003 Letter to Biopure regarding the Hemopure BLA (attached as Exhibit 3) was an extremely negative evaluation of the Hemopure BLA and, indeed, was the Hemopure BLA's death knell.[4] This in turn demonstrates that the Defendants' August 1, 2003 press release, which described the FDA's letter as "encouraging," and which failed to disclose any of the negative information about the Hemopure BLA set forth in the FDA's letter, was blatantly false and misleading.[5] It also

---

[4] The SEC Complaint states, *inter alia*:

> 69. The FDA's July 30, 2003 letter began by stating that:
>
>> The Center for Biologics Evaluation and Research (CBER) has completed the review of all submissions made relating to your Biologics License Application. Our review finds that the information and data submitted are inadequate for final approval action at this time based on the deficiencies outlined below.
>
> 70. The July 30 complete response letter also summarized the deficiencies of Biopure's BLA in 34 single-spaced pages. In total, the letter contained more than 220 deficiencies and questions regarding Biopure's clinical trials, its data and the safety and efficacy of Hemopure. Chief among these were questions about the conduct of Biopure's clinical trials and the integrity of its data, in particular whether controls were sufficient to ensure that the data in Biopure's BLA submission was accurate and reliable enough to form the basis for conclusions about safety and efficacy, and about why Biopure failed to perform certain analyses as the FDA had expected and recommended. The FDA further expressly reserved its right to re-evaluate safety and efficacy data pending resolution, if possible, of data integrity issues.

SEC Complaint at ¶¶ 69 and 70.

[5] The August 1, 2003 press release stated, in relevant part:

> Biopure Corporation...announced today that the U.S. Food and Drug Administration (FDA) has completed its review of the company's biologic license application (BLA) for Hemopure(R) [hemoglobin glutamer - 250 (bovine)] and issued a letter requesting additional information. The letter focuses primarily on clarification of clinical and preclinical data and includes

demonstrates that the Defendants' numerous public statements thereafter were also false and misleading.[6]

The Plaintiffs recently obtained the July 30, 2003 Letter because the Defendants chose to publicly file it in the SEC Action. This demonstrates that the SEC Action is moving forward expeditiously using documents produced by the Defendants to the SEC, while the case at bar is paralyzed by the PSLRA's automatic discovery stay.[7]

## **ARGUMENT**

Plaintiffs seek a partial lifting of the PSLRA stay to obtain, from *Defendants only*,[8]

---

some comments on labeling. It does not request additional clinical trials.

\*\*\*

"We're encouraged that the FDA has finished its review and provided comprehensive feedback in advance of the formal action due date..." said Biopure President and CEO Thomas A. Moore.

The Defendants succeeded in deceiving the market into believing that the July 30, 2003 FDA Letter was good, "encouraging" news. On August 1, 2003, the price of Biopure stock rose 22%, closing at $7.30 per share, up $1.33 per share, on volume of over 6.9 million shares. Had the market known the true facts about the July 30, 2003 FDA Letter, the market price of Biopure would have declined substantially.

[6]   As the SEC Complaint says:

> 68.    From July 30, 2003 until December 11, 2003, in multiple public filings, press releases and statements, defendants misled investors by failing to disclose that they had received a complete response letter from the FDA, despite the fact that others, including FDA staff and Biopure's own outside regulatory counsel, repeatedly and consistently identified the letter to defendants as a complete response letter. From July 30 until December 11, defendants further misled investors in multiple public filings, press releases and statements by misrepresenting the nature and scope of the deficiencies in the BLA raised by the FDA and by failing to disclose the continuing clinical hold on the trauma indication.

SEC Complaint at ¶ 68.

[7]   It should be noted that there is also pending a derivative case against the individual Defendants in this action, which action, like the SEC Action, is not subject to the PSLRA's automatic discovery stay. *In re Biopure Corporation Derivative Litigation*, Case No. 04-CV-10177 (NG).

[8]   Plaintiffs do **not** seek leave to obtain discovery from the SEC, the FDA or any other non-party.

copies of only the following documents:

(1) the documents produced by the Defendants to the SEC, and

(2) transcripts in the Defendants' possession of testimony given to the SEC.

