# EXHIBIT C

Westlaw.

69 FR 43351-01                                                          Page 1

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

PROPOSED RULES

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Food and Drug Administration

21 CFR Parts 312, 314, 600, and 601

[Docket No. 2004N-0267]

Applications for Approval to Market a New Drug; Complete Response Letter;
Amendments to Unapproved Applications

Tuesday, July 20, 2004

**\*43351**  AGENCY: Food and Drug Administration, HHS.

ACTION: Proposed rule.

SUMMARY: The Food and Drug Administration (FDA) is proposing to amend our
regulations on new drug applications (NDAs) and abbreviated new drug applications
(ANDAs) for approval to market new drugs and generic drugs.  We propose to
discontinue the use of approvable letters and not approvable letters when taking
action on marketing applications.  Instead, we intend to use complete response
letters to indicate that the review cycle is complete and that the application is
not ready for approval.  We also are proposing to revise the regulations on
extending the review cycle due to the submission of an amendment to an unapproved
application and starting a new cycle after a resubmission following receipt of a
complete response letter.  In addition, we are proposing to add to the regulations
on biologics license applications (BLAs) a provision on the issuance of complete
response letters to BLA applicants.  We are taking these actions to implement the
user fee performance goals referenced in the Prescription Drug User Fee Amendments
of 2002 that address procedures and establish target timeframes for reviewing
human drug applications.

DATES: Submit written or electronic comments by October 18, 2004.  See section
VIII of this document for the proposed effective date of a final rule based on
this document.

ADDRESSES: You may submit comments, identified by [Docket No. 2004N-0267], by any
of the following methods:

  . Federal eRulemaking Portal: http://www.regulations.gov.  Follow the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                      Page 2

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


instructions for submitting comments.

. Agency Web Site: http://www.fda.gov/dockets/ecomments.  Follow the
instructions for submitting comments on the agency Web site.

. E-mail: fdadockets@oc.fda.gov.        Include [Docket No. 2004N-0267] in the
subject line of your e-mail message.

. Fax: 301-827-6870.

. Mail/Hand delivery/Courier [For paper, disk, or CD-ROM submissions]: Division
of Dockets Management (HFA-305), Food and Drug Administration, 5630 Fishers Lane,
rm.  1061, Rockville, MD 20852.

Instructions: All submissions received must include the agency name and  [Docket
No. 2004N-0267] for this rulemaking.  All comments received will be posted without
change to http://www.fda.gov/dockets/ecomments, including any personal information
provided.  For detailed instructions on submitting comments and additional
information on the rulemaking process, see the "Request for Comments" heading in
the SUPPLEMENTARY INFORMATION section of this document.

Docket: For access to the docket to read background documents or comments
received, go to http://www.fda.gov/dockets/ecomments and/or the Division of
Dockets Management, 5630 Fishers Lane, rm.  1061, Rockville, MD 20852.

The Office of Management and Budget (OMB) is still experiencing significant
delays in the regular mail, including first class and express mail, and messenger
deliveries are not being accepted.  To ensure that comments on the information
collection are received, OMB recommends that written comments be faxed to the
Office of Information and Regulatory Affairs, OMB, Attn: Fumie Yokota, Desk
Officer for FDA, FAX: 202-395-6974.

FOR FURTHER INFORMATION CONTACT: Brian L. Pendleton, Center for Drug Evaluation
and Research (HFD-7), Food and Drug Administration, 5600 Fishers Lane, Rockville,
MD 20857, 301-443-5523.

SUPPLEMENTARY INFORMATION:

I. Background

A. User Fee Performance Goals and Complete Response Letters

In conjunction with the Prescription Drug User Fee Act of 1992 (PDUFA) (  Public
Law 102-571), we committed to meet certain goals for reviewing and acting on human
drug applications, as defined in section 735(1) of the Federal Food, Drug, and
Cosmetic Act (the act) (21 U.S.C. 379g(1)).  For example, we promised that by
September 30, 1997, we would review and act on at least 90 percent of standard
NDAs within 12 months after the submission date (H. Rep. No. 895, 102d Cong., 2d.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 3

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

sess. 32 (1992) (letter from David A. Kessler, M.D., Commissioner of Food and
Drugs, to Representatives John Dingell and Norman Lent, House Committee on Energy
and Commerce (September 14, 1992))).

FDA's drug application review performance goals were revised with the enactment
of the Food and Drug Administration Modernization Act of 1997 (Public Law 105-115)
(the user fee provisions of this act are known as "PDUFA II").  The goals were
further revised in conjunction with the enactment of the Prescription Drug User
Fee Amendments of 2002 (PDUFA III), set forth in title V, subtitle A, of the
Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (
Public Law 107-188).  Section 502 of PDUFA III states that user fees will be
dedicated to expediting the drug development process and the process for the
review of human drug applications in accordance with the new performance goals,
which are set forth in an enclosure to letters from Tommy Thompson, Secretary of
Health and Human Services, to the Chairman of the House Committee on Energy and
Commerce and the Ranking Member of the Senate Committee on Health, Education,
Labor and Pensions (June 4, 2002) (Goals Letter).

Under the user fee performance goals, the term "review and act on" is defined as
the issuance of a complete action letter after the complete review of a complete
application that we have accepted for filing (Goals Letter at 15).  An action
letter, if not an approval, states the specific deficiencies of the application,
and where appropriate, the actions necessary to place the application in condition
for approval (id.).

As part of the user fee performance goals (first in PDUFA II and again in PDUFA
III), FDA's Center for Drug Evaluation and Research (CDER) and **43352** Center for
Biologics Evaluation and Research (CBER) agreed to revise their regulations and
procedures to provide for the issuance of either an approval or a "complete
response" action letter at the completion of the review cycle for an application
(Goals Letter at 15).  We are now proposing to revise our regulations on human
drugs in part 314 (21 CFR part 314) to replace two types of action letters
currently used, approvable letters (§ 314.110) and not approvable letters (§
314.120), with complete response letters.  Because there are no provisions on
action letters in the biological product regulations in parts 600 through 680 (21
CFR parts 600 through 680), CBER had only to change their standard operating
procedures to incorporate the use of a complete response letter at the end of a
review cycle for a biological product. Although CBER has already done this, we are
now proposing to add a regulation (proposed § 601.3) on the issuance of complete
response letters concerning BLAs and BLA supplements.

In replacing approvable and not approvable letters with complete response
letters, our intent is to adopt a consistent and more neutral mechanism to convey
that we cannot approve a drug marketing application in its current form.
Historically, FDA issued a not approvable letter when deficiencies were major
(e.g., no adequate and well-controlled studies, failure to demonstrate
effectiveness, and a major safety concern).  However, the distinction between
approvable and not approvable letters became somewhat blurred.  For example, in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

some cases, the absence of a second study supporting the effectiveness of a proposed drug product for a particular indication might have led to a not approvable letter; in other cases, FDA might have issued an approvable letter stating the need for additional evidence. Thus, issuance of an approvable letter might mean that an application needed only minor changes, such as a revision of labeling, or much more substantial changes. In addition, we subsequently approved many applications for which we had first issued a not approvable letter. Issuance of complete response letters will ensure a consistent approach to informing sponsors of needed changes before we can approve an application, with no implication as to the ultimate approvability of the application.

We also intend to incorporate into the regulations for NDAs the terminology based on the user fee performance goals regarding Class 1 and Class 2 resubmissions. A "Class 1 resubmission" is defined for performance goal purposes as an application resubmitted after receipt of an approvable or not approvable letter that includes only certain items such as draft or final printed labeling, safety or stability updates, or other minor clarifying information. A "Class 2 resubmission" is one that addresses any other items, including any item that would require presentation to an advisory committee. A Class 1 resubmission has a performance goal of 2 months and a Class 2 resubmission has a performance goal of 6 months. In accordance with the user fee goals, we are proposing to apply this terminology to original NDAs as well as to efficacy supplements (supplements to approved applications to make certain significant changes to product labeling). As a result, efficacy supplements would be treated like original NDAs with regard to resubmissions. We are proposing to apply different rules to resubmissions of other types of NDA supplements.

B. ANDAs

Although the user fee performance goals do not apply to ANDAs, the current regulations regarding approvable and not approvable letters in §§ 314.110 and 314.120 apply to both NDAs and ANDAs (with a few exceptions). As a result, any proposed change to the regulations for NDAs must take into account the impact on ANDAs. Because we intend to change the regulations for NDAs and we believe that these changes make sense for other applications, we have decided to propose similar changes for ANDAs.

C. Amendments to Unapproved Applications

The PDUFA performance goals also state that a major amendment to an unapproved application submitted within 3 months of the goal date (i.e., the end of the initial review cycle) extends the goal date by 3 months. We are proposing to incorporate this provision into our regulations by revising § 314.60 on amendments to unapproved applications. In accordance with the user fee goals, we are proposing to apply this provision to efficacy supplements and resubmissions of applications and efficacy supplements as well, but not to ANDAs.

II. Highlights of the Proposed Rule

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                                    Page 5

69 FR 43351-01, 2004 WL 1599720 (F.R.)

(Cite as: 69 FR 43351)

A. Complete Response Letters

In accordance with the PDUFA performance goals and in response to the concerns previously discussed, we are proposing to substitute complete response letters for approvable and not approvable letters at the completion of the review cycle for an NDA or ANDA. Under proposed § 314.110, we will send a complete response letter if we determine that we will not approve an application or abbreviated application in its present form. The complete response letter usually would describe all of the specific deficiencies in the application or abbreviated application. If we determine, after an application is filed or an abbreviated application is received, that the data submitted are inadequate to support approval, we might issue a complete response letter without first conducting required inspections and/or reviewing proposed product labeling.

