# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                           :
IN RE BIOPURE CORPORATION          :          CIVIL ACTION NO.
SECURITIES LITIGATION               :          03-12628-NG
                                           :
_____:


## MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

Robert A. Buhlman, BBO #554393
Donald J. Savery, BBO #564975
Michael D. Blanchard, BBO#636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

# TABLE OF CONTENTS

**PAGE**

I.    THE ORDER MISAPPLIES THE "CORE BUSINESS" DOCTRINE. ........................... 2

    A.    The Proposed Trial Concerning Use Of Hemopure In A Controlled Setting Did Not Make It A "Primary Product" Under The "Core Business" Doctrine. ............ 3

    B.    District Courts In The First Circuit Reject Inferring Scienter Based Merely On An Officer's Or Director's Position In The Company Even When A "Core Business" Is At Issue.. .................................................................................................. 4

    C.    The Cases Relied Upon In The Order Applying The "Core Business" Exception Require Specific Facts Be Pled Demonstrating How The Officers And Directors Acquired The Information. .................................................................................. 8

    D.    One District Court, In A Case Referenced In The Order, Expressly Rejected Inferring Scienter For An Outside Director Absent Specific Allegations Demonstrating How He Obtained "Insider" Knowledge...................................... 12

II.   UNDER SUPREME COURT AND FIRST CIRCUIT PRECEDENT, PLAINTIFFS MAY NOT LIFT ALLEGATIONS FROM ANOTHER PARTY'S COMPLAINT ....... 13

LITDOCS/635840.4

## TABLE OF AUTHORITIES

PAGE

### FEDERAL CASES

*In re Aetna Sec. Litigation*, 34 F. Supp. 2d 935 (E.D. Pa. 1999)................................12, 13

*In re Ancor Communications, Inc., Sec. Litigation*, 22 F. Supp. 2d 999 (D. Minn. 1998) ..................................................................................................................................11, 12

*Angres v. Smallworldwide PLC*, 94 F. Supp. 2d 1167 (D. Colo. 2000) ...........................11

*In re Ashworth, Inc. Sec. Litigation*, No. 99CV0121-l (JAH), 2000 WL 33176041, at *11 (S.D. Cal. July 18, 2000)....................................................................10

*In re Biogen Sec. Litigation*, 179 F.R.D. 25 (D. Mass. 1997) .............................................4

*Carney v. Cambridge Technology Partners, Inc.*, 135 F. Supp. 2d 235 (D. Mass. 2001) ......................................................................................................................................7

*In re Carter-Wallace*, 150 F.3d 153 (2nd Cir. 1998)...........................................................8

*In re Carter-Wallace*, 220 F.3d 36 (2nd Cir. 2000).......................................................8, 10

*In re Century Business Services Sec. Litigation*, No. 1:99CV02200 2002 WL 32254513 (N.D. Ohio June 27, 2002)....................................................................9

*Cosmas v. Hassett*, 886 F. 2d 8 (2nd. Cir. 1989) .................................................................9

*Davis v. Lehane*, 89 F. Supp. 2d 142 (D. Mass. 2000) ........................................................2

*Denny v. Barber*, 576 F.2d 465 (2nd Cir. 1978)..................................................................8

*Epstein v. Itron, Inc.*, 993 F. Supp. 1314 (E.D. Wash. 1998) ...........................................10

*In re Galileo Corp. Sec. Litigation.*, 127 F. Supp. 2d 251 (D. Mass. 2001)...................3, 6

*Geinko v. Padda*, No. 00 C 5070, 2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 27, 2002) ................................................................................................................................14, 15

*Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31 (1st Cir. 2005)......................................15

*In re Keyspan Corp. Sec. Litigation*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003) .....................9

*Lirette v. Shiva Corporation*, 27 F. Supp. 2d 268 (D. Mass. 1998)................................6, 7

*Maldonado v. Dominguez*, 137 F.3d 1 (1st Cir. 1998) ........................................................6

*In re Metawave Comm. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056 (W.D. Wash. 2003) ...............................................................................................10

*Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989) ..................2, 14

*In re Read-Rite Corp.*, 335 F. 3d 843 (9th. 2003).............................................10

*Reading v. Goldman Sachs & Co.*, 382 F. Supp. 2d 1112 (E.D. Mo. 2005) ....................14

*In re Splash Technology Holdings, Inc. Sec. Litigation, No. C 99-00109 (SBA)*, 2000 WL 1727405 (N.D. Cal. Sept. 20, 2000) ..................................................11

## STATE CASES

*Cahall v. Lofland*, 114 A. 224 (Del. Ch. 1921), *aff'd* 118 A. 1 (Del. 1922) .....................13

*Canal Capital Corp. v. French*, C.A. No. 11764 (Del. Ch. July 2, 1992) .........................13

*In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996)...............................................................................13

*Rosenblatt v. Getty Oil Co.*, 493 A.2d 929 (Del. 1985).......................................13

## FEDERAL STATUTES AND REGULATIONS

Fed. R. Civ. P. 11 ............................................................................................1

21 CFR § 312.42 ..............................................................................................3

## STATE STATUTES

8 Del. C. § 141(a)...........................................................................................13

## MISCELLANEOUS

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4478 (1981) ....................................................2

LITDOCS/635840.4

**Preliminary Statement**

Defendants respectfully request that this Court reconsider its March 28, 2006 order ("Order"), insofar as it denies Defendants' motion to dismiss and grants the Plaintiffs' motion for leave to amend. The Order, with all due respect, applies clearly erroneous legal standards in ruling on the motions, relating to the application of the "core business" doctrine. Furthermore, the Order departs from the reasoning under United States Supreme Court precedent regarding representations to the court under Fed. R. Civ. Pro. 11. There are three primary reasons for the Court to reconsider and reverse the findings in its Order as to *all or some* of the Defendants:

- <u>First</u>, the core ruling by the Court is that plaintiffs can "impute" knowledge to officers and directors, when the Company's "primary product or service is in jeopardy." That is an incorrect legal proposition under the Private Securities Litigation Reform Act ("PSLRA") and First Circuit case law. Furthermore, the Complaint contains no allegations sufficient to show *any* knowledge by anyone that Hemopure was "in jeopardy." One clinical hold on one proposed protocol does not meet this "core business-jeopardy" standard described by the Court.

- <u>Second</u>, District Courts in the First Circuit reject inferring scienter based merely on an officer's or director's position in the company even when a "core business" is at issue. Even if the "core business" doctrine could be applied in the First Circuit, the doctrine, as applied by other district courts, still requires that specific facts be pled demonstrating *how the individual defendants were exposed to the information in question.* PLSRA decisions have refused to infer scienter for outside directors not involved in day-to-day operations and individuals for whom plaintiffs have not alleged a factual basis that they knew the "jeopardy." These errors require that the Complaint against defendants

Sanders, Crout, Rausch, Richards, Richman and Moore (and, therefore, the Company) be dismissed for failure to adequately plead a fraud claim against them under the PSLRA.

- <u>Third</u>, the Supreme Court in *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989) stated that the person signing a pleading is representing that they have applied their own judgment to the pleading.[1]  Plaintiffs' Second Amended Complaint lifts language directly out of the SEC's Complaint, including purported quotes from materials Plaintiffs have never seen in context or otherwise.  Plaintiffs have clearly failed to apply their own judgment to the pleadings, contrary to Supreme Court precedent.  This requires that Plaintiffs' Motion for Leave to Amend the Complaint be denied.

Accordingly, Defendants respectfully request that this Court reconsider and vacate its Order and deny Plaintiffs' Motion for Leave to Amend and grant Defendants' Motion to Dismiss the initial and Second Amended Complaint, with prejudice as to all or some of the Defendants.[2]

## I.   <u>THE ORDER MISAPPLIES THE "CORE BUSINESS" DOCTRINE.</u>

The Order states that "in cases in which a company's primary product or service is in jeopardy, courts have been willing to impute that knowledge to the company's officers and

---

[1]  The Court in *Pavelic* stated "the court expects the signer personally…to validate the truth and legal reasonableness of the papers filed."  *Id*. at 126.  The Court continued "[t]he message thereby conveyed to the attorney, that this is not a 'team effort' but in the last analysis, *yours alone*, is precisely the point of Rule 11."  *Id*. at 127 (*emphasis* in the original).

