UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BIOPURE CORPORATION ) | Master Docket No. 1:03-CV-12628 (NG) |
| SECURITIES LITIGATION ) | |
| ) | |
| ) | Assigned to Judge Nancy Gertner |
| ) | |
| ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER**

At the Status Conference held on May 1, 2006, the parties were briefly heard on the issue of the application of work-product protection to certain documents Plaintiffs have sought from the Defendants. That issue was raised with the Court by letter from Plaintiffs' counsel. While defense counsel submitted a very brief letter response to Plaintiffs' initial correspondence, the Defendants submit this motion for protective order to ensure that their position on the issue is made clear.

The documents that the Defendants sought, selected, and obtained from the SEC in the context of the enforcement action reflect the mental impressions of defense counsel and are protected under the work-product doctrine. Briefly,

1.     *While the present shareholder litigation was already pending*, Biopure obtained through discovery in the SEC enforcement action (brought against Biopure and certain other Defendants herein) a number of documents Biopure's counsel desired. Biopure was capable of using any such documents it obtained for purposes of its defense in any and all actions pending against it, as there was no protective order in the enforcement action that limited use of such documents to the enforcement action. Its' counsel was, therefore, free to make decisions as to which documents would be beneficial to Biopure not only in the enforcement action, but also in the present shareholder action and any others. Biopure's selection of documents (and, relatedly,

1

its specific requests for certain documents from the SEC that Biopure's counsel determined it wanted) reflect Biopure's counsel's mental impressions and, therefore, constitute protected work product. *See, e.g., James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D.C. Del. 1982) (counsel's assembly of select documents produced in discovery constitutes work product: "in a case such as this, involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research"). *See also Colonial Gas Co. v. Aetna Casualty & Surety Co.*, 139 F.R.D. 269, 274 (D. Mass. 1991) (providing that the pertinent test for work product is "whether in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared *or obtained* because of the prospect of litigation") (emphasis added).

2. The fact that the mental impressions of the Defendants' counsel were generated in the context of separate litigation does not affect the availability of work-product protection in this action. This view is widely accepted. *See, e.g., Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 483 (4th Cir. 1973) ("we find no indication that the [Supreme] Court intended to confine the protection of the work product to the litigation in which it was prepared or to make it freely discoverable in a subsequent law suit"); *Midland Investment Co. v. Van Alstyne, Noel & Co.*, 59 F.R.D. 134, 138 (S.D.N.Y. 1973) ("materials prepared for a prior litigation should not be discoverable in a later case where the two actions are closely related … particularly … where, as here, the initial litigation derived from the government's regulatory functions since so often the public action is followed closely by private action involving the same complained of activities").

3. There has been no suggestion that the same documents Biopure selected from the SEC cannot be obtained by Plaintiffs through sources other than Biopure. *See* Fed. R. Civ. P.

26(b)(3) (providing for compelled production of certain work product in limited circumstances of undue hardship). Even if that were the case, this type of work product – reflecting mental impressions of counsel – would still be preserved. *Id.* (instructing courts, in instances of compelled production of work product, to "protect against disclosure of mental impressions"). Plaintiffs seek to avoid the expense of pursuing these documents themselves, and instead wish to benefit from Biopure's initiative in other litigation – the bonus being the possibility of distilling Biopure's legal strategies from its collection of documents.

  4.  Biopure did not waive its work-product protection over the mental impressions reflected in its request for and selection of documents in the enforcement action. *See In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145 (D. Mass. 1988) (identifying factors to be considered in determining whether there has been a waiver). The reason there was no waiver is found in the nature of the information sought to be protected here:

- The work-product protection typically applies to *documents* that were prepared for the purposes of anticipated litigation. Here, on the other hand, the work product is counsel's mental impressions reflected in their *selection* of documents. When a document that itself was prepared in anticipation of litigation is shared with a third party, there is a waiver because it is clearly expected that the third party can perceive the product of counsel's work reflected in the document. The same cannot be said if the work product takes the form of impressions reflected in counsel's selection of documents. As to the former, the work product is on paper, there for the world to see; whereas, as to the latter, the work product has to be perceived through an analysis of the conduct of counsel. There is simply not the same level of expectation that the substance of a lawyer's work product will be

3

perceived when merely selecting or requesting documents as there is when one voluntarily produces a document that itself contains written work product.

- At the same time, while a party to litigation may easily limit further disclosure of documents it produces that contain written work product by, for instance, designating them as confidential pursuant to a protective order, it is virtually impossible to so designate the type of mental impressions at issue here.[1]  A document can be stamped "confidential," but others' perceptions of a lawyer's conduct cannot.  Although Biopure could not have designated its work product here, it did have some basis for belief that it was not making a disclosure that was going to be further disclosed to others.  The expected administrative task of copying the documents that Biopure had selected at the SEC gave no suggestion to Biopure that SEC enforcement staff had plans to review the documents that Biopure selected or, more importantly, had plans to disclose publicly what they believed they perceived from the selection of those documents.

