**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE BIOPURE CORPORATION SECURITIES LITIGATION | Civ. No. 03-12628 -NG |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

**INTRODUCTION**

In its order dated March 28, 2006, this Court denied the Defendants' Motion to Dismiss and ordered the Defendants to produce the documents requested by Plaintiffs within thirty days. Among the documents which the Court ordered the Defendants to produce are "all documents produced to the Defendants by the SEC" in the SEC's action against the Defendants Biopure, Moore and Richman, *SEC v. Biopure,* No. 05-11853-PBS, D. Mass. (the "*SEC* Action"). The Defendants have refused to produce the documents which the SEC produced to them in the *SEC* Action, claiming those documents are protected by the attorney work-product privilege. The Court heard argument regarding this issue at the Status Conference on May 1, 2006, and took the issue under advisement (Electronic Clerk's Notes, May 1, 2006). The Defendants now have moved the Court for a protective order with regard to those documents.

For the reasons set forth herein, this Court should deny Defendants' Motion for a Protective Order and order the Defendant to produce all documents produced to the Defendants by the SEC in the *SEC* Action within seven days of the Court's order.

**THE DEFENDANTS HAVE WAIVED ANY ATTORNEY WORK-PRODUCT PRIVILEGE WHICH MAY HAVE APPLIED TO ANY OF THE DOCUMENTS PRODUCED TO THEM BY THE SECURITIES AND EXCHANGE COMMISSION**

As articulated in Plaintiffs' counsel's letter to the Court dated April 29, 2006 (Docket No. 121) (Exhibit A hereto) and at the May 1 Status Conference, the Defendants' Motion for a Protective Order should be denied because any work-product privilege that may have existed has been waived by the Defendants. The facts that give rise to the waiver were disclosed to the Court, by Defendants' counsel, at the May 1 Status Conference. In response to this Court's inquiry, attorney Buhlman confirmed that his paralegal and he went to the SEC's offices, reviewed all of the documents provided to them by the SEC, and identified the specific documents that they wanted to have copied. **Attorney Buhlman confirmed that he made a list of those documents which he wanted the SEC to copy and produce to him and he then left that list with the SEC, requesting that the SEC copy and produce the documents on his list.** Hearing Transcript, pgs. 24-25.[1]

Specifically, at the May 1 Status Conference, the Court posed the following questions:

> THE COURT: Mr. Buhlman, this is a matter of fact. If you can answer that, then the legal issue would be a separate issue. How was the production done? Did Biopure send the SEC a list of documents that it wished to be reproduced and returned to them? Did Biopure go physically to the SEC and tag documents and then the SEC would then reproduce the documents that had been tagged? How did it happen?

---

[1] All pages from the transcript of the May 1 Status Conference which are referenced herein are attached hereto as Exhibit B.

Attorney Buhlman responded as follows:

> The latter, your Honor. I went there [to the SEC's offices] myself with a paralegal from my office, just the two of us. We went through the file, and we made the decision as to what we would ask to be copied. **I recall making a list and *leaving the list*....**

Hearing Transcript, pgs. 24-25 (emphasis added). The Defendants' counsel's actions speak for themselves. They not only left the selected documents with the SEC, they left a list with the SEC which specifically identified the documents they had selected for copying. The Defendants shared the mental impressions of their counsel, as to which documents they desired to have copied, with the SEC, their adversary in the *SEC* Action. Having disclosed their counsel's mental impressions regarding which of the SEC documents they wanted to have copied to an adversary – the SEC in the *SEC* Action – the Defendants have waived any work-product privilege with respect to those mental impressions of their counsel. As the First Circuit held in *U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997): **"the prevailing rule [is] that disclosure to an adversary, real or potential, forfeits work product protection."** (emphasis added).

In determining whether a party has waived the work-product privilege, the court will consider:

> (1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege.

*In re Atlantic Fin. Mgmt. Sec. Litig.*, 121 F.R.D. 141, 145 (D. Mass. 1988) (citation omitted).

3

The purpose underlying the work-product privilege is the promotion of the adversary process. That purpose is no longer served once a party has disclosed the information to an adversary.

The decision in *Bamberg v. KPMG, LLP.*, 219 F.R.D. 33 (D. Mass. 2003), is directly on point with the facts of this case. In *Bamberg*, the plaintiffs followed the precise procedure which Defendants' counsel here has represented he followed with respect to the SEC documents. Plaintiffs' counsel in *Bamberg* had reviewed documents at the offices of one of their adversaries, selected which documents they wanted copied and produced, and left the selected documents with their adversary for subsequent production. Following that production, another adversary sought "copies of the documents which the plaintiffs selected and copied from [the first adversary]." *Id.* at 36. After highlighting that the identification and selection of documents falls within the category of "ordinary" work-product, Magistrate Judge Collings held that the plaintiffs had waived the work-product privilege when they made the information regarding their identification and selection of documents available to the first adversary. *Id.* at 37. The Court held that **"[w]hen disclosures are made to an adversary, the work-product is no longer within a 'zone of privacy,' so such disclosures cannot '...further the [work-product] doctrine's underlying goal.'"** *Id.* (citation omitted). **Therefore, "disclosure to one adversary waives the work-product protection as against all other adversaries."** *Id.* (emphasis added). Magistrate Judge Collings also held that "the work product protection is waived if the disclosure "...enable[s] an adversary to gain access to the information"", *Bamberg*, 219 F.R.D. at 37, quoting *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir.

4

1991).

The Defendants' actions, as described to the Court by attorney Buhlman, were absolutely inconsistent with the policy underlying the work-product privilege. The Defendants admit that they disclosed their document selections to the SEC, their adversary in the *SEC* Action. The Defendants' actions enabled the SEC, an adversary, to access the very "mental impressions" for which they now claim work-product protection here. The Defendants waived any work-product privilege that may have applied to those "mental impressions."

