UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BIOPURE CORPORATION SECURITIES LITIGATION | Civ. No. 03-12628 -NG |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT BIOPURE CORPORATION'S MOTION TO COMPEL
DISCOVERY FROM NAMED PLAINTIFFS AND FOR AN EXTENSION OF
THE CLASS CERTIFICATION BRIEFING SCHEDULE**

Plaintiffs respectfully file this Memorandum in Opposition to Defendant Biopure Corporation's Motion to Compel Discovery from Named Plaintiffs and for an Extension of the Class Certification Briefing Schedule (Docket No. 134) and the Memorandum in Support thereof (Docket No. 135) (together, the "Biopure Motion to Compel"). Insofar as the issues raised by the Biopure Motion to Compel overlap with those raised in Plaintiffs' Motion for Protective Order (Docket No. 132) and the Memorandum in Support thereof (Docket No. 133) (together, the "Motion for Protective Order"), Plaintiffs respectfully herein incorporate by reference the arguments set forth in that motion. Plaintiffs further request that a joint oral argument be held with respect to both the Motion for Protective Order and the Biopure Motion to Compel.

The Biopure Motion to Compel seeks to compel Plaintiffs Dr. Stuart Gottlieb and Emily A. Bittman - who are **not** proposed as Class representatives - to appear for deposition, to provide answers to Biopure's First Set of Interrogatories to Plaintiffs Regarding Class Certification Issues (the "Biopure Interrogatories"), and to produce documents responsive to Biopure's First Set of Requests for Production of Documents

1

Regarding Class Certification Issues (the "Biopure Document Requests").  Defendants also seek to compel Plaintiffs Ronald Erickson and Dr. John G. Esposito, Jr. (who *are* proposed as Class representatives), both of whom have fully complied with their discovery obligations under the Federal Rules, to produce unredacted copies of already-produced brokerage account statements (which, as produced, evidence all trades in Biopure stock) as well as other documents that would reflect transactions in **non-Biopure** securities, and, following such production, to appear a **second** time for deposition (even though both provided full and complete answers to all questions posed about their non-Biopure transactions at their depositions in May 2006).  Finally, Defendants seek to modify the Scheduling Order; as discussed in Section III. herein, this portion of the Biopure Motion to Compel has been mooted.

For the following reasons, and for the reasons set forth in the Motion for Protective Order (Docket Nos. 132 and 133), Plaintiffs respectfully urge this Court to deny in full the Biopure Motion to Compel.

## Procedural History & Background Facts

With respect to Plaintiffs Gottlieb and Bittman, the essential dispute - raised by the both the Plaintiffs' Motion for Protective Order and the Biopure Motion to Compel - is whether and to what degree they, as Plaintiffs who are **not** proposed as Class representatives, are required to respond to Defendants' discovery requests and/or to appear for deposition.  The relevant background facts underlying this dispute are set forth in the Motion for Protective Order and the exhibits submitted therewith.  See id. at 1-6, Exhs. 1-10.  Nevertheless, it must be emphasized that **neither Plaintiff Gottlieb**

**nor Plaintiff Bittman is proposed as a class representative**.  Plaintiffs' original Motion for Class Certification, filed May 5, 2006 (Docket No. 127) was filed only on behalf of Plaintiffs Erickson, Esposito, and Gottlieb as proposed class representatives – it did not propose Plaintiff Bittman as a representative of the Class or Sub-class in this litigation.  Then, in order to avoid burdening the Court with a running dispute as to the location of class certification depositions (see Motion for Protective Order at 2-3 and Exhs. 2, 4, 5, 6, and 8), Plaintiffs' counsel advised defense counsel on May 23, 2006 that Dr. Gottlieb was being withdrawn as a proposed Sub-Class representative, after defense counsel had unilaterally determined that they would not accommodate the schedules of certain proposed Class representatives by insisting that the depositions take place only in Boston.[1]  Id. at 5, Exh. 8.  Plaintiff Gottlieb's withdrawal as a Sub-Class representative was formalized with the filing, on June 5, 2006, of an Amended Motion for Class Certification (Docket No. 131).[2]

It also needs to be noted that the Biopure Motion to Compel contains two factual errors.  First, the Biopure Motion to Compel asserts that, during the dispute as to deposition location, Plaintiffs' counsel's position had been that Dr. Gottlieb "would be made available for deposition only in New York." Id. at 5.  In fact, Plaintiffs' counsel had

---

[1] This was well before the date - June 8, 2006 - which defense counsel had unilaterally picked to notice Dr. Gottlieb's deposition in Boston.

