1

Case 1:03-cv-12628-NG    Document 146-2    Filed 07/25/2006    Page 1 of 9



Not Reported in F.Supp.                                                                                                              Page 1
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376
**(Cite as: Not Reported in F.Supp.)**

▶

Briefs and Other Related Documents

United States District Court, W.D. Washington.
In re ALDUS SECURITIES LITIGATION.
No. C92-885C.

March 1, 1993.

Opinion

COUGHENOUR, District Judge.

**\*1** This matter is before the Court on Defendants' Motion to Dismiss and Defendants' Motion for a Determination that Plaintiffs' State Law Claims Are Not Maintainable as a Class action. Neither party requests oral argument. After reviewing all relevant documents and being fully informed, the Court finds and rules as follows:

1. Factual Background

A. Plaintiffs' Factual Allegations

This purported class action [FN1] is on behalf of persons who acquired Aldus Corporation ("Aldus") common stock between March 14, 1991 and June 22, 1992 (the "Class Period").[FN2] According to the complaint, defendants schemed to inflate Aldus stock to unjustifiably high prices by releasing misleading information to the public. Plaintiffs further claim that the individual Aldus defendants-former and current officers of the company-engaged in illegal insider trading by selling their personal shares of Aldus stock prior to a sharp drop in the stock's price.

The complaint alleges that defendants' actionable misstatements concerning Aldus' financial health and prognosis began with an annual report filed with the Securities Exchange Commission on March 14, 1991. The report, entitled "Delivering on the Promise," predicted that Aldus would "continue to deliver" new and diversified products to the computer software market. Moreover, the annual report stated that Aldus had a "healthy balance sheet" and would benefit from the "imminent release of two major products for the fast-growing Microsoft windows market." According to plaintiffs, Aldus' balance sheet was misleading, and defendants knew that Aldus would not benefit from the release of two major products, as claimed.

Plaintiffs also allege that Aldus' 1990 annual report "featured" the investment firm of Piper Jaffray, and that in return, Piper Jaffray published a glowing report about the company on April 1, 1991. That report, allegedly based on information provided by Aldus, made reference to several Aldus strengths. According to plaintiffs, defendants knew that these were not strengths, but instead, weaknesses. Specifically, plaintiffs contend that statements concerning the following alleged "strengths" mislead investors: (1) that Aldus would benefit from its product cycle because most of its products were at early stages of their life cycles; (2) that the company was insulated from economic slowdown by virtue of its robust international operation, and (3) that revenue growth was anticipated to exceed twenty-five percent. Plaintiffs also assert that Aldus' amortization policy, which Piper Jaffray characterized as conservative and realistic, in fact concealed the company's decision to write-off obsolete goods.

In late July, 1991, defendants hosted an analysts' briefing to promote Aldus as a strong corporation with a promising future. At the briefing, according to plaintiffs, defendants boasted of Aldus' expansion in Europe, the diversity of the Aldus product line, the anticipated strong demand for Aldus' products, and the superiority of Aldus' products over those of its competitors. Piper Jaffray echoed these glowing assessments of Aldus' future in a report published shortly thereafter that predicted 20 to 25 percent growth. The report also suggested that investors "look for net income of $2.00 per share" in 1991.

**\*2** Despite the rosy picture painted by Aldus and analysts, defendants announced on October 21, 1991, that Aldus' earnings for the third quarter were lower than the comparable period of the previous year, and that its per share earnings were just $0.35. According to plaintiffs, Mr. McAleer, an Aldus vice president, assuaged investor concerns by misleadingly attributing the less-than-predicted profits to "seasonal weakness in certain European markets and sluggish economic conditions." Moreover, plaintiffs claim that Mr. McAleer stated falsely that Aldus' new product cycle was expected to generate strong revenue flow, which would result in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 2
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376
**(Cite as: Not Reported in F.Supp.)**

considerably higher fourth-quarter figures. The complaint charges that on the basis of these and other misleading statements by defendants, despite lackluster third-quarter earnings figures, the price of Aldus stock declined only slightly, moving from $43.50 per share on October 21, 1991, to approximately $40.00 on November 8, 1991.

