*2*



Not Reported in F.Supp.  
Not Reported in F.Supp., 1994 WL 324093 (N.D.Cal.)  
**(Cite as: Not Reported in F.Supp.)**

Page 1

C  
Briefs and Other Related Documents  
Only the Westlaw citation is currently available.  
United States District Court,N.D. California.  
Timothy J. BUBAN, Plaintiff,  
v.  
Raymond F. O'BRIEN, Defendant.  
**No. C 94-0331 FMS.**

June 22, 1994.

ORDER OF DISMISSAL

FERN M. SMITH, District Judge.

ISSUE

**\*1** This motion to dismiss requires the Court to decide whether Timothy J. Buban, the named plaintiff in the underlying securities suit, traded "contemporaneously" with defendant. For the reasons discussed herein, the Court holds that he did not.

INTRODUCTION

Plaintiff, Timothy J. Buban, brought this securities action against defendant, Raymond O'Brien, a former director and the former Chairman of the Board of Consolidated Freightways, Inc. ("CF"). Plaintiff alleges that defendant violated Section 20A of the Securities and Exchange Act of 1934, codified at 15 U.S.C. Section 78t-1(a), when he sold shares of common stock while in possession of material, nonpublic information. Plaintiff seeks to pursue the action on his own behalf and on behalf of the class of all persons who purchased CF securities contemporaneously with the sale of securities by defendant.[FN1] Defendant moves to dismiss the claims pursuant to Rule 12(b)(6) on the ground that plaintiff does not have standing to bring this suit since he did not trade contemporaneously with defendant.[FN2]

BACKGROUND

Plaintiff is an employee and shareholder of CF, a company that participates through subsidiaries in various forms of truck, ocean, and air transportation operations. Defendant is a former director and the former Chairman of the Board of CF. According to plaintiff, in January of 1989, CF began negotiations for the acquisition of Emery Air Freight ("Emery"), a company with severe financial and operational difficulties. (*See* Complaint, p. 3-4.)

On February 3, 1989, defendant sold 10,000 shares of CF stock at $36.75 per share. There were 108,100 shares traded that day. On February 6, 1989, defendant sold 10,000 shares for $36.75 per share. There were 195,200 shares traded that day. On February 7, 1989, defendant sold 12,500 shares for $36.75. There were 140,600 shares traded that day.

As an employee of CF, plaintiff was a participant in the Employee Stock Purchase Plan ("the Plan"). Under the Plan, CF pools payroll deductions of Plan participants and forwards the pooled funds to Merrill Lynch on a monthly basis. Each participant's account is credited monthly with stock at the average market price of all the shares purchased by Merrill Lynch in connection with the Plan.

On February 10, 1989, Merrill Lynch purchased 6,015 CF shares at $35.249 per share. On February 17, 1989, Merrill Lynch allocated the shares into the accounts of 2,694 Plan participants, including plaintiff's. Plaintiff's Plan Quarterly Statement shows a credit of 2.8369 shares on February 17, for a total of $100.00. (*See* Memorandum In Support of the Motion to Dismiss, p. 6.)

On February 13, 1989, CF publicly announced that it would acquire Emery. On the day prior to the announcement, CF shares traded at $34.75 per share. By the close of the day of the announcement, CF shares sold at $32.875 per share.

In support of his claim of insider trading, plaintiff alleges as follows: (1) that defendant knew of the impending merger with Emery; (2) that defendant knew that information about the merger would be material to potential stockholders' decisions to purchase stock in CF, and (3) that defendant knew that public disclosure of CF's plans to acquire Emery would adversely affect the price of CF's stock. Thus, plaintiff submits that pursuant to Rule 10b-5 and Rule 14(e), defendant had a duty to disclose the inside information or abstain from trading CF stock. (*See* Complaint, p. 4.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:03-cv-12628-NG   Document 146-3   Filed 07/25/2006   Page 3 of 5

Not Reported in F.Supp.                                                                                                                              Page 2
Not Reported in F.Supp., 1994 WL 324093 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