As demonstrated below, the decisional law supports lifting the PSLRA automatic stay under circumstances like those at bar.

**I.    Courts Routinely Lift The PSLRA Automatic Discovery Stay To Permit Securities Plaintiffs To Discover Documents Produced By Defendants To Governmental Entities, Including The SEC.**

The PSLRA mandates an automatic stay on discovery during the pendency of motions to dismiss, subject to the exceptions noted in the statutes as follows:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon motion of any party that **particularized discovery** is necessary **to preserve evidence** or **to prevent undue prejudice** to that party.

15 U.S.C. §78u-4(b)(3)(B) (emphasis added).

The simple question presented by this Motion is whether that PSLRA discovery stay should now be partially lifted in this case to permit discovery by the Plaintiffs of the documents which the Defendants have already identified, gathered, organized, reviewed (including for privilege), and produced to the SEC. The answer is readily found in the case law, with the following being a succinct statement thereof:

> Courts "have modified the discovery stay in [cases] involving concurrent investigations by governmental agencies when doing so would not frustrate Congress's purposes in enacting the PSLRA." ... In such cases, courts have lifted the stay as to documents which have already been produced to the government, on the ground that the cost of such discovery to defendants is minimal, as the documents have already been compiled for production, while

> plaintiffs would suffer severe prejudice if discovery in their case is delayed while governmental investigations and other lawsuits proceed ahead of them.

Seippel v. Sidley, Austin, Brown & Wood LLP, 2005 WL 388561, *1 (S.D.N.Y. Feb. 17, 2005)(lifting PSLRA discovery stay after finding that, insofar as defendants had been subject to still-ongoing governmental investigations and other private lawsuits, plaintiffs would be prejudiced if denied access to documents already produced to others).

      In fact, as discussed in greater detail below, courts routinely grant motions to lift the PSLRA automatic stay of discovery in circumstances such as these, where the defendant has already produced the requested materials to governmental agencies (such as the SEC) and government and/or non-securities private litigations remain pending. See, e.g., In re: Royal Ahold N.V. Sec. & ERISA Litig., 220 F.R.D. 246 (D. Md. 2004)(granting motion to lift PSRLA automatic stay to the extent necessary to permit discovery of one million pages of documents produced by defendants to outside agencies including, *inter alia*, the SEC); In re: Labranche Sec. Litig., 333 F. Supp. 2d. 178 (S.D.N.Y. 2004)(lifting PSLRA stay to permit discovery of documents produced to, *inter alia*, the SEC); Singer v. Nicor, Inc., 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003)(same); Worldcom, 234 F. Supp. 2d 301 (same); In re: Enron Sec., Derivative & "ERISA" Litigation, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002)(lifting PSLRA automatic stay and ordering "hundreds of thousands" of document pages previously produced to governmental entities including, *inter alia*, the SEC to be produced to securities plaintiffs); In re: FirstEnergy Corp. Sec. Litig., 229 F.R.D. 541 (N.D. Ohio 2004)(granting request for partial lifting of PSRLA automatic stay to permit discovery of documents produced by defendants to governmental agencies); In re: Williams Sec. Litig., 2003 WL 22013464 (N.D. Okla. May 22, 2003); Seippel, 2005 WL 388561 (lifting

automatic stay to permit discovery of materials produced in government investigations and other materials relevant to state law claims); In re: Tyco Int'l LTD Multidistrict Litig., 2003 WL 23830479 (D.N.H. Jan. 29, 2003)(lifting PSRLA stay and ordering discovery in ERISA and derivative cases to be made available to securities plaintiffs).

**II.     The Analysis Illustrated -- In re: Royal Ahold N.V. Sec. & ERISA Litig.**

The court's analysis in In re: Royal Ahold N.V. Sec. & ERISA Litig., 220 F.R.D. 246 (D. Md. 2004) is instructive with respect to this Motion. There, the securities plaintiffs asked the court to lift the PSLRA automatic discovery stay, seeking, among numerous other items of discovery, documents that the defendants had produced to "governmental, regulatory, or self regulatory agencies," including the SEC. Id. at 249-250.[9] The Royal Ahold court engaged in the following analysis of this request, considering: (1) whether the requested discovery was particularized, (2) whether it offended the purposes of the PSLRA, and (3) whether it was necessary to preserve evidence or to prevent undue prejudice to the plaintiffs. Id. at 250-252 (analyzing factors set forth in 15 U.S.C. §78u-4(b)(3)(B)).