Table 1 of this document summarizes the changes that we propose to make in substituting complete response letters for approvable and not approvable letters:

Table 1.--Summary of Proposed Changes Regarding Substitution of Complete Response Letter for Approvable and Not Approvable Letters

| Current Regulations | Proposed Regulations |
|---|---|
| Approvable Letter for NDA .................... | Complete Response Letter |
| . States that NDA is basically approvable if certain issues are resolved................. | . States that FDA will not approve NDA or ANDA in its present form. |
| . Indicates that NDA substantially meets requirements of part 314 (21 CFR part 314) and FDA can approve it if applicant submits additional information or agrees to specific conditions (e.g., labeling changes)................................. | . Describes all specific deficiencies, except when issued without conducting required inspections or labeling review because data found to be inadequate to support approval. |
| Approvable Letter for ANDA ................. | ................................. |
| . Indicates that ANDA substantially meets requirements of part 314 and is approvable if minor deficiencies are corrected......... | . Reflects complete review of data in NDA or ANDA as well as |

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 6

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

| | amendments for which review cycle was extended. |
|---|---|
| . Describes deficiencies and states when applicant must respond....................... | . Where appropriate, describes actions necessary to place NDA or ANDA in condition for approval. |
| Not Approvable Letter for NDA or ANDA ....... | ................................ |
| . States that NDA cannot be approved for one of reasons in § 314.125 or ANDA cannot be approved for one of reasons in § 314.127.... | ................................ |
| . Describes deficiencies in NDA or ANDA...... | ................................ |


**\*43353** For products for which approval of a BLA is required for marketing, we are proposing to adopt a new regulation, § 601.3, stating that FDA will send a BLA a complete response letter if we determine that we will not approve the BLA or BLA supplement in its present form.

B. Resubmissions

We also propose to revise the current provisions in §§ 314.110 and 314.120 on extension of the review period due to resubmission of an NDA or ANDA after receipt of an approvable or not approvable letter (to be replaced by a complete response letter). We propose that a Class 2 resubmission of an NDA following receipt of a complete response letter would start a new 6-month review cycle, as is the case with an "amendment" following receipt of a not approvable letter under current § 314.120(a)(1). A Class 1 resubmission of an NDA following receipt of a complete response letter would start a new 2-month review cycle.

The proposed rules on Class 1 and Class 2 resubmissions would also apply to efficacy supplements to NDAs, in accordance with the user fee performance goals. We believe that this is appropriate because efficacy supplements, like original applications, contain varying amounts of data. Where extensive data requiring significant agency resources for review are provided, the current 6- month review cycle should apply. But as with some NDA resubmissions, it would be appropriate to consider some smaller resubmissions of efficacy supplements as Class 1 resubmissions. We propose to apply different rules and terminology to other types of NDA supplements, including supplements dealing with chemistry, manufacturing, and controls (CMC) and labeling supplements for which no clinical data are needed. For NDA supplements other than efficacy supplements, a resubmission would start a new 6-month review cycle.

A "major" resubmission of an ANDA following receipt of a complete response letter would start a new 6-month review cycle, as is the case with an "amendment"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 7

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


following receipt of a not approvable letter under current § 314.120(a)(1).  A
"minor" resubmission of an ANDA would start a new review cycle of an unspecified
length; the period might last from 30 days to a few months, depending on the
issues involved.  Under the relevant current CDER guidance document, entitled
"Major, Minor, and Telephone Amendments to Abbreviated New Drug Applications"
(December 2001), a minor resubmission usually would start a new review cycle of
between 30 to 60 days.

 The proposed changes to our regulations on applicants' responses to action
letters are summarized in the following table 2.


   Table 2.--Summary of Proposed Changes to Regulations Regarding Applicant's
               Response to Agency Action Letter (Resubmissions)

| Current Regulations | Proposed Regulations |
|---|---|
| Applicant's Response to Approvable Letter or Not Approvable Letter for NDA (or NDA Supplement) ............................. | NDA or ANDA Applicant's Response to Complete Response Letter |
| Within 10 days of date of letter, NDA applicant must do one of following: ...... | Review period is extended until applicant takes one of following actions: |
| . Amend application or notify FDA of intent to file amendment........................ | . Resubmit NDA or ANDA, addressing identified deficiencies. |
| . Withdraw application...................... | --Class 1 resubmission of NDA or efficacy supplement starts new, 2-month cycle |
| . Request opportunity for hearing........... | --Class 2 resubmission of NDA or efficacy supplement starts new, 6-month cycle |
| . Agree to extend review period to decide which of above actions to take............ | --Resubmission of NDA supplement other than efficacy supplement starts new, 6-month cycle |
| Response to Approvable Letter for ANDA (or ANDA Supplement) ........................ | ................................. |
| . Correct deficiencies by specified date or FDA will refuse to approve ANDA or ANDA supplement................................. | --Major resubmission of ANDA or ANDA supplement starts new, 6-month cycle |

     © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                   Page 8

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


. Request opportunity for hearing within 10
  days..................................... --Minor resubmission of ANDA or
                                             ANDA supplement starts new cycle
                                             of variable length
------------------------------------------------------------------------
Response to Not Approvable Letter for ANDA
  (or ANDA Supplement) ....................  ...................................
------------------------------------------------------------------------
. Same as for NDAs except that 10-day
  period does not apply (with exception of
  request for opportunity for hearing)...... . Withdraw NDA or ANDA.
. FDA may regard failure to respond within
  180 days as request to withdraw.......... . Request opportunity for hearing.
------------------------------------------------------------------------


   **\*43354** These proposed changes with respect to NDAs are consistent with our user
fee performance goals for resubmissions of human drug applications following
receipt of an action letter.  The proposed provisions for ANDAs are similar,
although not identical, to those for NDAs.

C. Amendments to Unapproved Applications

   In accordance with our user fee goals, we are proposing to revise our regulations
on extending the review cycle following the submission of an amendment to an
unapproved NDA.  Under current § 314.60, the submission of a major amendment to an
unapproved NDA (such as one that contains significant new data from a previously
unreported study or detailed new analyses of earlier data) may extend the review
period by up to 180 days.  Under the user fee goals, a major amendment to an
original NDA submitted within 3 months of the goal date extends the goal date by 3
months (Goals Letter at 15).  Therefore, we propose to revise § 314.60 to state
that submission of a major amendment to an original NDA within 3 months of the end
of the initial review cycle constitutes an agreement to extend the review cycle by
3 months.  The proposed regulation states that FDA may instead defer review of
such an amendment until the subsequent review cycle.

   Under the proposal, the submission of a major amendment to an NDA more than 3
months before the close of the initial review cycle, or the submission of a minor
amendment during the initial review cycle, would not extend the review cycle.  FDA
might, at its discretion, review such an amendment during the initial review cycle
or defer review until the subsequent review cycle.  This proposed change to §
314.60 would codify for all NDAs our current policy on extending the review cycle
for amendments to unapproved NDAs that are subject to user fees.

   Also in accordance with the user fee goals, we are proposing to revise the
regulations to provide that submission of a major amendment to an efficacy
supplement to an approved application within 3 months of the end of the initial
review cycle constitutes an agreement to extend the review cycle for the

                © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                                    Page 9

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

supplement by 3 months (although we could defer review to the subsequent cycle). It is appropriate to treat major amendments to efficacy supplements the same way as major amendments to original applications because their review requires significant agency resources. Amendments to other types of NDA supplements, however, will not extend the review cycle.

An additional change that is consistent with the user fee goals would provide that the submission of a major amendment to a resubmission of an application or efficacy supplement within 3 months of the end of the initial review cycle constitutes an agreement to extend the review cycle by 3 months (again, we could elect to defer review). Because major amendments to these resubmissions generally require the review of substantial data, it is appropriate to treat them the same way as major amendments to original applications or efficacy supplements.

We propose to make only minor revisions to the regulations on submitting amendments to unapproved ANDAs in § 314.96. The proposed rule would clarify that an amendment to an ANDA submitted before the end of the initial review cycle that contains significant data or information could extend the initial review cycle by as many as 180 days.

Table 3 of this document summarizes the proposed changes to our regulations on amendments submitted before an action letter:

Table 3.--Summary of Proposed Changes to Regulations on Amendments Submitted
                      Prior to Action Letter
-------------------------------------------------------------------------------
    Current Regulations                    Proposed Regulations
-------------------------------------------------------------------------------
Amendments to Unapproved
  NDAs and NDA Supplements .. Amendments to Unapproved NDAs and Efficacy
                                        Supplements
-------------------------------------------------------------------------------
. Submission of major
  amendment constitutes
  agreement to extend
  deadline for FDA decision.. . Submission of major amendment within 3 months
                                of end of initial review cycle constitutes
                                agreement to extend cycle by 3 months; FDA may
                                instead defer review to subsequent cycle.
. FDA may not extend review
  period more than 180 days.. . Initial review cycle may be extended only once
                                for major amendment.
. Submission of nonmajor
  amendment will not extend
  review period.............. . Submission of major amendment more than 3
                                months before end of initial review cycle will
                                not extend cycle.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 10

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

--------------------------------------------------------------------
Amendments to Unapproved
  ANDAs and ANDA Supplements  . Submission of minor amendment will not extend
                                review cycle.
--------------------------------------------------------------------
. Submission of amendment
  containing significant
  data or information
  constitutes agreement to
  extend review period up to
  180 days.................  .................................................
. Same for amendments to
  unapproved ANDA
  supplements..............  .................................................
--------------------------------------------------------------------
                             Amendments to Unapproved NDA Supplements Other
                               Than Efficacy Supplements
--------------------------------------------------------------------
                             . Submission of any amendment will not extend the
                               initial review cycle.
--------------------------------------------------------------------
                             Amendments to Resubmissions of Applications and
                               Efficacy Supplements
--------------------------------------------------------------------
                             . Submission of major amendment within 3 months
                               of end of initial review cycle constitutes
                               agreement to extend cycle by 3 months; FDA may
                               instead defer review to subsequent cycle.
--------------------------------------------------------------------
                             Amendments to Unapproved ANDAs and ANDA
                               Supplements
--------------------------------------------------------------------
                             . Unchanged
--------------------------------------------------------------------


*43355 III.  Description of the Proposed Rule

 The proposed rule would make the following five types of revisions and additions
to the regulations: (1) Revisions to remove the use of approvable and not
approvable letters for NDAs and ANDAs and to incorporate the use of complete
response letters and use of the term "review cycle", (2) addition of provisions on
the issuance of complete response letters concerning BLAs and BLA supplements, (3)
revisions related to resubmissions of NDAs and ANDAs after receipt of complete
response letters, (4) miscellaneous technical revisions related to the use of
complete response letters for NDAs and ANDAs, and (5) revisions related to
amendments to unapproved NDAs and ANDAs.

          © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 11

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


A. The Complete Response Letter and the Review Cycle for NDAs and ANDAs

1. Definitions (Proposed § 314.3)

  Current § 314.3(b) defines "approvable letter" and "not approvable letter." We
propose to revise § 314.3(b) by removing these definitions and adding a definition
of "complete response letter." A complete response letter would be defined as a
written communication to an applicant from FDA usually identifying all of the
deficiencies in an application or abbreviated application that must be
satisfactorily addressed before it can be approved.  (Under current § 314.3,
"application" refers to an NDA and "abbreviated application" refers to an ANDA.)

  We also propose to revise § 314.3(b) by adding a definition of "original
application." An original application would be defined as a pending application
for which we have never issued a complete response letter or approval letter or an
application that was submitted again after we had refused to file it or after it
was withdrawn without being approved.

  We also propose to add definitions of "Class 1 resubmission" and "Class 2
resubmission" for resubmissions of NDAs.  A "Class 1 resubmission" would be
defined as the resubmission of an application (i.e., an NDA), following receipt of
a complete response letter, that contains final printed labeling, draft labeling,
certain safety updates, stability updates to support provisional or final dating
periods, commitments to perform Phase 4 studies (including proposals for such
studies), assay validation data, final release testing on the last lots used to
support approval, minor reanalyses of previously submitted data, and other
comparatively minor information. [FN1] A "Class 2 resubmission" would be defined
as the resubmission of an application, following receipt of a complete response
letter, that includes any item not specified in the definition of "Class 1
resubmission," including any item that would require presentation to an advisory
committee.  These definitions of Class 1 and Class 2 resubmissions of NDAs reflect
those stated in the Goals Letter and will not be applied to ANDAs.

  FN1 This definition of Class 1 resubmission matches the definition stated in the
user fee Goals Letter, except that the latter refers to "other minor clarifying
information" and states that "[o]ther specific items may be added later as the
Agency gains experience with the scheme and will be communicated via guidance
documents to industry" (Goals Letter at 16).  The proposed definition would allow
resubmissions that contain unspecified information of a comparatively minor nature
to be treated as Class 1 resubmissions.  FDA might address specific types of such
resubmissions in agency guidance.

  In addition, we propose to revise § 314.3(b) to add a definition of  "efficacy
supplement." An "efficacy supplement" would be defined as a supplement to an
approved NDA to make one or more of the following changes to product labeling: (1)
Add or modify an indication for use, (2) revise the dose or dose regimen, (3)
provide for a new route of administration, (4) make a comparative efficacy claim
naming another drug product, (5) significantly alter the intended patient

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                      Page 12

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

population, (6) change the marketing status from prescription to over-the-counter use, (7) complete the traditional approval of a product originally approved under subpart H of part 314, or (8) incorporate other information based on at least one adequate and well-controlled clinical study.

2. Timeframes for Review (Proposed § 314.100)

Current § 314.100 addresses the timeframes for reviewing applications and abbreviated applications. Section 314.100(a) states that within 180 days of receipt of an application for a new drug under section 505(b) of the act (21 U.S.C. 355(b)) or of an abbreviated application for a new drug under section 505(j) of the act, FDA will review it and send the applicant either an approval letter under § 314.105, an approvable letter under § 314.110, or a not approvable letter under § 314.120. This 180-day period is called the review clock.

We propose to revise § 314.100(a) by creating two separate provisions reflecting different review cycles for applications that are subject to user fees and those that are not subject to such fees. Proposed § 314.100(a)(1) states that, except as provided in **43356** § 314.100(a)(2), within 180 days of receipt of an application for a new drug under section 505(b) of the act or of an abbreviated application for a new drug under section 505(j) of the act, FDA will review it and send the applicant either an approval letter under § 314.105 or a complete response letter under § 314.110. We propose to rename this 180-day period the "initial review cycle" to be consistent with the term we currently use.

Proposed § 314.100(a)(2) states that, for applications that are human drug applications, as defined in section 735(1)(A) and (B) of the act (NDAs), or supplements to such applications, as defined in section 735(2) of the act, the initial review cycle will be adjusted to be consistent with our user fee performance goals for reviewing such applications and supplements. We are making this change to reflect that, under the user fee performance goals, we are not expected to review and act on all applications that are subject to user fees within 180 days of receipt of such applications. Rather, we have committed to take action on certain percentages of applications within different time periods, depending on the type of application (e.g., standard, priority, supplement, resubmission) and the relevant fiscal year (see Goals Letter at 1, 2, and 3). In some cases, such as CMC supplements that require prior approval, we have committed to taking action in less than 180 days. Consequently, proposed § 314.100(a)(2) reflects that the initial review cycle for human drug applications and supplements to such applications may in some cases be shorter or longer than 180 days.

Current § 314.100(b) states that, during the review period, an applicant may withdraw an application under § 314.65 or an abbreviated application under § 314.99 and later resubmit it. We will treat the subsequent submission as a new original application or abbreviated application. Current § 314.100(b) uses the term "review period" rather than "review clock" because it is intended to address withdrawals made at any time while an application or abbreviated application is pending before the agency (i.e., filed but not yet approved), not simply

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                      Page 13

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

withdrawals made while the review clock is running. (Although not defined in the regulations, the "review period" means the period from filing of an NDA or receipt of an ANDA to the ultimate disposition of the application, either by approval, refusal to approve the NDA under § 314.125 or the ANDA under § 314.127, or withdrawal of the application.) Rather than use the term "review period" or "review clock," we propose to clarify § 314.100(b) by stating that, at any time before approval, an applicant may withdraw an application under § 314.65 or an abbreviated application under § 314.99 and later submit it again for consideration. We propose to substitute the phrase "submit it again" for "resubmit it" because we want to limit the terms "resubmit" and "resubmission" in part 314 to resubmissions after receipt of a complete response letter.

Current § 314.100(c) states that the review clock may be extended by mutual agreement between FDA and an applicant or as provided in §§ 314.60 or 314.96, as the result of a major amendment. To be consistent with proposed § 314.100(a)(1), we propose to revise this provision by substituting "initial review cycle" for "review clock."

3. Filing an NDA and Receiving an ANDA (Proposed § 314.101)

Current § 314.101(f)(1) states that within 180 days after the date of filing of an NDA, plus the period of time the review period was extended (if any), FDA will either approve the application or issue a notice of opportunity for hearing if the applicant asked FDA to provide it an opportunity for a hearing on an application in response to an approvable letter or a not approvable letter.

Consistent with our proposed revision of § 314.100(a), we are proposing to add a new § 314.101(f)(2) (redesignating current § 314.101(f)(2) and (f)(3) as § 314.101(f)(3) and (f)(4), respectively). The new section states that for applications that are human drug applications, as defined in section 735(1)(A) and (B) of the act, and supplements to such applications, as defined in section 735(2) of the act, the 180-day period specified in § 314.101(f)(1) will be adjusted to be consistent with the agency's user fee performance goals for reviewing such applications and supplements. We also propose to replace references in current § 314.101(f) to approvable and/or not approvable letters with references to complete response letters.

4. Approvable and Not Approvable Letters (Proposed §§ 314.110 and 314.120)

Current § 314.110 sets forth provisions on the issuance of and response to approvable letters. Section 314.110(a) states that it may be appropriate for FDA to issue an approvable letter at the end of a review period to inform an applicant that its application or abbreviated application is basically approvable if the applicant resolves certain issues. It also states that an approvable letter signifies that we believe that we can approve the application or abbreviated application if the applicant submits specific additional information or material or agrees to specific conditions (e.g., changes in labeling). Section 314.110(a) further states that as a practical matter, an approvable letter in most instances

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 14

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

serves as a mechanism for resolving outstanding issues on drugs that are about to be approved and marketed.

Current § 314.120 addresses the agency's issuance of not approvable letters to applicants and applicants' responses to such letters. Section 314.120(a) states that we will send an applicant a not approvable letter if we believe that the application may not be approved for one of the reasons given in § 314.125, or that an abbreviated application may not be approved for one of the reasons given in § 314.127.

We propose to revise § 314.110 (and to remove and reserve § 314.120) by replacing references to approvable letters and not approvable letters with references to complete response letters.

a.  Issuance of complete response letters.  Proposed § 314.110 is entitled "Complete response letter to the applicant." Proposed § 314.110(a) states that we will send the applicant a complete response letter if we determine that we will not approve the application or abbreviated application in its present form for one or more of the reasons given in § 314.125 or § 314.127, respectively.

Proposed § 314.110(a)(1) states that a complete response letter will describe all of the specific deficiencies in the application or abbreviated application, except as stated in proposed § 314.110(a)(3).  (Under current procedures, we might also notify the applicant of deficiencies in certain parts of the application or abbreviated application before issuance of a complete response letter.)

Following issuance of a complete response letter, we would not expect to identify any additional deficiencies in an NDA or ANDA.  However, it is possible that we might find additional deficiencies in an application following review of: (1) Data submitted in an amendment not reviewed before issuance of the complete response letter, (2) a resubmission containing new data or analyses, or (3) additional safety data obtained from any source.  These additional deficiencies might be based wholly on the newly submitted data or might reflect new analyses of previous data prompted by the new data.  Finally, it is also possible that we might find **\*43357** additional deficiencies in previously reviewed data on the basis of advice from an advisory committee.

Proposed § 314.110(a)(2) states that the complete response letter reflects FDA's complete review of the data submitted in an original application or abbreviated application (or, where appropriate, a resubmission) and any amendments for which the review cycle was extended.  It adds that the complete response letter will identify any amendments for which the review cycle was not extended that we have not yet reviewed.

Proposed § 314.110(a)(3) states that if we determine, after an application is filed or an abbreviated application is received, that the data submitted are inadequate to support approval, we might issue a complete response letter without first conducting required inspections and/or reviewing proposed product labeling.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 15

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


Proposed § 314.110(a)(4) states that, where appropriate, a complete response letter will describe the actions necessary to place the application or abbreviated application in condition for approval.

b.  Responses to complete response letters.  Current § 314.110(a) states that within 10 days after the date of an approvable letter, the sponsor of an NDA must respond in one of the following several ways: (1) Amend the application (or notify us of an intent to do so), (2) withdraw the application (failure to respond within 10 days to an approvable letter is regarded as a request to withdraw the application), (3) ask us to provide the applicant with an opportunity for a hearing on whether there are grounds for denying the approval of the application under section 505(d) of the act, or (4) notify us that the applicant agrees to extend the review period under section 505(c) of the act so that the applicant can determine whether to take one of the previously listed actions.