[2]  A district court may grant a motion for reconsideration when the movant demonstrates an intervening change in the law, the discovery of new evidence not previously available, or a clear error of law in the first order. *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000) (citing 18 Charles Alan Wright,

directors under certain circumstances." Order at 3.    Neither the initial nor the Second Amended Complaint pleads facts demonstrating that Biopure's primary product was "in jeopardy" -- let alone that anyone identified it as such.  Furthermore, as to all of the individual defendants, who include two *outside* directors (Sanders and Crout) and an officer with *no FDA regulatory responsibilities* (Richards), there is no basis to infer knowledge to them.

### A. The Proposed Trial Concerning Use Of Hemopure In A Controlled Setting Did Not Make It A "Primary Product" Under The "Core Business" Doctrine.

Plaintiffs have failed to plead any facts showing that anyone believed Hemopure was "in jeopardy."  A clinical hold on a *single proposed clinical trial for testing Hemopure in a limited and controlled setting* was not *expressly or impliedly* a statement by FDA that Hemopure was "in jeopardy."  FDA regulations provide that a "clinical hold is an order issued by FDA to the sponsor to delay a proposed *clinical investigation* or to suspend an ongoing investigation.  The clinical hold order may apply to one or more of the *investigations* covered by an IND…It will *identify the studies* under the IND to which the hold applies."  21 CFR §312.42 (emphasis added).  In this case, it put one single trial on hold temporarily.[3]

Hemopure has been under development since the 1984 and this one proposed clinical trial was only a small part of the overall development and testing of the drug.  The Plaintiffs have failed to plead any facts alleging that the Defendants "had full knowledge of the dangers of their course of action" by not disclosing this single proposed protocol's status:  effectively, under discussion with the FDA.  *In re Galileo Corp. Sec. Litig.*, 127 F. Supp. 2d 251, 261 (D. Mass. 2001).  The

---

Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4478, at 789-90 (1981)).  As explained herein, the Order rests on several clear errors of law.

[3] Pursuant to 21 C.F.R. 312.42(e), a trial may only resume after the IND sponsor and FDA have resolved any outstanding issues regarding data, study design, dosage or other factors relevant to the safety of the study.  This scientific dialogue between the sponsor (Biopure) and FDA is limited to the *study* under clinical hold, and has no bearing upon a pending BLA application.

Plaintiffs have also failed to plead any facts demonstrating how much time or money was spent on this single indication that would demonstrate it was relevant to Biopure's core business.

Plaintiffs also fail to plead any allegation of fact showing that the scientific dialogue with the FDA was anything more than a routine communication about the clinical trial, a communication that this Court has held need not be disclosed publicly. *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 37 (D. Mass. 1997) (Finding that defendants had no duty to disclose FDA reservations concerning efficacy of a drug under development). Even if an in-hospital trauma indication could somehow be perceived as important to Biopure's business (and no facts to that effect are pled in the complaints), a clinical hold on a proposed protocol, part of the routine "back and forth" with FDA, can not be deemed "core" to the Company's business.

### B. District Courts In The First Circuit Reject Inferring Scienter Based Merely On An Officer's Or Director's Position In The Company Even When A "Core Business" Is At Issue.