5. The First Circuit decision in *United States v. MIT*, 129 F.3d 681 (1st Cir. 1997), relied on by Plaintiffs, actually illustrates this critical distinction.  There, the disclosure was of meeting minutes that MIT had turned over to a governmental audit agency.  Those minutes were themselves documents that constituted or contained work product.  Waiver was the only sensible conclusion because it was evident to the disclosing party that the substance of the documents (i.e., the information subject to the work-product protection) would be read and comprehended by the agency.  Here, on the other hand, there was no "work product" document that Biopure turned over that it now seeks to protect; rather, it seeks to protect its lawyers' mental impressions

---

[1] Even if a third-party copying service were used to make copies of the selected documents, that would not have avoided the same "disclosure" of mental impressions to a third party, i.e., the copy service.

reflected in the mere selection of documents – not something, particularly given the circumstances of Biopure's request for copying of documents, Biopure had any reasonable expectation would be perceived or, if so, further disclosed.

6. For different reasons, *In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007 (1st Cir. 1988) – another case Plaintiffs rely on – is distinguishable. There, the trial court had adopted a protocol that required the parties to produce, five days in advance of any deposition, a list of exhibits that were to be used in the deposition. Plaintiffs asserted that this infringed on work-product protections, as counsel's selection of exhibits reflected counsel's mental impressions. The Court of Appeals held that the order should be sustained because, among other reasons, the parties "had no justifiable expectation that the mental impressions revealed by the [lists] would be private." *Id*. at 1015. On the contrary, the court noted, the information revealed in a given list would necessarily "come to light" days later in the deposition. *Id*. at 1017 (the protocol merely adjusted "the timing of disclosure;" "no lawyer can be so sanguine as to expect that the opposition will not become privy to his choice of deposition exhibits"). In contrast to the exhibit lists in *San Juan DuPont Plaza*, which would inevitably be disclosed to opposing counsel in due course, the work product at issue in this case is by no means expected to be disclosed to Plaintiffs' counsel herein.[2] Indeed, Biopure is not required to produce the documents it obtained from the SEC, Plaintiffs will never know what Biopure's counsel's litigation strategies were *at the time of the selection*. This is as it should be.

## CONCLUSION

---

[2] Also distinguishable is the District Court decision in *Bamberg v. KPMG, LLP*, 219 F.R.D. 33, 37 (D. Mass. 2003), in which the court concluded that work-product protection as to counsel's selection of documents was waived where counsel was aware that the procedure for production involved the review of all documents selected by defendants' bankruptcy counsel and the bankruptcy trustee. In the present case, unlike in *Bamberg*, there was no suggestion to Biopure – much less an assurance – that it's selection of documents was going to be analyzed by the SEC's lawyers.

Biopure's assertion of work product protection in the circumstances is entirely consistent with the purpose of the privilege, and disclosure of the documents Biopure obtained from the SEC – which Plaintiffs' counsel seek only to avoid the time and expense of obtaining them themselves – would be an unwarranted trespass into the mental impressions of Biopure's counsel in preparation of litigation. Accordingly, Biopure seeks a protective order excusing it from the requested production.

May 4, 2006                                              Respectfully submitted,

**BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, CHARLES A. SANDERS, J. RICHARD CROUT, HOWARD P. RICHMAN, and RONALD F. RICHARDS,**

By their attorneys,

/s/ Robert A. Buhlman
Robert A. Buhlman, BBO #554393
Donald J. Savery, BBO # 564975
Michael D. Blanchard, BBO#636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

*Attorneys for Defendants Biopure Corporation, Thomas A. Moore, Howard P. Richman, Carl W. Rausch, Ronald F. Richards, Charles A. Sanders and J. Richard Crout*

SEYFARTH SHAW, LLP

/s/ Christopher Robertson
Christopher Robertson (BBO# 642094)
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028

*Attorney for Defendant Ronald F. Richards*


EDWARDS ANGELL PALMER & DODGE LLP

/s/ Cathy A. Fleming
John D. Hughes (BBO# 243660)
Mary P. Cormier (BBO# 635756)
101 Federal Street
Boston, MA 02110
(617) 439-4444

Cathy A. Fleming (*pro hac vice*)
750 Lexington Avenue
New York, NY 10022
(212) 308-4411

*Attorneys for Defendant Howard P. Richman*


**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on May 4, 2006.

/s/ Robert A. Buhlman
Robert A. Buhlman

7