**SOME OF THE DOCUMENTS PRODUCED TO THE DEFENDANTS IN THE *SEC* ACTION WERE NEVER PROTECTED BY THE ATTORNEY WORK-PRODUCT PRIVILEGE**

**Documents Specifically Requested by the Defendants**

In their Motion for a Protective Order, the Defendants ignore the fact that some of the documents produced to the Defendants by the SEC in the *SEC* Action are not, and never were, even arguably covered by the attorney work-product privilege. Some of those documents are described by Defendants' counsel, Buhlman, in his April 27, 2006 letter to Plaintiffs' counsel, a copy of which is attached hereto as Exhibit C, as follows:

- "...there was a follow-up review of documents by Biopure's counsel of documents provided by the SEC, which then led to at least two letters to the SEC by counsel and resulting productions by the SEC that are also protected by work-product."

- "Finally, documents obtained from the SEC pursuant to Rule 34 requests also

reflect counsel's mental impressions and work product in connection with defense of the SEC enforcement action. Accordingly, we decline for these reasons to produce copies of documents and transcripts requested and obtained from the SEC in the defense of the SEC action."

Those assertions of attorney work-product are simply ludicrous! How can any attorney, in good faith, assert that his or her written requests for documents which were made to his or her adversary, in a Rule 34 document request or letter, and the documents then produced by the adversary in response thereto, is protected by the attorney work-product privilege? The very purpose of preparing written requests for documents production is to share those requests with ones adversary, in order to obtain the documents!

At most, it presents a metaphysical question whether Biopure's counsel's letters and Rule 34 requests to the SEC, described in attorney Buhlman's April 27, 2006 letter, were ever protected by the work-product privilege. Maybe one could say they were so protected until they were sent by Biopure's counsel to the SEC; and then, at that point, having been disclosed to the SEC, any such privilege was waived. However, the documents and transcripts which the SEC produced to Biopure in response to the letters and Rule 34 document requests were <u>never</u> protected by the work-product privilege – by definition, the SEC, the Defendants' adversary in the *SEC* Action, knew the identity of those documents even before the SEC produced them to the Defendants.

As previously noted, the Defendants, in their Motion for a Protective Order, ignore the fact that they have refused to produce those documents, based on asserted work-product protection, and yet they have not presented this Court with any legal or factual

explanation as to how the work-product privilege could possibly be applicable to those documents.

**Documents Used As Exhibits in SEC Testimony**

As part of their limited compliance with this Court's March 28 Order, the Defendants produced the transcripts of the testimony given by the Defendants at bar to the SEC during the SEC's investigation of Biopure and the other Defendants.  However, the Defendants have not provided plaintiffs with copies of the documentary exhibits (with the referenced exhibit numbers reflected thereon) about which the Defendants were questioned and about which they testified.  Those documents were obviously provided to the Defendants by the SEC when they were asked questions about them and hence those documents were required to be produced by this Court's March 28 Order.  Those documents are obviously not protected by the work-product privilege.  Plaintiffs' counsel requested those exhibits in his April 29, 2006 letter (*see* Exhibit A at p. 3, ¶ 2).  Defendants have ignored that request and this Court's March 28 Order requiring their production.

**Documents Filed Under Seal in the *SEC* Action**

At the request of Biopure, the Court in the *SEC* Action ordered the SEC to file all of its submissions in opposition to the Defendants' Motion for Partial Summary Judgment under seal.  (*See* Order Regarding Submission of Confidential Material, January 31, 2006, Docket No. 75 in *SEC* Action, attached hereto as Exhibit D).  Biopure made that request

to preserve the confidentiality of documents and information contained in the SEC's filings.[2] Pursuant to that Order, the SEC filed in opposition to Defendants' Motion for Partial Summary Judgment, a Memorandum, a Statement of Facts and three volumes of Exhibits and Testimony.  (Docket Nos. 83 - 87 in the *SEC* Action – *See* Docket Sheet pages from *SEC* Action attached hereto as Exhibit E).

Of course, all of the SEC's submissions in opposition to the Defendants' Motion for Partial Summary Judgment were provided to the Defendants by the SEC.  Accordingly, they are encompassed by this Court's March 28 Order.  Nevertheless, the Defendants have not produced those documents, despite the fact that those submissions are not protected by any possible privilege possessed by the Defendants at bar.

**CONCLUSION**

For the reasons stated above, this Court should deny the Defendants' Motion for a Protective Order, re-affirm its March 28, 2006 Order and order that the Defendants produce **all** documents and transcripts (and exhibits thereto) produced to them by the SEC in the *SEC* Action within seven days of the Court's denial of Defendants' Motion for a Protective Order.

---

[2] Biopure's confidentiality concerns in this action are fully protected by the Stipulated Protective Order entered by the Court in this action (Docket No. 120 and Electronic Clerk's Notes, May 1, 2006).

Dated: May 18, 2006

Respectfully submitted,

**SHAPIRO HABER & URMY LLP**

**/s/ Edward F. Haber**
Edward F. Haber BBO # 215620
Theodore M. Hess-Mahan BBO # 557109
Matthew L. Tuccillo BBO # 643336
53 State Street
Boston, MA 02109
(617) 439-3939


**STULL, STULL & BRODY**
Jules Brody (*pro hac vice*)
Howard T. Longman (*pro hac vice*)
6 East 45th Street
New York, New York 10017
(212) 687-7230

**Co-Lead Counsel For
Lead Plaintiff and The Class**


## Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the 18th day of May, 2006.

**/s/ Edward F. Haber**
Edward F. Haber