[2] The Amended Motion for Class Certification (Docket No. 131) differed from the original Motion for Class Certification (Docket No. 127) in only two respects: (1) it withdrew Plaintiff Gottlieb as a proposed Sub-Class representative and (2) it put forward Plaintiff Esposito as a representative both of the Class and the Sub-Class.  Otherwise, the Amended Motion was identical to the prior motion, and by its express terms it relied upon the original Memorandum in Support (Docket No. 128), filed on May 5, 2006.

maintained that Plaintiff Gottlieb would be made available for deposition in Miami, Florida, which is where he lives and maintains a busy gastroenterology and consulting practice.

The second factual error in the Biopure Motion to Compel concerns the Plaintiff Bittman.  Biopure erroneously asserts that Bittman was not proposed as a class representative as a response to defendants' request to take her deposition.  Specifically, Defendants erroneously assert:

> …the timing of Plaintiffs' decision here not to offer Bittman as a class representative **after** receiving Biopure's request for her available deposition dates...is also suspect.  Clearly, these actions have been taken for the sole purpose of avoiding discovery.

Id. at 9 (emphasis added).  Defendants' statement is factually wrong.  Plaintiffs filed their original Motion for Class Certification (Docket No. 127) and the Memorandum in Support (Docket No. 128), which did not put forward Plaintiff Bittman as a proposed class representative, at 3:49 p.m. and 3:51 p.m., respectively, on May 5, 2006.  See ECF e-mail filing notifications of May 5, 2006, attached hereto as Exhibits A and B.  Defendants' counsel first requested a deposition date for Plaintiff Bittman in an electronic mail message sent **later** that same day, at 5:01 p.m.  See E-mail message from Donald Savery of May 5, 2006, attached hereto as Exhibit C.  Plaintiffs have done absolutely nothing "suspect."

Plaintiffs Erickson and Esposito, the proposed Class representatives,[3] both have

---

[3] Plaintiff Esposito is also being proposed as a representative of the Sub-Class.  See Amended Motion for Class Certification (Docket No. 131).

4

fully complied with their discovery obligations under the Federal Rules.  On May 19, 2006, Plaintiffs provided to Defendants: (1) Plaintiff Erickson's Responses and Objections to the Biopure Interrogatories, (2) Plaintiff Esposito's Responses and Objections to the Biopure Interrogatories, (3) Plaintiffs' [Joint] Responses and Objections to the Biopure Document Requests, (4) Plaintiff Erickson's document production, and (5) Plaintiff Esposito's document production.  See Motion for Protective Order Exh. 7.  On May 26, 2006, Plaintiffs provided Defendants with a privilege log.  Id. Exh. 10.  Defendants took the depositions of Plaintiffs Erickson and Esposito in Boston on May 30 and 31, 2006, respectively.[4]  At the depositions, without waiving any prior-stated objections to additional document production, Plaintiffs Erickson and Esposito fully answered any and all questions posed with respect to their transactions in non-Biopure securities.

Biopure now argues only that Plaintiffs Erickson and Esposito have not provided a sufficiently adequate response to Interrogatories Nos. 6 and 7, and to Document Request No. 20 (which simply seeks documents referred to or relied upon in answering the interrogatories).  See Biopure Motion to Compel at 12-16.  With regards to Interrogatory No. 6, Biopure complains that although Plaintiffs Erickson and Esposito produced brokerage statements evidencing their transactions in Biopure stock (including the date, broker, number of shares purchased or sold, and purchase price), they should not have redacted *unrelated* information (such as addresses and total

---

[4] In order to avoid burdening the Court with the dispute between Plaintiffs and Defendants as to where the depositions of the proposed class representatives should be held, Plaintiff Esposito traveled from Long Island, New York to Boston for his deposition.

account values).  With regards to Interrogatory No. 7, Defendants complain that Plaintiffs Erickson and Esposito have not provided discovery with regards to their transactions in securities *other than* Biopure stock.  Defendants have pressed this issue despite the fact that Plaintiffs Erickson and Esposito, without waiving their objections to producing documents concerning non-Biopure transactions, fully and completely answered all questions posed at their depositions concerning such transactions.