Plaintiffs also accuse defendants of misrepresentations which had the effect of sugar-coating serious problems with management. On December 9, 1991, defendants announced the resignation of Mr. Spelhaug, the vice president of marketing, citing "personal reasons." Plaintiffs claim that Mr. Spelhaug's resignation was actually prompted, however, by Aldus' recognition that a management shakeup was necessary to combat further market-share erosion and to speed-up replacement of inferior products. Additionally, plaintiffs maintain that defendants sought to dilute the potentially adverse impact of Mr. Spelhaug's resignation by manipulating the investment firm of Regan McKenzie. In particular, the complaint alleges that comments made by Aldus' president during a meeting with a Regan McKenzie analyst contributed to Regan McKenzie issuing a report stating that nothing was systematically wrong with Aldus and that its products were not losing market share. Plaintiffs claim that as a result of such misrepresentations to the financial community, the price of Aldus stock actually rose to $45.00 per share in January, 1992, in spite of management problems.

On January 9, 1992, defendants held a conference with analysts to announce a revenue and earnings shortfall for the previous quarter. As told by plaintiffs, defendants misleadingly characterized the shortfalls as "surprising," and disingenuously advised analysts to anticipate 4th quarter revenues in the $40 to $43 million range and earnings in the vicinity of $0.27 to $0.32 per share." In addition, plaintiffs claim that Aldus falsely insisted during the meeting that its future remained promising on account of a variety of new products.

Next, plaintiffs complain that a February 4, 1992 Aldus press release allegedly failed to disclose the extent of market-share erosion caused by competition, internal strife among the company's management, product problems, and improperly amortized software development costs. Plaintiffs claim that again on April 21, 1992, defendants issued an intentionally misleading press release explaining away disappointing revenue figures on the grounds that sales marketing expenses had been high because of efforts to attract new customers. In that release, Aldus also pointed to an increase in costs associated with the amortization of capitalized software development. According to plaintiffs, "this was no authentic amortization at all, but a concealed write-off of the company's superannuated goods." Plaintiffs' Opposition Memorandum, at p. 9.

**\*3** On April 21, 1992, Aldus announced that two high-level officers, Mr. Herres and Mr. Howard, had resigned "to pursue other interests." Plaintiffs submit that the real reasons for the resignations were serious product development and marketing problems. The management changes, together with the twenty-five percent drop in first quarter profits and a partial disclosure of competition problems, according to plaintiffs, caused the price of Aldus' stock to plummet to $19 per share, less than half its value only four months previously. And finally, plaintiffs claim that on June 22, 1992, defendants held a conference with analysts during which they admitted that a gain in revenue momentum was not expected until the next generation of products-which was at least a year away. According to plaintiffs, these confessions, coupled with an announcement a few weeks later than Aldus had lost nearly $1 million dollars in the second quarter of 1992, resulted in the price of Aldus stock falling even further, to $12 a share.

B. Defendants' Contentions

Defendants do not challenge the specifics of plaintiffs' version of the events giving rise to this action. Instead, defendants argue that the allegations in the complaint, even if true, require dismissal. Specifically, defendants contend that plaintiffs fail to state facts giving rise to liability under federal and state securities laws because: (1) there can be no liability for projections made by third-party analysts; (2) defendants had no duty to make pejorative statements regarding the competitiveness of Aldus products; (3) the accounting methodology and warnings were accurate and sufficient; and (4) plaintiffs lack standing to bring insider trading claims against the defendants other than Mr. McAleer. Memorandum in Support of Defendant's Motion to Dismiss, pp. 1-2.

II. Discussion

MOTION TO DISMISS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376
**(Cite as: Not Reported in F.Supp.)**

### A. Legal Standard

Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss all counts, except the insider trading claims against Mr. McAleer, for failure to state a claim upon which relief can be granted and failure to plead with particularity. When considering a motion to dismiss, a court must presume that the allegations set forth in the complaint are true, and grant the motion only if it appears "beyond doubt" that plaintiffs can prove no set of facts warranting the requested relief. Sun Savings & Loan Assoc. v. Dierdorff, 825 F.2d 187, 191 (9th Cir.1987).