DISCUSSION

**\*2** Plaintiff claims that defendant is liable for disgorgement of losses that he avoided through insider trading under Section 20A of the Securities and Exchange Act of 1934. Section 20A states, in pertinent part:

Any person who violates any provision of this chapter or the rules and regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court [of] competent jurisdiction *to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased* (where such violation is based on the sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

15 U.S.C. § 78t-1(a) (West 1988) (emphasis added). In support of his claim, plaintiff argues that his stock purchase, executed by Merrill Lynch on February 10, 1989, was contemporaneous with defendant's sales, on February 3rd, 6th and 7th.

A. Date of Plaintiff's Purchase of CF Shares

Plaintiff and defendant disagree over the date on which plaintiff should be deemed to have purchased CF shares. Plaintiff argues that February 10, 1989, is the effective date, since that was the date on which his agent, Merrill Lynch, purchased the shares. Defendant argues that the date of plaintiff's purchase is February 17, 1989. This was the date on which Merrill Lynch credited plaintiff's account with the purchase. It is unnecessary for the Court to resolve this issue in view of its conclusion that plaintiff lacks standing to bring this suit even if it is assumed that he purchased his shares on February 10, 1989.

B. Plaintiff Did Not Trade Contemporaneously With Defendant

To state a claim for insider trading, a plaintiff must allege that he traded contemporaneously with the insider. *See* 15 U.S.C. Section 78t-1(a) (West, 1988); *Neubronner v. Milken,* 6 F.3d 666 (9th Cir.1993). Section 20A does not define "contemporaneous," leaving courts to resolve the issue on a case-by-case basis.[FN3] According to *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88 (2d Cir.1988), a case whose approach the Ninth Circuit endorsed in *Neubronner,* a trader does not trade contemporaneously if he does not trade with someone who has inside information. Some courts, while not expressly holding that same-day trading is required, have not allowed suits where the plaintiffs and defendants traded a few days apart. *See, e.g., Backman v. Polaroid Corp.,* 540 F.Supp. 667 (D.Mass.1982) (holding that two trading days and seven trading days did not meet the contemporaneousness requirement); *Colby v. Hologic,* Inc. 817 F.Supp. 204 (D.Mass.1993) (holding that eight days did not meet the requirement).

To resolve the question whether the trades in the present case, which were separated by a minimum of three days, were contemporaneous, the Court must look to the underlying goals of the requirement, developed first by the courts, and then codified in Section 20A. The purpose of the "disclose or abstain" rule is to protect only those who might actually have traded with insiders. *Wilson,* 648 F.2d at 95. In defining contemporaneousness, the Court must balance the "need to protect defendants from having to defend factually baseless litigation and the need to afford plaintiffs an adequate opportunity to develop factual bases for legitimate claims." *Neubronner,* 6 F.3d at 671.

**\*3** The requirement of contemporaneousness developed as a proxy for the traditional requirement of contractual privity between plaintiffs and defendants.[FN4] Since identifying the party in actual privity with the insider is virtually impossible in transactions occurring on an anonymous public market, the contemporaneousness standard was developed to give plaintiffs a more feasible avenue by which to sue insiders. William Wang, *The Contemporaneous Traders Who Can Sue an Inside Trader,* 38 Hastings L.Rev. 1175 (1987). The requirement was intended to preserve the notion that only plaintiffs who were harmed by the insider could bring suit, while nonetheless making it possible for such persons to bring suit. While an actual trade between plaintiff and defendant need not be expressly shown, harm to the plaintiff is a necessary factor. Such harm may be found where it appears the plaintiff might, in fact, have traded with the defendant.