On the "threshold issue of particularity," the Royal Ahold defendants argued that the estimated **one million** pages of documents being sought by plaintiffs, though technically identifiable, were not sufficiently particularized within the meaning of the PSLRA. 220 F.R.D. at 250. The court disagreed, noting that "'particularized' is not synonymous with

---

[9] In Royal Ahold, plaintiffs sought discovery far broader in scope than that sought by Plaintiffs through this motion, by requesting documents "'produced to governmental, regulatory, or self regulatory agencies,' including legislative or executive branch officials of the United States government, the SDNY U.S. Attorney's Office, the SEC, the NYSE, the NASD, the Office of the Dutch Public Prosecutor, the Euronext Amsterdam Exchange, and the Dutch Authority for Financial Markets" as well as "the reports of various internal investigations" conducted by the defendants themselves. Id. at 249-250.

'identifiable,' neither does it necessarily mean 'small,'" and stating that the meaning of particularized "in any particular case must take into account the nature of the underlying litigation...." Id.  The court found that the plaintiffs' request satisfied the particularity requirement after noting that plaintiffs' 430-page complaint described multibillion dollar accounting errors by a multi-national company, their motion described a "clearly defined universe of documents," and the burden of production "should be slight, considering that the defendants have previously produced [the requested documents] to other entities." Id.

Next, the Royal Ahold court analyzed Congress's purposes in passing the PSLRA, noting its intent to discourage the pursuit of a "mere strike suit" or a discovery "fishing expedition." Id. at 250-251.  The court then said:

> Here, however, the securities plaintiffs' case, whatever its ultimate disposition, is far from frivolous.  The Consolidated Amended Complaint includes over 400 pages of detailed allegations regarding the purported misdeeds of [defendants].... Many of its claims are supported by quotations or citations form documentary evidence - - indeed, [defendant's] own press statements and SEC filings admit major missteps, if not actual fraud. ... **[T]he apparent strength of the plaintiffs' case may factor in the court's determination of the necessity of discovery** under the PSLRA.

Id. at 251 (emphasis added).

Finally, the Royal Ahold court found that "the most compelling reason" for lifting the PSLRA automatic stay and granting plaintiffs' motion was the risk of undue prejudice to the lead securities plaintiffs.  220 F.R.D. at 251.  The court observed that the defendants were "the target of numerous civil and criminal actions, none of which, save the securities claims, are subject to the PSLRA discovery stay." Id.  With other litigations "moving apace," the court found that the securities plaintiffs would be subject to undue prejudice without access to key documents that had already been produced to government investigators and soon

might be produced to non-securities plaintiffs in parallel actions.  Id. at 251-252.

**III.    The Relevant Factors Support This Court's Granting Plaintiffs' Request That The PSLRA Automatic Stay Be Partially Lifted To Permit Discovery Of Documents Already Produced By Defendants To The SEC.**

As applied to the facts at bar, the factors outlined above support this Court's granting Plaintiffs' Motion that the PSLRA automatic stay be partially lifted to permit discovery of documents and transcripts of testimony that the Defendants have already given to the SEC.

### A.    Plaintiffs Seek "Particularized Discovery"

Courts routinely find that a request to lift the PSLRA automatic stay is sufficiently particularized when it is "limited to the closed universe of materials that [defendant] has already produced for government investigators... ."  FirstEnergy, 229 F.R.D. at 545.  See also Williams, 2003 WL 22013464 at *2 (granting motion to lift the automatic stay after observing that there was "no question that the documents sought have been found, reviewed, organized, and produced to others"); Worldcom, 234 F. Supp. 2d at 306 (where plaintiff that would be substantially prejudiced by the PSLRA automatic stay, has not filed a strike suit or engaged in a discovery "fishing expedition" and requests documents already produced to governmental entities such as the SEC, "defendants cannot call upon the ambiguous notion of 'particularized' discovery to bend Section 78u-4(b)(3)(B) to a purpose for which it was not intended").