Current § 314.110(b) addresses the issuance of approvable letters to ANDA applicants.  Under § 314.110(b), we will send an ANDA applicant an approvable letter only if the abbreviated application substantially meets the requirements of part 314 and we believe that we can approve it if minor deficiencies (e.g., regarding labeling) are corrected.  The approvable letter describes the deficiencies in the ANDA and states a date by which the applicant must respond. Unless the applicant corrects the deficiencies within the specified period, FDA will refuse to approve the ANDA.  Within 10 days of the date of the approvable letter, the applicant may request an opportunity for a hearing.

In proposed § 314.110(b), we direct both NDA and ANDA applicants to take one of three actions following receipt of a complete response letter, eliminating (except with respect to resubmissions) the separate provisions for ANDAs in current § 314.110(b).  We also propose to delete the requirement that NDA applicants take action within 10 days.

The first option for the recipient of a complete response letter, stated in proposed § 314.110(b)(1), is to resubmit the application or abbreviated application, addressing all deficiencies identified in the letter.  For purposes of § 314.110, a resubmission would mean the submission by an applicant of all materials needed to fully address all deficiencies identified in the complete response letter.

Under proposed § 314.110(b)(1)(i), a resubmission of an NDA or an efficacy supplement that we classify as a Class 1 resubmission would constitute an agreement by the applicant to start a new 2-month review cycle beginning on the date we receive the resubmission.  Under proposed § 314.110(b)(1)(ii), a resubmission of an NDA or an efficacy supplement that we classify as a Class 2 resubmission would constitute an agreement by the applicant to start a new 6-month review cycle beginning on the date we receive the resubmission.

For NDA supplements other than efficacy supplements, such as a supplement for a change in CMC or a labeling supplement that does not require clinical data, we

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 16

69 FR 43351-01, 2004 WL 1599720 (F.R.)

(Cite as: 69 FR 43351)

propose to retain the current practice of not applying the Class 1 and Class 2 terminology and review cycle lengths.  Thus, under proposed § 314.110(b)(1)(iii), a resubmission of an NDA supplement other than an efficacy supplement would constitute an agreement by the applicant to start a new 6-month review cycle beginning on the date we receive the resubmission.

For resubmissions of ANDAs, we propose to continue the current practice of categorizing them as "major" or "minor." Under proposed § 314.110(b)(1)(iv), a major resubmission of an ANDA would constitute an agreement by the applicant to start a new 6-month review cycle beginning on the date we receive the resubmission.  Under proposed § 314.110(b)(1)(v), a minor resubmission of an ANDA would constitute an agreement to start a new review cycle (length unspecified) beginning on the date we receive the resubmission.  The actual length of the cycle would depend on the contents of the resubmission.  As noted in section II.C of this document, CDER's guidance on "Major, Minor, and Telephone Amendments to Abbreviated New Drug Applications" provides guidance on how the agency handles these resubmissions.  The guidance states that CDER attempts to review most minor amendments within 30 to 60 days, and we intend to apply this to minor resubmissions of ANDAs.  Under the proposed rule, resubmissions of supplements to approved ANDAs would continue to be treated the same as ANDA resubmissions in accordance with § 314.97.

The second option for the recipient of a complete response letter, stated in proposed § 314.110(b)(2), is to withdraw the application or abbreviated application.  A decision to withdraw an application or abbreviated application would be without prejudice to a subsequent submission.

The third option for the recipient of a complete response letter, stated in proposed § 314.110(b)(3), is to ask us to provide the applicant an opportunity for a hearing on the question of whether there are grounds for denying approval of the application or abbreviated application under section 505(d) or (j)(4) of the act, respectively.  Within 60 days of the date of a request for an opportunity for a hearing, or within a different time period to which we and the applicant agree, we would take either of the following actions: (1) Approve the application or abbreviated application under § 314.105 or (2) refuse to approve the NDA under § 314.125 or the ANDA under § 314.127 and give the applicant written notice of an opportunity for a hearing under § 314.200 and section 505(c)(1)(B) or (j)(5)(C) of the act on the question of whether there are grounds for denying approval of the application.

Under proposed § 314.110(c), an applicant agrees to extend the review period under section 505(c)(1) of the act until it takes any of the actions listed in proposed § 314.110(b).  Section 505(c)(1) of the act directs FDA, within 180 days after the filing of an application under section 505(b) of the act or an additional period agreed upon by the applicant and the agency, to either approve the application (if we find that none of the grounds for denying approval stated in section 505(d) of the act applies) or give the applicant an opportunity for a hearing under section 505(d) on the question of whether such application is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 17

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

approvable.  Thus, the addition of the provision on agreement to extend the review period in proposed § 314.110(c) would ensure that, if we do not approve an application, the applicant is provided a notice of opportunity for a hearing within the time specified by section 505(c)(1) of the act.  **\*43358**

  Proposed § 314.110(c) further states that we may consider an NDA applicant's failure to take any of the actions listed in § 314.110(b) within 1 year after receiving a complete response letter to be a request by the applicant to withdraw the application.  However, regarding ANDAs, proposed § 314.110(c) states that we may consider an applicant's failure to take any of the listed actions within 6 months after receiving a complete response letter to be a request by the applicant to withdraw the abbreviated application.  We believe that the shorter time period for ANDAs is appropriate because an ANDA resubmission is not likely to involve generation of clinical data and deficiencies normally could be addressed within 6 months.

  Because we propose to revise current § 314.110 to state the provisions on complete response letters, we propose to delete current § 314.120 on not approvable letters and to reserve this section for future use.

B. Complete Response Letter for BLAs

  To incorporate into the biologics regulations the use of complete response letters for BLAs, we are proposing to add a definition of "complete response letter" to § 600.3 and to add § 601.3 on complete response letters.

1. Definition (Proposed § 600.3)

  We propose to add to current § 600.3, paragraph (jj) to define a complete response letter.  Under proposed § 600.3(jj), a complete response letter would be defined as a written communication to an applicant from FDA usually identifying all of the deficiencies in a biologics license application or supplement that must be satisfactorily addressed before it can be approved. (Current § 600.3(gg) defines a "supplement" as a request to the Director, Center for Biologics Evaluation and Research, to approve a change in an approved license application.)

2. Complete Response Letter to the Applicant (Proposed § 601.3)

  To incorporate current CBER policy into the regulations, we are proposing to establish a new § 601.3 on complete response letters.  Under proposed § 601.3(a), FDA will send the biologics license applicant or supplement applicant a complete response letter if we determine that we will not approve the biologics license application or supplement in its present form.

  Under proposed § 601.3(b), a biologics license applicant or supplement applicant must take one of two actions after receiving a complete response letter.  Under proposed § 601.3(b)(1), the license or supplement applicant may resubmit the application or supplement, addressing all deficiencies identified in the complete

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                      Page 18

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

response letter.  Under proposed § 601.3(b)(2), the license or supplement
applicant may withdraw the application or supplement; a decision to withdraw would
be without prejudice to a subsequent submission.

 Finally, under proposed § 601.3(c), FDA may consider a biologics license
applicant or supplement applicant's failure to either resubmit or withdraw the
application or supplement within 1 year after receiving a complete response letter
to be a request by the applicant to withdraw the application or supplement.

C. Miscellaneous Revisions Related to Adoption of Complete Response Letters for
NDAs and ANDAs

 To reflect FDA's use of complete response letters for NDAs and ANDAs, the agency
proposes to make the following additional revisions to its regulations:

1. Content and Format of Applications (Proposed § 314.50)

 Current § 314.50 specifies the content and format of NDAs.  Section 314.50(d)
describes the technical sections required in each application.  Section
314.50(d)(5)(vi)(b) states that an applicant periodically must update its pending
application with new safety information that might affect the statement of
contraindications, warnings, precautions, and adverse reactions in the draft
labeling.  The applicant must file these safety update reports 4 months after the
initial submission, after receiving an approvable letter, and when otherwise
requested by FDA.

 We propose to revise § 314.50(d)(5)(vi)(b) by replacing the requirement to submit
a safety update report following receipt of an approvable letter with a
requirement to submit a safety update report in a resubmission following receipt
of a complete response letter.  This would ensure that we have more extensive
safety information than was available at the time of the original submission.  In
addition, we could, if appropriate, require submission of a safety update report
immediately before issuing an approval letter under the current provision that
allows us to require submission of a report "at other times as requested by FDA."

2. Withdrawal by the Applicant of an Unapproved Application (Proposed § 314.65)

 Current § 314.65 states that an applicant may at any time withdraw an application
that is not yet approved by notifying us in writing.  It further states that we
will consider an applicant's failure to respond within 10 days to an approvable
letter under § 314.110 or a not approvable letter under § 314.120 to be a request
by the applicant to withdraw the application.

 We propose to revise § 314.65 to delete the reference to responding within 10
days to an approvable or not approvable letter, consistent with proposed §
314.110.  In addition, we propose to add a statement that if, by the time we
receive a notice of withdrawal, we have identified any deficiencies in the
application, we will list those deficiencies in the letter we send the applicant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


acknowledging the withdrawal.

3. Communications Between FDA and Applicants (Proposed § 314.102)

   Current § 314.102 addresses communications between FDA and applicants.  Section
314.102(b) states that FDA reviewers shall make every reasonable effort to
communicate promptly to applicants easily correctable deficiencies found in an
application or an abbreviated application when those deficiencies are discovered,
particularly deficiencies concerning CMC issues.  This early communication is
intended to permit applicants to correct readily identified deficiencies
relatively early in the review process and to submit an amendment before the
review period has elapsed.  Section 314.102(b) further states that such early
communication would not ordinarily apply to major scientific issues; instead,
major scientific issues will ordinarily be addressed in an action letter.

   We propose to revise § 314.102(b) to clarify that major scientific issues will
ordinarily be addressed in a complete response letter, even though they may have
been addressed earlier in a discipline review letter in accordance with user fee
performance goals.

   Current § 314.102(d) discusses end-of-review conferences.  It states that at the
conclusion of our review of an application or abbreviated application as
designated by the issuance of an approvable or not approvable letter, we will
provide applicants with an opportunity to meet with agency reviewing officials.
The purpose of the meeting will be to discuss what further steps need to be taken
by the applicant *43359  before the application or abbreviated application can be
approved.  Section 314.102(d) further states that this meeting will be available
on all applications or abbreviated applications, with priority given to
applications for new chemical entities and major new indications for marketed
drugs and for the first duplicates for such drugs.  Requests for such meetings
must be directed to the director of the division responsible for reviewing the
application or abbreviated application.