#### 1. The Claims Against Sanders, Crout, Rausch and Richards Must Be Dismissed.

District Courts in the First Circuit reject inferring scienter for officers and directors simply because they hold high-level positions in a company, even when a "core business" is at issue. The allegation that the status of defendants Sanders, Crout, Rausch and Richards holding high-level positions with the Company is not, standing alone, enough to impute scienter to any of them. The *entire extent* of the Plaintiffs' allegations directly concerning Sanders and Crout include only the following:

- o   Sanders and Crout held Board positions at Biopure, Second Amend. Compl. ¶¶ 27, 28;

- o   These defendants signed certain SEC filings, Second Amend. Compl. ¶¶ 56, 58, 168, 190;

LITDOCS/635840.4

o     The SEC recommended enforcement action against these defendants (though they are *not* named as defendants in the SEC's Complaint), Second Amend. Compl. ¶¶ 169, 189;

o     These defendants were allegedly "control persons," Second Amend. Compl. ¶ 219.

In addition, the Plaintiffs' allegations directly concerning defendants Rausch and Richards are limited to the following:

o     Rausch was an officer and director at Biopure, Second Amend. Compl. ¶ 24, and Richards was an officer at Biopure, Second Amend. Compl. ¶ 25;

o     These defendants signed certain SEC filings, Second Amend. Compl. ¶¶ 56, 57, 87, 168, 190;

o     The SEC recommended enforcement action against defendant Rausch, Second Amend. Compl. ¶¶ 169, 189 (Furthermore, the SEC *never* recommended enforcement action against defendant Richards *nor* was he named in the SEC Complaint.)

o     These defendants were allegedly "control persons", Second Amend. Compl. ¶ 219.

The Plaintiffs fail to plead any facts alleging how or when *any* of these Defendants became aware of *any* information concerning the FDA's clinical hold. There are no allegations, for example, that any of the Defendants were involved in the design of, or approved the submission of, the in-hospital trauma trial, nor that any Defendants were sent a copy of the clinical hold letter by the FDA, nor even that a meeting was held during which the letter was discussed by any of the Defendants.

LITDOCS/635840.4

Absent allegations of fact sufficient to satisfy the PSLRA, the Order effectively rests on a presumption of knowledge for the individual defendants merely due to their status with the Company. District courts in the First Circuit, however, uniformly hold that the PSLRA's scienter pleading requisites are not met in such circumstances, even when the information at issue relates to what could be deemed "core" to the company's business. In *In re Galileo Corp. Sec. Litig.*, 127 F. Supp. 2d at 251, for example, this Court was faced with a complaint alleging that the President, CEO and Director of the company and the Vice President of Finance/CFO violated the federal securities laws by failing to disclose negative information about the company following the loss of the company's largest customer. That customer accounted for 48% of the company's total sales the year before, a loss which (unlike the trauma hold) does jeopardize the company's "core business," as discussed in cases decided outside the First Circuit. *Id*. at 255. The plaintiffs in *Galileo* alleged that the two officers of the defendant, by virtue of their position, their active involvement in the preparation of financial statements, their knowledge of customers to whom sales were made, their involvement in discussions with federal government agencies regarding import restrictions as well as other factors, were fully aware of, or recklessly disregarded, facts that made various statements by the company misleading. *Id*. at 259. The Court dismissed the complaint and rejected the plaintiff's attempt to rely on a "must have known" basis for inferring scienter, and stated that plaintiffs "still must allege with sufficient particularity that the defendants had full knowledge of the dangers of their course of actions and chose not to disclose those dangers to the public." *Id*. at 261, *quoting Maldonado v. Dominguez*, 137 F.3d 1, 9 n.5 (1st Cir. 1998).

In *Lirette v. Shiva Corporation, Inc.*, 27 F. Supp. 2d 268, 283 (D. Mass. 1998), this Court rejected the plaintiff's attempt to infer knowledge (for the CEO/Chairman of the Board and CFO) of improper revenue recognition and channel stuffing practices concerning a company's primary

product line, which one analyst described as serving "the heart of SHVA's current business", simply because they "were privy to confidential proprietary information concerning the Company, its operations, finances, financial condition, products and business products." This Court granted defendants' motion to dismiss stating "[g]eneral allusions to unspecified internal corporate information are insufficient to withstand a motion to dismiss." *Id.* Here, plaintiffs have not even made allegations of "unspecified internal corporate information" as to Sanders, Crout, Richards or Rausch.