## Argument

**I. Defendants Should Not be Permitted to Take Discovery from Non-Representative Plaintiffs.**

**A. For Purposes of Discovery, Courts Routinely Treat Named Plaintiffs, Who are Not Proposed as Class Representatives, as Though They are Absent Class Members Throughout the Duration of the Litigation.**

Biopure argues that it should be allowed to obtain discovery of non-representative plaintiffs.  As discussed in detail in Plaintiffs' Motion for Protective Order, id. at 7-10, Biopure's position on this issue was roundly rejected by the courts in In re: Lucent Technologies Inc. Sec. Litig., 2002 WL 32818345 (D.N.J. May 9, 2002), aff'd, In re: Lucent Technologies Inc. Sec. Litig., 2002 WL 32815233 (D.N.J. July 16, 2002) and In re: Carbon Dioxide Antitrust Litig., 155 F.R.D. 209 (M.D. Fla. 1993), among others.  In those cases, defendants also sought to compel discovery responses by named plaintiffs not proposed as class representatives, raising the same arguments as advanced in the Biopure Motion to Compel.  Rejecting those arguments, the In re: Lucent court stated:

> Lead plaintiffs contend that the **named plaintiffs from whom discovery is sought are not proposed as class representatives and as such, remain on equal footing with absent class members, who are not generally subject to discovery.**  See In re: Carbon Dioxide Indus. Antitrust Litig., 155 F.R.D. 209, 211-12 (M.D. Fla. 1993).  Discovery with

6

>respect to the behavior of this handful of plaintiffs, they contend, cannot shed any light on the overall issue of liability, in particular on whether the entire class acted in reliance on the market price of [Defendant's] stock. ...
>
>**The Court agrees with Lead plaintiffs' position.** Though one way to rebut the presumption of reliance involves "proving that an individual plaintiff purchased the stock despite knowledge of the falsity of a representation...**individualized questions of reliance will not** in this case **illuminate a determination of class-wide liability or bear on** the inquiry into **whether the class representative's claims are typical** of the entire class. See Eisenberg v. Gagnon, 766 F.2d 770, 786 (3rd Cir. 1985). In other words, **discovery as to the investment behavior of the 41 named, non-lead plaintiffs is not probative of the question of class-wide reliance on the market.** Conclusions drawn from **the experience of this handful of named parties cannot be extrapolated to represent the experience of a class of hundreds of thousands of individuals** of which the putative class is comprised.

Id. at *1 (emphasis added)(denying defendant's motion to compel).

This decision was affirmed, with the affirming judge observing that the trial court had "reached the conclusion that the forty-one non-lead, non-representative plaintiffs should be treated as passive class members and thus not subject to discovery," noting that "other courts have similarly concluded," and concluding, "This Court agrees." In re: Lucent Technologies Inc. Sec. Litig., 2002 WL 32815233, *2 (D.N.J. July 16, 2002) citing In re: Carbon Dioxide Antitrust Litig., 155 F.R.D. 209, 211-212 (M.D. Fla. 1993)(denying defendants' motion to compel discovery responses from non-class representatives, which contended that "'name' plaintiffs are always subject to discovery, even though they have not been designated as class representatives," and finding that non-representative class plaintiffs "remain as passive class members, on equal footing with all other non-representative class members. The efficiencies of a class action would be thwarted if routine discovery of absent class members is permitted, particularly

7

on the issue of liability."); Guenther v. Sedco, Inc., 1998 WL 898349 at *7 (S.D.N.Y. Dec. 22, 1998)(absent class members are not parties for discovery purposes); Kline v. First Western Gov't Sec., 1996 WL 122717 at *2 (E.D. Pa. Mar. 11, 1996)(determining after "survey[ing"] cases that "it is safe to state that discovery of absent class members is disfavored.")