It is tempting, to be sure, for courts to leap-frog ahead and decide seemingly clear-cut issues of fact on a motion to dismiss. The Court is mindful of this temptation, however, and will resist it. Accordingly, any claims that are obviously frivolous because of overwhelming factual evidence will be disposed of on summary judgment.

### B. Analysis

#### 1. Adoption

To be liable for misleading forecasts made by analysts, defendants must have placed their imprimatur on the projections, thereby adopting them as their own. Elkind v. Liggett & Myers, 635 F.2d 156, 163 (2d Cir.1980); In re Verifone Securities Litigation, 784 F.Supp. 1471, 1486 (N.D.Cal.1992); Alfus v. Pyramid Technology Corp., 764 F.Supp. 598, 603 (N.D.Cal.1991). This adoption may be explicit or implicit. Id. As such, a duty to correct materially misleading projections by analysts exists where a corporation "sufficiently entangle[s] itself with the analysts' forecasts to render those predictions attributable to it." Elkind, 635 F.2d at 163.

**\*4** Defendants argue that this action must be dismissed because the complaint fails to allege that defendants adopted the various analyst forecasts. Defendants' Reply Memorandum pp. 9-11. Contrary to defendants' assertions, however, the complaint expressly alleges that defendants adopted analyst statements and publications regarding Aldus stock. Complaint ¶ 22 at p. 12 (Defendants' "course of conduct included ... adopting and acquiescing in analysts' reports...."). Accordingly, the Court finds that plaintiffs have indeed alleged adoption, and thus dismissal on this ground is impermissible.

The next question is whether plaintiffs have alleged adoption with a level of specificity sufficient to satisfy the requirements of Rule 9(b). According to defendants, the complaint should be dismissed because it does not state with particularity the allegedly misleading statements made by defendants to analysts. Reply memorandum pp. 10-11.

The purpose of Rule 9(b)'s particularity requirement is, of course, to provide defendants with the "circumstances constituting the [alleged] fraud so that the defendant can prepare an adequate answer from the allegations." Deutsch v. Flannery, 823 F.2d 1361, 1365 (9th Cir.1987). Generally, Rule 9(b) mandates that a complaint state the persons responsible for an alleged misrepresentation, as well as the specific time, place, and content of the statement. However, in cases where corporate fraud is alleged in relation to information contained in prospectuses, registration statements, annual reports, press releases, and other types of information disseminated on behalf of a corporation, the requirements of Rule 9(b) have been relaxed. As the Ninth Circuit has observed.
it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the role of the individual defendants in the misrepresentations. Wool v. Tandem Computers Inc., 818 F.2d 1433, 1440 (9th Cir.1987) (citations omitted). See also, Blake v. Dierdorff, 856 F.2d 1365 (9th Cir.1988).

Here, the amended complaint provides the dates of the allegedly misleading publications, descriptions of the representations at issue, and the reasons why plaintiffs believe they are false or misleading. As a result, the Court finds that the complaint sets forth the alleged misrepresentations with sufficient specificity to apprise defendants of the allegations against them.[FN3] Requiring plaintiffs to pinpoint the specific representations made by each defendant to analysts would, in the Court's opinion, be an unduly high hurdle for plaintiffs to clear. Indeed, it would be most unusual for plaintiffs to have pre-discovery access to specific comments, presumably made in confidence, by Aldus officers to analysts. Accordingly, the Court has scant difficulty concluding that the adoption allegations set forth in

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376
**(Cite as: Not Reported in F.Supp.)**

the complaint satisfy Rule 9(b).