In this case, it is manifest that plaintiff could not have traded with defendant. Assuming that plaintiff bought CF shares on February 10, 1989, his purchase was still a minimum of three business days after

Not Reported in F.Supp.  
Not Reported in F.Supp., 1994 WL 324093 (N.D.Cal.)  
**(Cite as: Not Reported in F.Supp.)**

Page 3

defendant's sale. Given that 140,000 shares of CF stock were traded on Tuesday, February 7, the date of defendant's last sale, it seems apparent that plaintiff, trading three days later, could not have bought defendant's shares. Furthermore, plaintiff paid $35.249 for each of his shares. On the three days that defendant traded, by contrast, his shares were sold for $36.75 per share. Thus, the purchasers of defendant's shares paid $1.50 more than did plaintiff. Under these circumstances, where it is clear that plaintiff could not have traded with defendant, there is no reason for the Court to apply a more liberal standard to determine contemporaneousness.

Plaintiff relies on *Shapiro v. Merrill Lynch* 495 F.2d 228 (2d Cir.1991), to support his standing to sue. In *Shapiro,* the Second Circuit held that face-to-face dealing was not required to support a claim for insider trading and that plaintiff could sue as long as his trades occurred "during the same period" as defendant's. *Shapiro* 495 F.2d at 237. The trades at issue in that case took place four days apart. The Second Circuit did not specifically define "same period," and, on remand, the district court for the Southern District of New York held that the period existed as long as the inside information remained undisclosed. *Shapiro v. Merrill Lynch,* [1975-1976 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,377 (S.D.N.Y. Dec. 9, 1975). In *Wilson,* 648 F.2d at 94, the Second Circuit expressly rejected an approach to contemporaneousness that would terminate the period only upon disclosure. "To extend the period of liability well beyond the time of the insider's trading simply because disclosure was never made could make the insider liable to all the world." *Id.* Such a result was unwarranted because only those who actually trade with an insider "suffer the disadvantage of trading with someone with superior access to information." *Id.* at 94-95. *Shapiro,* thus, casts no doubt on the Court's conclusion that the trades in this case were not contemporaneous.

\*4 *In Re Cypress Semiconductor Securities Litigation,* 836 F.Supp. 711 (N.D.Cal.1993), also does not require a contrary holding. That case, presumably relying on *Shapiro's* "same period" definition of contemporaneousness, held that the purchase of securities within five days of the insider's sale met the requirement. *Id.* at 714. The court's opinion was brief and did not explain its conclusion as to contemporaneousness, leaving this Court without a basis for determining whether the two cases are comparable. More important, however, in *Neubronner,* an opinion issued shortly after *Cypress,* the Ninth Circuit announced its commitment to a restrictive approach to contemporaneousness that limits recovery to those plaintiffs who might conceivably have traded at an informational disadvantage with defendant. *See Neubronner,* 6 F.3d at 670. As discussed above, plaintiff could have suffered no such disadvantage because the market had already absorbed defendant's sales prior to plaintiff's purchase of CF stock.

CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion to dismiss. The Court's conclusion that plaintiff Buban lacks standing to sue defendant makes it unnecessary to consider whether the complaint is also deficient in other respects. The hearing date of July 1, 1994, as well as any other pending dates in this case, is hereby VACATED.

SO ORDERED.

> FN1. As no class has yet been certified, however, the Court considers only Mr. Buban's standing to bring the action.
>
> FN2. Defendant also moves to dismiss on the grounds that Rule 14(e) does not apply to this case since it refers only to trading in the target company and that plaintiff failed to meet the requirements of Federal Rule of Civil Procedure 9(b) by not pleading his claim under Rule 10b-5 with particularity. Because the Court finds that plaintiff does not have standing to bring this suit, it is not necessary to reach these issues.
>
> FN3. Indeed, a 1988 House Report indicates that Congress specifically contemplated a case-by-case approach to defining "contemporaneousness". H.R.Rep. No. 910, 100th Cong., 2d Sess. 27 (1988).
>
> FN4. The requirement, now codified in Section 20A, was initially developed by the courts.

N.D.Cal. 1994  
Buban v. O'Brien  
Not Reported in F.Supp., 1994 WL 324093 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 3:94cv00331 (Docket) (Jan. 31, 1994)

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1994 WL 324093 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.