Here, Plaintiffs only seek production of only those documents already produced by the Defendants to the SEC - nothing more.  As in Royal Ahold, FirstEnergy, Williams, and Worldcom, Plaintiffs' request targets a very clearly defined universe of documents.  Therefore, Plaintiffs' request, as a matter of law, seeks "particularized discovery."

**B.    Allowing Plaintiffs' Requested Limited Discovery Would Not Offend The Congressional Purposes Behind The PSLRA Stay**

Courts will next examine a request to lift the PSLRA discovery stay in the context of the Congressional purposes behind the PSLRA automatic stay, which have been summarized as follows:

> The legislative history of the PSLRA indicates that Congress enacted the discovery stay in order to **minimize** the incentives for plaintiffs to file **frivolous securities class actions** in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery, see H.R. Conf. Rep. No. 104-369 at 37 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 736, **or** that the plaintiff will **find during discovery some sustainable claim not alleged** in the complaint, see S. Rep. No. 104-98 at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693. See also Lernout & Hauspie Sec. Litig., 214 F. Supp. 2d 100, 106 (D. Mass. 2002).

In re: Worldcom, Inc. Sec. Litig., 234 F. Supp. 2d 301, 305 (S.D.N.Y. Nov. 21, 2002)(emphasis added).

In conducting this analysis, as in Royal Ahold, courts will consider whether the moving party is engaging in pursuit of a "mere strike suit" or a discovery "fishing expedition," will examine the length and detail of the complaint as well as the supporting documentation on which it relies, and will weigh the apparent strength of the plaintiff's case. 220 F.R.D. at 250-251. Here, as in Royal Ahold, Plaintiffs have filed a lengthy, detailed complaint, the strength of which is underscored by the subsequently filed SEC Complaint which alleges, in even greater degree, the same fraud. Plaintiffs' Consolidated Amended Complaint sets forth at length and in detail the SEC filings, press releases by the Defendants and transcripts of several conference calls and presentations by Biopure executives, in which false and misleading statements regarding the Hemopure BLA were made. And now the SEC, with the benefit of the documents sought herein, has filed the

SEC Complaint which reinforces the strength of the Plaintiffs' securities fraud claims at bar.[10] Where, as here, a securities plaintiff "has clearly not filed the complaint to initiate a 'fishing expedition' in search of sustainable claims or to force defendants to settle an otherwise frivolous class action," courts will partially lift the PSLRA automatic stay. Worldcom, 234 F. Supp. 2d at 305.

### C. The Proposed Discovery Is Necessary To Preserve Evidence and Prevent Undue Prejudice

As previously noted, the PSLRA authorizes a court to lift its automatic stay "to preserve evidence[11] or to prevent undue prejudice..." 15 U.S.C. §78u-4(b)(3)(B). In determining whether the inherent prejudice faced by a plaintiff from the PSLRA automatic stay is actually "undue" prejudice, courts must examine "the facts and circumstances of the case to determine whether the prejudice is 'unnecessary' or 'unfair,'" consider the detriment

---

[10] The Defendants, in the SEC Action, did not move to dismiss the SEC Complaint. Rather, they filed answers to the SEC Complaint. See Exhibit 2, Docket Entries 14, 15, 18, and 19. This reflects the strength of the identical fraud claims against the Defendants in both the SEC Action and the case at bar.

[11] Regarding the need to preserve evidence, in circumstances where the defendant corporation from which discovery is sought is undergoing structure or management changes - for example, a corporate reorganization or divestiture of subsidiaries which played roles in the purported fraud - a "reasonable concern" is created "that documents may be lost despite [defendant's] best efforts to preserve them." Royal Ahold, , 220 F.R.D. at 251. Courts grant motions to lift the PSLRA automatic stay when faced with circumstances which constitute such a "shifting landscape." Id. (lifting the automatic stay in the face of "a shifting corporate landscape and concerns about evidentiary loss"). See also Worldcom, 234 F. Supp. 2d at 305 (lifting automatic stay in the face of "a rapidly shifting landscape"); Labranche, 333 F. Supp. 2d at 183 (same).