   We propose to revise § 314.102(d) by replacing "an approvable or not approvable
letter" with "a complete response letter." In addition, we propose to delete the
references to abbreviated applications because the Office of Generic Drugs, which
reviews such applications, does not routinely provide end-of-review conferences
for ANDAs.  Finally, because we virtually always agree to requests for
end-of-review conferences for NDAs and do not prioritize the scheduling of such
conferences for particular types of NDAs, we propose to remove the reference to
priority status for certain types of NDAs.

4. Approval (Proposed § 314.105)

   Current § 314.105(b), concerning approval of applications and abbreviated
applications, states that FDA will approve an application and issue the applicant
an approval letter (rather than an approvable letter under § 314.110) on the basis
of draft labeling if only minor labeling deficiencies remain.  We propose to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                              Page 20

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

delete the reference to approvable letters.  Substituting a reference to complete
response letters would not be appropriate because issuance of such a letter would
not necessarily signify that we believe that an application is basically
approvable provided that certain issues are resolved or that the application
substantially meets the requirements of part 314, as is the case with approvable
letters issued under current § 314.110.

5. Public Disclosure of Existence of Applications (Proposed § 314.430)

 Current § 314.430(b) states that we will not publicly disclose the existence of
an application or abbreviated application before we send an approvable letter to
the applicant unless the existence of the application or abbreviated application
has been previously publicly disclosed or acknowledged.  The provision further
states that CDER will maintain and make available for public disclosure a list of
applications or abbreviated applications for which we have sent an approvable
letter to the applicant.

 We propose to revise § 314.430(b) to allow for FDA disclosure of the existence of
an NDA or ANDA after issuance of an approval letter or tentative approval letter.
Proposed § 314.430 (b) states that we will not publicly disclose the existence of
an application or abbreviated application before we send the applicant an approval
letter under § 314.105 or a tentative approval letter under § 314.107, unless the
existence of the application or abbreviated application has been previously
publicly disclosed or acknowledged.  We do not believe that it is necessary to
include a provision stating that the agency will maintain and make available for
public disclosure a list of approved applications and abbreviated applications
because we already make this information available by routinely announcing the
approval of NDAs and ANDAs within days of their approval and publishing an annual
list (with monthly supplements) of "Approved Drug Products With Therapeutic
Equivalence Evaluations" (known as the "Orange Book").

 We issue a tentative approval letter when an application meets the scientific and
technical requirements for approval under section 505(b) or (j) of the act but
marketing exclusivity (e.g., pediatric exclusivity, orphan drug exclusivity) or
patent rights prevent final approval of the drug product.  As stated in §
314.107(b)(3)(v), tentative approval of an application does not constitute an
approval of an application and cannot, absent a final approval letter from the
agency, result in an effective approval of an application. However, because we
only issue tentative approval letters when an application has met the scientific
and technical approval requirements, tentative approval letters do not present the
same disclosure concerns as correspondence regarding other unapproved
applications.  Therefore, we intend to follow our past practice of acknowledging
the existence of applications that have received tentative approval letters and
making those letters publicly available.

 Because current § 314.107(b)(3) does not explicitly refer to our practice of
issuing a letter notifying an applicant of a tentative approval, we propose to
revise § 314.107(b)(3)(v) to state that we will issue a tentative approval letter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 21

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


when tentative approval is appropriate in accordance with § 314.107 (b)(3).

   The changes that we are proposing to the disclosure provisions would mean that
FDA disclosure of the existence of an NDA or ANDA might result in later disclosure
than sometimes occurs under the current regulation (i.e., with respect to those
applications for which FDA now issues approvable letters). However, we believe
that this effect would be limited because most applicants (at least for NDAs)
publicly reveal the existence of their applications before agency issuance of an
approval letter. Moreover, the proposed change would be consistent with the
agency's long-standing presumption that, before approval (and absent evidence to
the contrary), the existence of an application is confidential commercial
information under 21 CFR 20.61. For example, under § 601.51, FDA will not
disclose the existence of a biological product file before a BLA has been approved
unless it has previously been publicly disclosed or acknowledged.

   However, we specifically invite comment on whether it would be appropriate for
FDA to disclose the existence of an NDA or ANDA following issuance of a complete
response letter and if so, what conditions, if any, should be placed on such
disclosure. For example, one alternative to the proposed approach would be that
FDA would publicly disclose the existence of an NDA or ANDA following issuance of
a complete response letter unless the applicant notified the agency (by some
specified deadline) that the applicant had not publicly disclosed or acknowledged
the existence of the application or abbreviated application. This approach would
allow applicants to prevent agency disclosure of the existence of an application
despite the issuance of a complete response letter. However, it also would create
the potential for inadvertent disclosure and necessitate the establishment of a
system to record and track applicants' positions regarding disclosure. This could
be burdensome to applicants and the agency.

6. Other Technical Revisions (Proposed §§ 312.84, 314.103, 314.125, and 314.440)

   We are proposing to revise other sections of the regulations to replace
references to approvable and/or not approvable letters with references to complete
response letters. These revisions would be made to § 312.84 (Risk-benefit
analysis in review of marketing applications for drugs to treat life-threatening
and severely-debilitating illnesses), § 314.103 (Dispute resolution), § 314.125
(Refusal to approve an application), and § 314.440 (Addresses for applications and
abbreviated applications). (The proposed rule also revises this section by
providing the current address to *43360 which an NDA must be submitted and the
address for applications regarding certain products reviewed by CBER.)

D. Amendments to Unapproved NDAs, ANDAs, and Unapproved Supplements to Approved
NDAs

   The other principal purpose of this proposed rule, besides the adoption of
complete response letters and related changes to resubmissions, is to revise the
regulations in §§ 314.60 and 314.96 on amendments to unapproved NDAs and ANDAs,
respectively.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 22

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

1. Amendments to Unapproved NDAs, Supplements, and Resubmissions (Proposed §
314.60)

   Amendments to unapproved NDAs are addressed in § 314.60.  Current § 314.60(a)
states that except as provided in § 314.60 (b), the applicant may submit an
amendment to an application that is filed under § 314.100, but not yet approved.
(The reference to § 314.100 is in error; § 314.101 not § 314.100 addresses the
filing of applications.) Section 314.60(a) further states that the submission of a
major amendment (e.g., one that contains significant new data from a previously
unreported study or detailed new analyses of earlier data) constitutes an
agreement by the applicant under section 505(c) of the act to extend the date by
which we are required to decide on the application.  The section adds that we
ordinarily will extend the review period but only for the time needed to review
the new information, and we may not extend the period for more than 180 days.  If
we extend the review period for the application, the director of the division
responsible for reviewing the application will notify the applicant of the length
of the extension.  The submission of an amendment that is not a major amendment
will not extend the review period.

   We propose to revise § 314.60(a) to state that we generally assume that when an
original application (i.e., original NDA) supplement to an approved application or
resubmission of an application or supplement is submitted to the agency for
review, the applicant believes that we can approve the application, supplement, or
resubmission as submitted.  However, the applicant may submit an amendment to an
application or supplement that has been filed under § 314.101 but is not yet
approved.

   In place of the provisions in current § 314.60(a), we propose to add new §
314.60(b).  Under proposed § 314.60(b)(1), submission of a major amendment to an
original application, efficacy supplement, or resubmission of an application or
efficacy supplement within 3 months of the end of the initial review cycle
constitutes an agreement by the applicant under section 505(c) of the act to
extend the review cycle by 3 months.  However, the proposed regulation states that
we may instead defer review of such an amendment until the subsequent review
cycle.  The subsequent review cycle would run from the resubmission of the
application, efficacy supplement, or resubmission following receipt of the
complete response letter to the issuance of either a second complete response
letter or an approval letter.  Under proposed § 314.60(b)(1), if we extend the
initial review cycle for an original application, efficacy supplement, or
resubmission of an application or efficacy supplement under this paragraph (b)(1),
the division responsible for reviewing the application, supplement, or
resubmission will notify the applicant of the extension.  Proposed § 314.60(b)(1)
further states that the initial review cycle for an original application, efficacy
supplement, or resubmission of an application or efficacy supplement may be
extended only once due to submission of a major amendment.  Finally, proposed §
314.60(b)(1) states that we may, at our discretion, review any subsequent major
amendment during the initial review cycle (as extended) or defer review until the
subsequent review cycle.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                        Page 23

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


Under proposed § 314.60(b)(2), submission of a major amendment to an original application, efficacy supplement, or resubmission of an application or efficacy supplement more than 3 months before the end of the initial review cycle will not extend the cycle. We may, at our discretion, review such an amendment during the initial review cycle or defer review until the subsequent review cycle.

Under proposed § 314.60(b)(3), submission of a minor amendment to an original application, efficacy supplement, or resubmission of an application or efficacy supplement will not extend the initial review cycle. We may, at our discretion, review such an amendment during the initial review cycle or defer review until the subsequent review cycle.

Under proposed § 314.60(b)(4), submission of an amendment to a supplement other than an efficacy supplement will not extend the initial review cycle. We may, at our discretion, review such an amendment during the initial review cycle or defer review until the subsequent review cycle.

Proposed § 314.60 (b)(5) specifies that a major amendment may not include data to support an indication for a use that was not included in the original application, supplement, or resubmission.

These proposed regulations would codify for all NDAs, efficacy supplements, and resubmissions of NDAs and efficacy supplements, our current policy on extending the review period for human drug applications when a major amendment is submitted before FDA issuance of an action letter. As stated in the previous paragraphs, we believe that it is appropriate to treat amendments to unapproved efficacy supplements and amendments to resubmissions of applications and efficacy supplements, the same as amendments to unapproved NDAs. Amendments to ANDAs submitted before FDA issuance of an action letter are addressed in § 314.96, discussed in section III.D.3 of this document.

2. Procedures for Submission of a Supplement to an Approved Application  (Proposed § 314.71)

The references to different types of supplemental applications in proposed §§ 314.60 and 314.110 necessitate a change to § 314.71, which addresses procedures for submission of supplements to approved applications. Current § 314.71(c) states that all procedures and actions that apply to applications under part 314, including actions by applicants and the agency, also apply to supplements. Under proposed §§ 314.60 and 314.110, a certain type of NDA supplement (i.e., efficacy supplements) will be treated the same as an NDA, while other types will be treated differently. To reflect this different treatment of certain supplements, we propose to revise § 314.71(c) to clarify that all procedures and actions that apply to applications under part 314 also apply to supplements "except as specified otherwise in this part."