Similarly in *Carney v. Cambridge Technology Partners, Inc.*, 135 F. Supp. 2d 235, 255 (D. Mass. 2001), plaintiffs alleged that defendants "[b]y virtue of [their] senior positions with the Company…knew or should have known, but for [their] reckless disregard of the truth" that the company's true financial picture was different from what was being publicly reported, caused mainly by a complete restructuring of the company's North American business unit (which accounted for <u>66%</u> of revenues in the quarter during the Class Period) and decreasing demand for their ERP software license. Clearly, a complete restructuring of the company is within the realm of "core business." The Court rejected the plaintiff's attempt to infer scienter for the defendants simply due to their access to undisclosed internal information about the company, conversations with other corporate officers and attendance at management and Board of Directors meetings. *Id.* This Court stated that "[n]o strong inference of scienter can arise from allegations about sources of information, like those alleged here, that are so vague and general as to invite questions as to the extent to which these sources exist at all." *Id.*

## 2. <u>The Claims Against Moore and Richman Also Must Be Dismissed.</u>

Furthermore, the extent of the allegations against defendants Moore and Richman concerning the clinical hold are that defendant Richman was advised by the FDA that there were

safety concerns arising from the data related to one of the clinical trials submitted with the BLA and that defendant Moore learned of the clinical hold the next day. However, Plaintiffs fail to allege how defendants Moore or Richman *knew* that the clinical hold placed Hemopure in jeopardy.

In *In re Carter-Wallace*, 220 F.3d 36, 42 (2nd Cir. 2000), the court granted the motion to dismiss for failure to adequately plead scienter. The court noted that the defendants, members of the Board of Directors of Carter-Wallace, were not in a position to make a link between safety concerns regarding their epilepsy drug and reports of a possible connection with instances of aplastic anemia (a potentially fatal form of bone marrow cancer) *despite receiving fifty-seven adverse medical reports*, including six cases of aplastic anemia.[4] *Id*. The Court reasoned that the pleadings represented an impermissible attempt to plead "fraud by hindsight" since there was no reason for the company to *know* of the connection between the drug and aplastic anemia simply based on the adverse reports they received. *Id*. (*citing Denny v. Barber*, 576 F.2d 465, 470 (2nd Cir. 1978)). Plaintiffs have similarly failed to plead facts demonstrating why defendants Moore and Richman *knew* that Hemopure was "in jeopardy" simply because Biopure received a clinical hold letter raising questions about one clinical trial.

### C. The Cases Relied Upon In The Order Applying The "Core Business" Exception Require Specific Facts Be Pled Demonstrating How The Officers And Directors Acquired The Information.

In each case relied upon in the Order concerning the "core business" doctrine, the court found that plaintiffs *failed* to make specific allegations of fact demonstrating how the officers and

---

[4] The Second Circuit, on a previous appeal regarding this same case, noted "Felbatol [was the] first major anti-epileptic drug to be introduced in the United States in over fifteen years" and the company noted in a 10-K filing that they "expected 'to receive royalties, which could be significant' from licensing Felbatol." *In re Carter Wallace*, 150 F.3d 153 (2nd Cir. 1998). Based on these facts, the sale of this drug was certainly deemed a "primary product" for purposes of the "core business jeopardy" exception.

directors acquired the information relating to the "core business." *See In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 387 (E.D.N.Y. 2003) (Granting defendants' motion to dismiss, noting that "the cases cited by plaintiff in which courts charged defendants with knowledge of negative information by reason of their status involved circumstances far more suggestive of their direct access to such information"); *In re Century Business Services Sec. Litig.*, No. 99-CV 02200, 2002 U.S. Dist. LEXIS 26964, at *34 (E.D. Ohio June 27, 2002) (Granting defendants' motion to dismiss after finding that the allegations were boilerplate assertions of defendants' high positions and access to information). Moreover, the cases cited in *Keyspan* and *Century Business* in which courts have charged defendants with knowledge of negative information by reason of their position with the company are also either distinguishable from the case at hand or have been questioned by subsequent decisions.