Here, Plaintiff Gottlieb and Plaintiff Bittman are **not** proposed as Class or Sub-Class representatives. Instead, they constitute just two members of a Class estimated to include "thousands of members" "throughout the United States." See Second Consolidated Amended Complaint at 85, ¶204. By contrast, Plaintiffs Erickson and Esposito are proposed as Class representatives and have fully complied with all discovery obligations. Thus, as argued in Plaintiffs' Motion for Protective Order, Plaintiffs Gottlieb and Bittman ought not be subject to any discovery during the period in which discovery is limited to class certification issues and, thereafter, should be treated as absent Class members for purposes of discovery,[5] just like the non-representative

---

[5] Biopure has not argued that it is entitled to take discovery of Plaintiffs Gottlieb and Bittman even if they are treated as absent class members. Even if it had, the Supreme Court has said regarding absent class member discovery, "We are convinced that such burdens are rarely imposed upon plaintiff class members." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 n.2 (1985). See also 5 *Newberg on Class Actions* §16:4 (4th ed. 2002); *Manual for Complex Litigation*, §21.41, at 400 (4th Ed. 2004). A defendant's right to take *any* absent class member discovery is highly circumscribed. See Teachers' Retirement System v. ACLN Ltd., 2004 WL 2997957, at *10 (S.D.N.Y. Dec. 27, 2004)(courts are "extremely reluctant" to permit absent class members discovery); Kline v. First W. Gov't Sec., 1996 WL 122717 at *1 (E.D. Pa. Mar. 11, 1996)(a "survey of cases" safely indicates that absent class member discovery "is disfavored."). Further, the party seeking absent class member depositions faces an even "more severe" burden. Clark v. Universal Builders, Inc., 501 F.2d 324, 341 (7th Cir. 1974). See also Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir. 1986) (citing Clark); Kline, 1996 WL 122717, at *3 (listing cases adopting a "Clark-like" standard); In re Currency Conversion Fee Antitrust Litigation, 2004 WL 2453927 (S.D.N.Y. Nov. 3, 2004), at *2 (party seeking absent class member deposition faces a "particularly heavy" burden) quoting Redmond

8

named plaintiffs in In re: Lucent Technologies and In re: Carbon Dioxide.[6]

      B.      **The Only Two Decisions Cited in the Biopure Motion to Compel, In re: Vitamin Antitrust Litig., 198 F.R.D. 296 (D.D.C. 2000) and In re: Folding Carton Antitrust Litig., 83 F.R.D. 260 (N.D. Ill. 1979), Are Distinguishable and Wrongly Decided, Respectively.**

In support of its arguments favoring discovery, including by deposition, of Plaintiffs Gottlieb and Bittman, neither of whom is proposed as a Class representative, Biopure only cites *two* decisions, one of which is distinguishable from the facts now at bar and the other of which is decades-old and was wrongly decided.

Biopure relies upon In re: Vitamin Antitrust Litig., 198 F.R.D. 296 (D.D.C. 2000) to illustrate "a similar discovery-avoiding tactic" to Plaintiffs' conduct regarding Plaintiffs Gottlieb and Bittman that was "attempted and rejected." See Biopure Motion to Compel at 8-9. In In re: Vitamins, defendants moved before a Special Master to compel discovery from all named plaintiffs, not just the class representatives. Id. at 303. After the Special Master issued a report recommending that *all* named class plaintiffs (including non-representative ones) be ordered to respond to the defendants' discovery requests, the plaintiffs *filed no objection*. Id. Then, with the Special Master's report already having issued, but before the court could rule, some representative plaintiffs

---

v. Moody's Investor Serv., 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995).

[6] It is worth noting that the sort of discovery which Biopure seeks from Plaintiffs Gottlieb and Bittman is *exactly* the type normally sought from absent class members. See Biopure Motion to Compel at 9-12. That is, Biopure seeks to gain discovery of Plaintiffs Gottlieb and Bittman, in their capacity as Class members, so as to have information against which to compare the typicality, adequacy, commonality, and predominance of the actual proposed Class representatives, Plaintiffs Erickson and Esposito.

filed a motion for voluntary dismissal of their actions. Id. Under these circumstances, the court found the "good faith" of the movants to be "highly questionable" because, *inter alia*, they "waited until the last moment, *after the Special Master had already ruled against them*" before filing for dismissal. Id. at 304 (emphasis added)(finding moving plaintiffs' actions "somewhat indicative of bad faith").[7] For these reasons, among others, while the court granted their motion, it did so on the condition that the plaintiffs to be dismissed first respond to the defendants' outstanding discovery requests, as per the Special Master's ruling. Id. at 306 cited in Hisler v. Gallauget Univ., 344 F. Supp. 2d. 29, 38 (D.D.C. 2004)(citing In re: Vitamins as a prior case where "the court has found insufficient those explanations that served as veiled maneuvers to avoid adverse rulings").