2. Statements Concerning Competition, Product Aging, and Momentum

**\*5** Defendants contend that the complaint alleges only that they failed to disclose pejorative information, and argue that a duty to disclose such information only arises where it is not available to the market through other sources. On this basis, defendants assert that even if they were under a duty to disclose pejorative facts concerning Aldus' ability to compete, product aging, and momentum, no fraud existed because the negative information allegedly withheld was available to the market through other sources. The Court is unpersuaded by these arguments.

The Ninth Circuit has recently held that "[p]rojections and general expressions of optimism may be actionable under the federal securities law." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 501 (9th Cir.1992) (quoting *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir.1989)). Specifically, a projection or statement of belief may be actionable under Rule 10b-5 if one of the following implied factual assertions is false: (1) that the officer or corporation genuinely believes the statement; (2) that the statement is based on reasonable belief; or (3) that the speaker is unaware of any undisclosed facts which undermine the accuracy of the statement. *Apple Computer,* 886 F.2d at 1113.

Defendants do not dispute plaintiffs' claims that Aldus made repeated projections of unqualified optimism from March 14, 1991 (filing date of the 1990 annual report) through late April, 1992. Moreover, it is uncontroverted for purposes of this motion that defendants predicted strong sales of Aldus products and high profit margins on a number of occasions. It is against this backdrop, therefore, that the alleged misrepresentations concerning the viability of Aldus' products must be viewed. *Id.* Thus, irrespective of any duty to reveal pejorative information or negative internal forecasts, predictions of future strong sales and high profits may be actionable if defendants were aware of any countervailing facts which significantly undermined the accuracy of such statements. *Id.* The Court's analysis need not go further, because whether the statements catalogued in plaintiffs' complaint were sufficiently misleading to constitute violations of Rule 10(b)-5 is quintessentially a question of fact, and not appropriately resolved on a motion to dismiss.

Defendants also advance the argument that the market was aware of the characteristics and age of Aldus products as compared to those of its competitors, thus there was no obligation to acknowledge potentially problematic aspects of the Aldus product line. Defendants' Memorandum, p. 9. An in-depth look at the complaint, however, shows that it sets forth allegations that defendants made misleading statements concerning matters of which the public could not have had perfect knowledge. For instance, the complaint includes allegations that: (1) defendants misleadingly heralded the advantages of its product cycle; (2) Aldus issued disingenuously optimistic revenue forecasts in the face of an internal product development and marketing crisis; and (3) defendants filed misleadingly enthusiastic annual reports while at the same time telling internal sales people that revenues would be substantially under street expectations. Complaint ¶¶ 115(g), 115(j), 112(a). Moreover, even if the negative information which defendants allegedly withheld had been released to some members of the public, it would not necessarily absolve defendants from liability. As the *Apple Computer* court remarked,

**\*6** corporate insiders are not relieved of their duty to disclose material information where that information has received only brief mention in a few poorly-circulated or lightly-regarded publications. The investing public justifiably places heavy reliance on the statements and opinions of corporate insiders. In order to avoid Rule 10b-5 liability, any material information which insiders fail to disclose must be transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by the insider's one-sided representations.

*Apple Computer,* 886 F.2d at 1116 (citation omitted). Accordingly, whether the market was aware, as defendants claim, of problems with the Aldus product line and whether such information was material, are clearly questions of fact to be determined at a later stage of this litigation.

3. Allegations of Corporate Mismanagement

Relying on *Sante Fe Industries, Inc. v. Green,* 430 U.S. 462 (1977), defendants argue that allegations of corporate mismanagement alone are insufficient to implicate Rule 10b-5. In particular, defendants submit that the allegations set forth in Paragraphs

Not Reported in F.Supp.  Page 5
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376
**(Cite as: Not Reported in F.Supp.)**

114, 115(j), (s) and (x) of the complaint are not actionable because they allege mismanagement. With respect to Paragraphs 114 and 115(j), the Court reads these allegations as claiming misrepresentation, not mismanagement. As for parts (s) and (x) of Paragraph 115, the Court concludes that these allegations concern mismanagement, and are therefore not actionable under 10(b)(5). This conclusion does not, however, require dismissal of any of plaintiffs' claims because, as discussed above, the complaint adequately states fraud-on-the-market claims.