Here, Biopure is experiencing attrition with respect to persons with knowledge of the fraud at the heart of Plaintiffs' complaint. As reflected in Exhibit G to Plaintiffs' Complaint, in October 2003, Biopure implemented a cost reduction strategy which was intended to reduce the workforce by 30 percent. Defendant Richman, who had been Senior Vice President of Regulatory and Operations and had overseen Biopure's communications and relationship with the FDA, was fired at the same time. Then, in February, 2004, Biopure's Board of Directors requested, and received, the Defendant Moore's resignation as CEO of Biopure. Finally, the Defendant Richards resigned as Biopure's CFO in June, 2004. These defections from Biopure of key executives and personnel, including the Defendants in this matter, may create a similar risk and corresponding need to preserve evidence as was found in Royal Ahold. Moreover, if the discovery now sought through the partial lifting of the PSLRA stay is granted, it may assist Plaintiffs in identifying other documents at risk of destruction, deletion, or disappearance.

to the Lead Plaintiff and any harm or burden to the defendant, and consider whether lifting the stay would "do violence to the purpose of the PSLRA stay." Williams, 2003 WL 22013464 at *2.[12]

Of chief concern to courts in this analysis is whether the securities plaintiffs will be hampered in forming litigation or settlement strategies in the face of government and/or additional non-securities litigation (neither of which is subject to the PSLRA) proceeding toward trial or settlement with the benefit of discovery materials to which the securities plaintiffs do not have access.[13] For example,

> Without discovery of documents already made available to government entities, Plaintiffs would be unfairly disadvantaged in pursuing litigation and settlement strategies. ... In addition, maintaining the discovery stay as to materials already provided to government entities does not further the policies behind the PSLRA.

FirstEnergy, 229 F.R.D. at 545 (granting partial lifting of the PSLRA automatic stay).

If so, then courts will routinely grant plaintiffs' request to lift the automatic PSLRA discovery stay. For example, as stated by the court in Worldcom,

> All of the investigations and proceedings concerning Worldcom are moving apace. Without access to documents already made available to...the

---

[12] Courts have concluded that the PSLRA automatic stay **itself** can constitute undue prejudice, and it is the responsibility of the Courts to determine whether it does so under the facts of any given case. For example,

> The undersigned finds that the very delay of discovery imposed by the PSLRA stay can constitute undue prejudice. The undersigned rejects the contention that the delay inherent in the PSLRA stay cannot constitute undue prejudice because the delay is mandated by Congress. ... The question of whether the delay occasioned by the discovery stay results in undue prejudice is precisely the issue Congress left to the courts to resolve.

Williams, 2003 WL 22013464, *2 (N.D. Okla. May 22, 2003)(internal citation omitted).

[13] The parties to the SEC Action have agreed to mediation (see Exhibit 2, Docket Nos. 44 and 45) and, as previously observed, the SEC Action is scheduled for trial on May 6, 2006. See Exhibit 2, Docket No. 42.

> SEC...and the documents that will in all likelihood soon be in the hands of the [non-securities] plaintiffs, [the securities lead plaintiff] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape. It would essentially be the only major interested party in the criminal and civil proceedings...without access to documents that currently form the core of those proceedings. This is especially troubling given the likelihood that settlement discussions will begin... . If [securities lead plaintiff] must wait until the resolution of a motion to dismiss to obtain discovery and formulate its settlement or litigation strategy, it faces the very real risk that it will be left to pursue its action against defendants who no longer have anything or at least as much to offer.

Worldcom, 234 F. Supp. 2d at 305-206 (lifting PSLRA discovery stay).

Likewise, the court in Labranche stated as follows:

> The Lead Plaintiffs must now determine their litigation strategy, principally whether or not to seek an early settlement to benefit the class without further expense. The requested discovery is essential to determine that strategy and to assist in formulating an appropriate settlement demand. The Lead Plaintiffs will suffer undue prejudice in having to defer such decisions. The Defendants have not demonstrated any burden imposed by complying now with the inevitable discovery.