3. Amendments to Unapproved ANDAs (Proposed § 314.96)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 24

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

Our regulations on submitting amendments to unapproved abbreviated applications are set forth in § 314.96. Current § 314.96(a)(2) states that submission of an amendment containing significant data or information constitutes an agreement to extend the review period only for the time necessary to review the information and for no more than 180 days. Under § 314.96(a)(3), the submission of an amendment containing significant data or information to resolve deficiencies specified in a not approvable letter will extend the date by which we must reach a decision on the abbreviated *43361 application only for the time necessary to review the information and for no more than 180 days.

We propose to revise § 314.96(a)(2) to substitute the term "initial review cycle" for "review period." Our proposed revision would also clarify that an amendment to an ANDA submitted before the end of the initial review cycle that contains significant data or information could extend the initial review cycle for as many as 180 days. Thus, we are proposing to retain the Office of Generic Drugs' current approach to amendments to ANDAs.

We propose to delete § 314.96(a)(3) because the submission of an amendment to an abbreviated application following receipt of a complete response letter (i.e., a resubmission of an abbreviated application) is addressed in proposed § 314.110.

IV. Analysis of Economic Impacts

FDA has examined the impacts of the proposed rule under Executive Order 12866 and the Regulatory Flexibility Act (5 U.S.C. 601-612), and the Unfunded Mandates Reform Act (Public Law 104-4). Executive Order 12866 directs agencies to assess all costs and benefits of available regulatory alternatives and, when regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety, and other advantages; distributive impacts; and equity). The agency believes that this proposed rule is not a significant regulatory action as defined by the Executive order.

The Regulatory Flexibility Act requires agencies to prepare a Regulatory Flexibility Analysis for each rule unless the agency certifies that the rule will not have a significant economic impact on a substantial number of small entities.

Section 202(a) of the Unfunded Mandates Reform Act of 1995 requires that agencies prepare a written statement, which includes an assessment of anticipated costs and benefits, before proposing "any rule includes any Federal mandate that may result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more (adjusted annually for inflation) in any one year.

We believe that this proposed rule is consistent with the regulatory philosophy and principles identified in Executive Order 12866. Because the proposed rule does not impose mandates on State, local, or tribal governments, or the private sector, that would result in an expenditure in any one year of $100,000,000 or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                      Page 25

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

more, we are not required to perform a cost-benefit analysis under the Unfunded
Mandates Reform Act of 1995.

With respect to the Regulatory Flexibility Act, we do not believe that this
proposed rule would have a significant economic impact on a substantial number of
small entities. We are taking this action to amend our regulations governing
applications for approval to market new drugs, generic drugs, and biological
products. This action is necessary to meet a user fee performance goal to replace
approvable and not approvable letters with complete response letters. The
proposed rule also would revise regulations governing amendments to unapproved
applications and codify terminology used in user fee performance goals affecting
resubmissions of applications. As discussed in greater detail in the following
paragraphs, the economic impact of these regulatory changes is not expected to be
significant for any affected entity.

A. Impact of the Proposed Rule

As described in detail in sections II and III of this document, the proposed rule
would do the following: (1) For NDAs and ANDAs, replace the two types of action
letters currently used (approvable and not approvable letters) with complete
response letters; (2) for BLAs, incorporate into the regulations an existing
policy on complete response letters; (3) incorporate into regulations the
terminology and procedures used in the user fee performance goals regarding NDA
resubmissions; and (4) revise regulations governing extension of the initial
review cycle in response to major amendments to unapproved applications,
supplements, and resubmissions. For NDAs (with respect to resubmissions and
amendments) and BLAs, the proposed rule largely would codify current agency
practices. For ANDAs, the proposed rule would revise regulations to be consistent
with current practice or, where appropriate, with the provisions governing NDAs.
The most significant impact of the proposed rule would be on efficacy supplements
to approved NDAs and on resubmissions of applications and efficacy supplements.
The impact of specific provisions of this proposed rule on NDAs, ANDAs, efficacy
supplements, and resubmissions is described in greater detail in the following
paragraphs.

1. Complete Response Letter

We are proposing regulatory changes that would replace approvable and not
approvable letters with complete response letters. Both approvable and not
approvable letters indicate that an NDA or ANDA is not approvable in its current
form, and that changes are necessary or that we require additional information. A
complete response letter would describe the deficiencies in an NDA or ANDA and,
where appropriate, the actions necessary to place the application in condition for
approval. In the past, some drug manufacturers have expressed concern that a not
approvable letter sends an unintended message that a marketing application will
never be approved, which could adversely affect a company's ability to raise
capital. Thus, in addition to allowing us to meet our commitments under the user
fee performance goals, this regulatory change addresses industry comments by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 26

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

adopting a more neutral mechanism to convey that an NDA or ANDA cannot be approved
in its current form.  (We have already adopted a policy of issuing complete
response letters for BLAs, and the proposed rule would simply codify this policy.)
Because this regulatory change is primarily administrative in nature and is being
made in response to the user fee performance goals, it is expected to have little
or no economic impact.

2. Resubmissions

 We also are proposing regulatory changes to implement the user fee performance
goals and to codify new terminology associated with the resubmission of drug
marketing applications.  A Class 2 resubmission (incorporating major changes or a
significant amount of additional data) would start a new 6-month review cycle,
whereas a Class 1 resubmission (incorporating minor changes or a limited amount of
additional data) would begin a new 2-month review cycle.  These changes would
codify agency practices regarding NDA resubmissions in place since 1998.

 We are proposing to apply the Class 1 and Class 2 provisions to resubmissions of
efficacy supplements as well.  We agreed to make this policy change in PDUFA III
because efficacy supplements, like original NDAs, contain varying amounts of data
requiring different review times.  We began to implement this change in October
2002.  The proposed application of the Class 1 and Class 2 provisions to
resubmissions of efficacy supplements would represent a regulatory change because
under PDUFA II, all resubmissions of efficacy supplements would start a new
6-month review cycle.  Under the proposed rule, a Class 1 resubmission of an
efficacy supplement would extend the review *43362  cycle by only 2 months, rather
than 6 months, as occurred under PDUFA II. Review times for Class 2 efficacy
supplement resubmissions would be largely unaffected by the proposed change.
Based on data from 1996 to 2000 (the most recent 5-year period for which complete
data were available), an average of 16 efficacy supplements (approximately 40
percent) resubmitted annually would be reviewed in 2 months rather than the
current 6 months.  The proposed rule generally would maintain current agency
practice (review within 6 months) with respect to the review of other types of NDA
supplements, i.e., for CMC or labeling changes (although under PDUFA III, our goal
is to review within 4 months resubmissions of certain CMC supplements for which
prior approval is required).  For ANDA resubmissions, the proposal would codify
the current practice of 6-month review.

3. Amendments to Unapproved Drug Marketing Applications

 We also are proposing to revise our regulations on extending the initial review
cycle following the submission of an amendment to an unapproved drug marketing
application.  Current regulations state, for unapproved NDAs and efficacy
supplements, that submission of a major amendment extends the review cycle for the
amount of time necessary to review the new information but not by more than 180
days.  The proposed rule generally would extend the review cycle by 3 months if a
major amendment to an application, efficacy supplement, or resubmission of an
application or efficacy supplement were submitted within 3 months of the end of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 27

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

the initial review cycle.  (The proposed rule states that we may defer review
until a subsequent review cycle.)  If a major amendment were submitted more than 3
months before the end of the initial review cycle, the review cycle would not be
extended.  These changes would codify the practice for NDAs that has been in place
since 1998.  However, we have recently begun to apply this policy to efficacy
supplements.  Before October 2002, under the user fee performance goals, we did
not extend the review cycle for a major amendment to an efficacy supplement.
Therefore, as with the proposed change regarding resubmissions of efficacy
supplements, we believe that it is appropriate to treat the proposed change
regarding amendments to unapproved efficacy supplements as a regulatory change for
purposes of this analysis.

These provisions of the proposed rule might slightly increase review times for
efficacy supplements for which at least one major amendment was received during
the initial review cycle.  Based on data from 1996 to 2000, these regulatory
changes could affect as many as 11 percent of all efficacy supplements filed or an
average of 15 per year.  The effect of this change is dependent on the timing of
future filings and the number of instances in which we might exercise our review
discretion.

With respect to amendments to ANDAs, the proposed changes to regulations would
codify FDA's current approach.

B. Summary of Impacts

Based on the preceding analysis, the proposed changes to provisions governing
resubmissions could result in reduced review times for up to 40 percent of
efficacy supplements resubmitted annually.  However, the proposed provisions
governing major amendments could slightly increase review times for up to 11
percent of efficacy supplements (for which at least one major amendment was
received during the initial review cycle) filed annually.  The full impact of this
rule would be affected by the number of future submissions and the extent to which
we might exercise our discretion to defer review until the next cycle.  ANDAs will
not be significantly affected by the proposed changes to regulations.

Because this proposed rule generally amends current regulations governing
applications for approval to market new drugs and generic drugs to reflect user
fee terminology and performance goals that have already been incorporated into FDA
policies (except with respect to complete response letters, as previously noted),
we certify that the proposed rule will not have a significant economic impact on a
substantial number of small entities.  Therefore, no further analysis is required
under the Regulatory Flexibility Act.

V. Environmental Impact

We have determined under 21 CFR 25.30(h) that this action is of a class of
actions that do not individually or cumulatively have a significant effect on the
human environment.  Therefore, neither an environmental assessment nor an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                          Page 28

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

environmental impact statement is required.

VI. Paperwork Reduction Act of 1995

  This proposed rule does not contain new information collection provisions that
are subject to review by the Office of Management and Budget (OMB) under the
Paperwork Reduction Act of 1995 (the PRA) (44 U.S.C. 3501-3520). The proposed
rule would substitute complete response letters for approvable and not approvable
letters (in current §§ 314.110 and 314.120, respectively) when we take action on
marketing applications. The proposed rule would retain the provisions requiring
the recipient of the action letter (a complete response letter under the proposed
rule) to either amend the application (resubmit it), withdraw it, or ask us to
provide an opportunity for a hearing on whether there are grounds for denying
approval of the application. The proposed rule also would revise the regulations (
§§ 314.60, 314.96, 314.110, and 314.120) on extending the review cycle due to the
submission of amendments before we issue an action letter and due to
resubmissions, but would not change the information required in such amendments
and resubmissions. OMB has approved the information collection previously
discussed concerning responses to action letters under OMB control number
0910-0001, which expires on March 31, 2005.