In *Cosmas v. Hassett*, 886 F.2d 8, 13 (2nd Cir. 1989), notably a pre-PSLRA decision, the court attributed knowledge of certain import restrictions that *did constitute jeopardy* to the directors of the defendant, since the restrictions *eliminated* an extremely significant source of income for the company. The defendants made an affirmative statement about their future sales prospects concerning over 80% of an order backlog that they knew they would not be able to fill due to Chinese import restrictions. Thus, the restriction *directly* impeded a significant percentage of sales.

In the present case, Plaintiffs have pled no allegations that the clinical hold *directly* impeded actual sales -- Hemopure is in development in the United States, not commercially sold.

-9-

Plaintiffs have failed to allege any specific facts that constitute the "jeopardy" as found in *Cosmas*.[5]

The holding in *Epstein v. Itron, Inc.*, 993 F. Supp. 1314 (E.D. Wash. 1998), which only addressed key officers of the defendant, *not outside directors*, is also distinguishable from the case at bar.[6]  The court held in *Epstein* that "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers." *Id.* at 1326.  However the court further noted that the plaintiffs alleged two specific statements by the company in a marketing brochure and a 10-K filing that demonstrated the defendants were aware of technological limitations concerning their core product that further suggested that their challenged statements were false or misleading.  *Id*. at 1326-27.  Additionally, the Court found that "Itron's core product was technologically incapable of meeting requirements that are central to Itron's *continued survival* as a business entity."  *Id*. at 1326 (emphasis added). Plaintiffs have not pled any allegations of fact that there was anything in the clinical hold letter that ever indicated a risk to the survival of Biopure.

----

[5] The Second Circuit in *In re Carter-Wallace*, 220 F.3d at 42 distinguished the decision in *Cosmas* as it noted the court in *Cosmas* found "that sales to China would be '*an important new source of revenue*'…" (*emphasis added*).  In the present case, there has been no allegation that the clinical hold affected any sales nor could there be because the product was in development.  Furthermore, Biopure had ample risk disclosures that Hemopure may never be approved for sale at all. (*See* January 31, 2003 Form 10-Q attached as App. Ex. 2 to Defendants' Motion to Dismiss)

[6] Significantly, subsequent Ninth Circuit decisions have questioned the holding in *Epstein*. *See, e.g.*, *In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003) ("*Epstein*, however, predates *Silicon Graphics*, which clarified the requirement that a plaintiff plead with particularity and which is the law of our circuit."); *In re Ashworth, Inc. Sec. Litig.*, No. 99CV0121-L (JAH), 2000 WL 33176041, at *11 (S.D. Cal. July 18, 2000) (Court rejecting plaintiff's argument that inference of scienter should be drawn as cite to *Epstein v. Itron* was unpersuasive since it was a pre-*Silicon Graphics* decision.); *In re Metawave Comm. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1075 n.9 (W.D. Wash. 2003) ("The Court notes that *Epstein* and its presumption that knowledge can be imputed to key executives may not be viable in the Ninth Circuit after *Silicon Graphics*, 183 F.3d. at 974-75, in which the court expressly rejected the Second Circuit's pleading requirement of mere motive and opportunity, or an inference of recklessness, that was used in *Epstein*.").

LITDOCS/635840.4

The court in *In re Ancor Communications, Inc.*, 22 F. Supp. 2d 999 (D. Minn. 1998) held that knowledge of the potential incompatibility of two products which would affect the "most significant contract in the company's history" could be imputed to the President/CEO, the Vice President/CFO, and the Chairman of the Board who had co-founded the company and had served as Chairman for eleven years.  However the court noted that the plaintiffs further alleged that there were conversations during which compatibility with respect to the contract was discussed and that the contract provided for an escape clause if the compatibility problems could not be resolved, further evidence that defendants *knew* that compatibility was a major issue.  *Id.*, at 1005.  Plaintiffs here have not made any allegations of fact that would support an inference that the proposed trauma trial was so extraordinary an event that all of the key officers and outside directors would be tracking every communication about it, much less even knew about it.  In addition, as the court in *In re Splash Technology Holdings, Inc. Sec. Litig.*, No. C 99-00109 (SBA), 2000 WL 1727405, at *10 (N.D. Cal. Sept. 20, 2000) correctly noted, "*Ancor*…did not have the occasion to determine whether an outside, non-chairman director…constitute[s] [a] 'corporate insider'."  None of these individuals was an *outside* director, like Sanders and Crout, or an officer without responsibility for the issue at hand, like Richards.