These facts are easily distinguished from those at bar. Biopure was put on notice as of May 5, 2006 (when the original Motion for Class Certification was filed) that Plaintiff Bittman was not being proposed as a Class representative, and it was notified on May 23, 2006 that Plaintiff Gottlieb was being withdrawn as a Sub-Class representative (due to an ongoing dispute as to the location of class certification depositions). See Motion for Protective Order at 2-3 and Exh. 8. When it was clear that the parties could not resolve their dispute as to the discovery obligations, if any, of non-representative named plaintiffs, Plaintiffs were the first to file a motion, the now-pending

---

[7] Among other things, the court also noted the plaintiffs' "lack of diligence and...unnecessary delay" in bringing the motion, stating that "the parties would have been better served had this issue been raised in front of the Special Master before he ruled on defendants' request for discovery." Id.

Motion for Protective Order, on June 5, 2006. At this point, the Court has taken no action, Plaintiffs face no adverse ruling, no Plaintiffs seek to withdraw from the litigation, and no Plaintiff has demonstrated any lack of "good faith." Thus, In re: Vitamins is inapposite to the issues now before the court, and Biopure's reliance upon that decision is misplaced.[8]

Biopure also cites In re: Folding Carton Antitrust Litig., 83 F.R.D. 260 (N.D. Ill. 1979) - decided decades before the cases cited in Plaintiffs' Motion for Protective Order (id. at 7-10) and *supra* (at 6-9). That 27-year-old case was wrongly decided. This is demonstrated by the subsequent decision in Feldman v. Motorola, Inc., 1992 WL 415382 (N.D. Ill. Nov. 5, 1992), which was decided by the *same court* as In re: Folding Carton. The situation in Feldman is factually and procedurally almost identical to the cross-motions now before this Court; and the decision in Feldman provides a clear roadmap as to how those cross-motions should be decided.

In Feldman, as is the case here, a second consolidated amended complaint was filed alleging violations of federal securities law, because certain individual defendants had misrepresented material facts about the defendant corporation, and relying on the fraud on the market theory. Id. at *1. In Feldman, as here, defendants sought

---

[8] As discussed, *supra* at 4-5, Biopure's analogy to In re: Vitamins to show that the handling of Plaintiff Bittman is "also suspect" is based on a complete misrepresentation of the facts. Plaintiffs did not, as asserted by Biopure, first receive Biopure's request for Plaintiff Bittman's deposition dates and then subsequently decide to not offer Plaintiff Bittman as a Class representative (as if it would have been a great surprise to receive deposition dates for Plaintiff Bittman were she to have been proposed as a class representative); rather, Plaintiffs *first* filed their original Motion for Class Certification, which did *not* propose Plaintiff Bittman as a Class or Sub-Class representative, and, *later* the same day, Biopure first requested her deposition dates. See *supra* at 4-5 and Exhs. A and B hereto.

production of brokerage statements by and depositions of the named plaintiffs.[9]  Id. at *4-*5.  In Feldman, as here, two of the named plaintiffs refused to make such production and to appear for deposition, and they filed a notice of withdrawal as class representatives and a motion for a protective order.  Id. at *5.  In Feldman, as here, defendants responded by filing a motion to compel the depositions and the production of the brokerage statements, arguing that the discovery was relevant to class certification issues.  Id.  Finally, in Feldman, as here, the plaintiffs opposed the motion to compel on the grounds that the non-representative named plaintiffs ought to be treated as absent class members and that discovery of absent class members is to be denied absent a strong showing of necessity.  Id. (noting plaintiffs' reliance on In re: Worlds of Wonder Sec. Litig., 1992 WL 330411 (N.D. Cal. July 9, 1992), which likewise rejected defendant arguments that absent class member discovery was relevant to questions of materiality and reliance).