4. Amortization and Accounting Claims

Plaintiffs' complaint alleges four wrongful acts with regard to amortization and accounting practices during the Class Period: (1) Aldus' reference to an "increase" in amortization of software development costs was misleading because it failed to disclose the magnitude of such increases; (2) Aldus employed misleading accounting procedures to distort amortization costs; (3) failure to write-off obsolete products; and (4) inflating quarterly earnings through "channel stuffing." Defendants contend that, for varying reasons, each of these claims should be dismissed.

First, defendants argue vigorously that there can be no liability for failure to disclose the magnitude of projected increases in amortization costs, and cite to a recent Ninth Circuit case, *In re Convergent Technologies Securities Litigation,* 948 F.2d 507 (9th Cir.1991). Indeed, the *Convergent Technologies* court specifically disavowed any obligation on the part of companies to disclose internal projections. *Id.* at 516. On this basis, the Court concludes that Aldus had no duty to reveal the specific amount of projected amortization cost increases. These claims are therefore DISMISSED with prejudice.

*7 Next, the Court finds unpersuasive defendants' second contention: that employing an erroneous amortization schedule is in essence an allegation of mismanagement and therefore not actionable. If defendants intentionally used the wrong accounting procedure when straightlining costs, as alleged in the complaint, they would surely be liable for knowingly misleading the investing public. As such, defendants' motion to dismiss claims based on the use of misleading accounting procedures is DENIED.

Third, the Court concludes that whether defendants failed to write-down obsolete products is a question of fact, and thus such a determination must be postponed until a summary judgment motion is before the Court. The motion to dismiss this claim is DENIED.

Lastly, defendants argue that plaintiffs fail to allege claims of "channel stuffing" with the particularity required by Federal Rule of Civil Procedure 9(b). According to defendants, this lack of specificity warrants dismissal with prejudice. The Court, however, finds that the complaint sufficiently places defendants on notice as to the allegations against them, thereby permitting an effective defense to the channel stuffing claims. Defendants' motion to dismiss plaintiffs' channel stuffing claim for failure to plead with the particularity required by Rule 9(b) is therefore DENIED.


5. Insider Trading Claims

Plaintiffs' class action complaint also includes claims based on Section 20A of the Exchange Act of 1934, also known as The Insider Trading and Securities Fraud Enforcement Act. 15 U.S.C. § 78-1.[FN4] According to the complaint, defendants engaged in insider trading when they sold roughly $15 million worth of Aldus common stock while in possession of material, non-public information; specifically, that the Aldus product line had severe problems and faced a bleak future.

A necessary component of an insider trading claim is a showing that the plaintiffs traded contemporaneously with the alleged insider. 15 U.S.C. § 78-1; *see also, In re Verifone Securities Litigation,* 784 F.Supp. 1471, 1488 (N.D.Cal.1992). In contrast to a fraud-on-the market scheme, insider trading does not artificially boost or deflate the market price of a stock aside from typically negligible supply and demand adjustments. Accordingly, the remedy for wrongful insider trading is disgorgement of trading profits, and is only available to actual or potential victims of the insider trades. 15 U.S.C. § 78t-1(b)(1); *Wilson v. Comtech Telecommunications Crop.,* 648 F.2d 88 (2d Cir.1981). But because it is often exceedingly difficult or impossible to determine with precision which purchasers of a stock actually traded with an alleged insider, courts have replaced a strict privity requirement with the "contemporaneous trade" approach, under which a plaintiff must show that he or she traded stock contemporaneously with the defendant.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376
**(Cite as: Not Reported in F.Supp.)**

As both sides acknowledge, courts have applied varying definitions of "contemporaneous trade." [FN5] This Court concludes, however, that because the contemporaneous trade requirement functions as a substitute for privity, plaintiffs' insider trading claims against all defendants other than Mr. McAleer must be dismissed. More specifically, given the unquestionably high volume of Aldus stock traded daily during the period in question,[FN6] it is clear that plaintiffs did not trade with defendants other than possibly Mr. McAleer, as no plaintiffs traded on the days of the allegedly wrongful trades. Plaintiffs thus lack standing to assert insider trading claims against defendants other than Mr. McAleer, and for this reason, these claims are DISMISSED.