333 F. Supp. 2d. at 183-184 (lifting PSLRA automatic stay to prevent securities plaintiffs from being "the only interested party without access" to materials produced to the SEC and being "prejudiced by their inability to make informed decisions about their litigation strategy in [the] rapidly shifting landscape" caused by defendants' agreement to settle regulator claims for $63.5 million). See also Seippel, 2005 WL 388561 at *2 (with governmental investigations and lawsuits ongoing, plaintiffs would be prejudiced if they lack access to documents already produced to others); Tyco, 2003 WL 23820479 at *4 (lifting automatic stay where securities plaintiffs "would be at a serious disadvantage" if denied access to documents produced to government investigators and other plaintiffs and keeping all

parties "on an equal footing with respect to discovery" serves case management interests).[14]

Here, Plaintiffs face real undue prejudice in their ability to prepare litigation strategies if they are precluded from gaining access to the documents and testimony that Defendants have already given to the SEC. Just like the plaintiffs in Royal Ahold, FirstEnergy Worldcom, Tyco, and Seippel, Plaintiffs are prosecuting their claims against a backdrop in which a governmental agency action (by the SEC) and a private action not subject to the PSLRA (the derivative case) are being pursued and are "moving apace." The Singer court stated that the SEC action alone is sufficient basis to warrant a lift of the PSLRA automatic stay, and the FirstEnergy court made clear that maintaining the stay with respect to materials already produced to government entities like the SEC in circumstances such as these does not further any policy behind the PSLRA. Thus, under the circumstances here, Plaintiffs will be unduly prejudiced if the PSLRA discovery stay remains in place, *in toto*.

### D. Defendants Would Face No Burden In Providing The Requested Limited Discovery

"When deciding whether or not to lift the PSLRA's discovery stay, 'it is customary to consider whether a production request places an undue burden on the party from which it is requested.'" Labranche, 333 F. Supp. 2d at 183 quoting Worldcom, 234 F. Supp. 2d at 306. Courts have found there to be no prejudice to the defendant where the requested documents "have already been found and compiled and plaintiffs will pay production costs."

---

[14] The mere existence of a governmental investigation and the fact that documents were produced to a government entity but not to the securities plaintiffs is enough to cause those plaintiffs to face "undue prejudice." See, e.g. Singer, 2003 WL 22013905 at *2 (rejecting argument against lifting automatic stay because defendants were not bankrupt or subject to other civil lawsuits, finding undue prejudice, and stating, "Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss.")

Singer, 2003 WL 22013905 at *2 quoted in Labranche, 333 F. Supp. 2d. at 183; Williams, 2003 WL 22013464 at *2 (noting that the documents sought had already been found, reviewed, organized, and produced to others and were readily available and that their production would therefore work no hardship on the defendant).  Indeed, under those circumstances, "[i]n a sense this discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse."  Enron, 2002 WL 31845114 at *2 (lifting PSLRA automatic stay and ordering production to securities plaintiffs of "hundreds of thousands" of document pages previously produced to governmental entities including the SEC) quoted in Labranche, 333 F. Supp. 2d at 183.

      Here, the burden on Defendants of producing the documents and testimony sought by Plaintiffs - i.e. those already given to the SEC - would be *diminimus*.  The testimony has already been given and transcripts already created.  The documents and materials have already been gathered, organized, reviewed, screened for privilege, and produced.  Further, Plaintiffs will pay all costs of production.  Under similar circumstances, the courts in Labranche, Worldcom, Singer, Williams, Enron, and Royal Ahold found that limiting the PSLRA automatic stay would impose no burden on the defendants.

## V.   Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion To Partially Lift The Automatic Stay Of Discovery Provided With Respect To Documents That Defendants Have Already Produced To The SEC.

Dated:       January 5, 2006            Respectfully submitted,

**SHAPIRO HABER & URMY LLP**


 **/s/ Edward F. Haber**
Edward F. Haber BBO #215620
Theodore M. Hess-Mahan BBO #557109
Matthew L. Tuccillo BBO # 643336
53 State Street
Boston, MA 02109
(617) 439-3939

**STULL, STULL & BRODY**
Jules Brody
Howard T. Longman
6 East 45th Street
New York, New York 10017
(212) 687-7230

**Co-Lead Counsel For
Lead Plaintiff and The Class**


## Certificate of Service

I hereby certify that this document, and all exhibits, both filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as nonregistered participants on the 6th day of January, 2006.

**/s/ Edward F. Haber**
Edward F. Haber