  The proposed rule would also establish regulations on the issuance of complete
response letters to biologics license applicants and supplement applicants. The
proposed rule would codify current agency practice on the issuance of complete
response letters to these applicants and on applicant actions in response to these
letters (resubmission or withdrawal of the application or supplement). OMB has
already approved the information collection concerning responses to complete
response letters for BLAs and BLA supplements under OMB control number 0910-0338,
which expires on August 31, 2005.

  FDA tentatively concludes that this proposed rule contains no new collection of
information. Therefore, OMB clearance under the PRA is not required.

VII. Federalism

  We have analyzed this proposed rule in accordance with the principles set forth
in Executive Order 13132. We have determined that the rule does not contain
policies that have substantial direct effects on the States, on the relationship
between the National Government and the States, or on the distribution of power
and responsibilities among the various levels of government. Accordingly, we have
concluded that the rule does not contain policies that have federalism
implications as defined in the order and, consequently, a federalism summary
impact statement is not required. *43363

VIII. Proposed Effective Date

  We propose that any final rule that may issue based on this proposal become
effective 30 days after the date of its publication in the Federal Register.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                      Page 29

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


IX. Request for Comments

 Interested persons may submit to the Division of Dockets Management  (see
ADDRESSES) written or electronic comments on this proposal.  Submit a single copy
of electronic comments or two paper copies of any mailed comments, except that
individuals may submit one paper copy.  Comments are to be identified with the
docket number found in brackets in the heading of this document.  Received
comments may be seen in the Division of Dockets Management between 9 a.m. and 4
p.m., Monday through Friday.

List of Subjects

21 CFR Part 312

 Drugs, Exports, Imports, Investigations, Labeling, Medical research, Reporting
and recordkeeping requirements, Safety.

21 CFR Part 314

 Administrative practice and procedure, Confidential business information, Drugs,
Reporting and recordkeeping requirements.

21 CFR Part 600

 Biologics, Reporting and recordkeeping requirements.

21 CFR Part 601

 Administrative practice and procedure, Biologics, Confidential business
information.

 Therefore, under the Federal Food, Drug, and Cosmetic Act and under authority
delegated to the Commissioner of Food and Drugs, it is proposed that 21 CFR parts
312, 314, 600, and 601 be amended as follows:

PART 312--INVESTIGATIONAL NEW DRUG APPLICATION

 1.  The authority citation for 21 CFR part 312 continues to read as follows:

 Authority: 21 U.S.C. 321, 331, 351, 352, 353, 355, 371;  42 U.S.C. 262.

 2.  Section 312.84 is amended in paragraph (c) by revising the first sentence to
read as follows:

§ 312.84 Risk-benefit analysis in review of marketing applications for drugs to
treat life-threatening and severely-debilitating illnesses.

* * * * *

                  © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 30

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

  (c) If FDA concludes that the data presented are not sufficient for marketing
approval, FDA will issue a complete response letter under § 314.110 of this
chapter (for a drug) or § 601.3 of this chapter (for a biologic).  * * *

* * * * *

PART 314--APPLICATIONS FOR FDA APPROVAL TO MARKET A NEW DRUG

  3.  The authority citation for 21 CFR part 314 continues to read as follows:

 Authority: 21 U.S.C. 321, 331, 351, 352, 353, 355, 355a,  356, 356a, 356b, 356c,
371, 374, 379e.

  4.  Section 314.3 is amended in paragraph (b) by removing the definitions for
"Approvable letter" and "Not approvable letter" and by adding the following
definitions in alphabetical order:

§ 314.3 Definitions.

* * * * *
  (b)  * * *

 Class 1 resubmission means the resubmission of an application, following receipt
of a complete response letter, that contains final printed labeling, draft
labeling, certain safety updates, stability updates to support provisional or
final dating periods, commitments to perform Phase 4 studies (including proposals
for such studies), assay validation data, final release testing on the last lots
used to support approval, minor reanalyses of previously submitted data, and other
comparatively minor information.

 Class 2 resubmission means the resubmission of an application, following receipt
of a complete response letter, that includes any item not specified in the
definition of "Class 1 resubmission," including any item that would require
presentation to an advisory committee.

 Complete response letter means a written communication to an applicant from FDA
usually identifying all of the deficiencies in an application or abbreviated
application that must be satisfactorily addressed before it can be approved.

* * * * *
 Efficacy supplement means a supplement to an approved application to make one or
more of the following changes to product labeling:

 (1) Add or modify an indication for use;

 (2) Revise the dose or dose regimen;

 (3) Provide for a new route of administration;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                    Page 31

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


(4) Make a comparative efficacy claim naming another drug product;

(5) Significantly alter the intended patient population;

(6) Change the marketing status from prescription to over-the-counter use;

(7) Complete the traditional approval of a product originally approved under subpart H of this part or;

(8) Incorporate other information based on at least one adequate and well-controlled clinical study.

* * * * *
  Original application means a pending application for which FDA has never issued a complete response letter or approval letter, or an application that was submitted again after FDA had refused to file it or after it was withdrawn without being approved.

* * * * *

§ 314.50 [Amended]

  5.  Section 314.50 is amended in paragraph (d)(5)(vi)(b) in the fourth sentence by removing the phrase "following receipt of an approvable letter" and by adding in its place the phrase "in a resubmission following receipt of a complete response letter".

  6.  Section 314.60 is amended as follows:

a.  By revising the section heading;

b.  By revising paragraph (a);

c.  By redesignating paragraphs (b) and (c) as paragraphs (c) and (d), respectively;

d.  By adding new paragraph (b); and

e.  By revising newly redesignated paragraphs (c)(1)(iii) and (c)(1)(iv), and the first sentence of paragraph (c)(2) to read as follows:

§ 314.60 Amendments to an unapproved application, supplement, or resubmission.

  (a) FDA generally assumes that when an original application, supplement to an approved application, or resubmission of an application or supplement is submitted to the agency for review, the applicant believes that the agency can approve the application, supplement, or resubmission as submitted.  However, the applicant may submit an amendment to an application that has been filed under § 314.101 but is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

not yet approved.

(b)(1) Submission of a major amendment to an original application, efficacy supplement, or resubmission of an application or efficacy supplement within 3 months of the end of the initial review cycle constitutes an agreement by the applicant under section 505(c) of the act to extend the initial review cycle by 3 months. FDA may instead defer review of the amendment until the subsequent review cycle. If the agency extends the initial review cycle for an original application, efficacy supplement, or resubmission under this paragraph, the division responsible for reviewing the application, supplement, *43364 or resubmission will notify the applicant of the extension. The initial review cycle for an original application, efficacy supplement, or resubmission of an application or efficacy supplement may be extended only once due to submission of a major amendment. FDA may, at its discretion, review any subsequent major amendment during the initial review cycle (as extended) or defer review until the subsequent review cycle.

(2) Submission of a major amendment to an original application, efficacy supplement, or resubmission of an application or efficacy supplement more than 3 months before the end of the initial review cycle will not extend the cycle. FDA, may, at its discretion, review such an amendment during the initial review cycle or defer review until the subsequent review cycle.

(3) Submission of an amendment to an original application, efficacy supplement, or resubmission of an application or efficacy supplement that is not a major amendment will not extend the initial review cycle. FDA may, at its discretion, review such an amendment during the initial review cycle or defer review until the subsequent review cycle.

(4) Submission of an amendment to a supplement other than an efficacy supplement will not extend the initial review cycle. FDA may, at its discretion, review such an amendment during the initial review cycle or defer review until the subsequent review cycle.

(5) A major amendment may not include data to support an indication for a use that was not included in the original application, supplement, or resubmission.

(c)(1) * * *

(iii) The applicant has not obtained a right of reference to the investigation described in paragraph (c)(1)(ii) of this section; and

(iv) The report of the investigation described in paragraph (c)(1)(ii) of this section would be essential to the approval of the unapproved application.

(2) The submission of an amendment described in paragraph (c)(1) of this section will cause the unapproved application to be deemed to be withdrawn by the applicant under § 314.65 on the date of receipt by FDA of the amendment.* * *

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                           Page 33

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

* * * * *
 7. Section 314.65 is amended by revising the second sentence to read as follows:

§ 314.65 Withdrawal by the applicant of an unapproved application.

 * * * If, by the time it receives such notice, the agency has identified any
deficiencies in the application, we will list such deficiencies in the letter we
send the applicant acknowledging the withdrawal.* * *

§ 314.71 [Amended]

 8. Section 314.71 is amended in paragraph (c) by adding the phrase "except as
specified otherwise in this part" at the end of the sentence.

§ 314.96 [Amended]

 9. Section 314.96 is amended by revising paragraph (a)(2) and by removing
paragraph (a)(3) to read as follows:

§ 314.96 Amendments to an unapproved abbreviated application.

 (a) * * *

 (2) Submission of an amendment containing significant data or information before
the end of the initial review cycle constitutes an agreement between FDA and the
applicant to extend the initial review cycle only for the time necessary to review
the significant data or information and for no more than 180 days.

* * * * *
 10. Section 314.100 is revised to read as follows:

§ 314.100 Timeframes for reviewing applications and abbreviated applications.

 (a)(1) Except as provided in paragraph (a)(2) of this section, within 180 days of
receipt of an application for a new drug under section 505(b) of the act or an
abbreviated application for a new drug under section 505(j) of the act, FDA will
review it and send the applicant either an approval letter under § 314.105 or a
complete response letter under § 314.110.  This 180-day period is called the
"initial review cycle."

 (2) For applications that are human drug applications, as defined in section
735(1)(A) and (B) of the act, or supplements to such applications, as defined in
section 735(2) of the act, the initial review cycle will be adjusted to be
consistent with the agency's user fee performance goals for reviewing such
applications and supplements.

 (b) At any time before approval, an applicant may withdraw an application under §
314.65 or an abbreviated application under § 314.99 and later submit it again for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                                      Page 34

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

consideration.

(c) The review cycle may be extended by mutual agreement between FDA and an applicant or as provided in §§ 314.60 and 314.96, as the result of a major amendment.