In *Angres v. Smallworldwide PLC*, 94 F. Supp. 2d 1167 (D. Colo. 2000), the Court did infer scienter for two for the defendants who were senior officers and directors[7] of the company because of their high-level positions, but with allegations that the defendants had acknowledged knowledge of the matter at issue.  Plaintiffs alleged that the officers and directors were publicly

---

[7] All four of the named defendants in *Angres*, in addition to being Board members, were involved in internal management roles including Chairman of the Management Team, Chief Executive Officer, Vice President of Product Development and Vice President of Corporate Development and participated in day-to-day management of the company.

-11-

touting the development and shipment of two new key products.  *Id*. at 1175.  However, the court

noted

> Defendants have acknowledged that they *knew* the necessary testing of PowerOn and Smallworld 3 had not been completed while at the same time representing PowerOn and Smallworld 3 were fully operational products and ready for shipment to customers. Defendants *knew* of PowerOn' significant problems from Smallworld's own testing and from reports to Smallworld by customers and prospective customers.

*Id*. at 1174-5 (*emphasis* in the original).  Plaintiffs have failed to allege any such acknowledgement

by *any one* of the defendants:  to wit that they "knew" Hemopure was beset with "significant

problems."

### D. One District Court, In A Case Referenced In The Order, Expressly Rejected Inferring Scienter For An Outside Director.

In *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d. 935, 953-54 (E.D. Penn. 1999), the plaintiffs

tried to lump in an outside director with other insiders for the purpose of pleading scienter.  The

Plaintiffs in *Aetna* alleged a litany of internal operational problems at the company brought on by a

recent merger, including incompatible computer systems, problems consolidating the claims

service centers, and changes in patient identification codes, that allowed the court to infer

knowledge to the officers, yet the court found that alleging that an outside director had access to

undisclosed information about the business "falls far short of what is required under the PSLRA

and what is necessary to plead scienter as to an outside director."  *Id*. at 954.  The Court further

noted

> Plaintiffs consistently lump all of the Individual Defendants together for the purpose of pleading scienter.  *Such allegations can only pass muster under the PSLRA if Plaintiffs further allege that despite his status as an outside director, Defendant Abramson's relationship to Aetna after such merger was akin to that of an insider…*

-12-

*Id*. at 953-54 (emphasis added). Plaintiffs in the present case have failed to make even one allegation likening either of the outside directors to the status of insiders or that they were ever involved in day-to-day management.[8]

## II.    UNDER SUPREME COURT AND FIRST CIRCUIT PRECEDENT, PLAINTIFFS MAY NOT LIFT ALLEGATIONS FROM ANOTHER PARTY'S COMPLAINT.

Supreme Court and First Circuit precedent precludes this Court from considering allegations Plaintiffs have lifted from the SEC Complaint. The Court's order states that the Plaintiffs seek to amend their Complaint from information "gleaned" from the SEC Complaint. Order at 2. The Order further states that the Plaintiffs conducted their own investigation and that the initial complaint made substantial allegations against the Defendants.[9] *Id*. Plaintiffs have cut and pasted all the allegations from the SEC's Complaint into their Second Amended Complaint. However, under United States Supreme Court precedent, the plaintiffs may not sign a pleading that contains the information and belief of another lawyer and attempt to submit it to the Court as

---

[8] The Court in *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) instructively commented on the role of directors under Delaware law, with large implications for the lack of basis in inferring knowledge for outside directors based on mere position:

> Most of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention. Legally, the board itself will be required only to authorize the most significant corporate acts or transactions: mergers, changes in capital structure, fundamental changes in business, appointment and compensation of the CEO, etc.