Presented with these facts and a set of cross-motions nearly identical to those now before this Court, the Feldman court granted plaintiffs' motion for protective order and denied defendants' motion to compel, ruling that the withdrawn class representatives need not produce brokerage statements or appear for depositions.  In so holding, the court stated, in relevant part, as follows:

> While defendants are understandably skeptical about the motivations of named plaintiffs who seemingly seek to abdicate their responsibilities as class representatives in order to avoid discovery orders, discovery in this case has not...advanced very far.  This court believes the situation here

---

[9]  In fact, the Feldman plaintiffs were under a court order to produce brokerage statements, following the filing of a defendant motion to compel their production.  Id. at *4.

12

> is...distinguishable from the defendants' cases in that there is no history of noncompliance with discovery obligations. Also, an order to make this discovery will potentially dissuade [the withdrawn class representatives] from pursuing their claims against defendants. Since defendants may obtain information concerning these two plaintiffs' other securities transactions after the conclusion of the liability phase of this litigation, if relevant to damages, the inquiry turns to whether the circumstances of their withdrawal are relevant to class certification. ... Defendants will have full opportunity to challenge the adequacy of the remaining class representatives. ... Having determined that plaintiffs' motion for a protective order should be granted, the court denies defendants' motion to compel.

Id. at *6-*7.

### C. The Court has Bifurcated Discovery, and Biopure's Generalized Arguments About Why Discovery of Non-representative Named Plaintiffs Might be Relevant to the Issue Class Certification Have Been Roundly Rejected by the Courts.

The Motion for Protective Order fully demonstrates that this Court's Docket Order of May 2, 2006, which adopted the parties' Joint Statement and bifurcated discovery into a class certification phase followed by a merits phase, acts to bar the discovery that Biopure now seeks to compel of Plaintiffs Gottlieb and Bittman, neither of whom is proposed as a Class or the Sub-Class representative. Just two points need to be reiterated here. First, discovery was bifurcated **at the request of the Defendants**. Second, as discussed *supra* at 5, Plaintiffs Erickson and Esposito, the two proposed Class representatives, have complied with all their discovery obligations.

With respect to Biopure's generalized arguments as to why discovery of non-representative named plaintiffs *might* be relevant to the issue of class certification, see Biopure Motion to Compel at 9-12, Biopure cites to **no decisional precedent** ordering such discovery to proceed of non-representative named plaintiffs. Indeed, Biopure's

13

arguments have been roundly rejected by the courts, in particular the Feldman decision, discussed *supra*, which expressly rejected arguments that discovery of two named plaintiffs who had withdrawn as class representatives would be relevant to issues of class certification and which granted plaintiffs' motion for protective order barring such discovery while denying defendants' motion to compel it.  See also, e.g., In re: Lucent Technologies Inc. Sec. Litig., 2002 WL 32818345 (D.N.J. May 9, 2002), aff'd, In re: Lucent Technologies Inc. Sec. Litig., 2002 WL 32815233 (D.N.J. July 16, 2002) and In re: Carbon Dioxide Antitrust Litig., 155 F.R.D. 209 (M.D. Fla. 1993), discussed *supra* at 7-9.

## II.     Plaintiffs Erickson and Esposito, the Proposed Class Representatives, Have Fully Complied with Their Discovery Obligations.

Plaintiffs Erickson and Esposito are the proposed representatives of the Class, with Plaintiff Esposito also serving as the proposed representative of the Sub-Class.  As discussed, *supra* at 5, both have complied with their discovery obligations under the Federal Rules, including by answering interrogatories, producing documents and a privilege log, and appearing for depositions.  The Biopure Motion to Compel disputes their compliance only with regards to Interrogatories Nos. 6 and 7 and Document Request No. 20 (which simply seeks documents referred to or relied upon in answering the interrogatories).  See Biopure Motion to Compel at 12-16.  For the following reasons, Biopure's arguments should be disregarded.

A.  **Plaintiffs' Redactions of Their Brokerage Statements, which Removed only Information *Unrelated* to Their Transactions in Biopure Stock, Are Legally Proper; Plaintiffs Have Therefore Adequately Answered Interrogatory No. 6 and Document Request No. 20.**

Plaintiffs Erickson and Esposito produced brokerage account statements evidencing their transactions in Biopure stock (reflecting the date, broker, number of shares purchased or sold, and purchase price).  With regards to Interrogatory No. 6 (and the related Document Request No. 20), Biopure complains only that Plaintiffs redacted from those brokerage statements information *unrelated* to the Biopure transactions (such as addresses and total account values) due to improper "privacy concerns."  Tellingly, Biopure does not cite a single decisional authority in support of its argument.