**\*8** Plaintiffs submit that, "at a minimum," the amended complaint states a claim that the individual defendants aided and abetted in the alleged insider trades by Mr. McAleer. In particular, plaintiffs direct the Court's attention to Paragraphs 1, 3, 21-22, 25, 28-29, 33, 51, 64, 69, 105. The Court's review of these portions of the complaint, however, indicates that plaintiffs have not adequately pled the elements of aiding and abetting. *See, Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1483 (9th Cir.1991)* (setting forth elements of an aiding and abetting claim). The Court therefore DISMISSES plaintiffs' aiding and abetting claims, but affords plaintiffs LEAVE TO AMEND their complaint to state properly pled aiding and abetting claims within thirty (30) days of the date of this Order.

Finally, plaintiffs contend that even assuming *arguendo* that they did not trade contemporaneously with defendants other than Mr. McAleer, they may nonetheless pursue an insider trading claim on behalf of those who did. This argument is without merit. It is fundamental that named plaintiffs who seek to represent a purported class must demonstrate that they themselves were injured, not that injuries have been suffered by other, unidentified members of the class. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40 (1976); *La Mar v. H & B Novelty and Loan Co.,* 489 F.2d 461, 465-66 (9th Cir.1973); *Alfus I,* 745 F.Supp. at 1523. Therefore, the fact that plaintiffs have filed a class action complaint will not save their insider trading claims from dismissal.

### 6. Conspiracy Claim

To state a claim for conspiracy to commit securities fraud, a plaintiff must plead: (1) the existence of an agreement to participate in an unlawful act; and (2) an act in furtherance of that agreement. *Deutsche v. Flanery,* 823 F.2d 1361, 1366 (9th Cir.1987). Moreover, because the details of an alleged conspiracy are almost invariably within the exclusive control of defendants, it is not necessary to plead with precision the details of the conspiracy. *Id.*

Defendants assert that because plaintiffs do not point to specific facts supporting the existence of an agreement to commit securities fraud, the conspiracy claim must be dismissed. In response, plaintiffs refer to numerous portions of the complaint, which they claim adequately state the purpose, motive, and time of the alleged conspiracy as well as the claimed participants. The Court determines that while the complaint does not set forth details of a formal agreement, plaintiffs have adequately pled that defendants acted in concert while engaged in an illegal course of conduct. Defendants' motion to dismiss the conspiracy claim is therefore DENIED.

### 7. Plaintiffs' State Law Claims

Defendants argue that plaintiffs' state law claims suffer the same defects as their federal claims, and similarly require dismissal. Because the Court has declined to dismiss the Rule 10b-5 claims, defendants' motion to dismiss plaintiffs' analogous state law claims is DENIED.

### 8. Miscellaneous Matters

**\*9** There are two remaining issues raised in defendants' memoranda which need to be addressed. First, defendants contend that any 10b-5 claims against Derek Gray should be dismissed because during the Class Period he presided over an Aldus subsidiary in Scotland, and thus could not have been connected with the alleged misrepresentations. Plaintiffs have not contested this argument. Accordingly, the claims against Mr. Grey are DISMISSED.

Second, defendants argue that all post-termination 10b-5 claims against Mr. Spelhaug, Mr. Howard, and Mr. Herres must be dismissed as group pleading cannot extend past the dates they left Aldus. Plaintiffs also do not respond to this contention, and on this basis, all post-termination claims against Mr. Spelhaug, Mr. Howard, and Mr. Herres are hereby DISMISSED.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:03-cv-12628-NG    Document 146-2    Filed 07/25/2006    Page 8 of 9

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376
**(Cite as: Not Reported in F.Supp.)**

MOTION FOR DETERMINATION THAT PLAINTIFFS' STATE LAW CLAIMS ARE NOT MAINTAINABLE AS A CLASS ACTION

Defendants also bring a motion, pursuant to Federal Rule of Civil Procedure 23(c), for a determination that plaintiffs' state law claims are not maintainable as a class action.