11. Section 314.101 is amended as follows:

a. By revising paragraph (f)(1)(ii);

b. By redesignating paragraphs (f)(2) and (f)(3) as paragraphs (f)(3) and (f)(4), respectively;

c. By adding new paragraph (f)(2); and

d. By revising the second sentence of newly redesignated paragraph (f)(3) to read as follows:

§ 314.101 Filing an application and receiving an abbreviated new drug application.

* * * * *
(f)(1) * * *

(ii) Issue a notice of opportunity for hearing if the applicant asked FDA to provide it an opportunity for a hearing on an application in response to a complete response letter.

(2) For applications that are human drug applications, as defined in section 735(1)(A) and (B) of the act, or supplements to such applications, as defined in section 735(2) of the act, the 180-day period specified in paragraph (f)(1) of this section will be adjusted to be consistent with the agency's user fee performance goals for reviewing such applications and supplements.

(3) * * * If FDA disapproves the abbreviated new drug application, FDA will issue a notice of opportunity for hearing if the applicant asked FDA to provide it an opportunity for a hearing on an abbreviated new drug application in response to a complete response letter.

* * * * *
12. Section 314.102 is amended in the last sentence in paragraph (b) by removing the phrase "an action" and adding in its place the phrase "a complete response" and by revising paragraph (d) to read as follows:

§ 314.102 Communications between FDA and applicants.

* * * * *
(d) End-of-review conference.  At the conclusion of FDA's review of an NDA as designated by the issuance of a complete response letter, FDA will provide the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

applicant with an opportunity to meet with agency reviewing officials.  The purpose of the meeting will be to discuss what further steps need to be taken by the applicant before the application can be approved.  Requests for such meetings must be directed to the director of the division responsible for reviewing the application.

\* \* \* \* \*

§ 314.103 [Amended]

13. Section 314.103 is amended in paragraph (c)(1) in the first sentence by removing the phrase "an approvable or not approvable" and adding in its place the phrase "a complete response" and \*43365 by removing the phrase "or § 314.120, respectively".

§ 314.105 [Amended]

14. Section 314.105 is amended in paragraph (b) in the first sentence by removing the phrase "(rather than an approvable letter under § 314.110)".

15. Section 314.107 is amended by adding a new sentence at the beginning of paragraph (b)(3)(v) to read as follows:

§ 314.107 Effective date of approval of a 505(b)(2) application or abbreviated new drug application under section 505(j) of the act.

\* \* \* \* \*
  (b) \* \* \*

  (3) \* \* \*

  (v) FDA will issue a tentative approval letter when tentative approval is appropriate in accordance with paragraph (b)(3) of this section.\* \* \*

\* \* \* \* \*
  16. Section 314.110 is revised to read as follows:

§ 314.110 Complete response letter to the applicant.

  (a) Complete response letter.  FDA will send the applicant a complete response letter if the agency determines that we will not approve the application or abbreviated application in its present form for one or more of the reasons given in § 314.125 or § 314.127, respectively.

  (1) Description of specific deficiencies.  A complete response letter will describe all of the specific deficiencies in an application or abbreviated application, except as stated in paragraph (a)(3) of this section.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01                                          Page 36

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


(2) Complete review of data.  A complete response letter reflects FDA's complete review of the data submitted in an original application or abbreviated application (or, where appropriate, a resubmission) and any amendments for which the review cycle was extended.  The complete response letter will identify any amendments for which the review cycle was not extended that FDA has not yet reviewed.

(3) Inadequate data.  If FDA determines, after an application is filed or an abbreviated application is received, that the data submitted are inadequate to support approval, the agency might issue a complete response letter without first conducting required inspections and/or reviewing proposed product labeling.

(4) Description of actions necessary for approval.  Where appropriate, a complete response letter will describe the actions necessary to place the application or abbreviated application in condition for approval.

(b) Applicant actions.  After receiving a complete response letter, the applicant must take one of following actions:

(1) Resubmission.  Resubmit the application or abbreviated application, addressing all deficiencies identified in the complete response letter.  For purposes of this section, a resubmission means submission by the applicant of all materials needed to fully address all deficiencies identified in the complete response letter.

(i) A resubmission of an application or efficacy supplement that FDA classifies as a Class 1 resubmission constitutes an agreement by the applicant to start a new 2-month review cycle beginning on the date FDA receives the resubmission.

(ii) A resubmission of an application or efficacy supplement that FDA classifies as a Class 2 resubmission constitutes an agreement by the applicant to start a new 6-month review cycle beginning on the date FDA receives the resubmission.

(iii) A resubmission of an NDA supplement other than an efficacy supplement constitutes an agreement by the applicant to start a new 6-month review cycle beginning on the date FDA receives the resubmission.

(iv) A major resubmission of an abbreviated application constitutes an agreement by the applicant to start a new 6-month review cycle beginning on the date FDA receives the resubmission.

(v) A minor resubmission of an abbreviated application constitutes an agreement by the applicant to start a new review cycle beginning on the date FDA receives the resubmission.

(2) Withdrawal.  Withdraw the application or abbreviated application.  A decision to withdraw an application or abbreviated application is without prejudice to a subsequent submission.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

(3) Request opportunity for hearing. Ask the agency to provide the applicant an opportunity for a hearing on the question of whether there are grounds for denying approval of the application or abbreviated application under section 505(d) or (j)(4) of the act, respectively. The applicant must submit the request to the Associate Director for Policy, Center for Drug Evaluation and Research (HFD-5), Food and Drug Administration, 5600 Fishers Lane, Rockville, MD 20857. Within 60 days of the date of the request for an opportunity for a hearing, or within a different time period to which FDA and the applicant agree, the agency will either approve the application or abbreviated application under § 314.105, or refuse to approve the application under § 314.125 or abbreviated application under § 314.127 and give the applicant written notice of an opportunity for a hearing under § 314.200 and section 505(c)(1)(B) or (j)(5)(c) of the act on the question of whether there are grounds for denying approval of the application under section 505(d) or (j)(4) of the act.

(c) Failure to take action. An applicant agrees to extend the review period under section 505(c)(1) of the act until it takes any of the actions listed in paragraph (b) of this section. For an application, FDA may consider an applicant's failure to take any of such actions within 1 year after receiving a complete response letter to be a request by the applicant to withdraw the application. For an abbreviated application, FDA may consider an applicant's failure to take any of the actions listed in paragraph (b) of this section within 6 months after receiving a complete response letter to be a request by the applicant to withdraw the abbreviated application.

§ 314.120 [Removed and Reserved]

17. Section 314.120 is removed and reserved.

§ 314.125 [Amended]

18. Section 314.125 is amended in paragraph (a)(1) by removing the phrase "an approvable or a not approvable" and adding in its place the phrase "a complete response"; and by removing the phrase "or § 314.120".

§ 314.430 [Amended]

19. Section 314.430 is amended by in paragraph (b) in the first sentence by removing the phrase "approvable letter is sent to the applicant under § 314.110" and adding in its place the phrase "approval letter is sent to the applicant under § 314.105 or tentative approval letter is sent to the applicant under § 314.107"; and by removing the last sentence.

20. Section 314.440 is amended in paragraph (a)(1) by removing the phrase "Document and Records Section, 5901-B Ammendale Rd., Beltsville, MD 20705-1266" and by adding in its place the phrase "Central Document Room, 12229 Wilkins Ave., Rockville, MD 20852-1833"; in paragraph (a)(3) by removing the phrase "or § 314.120"; and by revising the introductory text of paragraph (b) to read as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01

Page 38

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**


follows:

§ 314.440 Addresses for applications and abbreviated applications.

* * * * *
 (b) Applicants must send applications and other correspondence relating to matters covered by this part for the drug products listed below to the Center for Biologics Evaluation and Research (HFM-99), Food and Drug *43366 Administration, 1401 Rockville Pike, Rockville, MD 20852, except applicants must send a request for an opportunity for a hearing under § 314.110 on the question of whether there are grounds for denying approval of an application to the Director, Center for Biologics Evaluation and Research (HFM-1), at the same address.

* * * * *

PART 600--BIOLOGICAL PRODUCTS: GENERAL

 21. The authority citation for 21 CFR part 600 continues to read as follows:

 Authority: 21 U.S.C. 321, 351, 352, 353, 355, 360, 360i, 371, 374; 42 U.S.C. 216 , 262, 263, 263a, 264, 300aa-25.

 22. Section 600.3 is amended by revising paragraph (jj) to read as follows:

§ 600.3 Definitions.

* * * * *
 (jj) Complete response letter means a written communication to an applicant from FDA usually identifying all of the deficiencies in a biologics license application or supplement that must be satisfactorily addressed before it can be approved.

* * * * *

PART 601--LICENSING

 23. The authority for 21 CFR part 601 continues to read as follows:

 Authority: 15 U.S.C. 1451-1561; 21 U.S.C. 321, 351, 352, 353, 355, 356b, 360, 360c-360f, 360h-360j, 371, 374, 379e, 381; 42 U.S.C. 216, 241, 262, 263, 264; sec 122, Pub. L. 105-115, 111 Stat. 2322 (21 U.S.C. 355 note).

 24. Section 601.3 is added to subpart A to read as follows:

§ 601.3 Complete response letter to the applicant.

 (a) Complete response letter. The Food and Drug Administration will send the biologics license applicant or supplement applicant a complete response letter if the agency determines that it will not approve the biologics license application

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 43351-01

69 FR 43351-01, 2004 WL 1599720 (F.R.)

**(Cite as: 69 FR 43351)**

or supplement in its present form.

(b) Applicant actions.  After receiving a complete response letter, the biologics license applicant or supplement applicant must take either of the following actions:

(1) Resubmission.  Resubmit the application or supplement, addressing all deficiencies identified in the complete response letter.

(2) Withdrawal.  Withdraw the application or supplement.  A decision to withdraw the application or supplement is without prejudice to a subsequent submission.

(c) Failure to take action.  FDA may consider a biologics license applicant or supplement applicant's failure to either resubmit or withdraw the application or supplement within 1 year after receiving a complete response letter to be a request by the applicant to withdraw the application or supplement.

Dated: July 9, 2004.

Jeffrey Shuren,

Assistant Commissioner for Policy.

[FR Doc. 04-16476 Filed 7-19-04; 8:45 am]

BILLING CODE 4160-01-S

69 FR 43351-01, 2004 WL 1599720 (F.R.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.