*Id*. at 968. The *Caremark* court's observation is consistent with Delaware statutes concerning the role of directors and officers: "The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors . . ." 8 Del. C. § 141(a). As construed by the Delaware courts charged with its construction, "[t]he term 'management,' as used in this context, 'relate[s] to supervision, direction and control. [T]he details of the business [may be] delegated to inferior officers, agents and employees." *Canal Capital Corp. v. French*, C.A. No. 11764, slip op. at 6 (Del. Ch. July 2, 1992) (quoting *Cahall v. Lofland*, 114 A. 224, 229 (Del. Ch. 1921), aff'd 118 A. 1 (Del. 1922)). "*The realities of modern corporate life are such that directors cannot be expected to manage the day-to-day activities of a company.*" *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 943 (Del. 1985) (emphasis added).

LITDOCS/635840.4

their own independent analysis.

The Order distinguishes the decision in *Reding v. Goldman Sachs & Co.*, 382 F. Supp. 2d 1112 (E.D. Mo. 2005) in which the court granted the defendant's motion to dismiss the complaint whose "primary factual basis" was an SEC Complaint, noting that here, the Plaintiffs are seeking to amend a previous complaint that did not utilize the SEC's allegations as a "primary factual basis". This distinction cannot be reconciled with Supreme Court precedent. In *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 125 (1989) the Court held that an attorney signing a pleading represents that not only is the filed paper factually and legally responsible, but that he personally applied his own judgment. The Court stated "[t]he signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible." If the Supreme Court will not allow another member of the same firm to conduct a reasonable inquiry, it logically follows that an attorney cannot rely upon the investigation conducted by another *entity* (in this case the SEC) regardless of whether or not it provides the "primary factual basis", and then pass off that investigation as his own.

Courts have looked to the decision in *Pavelic* when considering the sufficiency of a complaint in which the plaintiffs have piggy-backed upon a SEC complaint. The court in *Geinko v. Padda*, No. 00 C 5070, 2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb, 27, 2002) rejected the plaintiff's attempt to incorporate by reference allegations in the complaint filed by the SEC. The Court stated

> In light of the Supreme Court's ruling in *Pavelic*, if the signing attorney cannot rely on the analysis of a member of his law firm to have ascertained the facts, it is non sequitur that he

---

[9] Plaintiffs have not alleged that the allegations from the Second Amended Complaint came from anywhere *except* copying the SEC. They have not even tried to claim that those allegations came from their own investigation.

somehow can rely on the analysis of attorneys in different actions and who are presumably from different law firms.

*Id.*, at 20.

As the First Circuit noted in *Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31, 36 (1st Cir. 2005), "plaintiffs cannot sidestep their neglect to offer evidence in this case by asking the court to rule on the basis of the record in another case."

<u>Conclusion</u>

For the foregoing reasons, Defendants respectfully request that this Court reconsider its Order and deny Plaintiff's Motion For Leave to Amend and grant Defendants' Motion to Dismiss both the initial and Second Amended Complaint.

April 21, 2006                          Respectfully submitted,

                                        **BIOPURE CORPORATION, THOMAS A.
                                        MOORE, HOWARD P. RICHMAN, RONALD
                                        RICHARDS, CARL W. RAUSCH, CHARLES
                                        A. SANDERS AND J. RICHARD CROUT**

                                        By their attorneys,

                                        /s/ Michael D. Blanchard
                                        Robert A. Buhlman, BBO #554393
                                        Donald J. Savery, BBO#564975
                                        Michael D. Blanchard, BBO#636860
                                        BINGHAM McCUTCHEN LLP
                                        150 Federal Street
                                        Boston, MA 02110
                                        (617) 951-8000

-15-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on April 21, 2006.

/s/ Michael D. Blanchard
Michael D. Blanchard

LITDOCS/635840.4