Courts commonly permit the production of brokerage statements in redacted form.  For example, in Kaplan v. Pomerantz, 131 F.R.D. 118 (N.D. Ill. 1990), the plaintiff had initially refused to provide certain documents in discovery, including brokerage statements.  Id. at 125.  The defendants filed a motion to compel, which the court granted, "with the exception that the production of the brokerage statements was required **only in redacted form**."  Id. (emphasis added).[10]  For this reason, Biopure's complaint that Plaintiff Erickson's and Plaintiff Esposito's responses to Interrogatory No.

---

[10] Furthermore, when the defendants subsequently argued that the plaintiff's refusal to comply with discovery requests made him "unfit to serve as a class representative," the Kaplan court disagreed, rejecting "defendants' broad view of discovery" and stating that it was "unwilling to find a plaintiff to be an inadequate class representative solely on the basis of a good faith disagreement as to the proper scope of discovery which resulted in a ruling against plaintiff." Id. at 125-126.

6 and Document Request No. 20 were insufficient should be rejected by this Court.[11]

### B. Plaintiffs' Refusal to Produce Documents Evidencing Transactions in Non-Biopure Securities is Proper; Plaintiffs Need Not Further Respond to Interrogatory No. 7 and Document Request No. 20.

With regards to Interrogatory No. 7, Biopure complains that Plaintiffs Erickson and Esposito have not produced documents evidencing their transactions in securities *other than* Biopure stock. It is worth noting to the Court that Biopure has raised this argument despite the fact that both Plaintiff Erickson and Plaintiff Esposito, without waiving their objections to producing such documents, fully and completely answered *all* questions posed at their depositions concerning such non-Biopure stock transactions.[12]

Simply put, the documents sought by Biopure are not relevant to the issues in this litigation, but even assuming *arguendo* that they are (however remotely so), under the Federal Rules, specifically Fed. R. Civ. P. 26(b)(2), the trial court must balance the burden of the proposed discovery against any likely benefit, considering the privacy interests of Plaintiffs Erickson and Esposito which Biopure is so quick to disregard. On this point, the First Circuit's decision in <u>Gill v. Gulfstream Park Racing Ass'n</u>, 399 F.3d

---

[11] Biopure has issued third party subpoenas to every brokerage house at which Plaintiff Erickson and Plaintiff Esposito held an account. Production of responsive documents is ongoing, during the course of which unredacted versions of the very same documents Biopure now seeks to compel from the Plaintiffs have been produced, thus rendering this portion of the Biopure Motion to Compel moot. That has already occurred with regards to the brokerage statements of Plaintiff Esposito from Harris*direct*™ (previously produced in redacted form and marked as deposition exhibits 13 and 15).

[12] For this reason, Defendants' effort to require Plaintiffs Erickson and Esposito to appear a second time for deposition, to again answer questions concerning these non-Biopure transactions, is nothing more than an effort to harass and burden the class representatives here.

16

391 (1st Cir. 2005) is illustrative.

In Gill, a party inadvertently disclosed the names of government informants, which were then placed under seal. Id. at 393. On appeal from a trial court order granting a motion by the non-disclosing party to unseal the names, the First Circuit noted that while Fed. R. Civ. P. 26(b)(1) does provide for "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party... *All discovery* is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii). ... Discovery of both privileged and non-privileged information may be limited by Rule 26(b)(2)." Id. at 400 citing Fed. R. Civ. P. 26(b) (emphasis original).[13] The court continued, "Under Rule 26, the trial court is **required** to balance the burden of the proposed discovery against the likely benefit." Id. (emphasis added). The Gill court further stated:

> In particular, considerations of the public interest, the need for confidentiality, and **privacy interests are relevant factors to be balanced**. See, e.g., Seattle Times Co. V. Rhinehart, 467 U.S. 20, 35 n.21, 104 S. Ct. 2199, 81 L.Ed.2d 17 (1984)("**Although Rule [26(c)]**

---

[13] Fed. R. Civ. P. 26(b) states, in relevant, as follows:

(2) *Limitations.* ... The frequency of extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative...or pursuant to a motion under Rule 26(c).