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the four requirements for class certification: (1) the number of potential plaintiffs is so numerous that joinder of all members is impracticable; (2) common questions of law or fact are common to all members; (3) claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Because defendants have not persuasively demonstrated that any of these requirements are lacking here, or that common questions of law and fact do not predominate over individual questions, defendants' Motion for a Determination That Plaintiffs' State Law Claims are Not Maintainable as a Class Action is DENIED.

The Court's ruling on this motion, however, is not equivalent to certifying the class, and the issue will be revisited upon filing of a motion to certify.

III. Conclusion

For the foregoing reasons, defendants' Motion to Dismiss is DENIED IN PART and GRANTED IN PART as follows:
(1) The 10b-5 claims for failure to reveal the magnitude of projected increases in amortization costs are DISMISSED with prejudice;
(2) Plaintiffs' fraud-on-the market claims against Derek Grey are DISMISSED.
(3) Any fraud-on-the-market 10b-5 claims against Mr. Spelhaug, Mr. Howard, and Mr. Herres for events occurring after each left the employ of Aldus are DISMISSED.
(4) In all other respects, defendants' Motion to Dismiss plaintiffs' fraud-on-the-market claims is DENIED.
(5) Plaintiffs' insider trading claims against all defendants except Mr. McAleer are DISMISSED.
(6) Plaintiffs are GRANTED LEAVE TO AMEND the aiding and abetting claims related to Mr. McAleer's allegedly improper trades.
(7) Defendants' Motion to Dismiss plaintiffs' state law claims is DENIED.

Finally, defendants' Motion for a Determination That Plaintiffs' State Law Claims are Not Maintainable as a Class Action is DENIED.

FN1. By stipulation of the parties, a motion to certify the class will be filed after discovery on the issue.

FN2. For convenience, the Court refers to the time-frame within which these events occurred as the "Class Period," although a class has not yet been certified.

FN3. The Court notes that defendants' memoranda, which artfully defend each of the alleged misrepresentations, themselves belie any claim that the fraud allegations are so amorphous as to preclude an effective defense.

FN4. 15 U.S.C. § 78-1 provides that,
Any person who violates any provision of this chapter or the rule or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable ... to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased ... or sold ... securities of the same class.

FN5. *See, e.g., Wilson v. Comtech,* 648 F.2d 88 (plaintiff's sale of stock one month after defendant's purchase not contemporaneous); *In re Stratus Computer Litig.,* 1992 WL 73555 (D.Mass.) (endorsing same day definition of contemporaneous); *Froid v. Berner,* 649 F.Supp. 1418, 1421 (D.N.J.1986) (nine-day separation between defendant's inside trade and plaintiff's trade "unquestionably contemporaneous"); *Backman v. Polaroid Corp.,* 540 F.Supp. 667, 671 (D.Mass.1982) (plaintiffs who traded two and seven days after defendants' sale did not trade contemporaneously with alleged insider). *See also,* William K.S. Wang, *The "Contemporaneous" Traders Who Can Sue an Inside Trader,* 38 Hastings L.J. 1175, 1178 (1987), and cases cited therein.

Not Reported in F.Supp.                                                                                                    Page 8
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376
**(Cite as: Not Reported in F.Supp.)**

> FN6. As plaintiffs themselves point out in their amended complaint, the average weekly trading volume of Aldus stock during the class period was 1,349,498 shares. Plaintiffs have not claimed that the quantity of Aldus shares traded on the days in question was below normal.

W.D.Wash.,1993.
In re Aldus Securities Litigation
Not Reported in F.Supp., 1993 WL 121478 (W.D.Wash.), Blue Sky L. Rep. P 73,821, Fed. Sec. L. Rep. P 97,376

Briefs and Other Related Documents (Back to top)

• 2:92cv00885 (Docket) (Jun. 02, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.