Fed. R. Civ. P. 26(b)(2).

> **contains no specific reference to privacy** or to other rights or interests that may be implicated, **such matters are implicit in the broad purpose and language of the Rule.**"); In re: Sealed Case (Medical Records), 381 F.3d 1205, 1215 (D.C. Cir. 2004)(**interests in privacy should be taken into account in the Rule 26 analysis, even when "the information sought is not privileged"**); Ellison v. Am. Nat'l Red Cross, 151 F.R.D. 8, 11 (D.N.H. 1993)(balancing public interest in protecting the nation's blood supply against litigant's interest in discovering the identity of blood donors).

Id. at 402 (stating, id. at 403, that "the law is clear" that privacy interests "must be weighed" by the trial court, vacating the order unsealing the informants' names, and remanding).

In accordance with the First Circuit's guidance in Gill, this Court must balance the burden to Plaintiffs Erickson and Esposito of the discovery sought by Biopure against its benefits, taking into consideration the privacy concerns of the Plaintiffs. Here, Plaintiffs Erickson and Esposito have produced all documents in their possession evidencing trades in Biopure stocks and have been thoroughly deposed concerning those transactions. In addition, at deposition, Plaintiffs Erickson and Esposito fully and completely answered all questions posed regarding their trades in non-Biopure securities, as well as general questions concerning their investment styles and strategies. As such, the benefit of their producing documents evidencing trades in non-Biopure securities is non-existent or at best minimal, while the burden and the imposition on their privacy interests is great. For this reason, the Court should disregard Biopure's arguments concerning the sufficiency of Plaintiff Erickson's and Plaintiff Esposito's responses to Interrogatory No. 7 and Document Request No. 20.[14]

---

[14] In support of its argument, Biopure cites only Roseman v. Sports & Recreation, 165

### III. The Class Certification Briefing Schedule.

This Court's Docket Order of May 2, 2006, which adopted the parties' Joint Statement and Proposed Schedule, established a due date of June 30, 2006 for Defendants' oppositions to Plaintiffs' class certification motion and a due date of July 28, 2006 for Plaintiffs' reply brief. The Biopure Motion to Compel sought to modify these deadlines. Since its filing, the parties have come to an agreement as to a modification of the class certification briefing schedule, subject to the approval of the Court. Plaintiffs anticipate that such agreement will be set forth in an agreed upon Stipulation to be filed promptly with the Court. As such, that portion of the Biopure Motion to Compel which sought to modify the class certification briefing schedule has been mooted.

### Conclusion

Inasmuch as neither Plaintiff Gottlieb nor Plaintiff Bittman are proposed as Class representatives, any discovery with respect to them, including their deposition, is barred at this juncture of the litigation, which is limited to class certification discovery pursuant to this Court's Docket Order of May 2, 2006. Furthermore, Plaintiffs Dr. Gottlieb and Bittman, as named, non-representative plaintiffs, are to be treated like absent Class members, discovery of whom is not permitted. Plaintiffs Erickson and Esposito have fully complied with their discovery obligations, including by answering interrogatories, producing documents and a privilege log, and appearing for their depositions.

---

F.R.D. 108 (M.D. Fla. 1996), for the proposition that the plaintiffs' investment history in securities of other corporations is relevant. However, as the Gill decision makes clear, even otherwise relevant discovery can be limited based upon a balancing of benefit against, among

Accordingly, for the reasons set forth herein and in Plaintiffs' Motion for Protective Order, the Biopure Motion to Compel should be denied in its entirety.

Dated:    June 19, 2006              Respectfully submitted,

**SHAPIRO HABER & URMY LLP**

**/s/ Matthew L. Tuccillo**
Edward F. Haber BBO # 215620
Matthew L. Tuccillo BBO # 643336
53 State Street
Boston, MA 02109
(617) 439-3939

**STULL, STULL & BRODY**
Jules Brody (*pro hac vice*)
Howard T. Longman (*pro hac vice*)
6 East 45th Street
New York, New York 10017
(212) 687-7230

**Co-Lead Counsel For
Lead Plaintiff and The Class**

## Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the 19th day of June, 2006.

**/s/ Matthew L. Tuccillo**
Matthew L. Tuccillo

---

other things, privacy concerns.