**5**

Case 1:03-cv-12628-NG    Document 146-6    Filed 07/25/2006    Page 1 of 10

Westlaw.

Slip Copy                                                                                                                                           Page 1
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888
**(Cite as: Slip Copy)**

Briefs and Other Related Documents

United States District Court,N.D. California.
In re CORNERSTONE PROPANE PARTNERS, L.P. SECURITIES LITIGATION.
No. C 03-2522 MHP.

May 3, 2006.

Marc A. Topaz, Schiffrin & Barroway, LLP, Radnor, PA, for Edward Erikson.
Katharine M. Ryan, Schiffrin & Barroway, LLP, Radnor, PA, for Edward Erikson, John Gallander, James J. Ryan, Santa Cruz Holding, Inc., Charles Broyles, Lee R. Kunz and Gilbert H. Lamphere.
Kimberly C. Epstein, Lerach Coughlin Stoia & Robbins LLP, San Francisco, CA, for John Gallander, James J. Ryan and Santa Cruz Holding, Inc.
Alfred Glenn Yates, Jr., Gerald L. Rutledge, Law Office of Alfred G. Yates Jr, P.C, Pittsburgh, PA, Joe Kendall, Willie C. Briscoe, Provost & Umphrey Law Firm, LLP, Dallas, TX, for Santa Cruz Holding, Inc.
Darren J. Check, Esq., Karen Reilly, Stuart L. Berman, Todd Mosser, Schiffrin & Barroway LLP, Radnor, PA, Jacob Goldberg, Schiffrin & Barroway, Bala Cynwyd, PA, for Gilbert H. Lamphere.
Robert S. Green, Robert A. Jigarjian, Green Welling LLP, San Francisco, CA, for Edward Erikson and Gilbert H. Lamphere.
Anupam Sharma, Milbank Tweed Hadley & McCloy, James Pooley, Pooley & Oliver LLP, Palo Alto, CA, for Cornerstone Propane Partners, L.P. Securities Litigation.
Monique R. Sherman, Cooley Godward LLP, Palo Alto, CA, for Keith G. Baxter, Richard D. Nye, Ronald J. Goedde and Charles J. Kittrell.
Cory E. Manning, John C. Dwyer, Cooley Godward LLP, Palo Alto, CA, for Keith G. Baxter, Richard D. Nye, Ronald J. Goedde, Daniel K. Newell, Williams L. Woods, Merle D. Lewis, Charles J. Kittrell and Richard R. Hylland.
Grace A. Carter, Paul, Hastings, Janofsky & Walker, San Francisco, CA, for Northwestern Corporation.
Douglas Robert Boettge, Leonard, Street and Deinard P.A., Minneapolis, MN, Jahan P. Raissi, Shartsis Friese LLP, San Francisco, CA, for Daniel K. Newell and Merle D. Lewis.
Grant P. Fondo, Cooley Godward LLP, Palo Alto, CA, for Williams L. Woods and Charles J. Kittrell.
David P. Pearson, Karl E. Robinson, Winthrop & Weinstine, PA, Minneapolis, MN, Douglas A. Winthrop, Howard Rice Nemerovski Canady Falk & Rabkin, San Francisco, CA, for Richard R. Hylland.

*MEMORANDUM & ORDER*
MARILYN HALL PATEL, District Judge.
*1 Plaintiffs, a consolidated class led by Gilbert H. Lamphere, ("Lead Plaintiff") brought this action against defendants CornerStone Propane Partners L.P. ("CornerStone") and several of its top executives and directors ("individual defendants"), alleging that defendants violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Now before the court is plaintiffs' motion to certify the class pursuant to Federal Rule of Civil Procedure 23. The class consists of purchasers of CornerStone common units during the period July 29, 1998 through and including February 11, 2003. Having considered the arguments of the parties and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND [FN1]

FN1. All facts in this section are drawn from the Second Amended Class Action Complaint ("SAC"), unless otherwise noted.

I. *Fraud Allegations*

On February 8, 2005 this court granted individual defendants' motion to dismiss plaintiffs' Corrected, Consolidated Class Action Complaint without prejudice. *In re CornerStone Propane Partners L .P. Sec. Litig.,* 355 F.Supp.2d 1069 (N.D.Cal.2005) (Patel, J.). That order catalogued the factual allegations, corporate structure, and statements at issue in this case, all of which are incorporated here by reference. *Id.* at 1072-75, 1076-80. Suffice it to say for present purposes that the general theory of fraud alleged in the complaint revolves around CornerStone's acquisition-based business strategy and financial reporting. Plaintiffs allege that an aggressive acquisition incentive program, fraudulent accounting and pricing of assets and acquisitions, the distortion of the partnership's true financial condition, and related-party transactions led to CornerStone's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 2
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888
**(Cite as: Slip Copy)**

inevitable collapse.

Plaintiffs allege that beginning in July of 1998, the rosy picture publicly reported by individual defendants and CornerStone was knowingly false. Plaintiffs claim that defendants concealed negative business developments in order to keep the value of CornerStone's common units buoyant and continue to fund acquisitions. Meanwhile, executives negotiated grossly inflated purchase prices for acquisitions in order to receive proportionately large bonuses through the Acquisition Incentive Plan. During the resulting "acquisition frenzy," plaintiffs allege that defendants improperly capitalized costs in violation of generally accepted accounting principles ("GAAP") and knowingly failed to write down the artificially inflated value of CornerStone's goodwill, enabling defendants to improperly increase earnings before income taxes, depreciation, and amortization ("EBITDA") and report improperly inflated net income. In turn, by developing a fraudulent system of propping up CornerStone's net income and operating cash flows, defendants could avoid violations of debt covenants. Thus, despite an increasingly destabilizing debt load, CornerStone issued press releases heralding "record results" and increased earnings from the beginning of the class period in 1998 through 2001. CornerStone's common units traded as high as $22 per share during this period of time; by February, 2003, when news of this apparent deception had been fully disclosed to the market, share price had declined to $0.35. According to plaintiffs, the market capitalizations lost during this period amounted to over $360 million.

**\*2** Cornerstone's precipitous stock decline commenced after a press release on July 27, 2001 where Cornerstone revealed for the first time its financial instability, "disclos[ing] that it would be forming a special committee of its Board of Directors to reduce its Minimal Quarterly Distribution ("MQDs") to investors to $0.22 per unit to 'promptly address our increased overall level of debt.' " SAC ¶ 148. Following this disclosure, the stock price of CornerStone declined from $16.45 to $9.05. In January 2002 Cornerstone again shocked investors by revealing that the company would no longer make any quarterly distributions and that it had retained Credit Suisse First Boston to pursue the possible sale or merger of the company. SAC ¶ ¶ 159, 160. Following this disclosure, the stock declined from $7.15 to $1.95 by January 22, 2002. Finally, in February, 2003 CornerStone released a flood of bad news. On its Form 8-K Current Report filed on February 10, 2003 CornerStone revealed its decision to write-down CornerStone's goodwill by approximately $150 million, as well as restate CornerStone's financial statements for fiscal years 2000 and 2001. Given the foregoing, plaintiffs have defined the class to include "all persons and entities who purchased or otherwise acquired CornerStone common units between July 29, 1998 and February 11, 2003, inclusive (the "Class Period"), and who were damaged thereby (the "Class")."

II. *Procedural History*

On May 28, 2003 plaintiffs filed a class action complaint. On October 3, 2003 this court granted Gilbert H. Lamphere's motion for consolidation and appointed him as lead plaintiff for the class. Lamphere purchased a significant number of CornerStone's shares in late 2000, several months before the initial price drop following the July press conference. A Consolidated Amended Class Action Complaint was filed on October 27, 2003.

In reaching its February 8, 2005 holding dismissing the Consolidated Amended Class Action Complaint, the court noted that there were numerous problems with the complaint as drafted. However, the court recognized that the failures in the complaint lay not in its raw content-which was replete with exhaustive detail about statements made over the course of the class period, financial data, varied sources, flow of internal information, specific instances of alleged fraud, and other particularized factual allegations-but rather in its coherence and pleading discipline.

Consequently, in response to the court's request, plaintiffs subsequently submitted the second amended complaint. Defendants Baxter, Goedde, Hylland, Lewis, Newell, and Nye-each of whom signed SEC filings alleged to contain false statements-answered plaintiffs' second amended complaint on May 10, 2005. On May 10, 2005 defendants also filed a motion on behalf of individual officer defendants Woods (Vice President of Acquisitions during the Class Period) and Kittrell (Executive Vice President, Secretary of the Managing General Partner, and Chief Operating Officer of CornerStone) to dismiss the second amended complaint for failure to adequately plead fraud and scienter, as well as failure to plead control person liability. Woods and Kittrell were the only individual defendants not alleged to have signed the partnership's SEC filings during the class period. The complaint did allege, however, that Woods and Kittrell were controlling persons liable under section

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                           Page 3
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888
**(Cite as: Slip Copy)**

20(a) of the Securities and Exchange Act of 1934. On July 5, 2005 the court granted Wood's and denied Kittrell's second motion to dismiss.

**\*3** On September 23, 2005 plaintiffs filed a motion to certify the class pursuant to Rule 23. Defendants oppose the motion, arguing that the requirements of typicality and adequacy of representation have not been met. Alternatively, defendant contends that the scope of the class should be limited pursuant to the Supreme Court's recent holding in *Dura Pharmarceuitcals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627 (2005).

LEGAL STANDARD

A party seeking to certify a class must satisfy the four prerequisites enumerated in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements of Rule 23(b). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed.R.Civ.P. 23(a). In addition, the party seeking certification must comply with Rule 23(b), which requires a showing that the action is maintainable under Rule 23(b)(1), (2), or (3). *See* Fed.R.Civ.P. 23(b).

A party seeking an award of monetary damages must generally proceed under paragraph (3) of Rule 23(b). *See, e.g., Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 121 (1994). Rule 23(b)(3) permits certification of such a "damages class" only if the court "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). This "predominance" inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir.) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)), *cert. denied,* 534 U.S. 973 (2001). In addition, Rule 23(b)(3) requires the party seeking certification to show that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met. *See Zinser v. Accufix Research Instit., Inc.,* 253 F.3d 1180, 1188 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir.2001); *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). However, in adjudicating a motion for class certification, the court accepts the allegations in the plaintiff's complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. *See Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied,* 429 U.S. 816 (1976). The merits of the class members' substantive claims are generally irrelevant to this inquiry. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974); *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983).

DISCUSSION

**\*4** Defendants do not dispute that plaintiffs have met the numerosity or the commonality requirements of class certification. However, defendants make three main arguments in opposition to plaintiffs' motion for class certification: (1) Lead Plaintiff's claims are not typical of those in the class because there are defenses which are unique to him which would occupy a large proportion of the proceeding; (2) the class representatives do not adequately represent the plaintiff class because their interests are antagonistic to those of the class members; and (3) pursuant to *Dura,* the class should not be certified to include those plaintiffs who cannot adequately allege loss causation.

I. *Typicality Requirement*

A. *Defendant's Reliance Defense*

Defendants argue that class certification is inappropriate because the Lead Plaintiff is open to the unique defense that he did not act in reliance on the alleged misrepresentations made by the management of CornerStone during the relevant Class Period. The Ninth Circuit has established that the "purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon,* 976 F.2d at 508. Thus, the court held that "class certification

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                   Page 4
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888
**(Cite as: Slip Copy)**

should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.' " *Id.* at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 180 (2d. Cir.1990)). Further, in *Basic v. Levinson,* 485 U.S. 224 (1998), the Supreme Court has held that although reliance may be presumed in securities fraud actions, this fraud-on-the-market presumption may be rebutted by a showing that a particular plaintiff did not actually rely on the alleged misstatement or omissions. *Id.* at 248. Thus, relying exclusively on the *Hanon* holding, defendants argue that Lamphere's presumption of reliance is rebuttable and thus certification is inappropriate. Defendants base their argument on excerpts from Lamphere's deposition testimony which expressed some concern about the acquisition activity and the method of financial disclosure employed by CornerStone-notably, Lamphere's statement that he reviewed and formed these opinions questioning the accuracy of CornerStone's financial disclosures at or near the time of their release. As many of these disclosures, as well as the acquisition activity, occurred prior to the purchase of shares by Lamphere, defendants argue that they evidence a lack of reliance by Lamphere on these statements both at the time of his purchase and throughout his holding period. In response, plaintiffs argue that although Lamphere's statements evidence some skepticism about the veracity of the CornerStone financials and concern about the "pace of their acquisitions," Lamphere also indicated during his deposition that he was "inclined to believe [these statements] even though there ... [were] doubts. Reilly Dec. at 50:16-17. Thus, plaintiffs argue, defendants' claims are of questionable merit and insufficient to defeat class certification.

**\*5** Notwithstanding the merits of defendants' claim of non-reliance, *Hanon* is inapposite as it involved a completely different set of facts and does not stand for the proposition that the possibility of a reliance defense for a named plaintiff precludes class certification. In affirming the district court's denial of class certification, the *Hanon* court focused on "Hanon's unique situation" and specifically "emphasize[d] that the defense of non-reliance is *not* a basis for denial of class certification." *Hanon,* 976 F.2d at 509 (emphasis added). This is because a class certification motion "is not the appropriate point at which to resolve the merits of a plaintiff's claim." *Id.* (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 (1974)). The *Hanon* court found that plaintiff could not rely on the integrity of the market because of "his extensive experience in prior securities litigation, his relationship with his lawyers, his practice of buying a minimal number of shares of stock in various companies, and his uneconomical purchase of only ten shares of Dataproducts." *Id.* at 508. The court was concerned that a plaintiff with such characteristics was not a purchaser acting in reliance on market integrity, but rather an opportunist who was attempting to "buy a lawsuit" by purchasing small numbers of shares in numerous companies. *Id.; see also Welling,* 155 F.R.D. 654, 658-59 (N.D.Cal. Jun. 20, 1994) (Orrick, J.) (applying *Hanon* to deny a motion for class certification where a class representative evidenced significant disinterest in the lawsuit and had vast experience as a plaintiff in securities class actions). Indeed, courts in this Circuit have declined to read *Hanon* as standing for the broad proposition that a court may deny class certification on the basis of non-reliance. *See, e.g. In re Emulex Corp. Sec. Litig.,* 210 F.R.D. 717 (C.D. Cal 2002); *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc .,* 188 F.R.D. 365 (D.Or.1998); *In re Valence Tech. Sec. Litig.,* 1996 WL 119468, No. C 95-20459 (N.D.Cal. Mar. 14,1996) (Ware, J.); *In re Pilgrim Sec. Litig.,* 1996 WL 742448, No. CV 94-8491-KN (C.D.Cal.1996); *Yamner v. Boich,* No. C-92-20597, 1994 WL 514035, at *5-6 (N.D.Cal. Sept. 15, 1994) (Aguilar, J.) (certifying the class regardless of whether non-reliance and lack of standing are possible defenses).

In the present action, none of the facts present in *Hanon* are evident; this is the first time that Lamphere has served as a Lead Plaintiff, and as a result of his significant holdings of CornerStone stock he suffered a considerable loss of $578,013.951. *See* Reilly Dec., Exh. A at 111:14-18. There is no indication that Lamphere is a litigation opportunist who has experience buying minimal amounts of stock in numerous corporations. Thus, regardless of the fact that defendants may raise a reliance defense specific to Lamphere, it is inappropriate at this stage to deny class certification on that basis as such a determination goes to the merits of plaintiffs' claims.

B. *Statute of Limitations*

**\*6** Defendants also contend that the Lead Plaintiff is not an adequate representative because his claims are barred under the applicable statute of limitations. Prior to passage of the Sarbanes-Oxley Act ("SOX"), a plaintiff had to file a securities fraud claim within one year of the discovery, or within three years of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

occurrence, of the alleged violation. SOX extended the statute of limitations for securities fraud claims to two and three years for discovery and occurrence, respectively. Defendants contend that since plaintiff specifically noted that he viewed CornerStone's disclosures with heightened skepticism prior to his purchase of CornerStone's stock and during periods in his holding period when the stock declined appreciably, he discovered or should have discovered the alleged injury and commenced the action within a year (or within two years if the new SOX limitations are applicable) of these stock declines. Stated differently, plaintiffs' claims are time-barred as the filing of their securities class action complaint on May 28, 2003 is more than one year after July 2001- when they were aware or should have been aware of the fraud.[FN2]

> FN2. Defendants contend that the pre-SOX statute of limitations is applicable in the case at hand as the case was already time-barred at the time of the statute's enactment. *See, e.g., Foss v. Bear Stearns & Co., 394 F.3d 540, 543 (7th Cir.2005).* Given the following discussion, the court need not reach this issue.

However, statute of limitations defenses for named plaintiffs are not a bar to class certification for securities fraud. *See, e.g., Williams v. Sinclair et al., 529 F.2d 1383, 1388 (9th Cir.1975), cert denied, 426 U.S. 936 (1976)* (reversing district court and finding that "existence of statute of limitations issue does not compel a finding that individual issues predominate over common ones ."); *Cameron v. E.M. Adams & Co., 547 F.2d 473 (9th Cir.1976); see also Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.3d 912 (3d Cir.1992) (noting that "given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases."); *Kennedy v. Tallant,* 710 F.2d 711 (11th Cir.1983). Here, there is no dispute that plaintiffs have satisfied the numerosity and the commonality requirements of class certification. There is a common nucleus of fact as plaintiffs allege a unified course of conduct which served to defraud a class of investors. Additionally, as aforementioned, to the extent that the issue of non-reliance is intertwined with defendants' statute of limitations defense, it is more suitably resolved after some merits discovery. As with the defense of non-reliance, the mere fact that Lamphere may be vulnerable to a statute of limitations defense does not mandate a denial of class certification.

II. *Adequacy of Representation*

Pursuant to Rule 23(a)(4), named parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). The concern is that the legal interests of the class members are adequately protected by the named representatives and their counsel. Defendants do not argue that plaintiffs are represented by inadequate counsel. However, defendants assert that the named plaintiffs do not adequately represent the class because there is a conflict between those individuals who purchased stock during, and retained ownership throughout, the Class Period ("Retention Plaintiffs") and those who purchased and sold their shares during the Class Period ("In/Out Plaintiffs"). In essence, defendants argue that these two groups' interests are antagonistic to one another since In/Out Plaintiffs would seek to minimize the extent of the stock inflation at the time of their sale so as to maximize their ultimate recovery, while Retention Plaintiffs who purchase on the same day would, for the same reasons, seek to maximize the inflation of the stock price at the time of their purchase.[FN3]

> FN3. This conflict is due to the fact that In/Out Plaintiffs recoup some of their losses because they are able to sell the price-inflated shares. Thus, in determining damages for an In/Out Plaintiff, "a court will subtract from his calculated injury upon purchase, the amount of his recoupment at the time of sale." *Welling,* 155 F.R.D. at 661. An In/Out Plaintiff has an incentive then to maximize his purchase price and minimize his sale price.

*7 In the case at hand, Lamphere is a Retention Plaintiff since he disposed of his shares in 2003, after the close of the Class Period and thus, defendants argue, his interests (as well as those of other Retention Plaintiffs) are in conflict with those plaintiffs who purchased and sold stock between July 29, 1998 and February 11, 2003. Further, defendants note that Lamphere did not purchase his shares until well into the Class Period, establishing another avenue for possible conflicts with prior or later purchasers. In support of this contention, defendants rely primarily on the holding in *In re Seagate Technology II Securities Litigation,* 843 F.Supp. 1341, 1359 (N.D.Cal. Feb. 11, 1994) (Walker, J.),

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 6
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888
**(Cite as: Slip Copy)**

where the court held that due to the potential for conflicts between Retention and In/Out Plaintiffs, the court could not certify the class without an evidentiary hearing.

As a preliminary matter, the mere fact that Lamphere purchased his shares two years into the Class Period does not create an impermissible conflict between him and those plaintiffs who purchased CornerStone shares before or even after he did. In a suit alleging a common scheme to defraud the existence of a later purchaser does not defeat a class certification claim as it "establish[es] background information about the defendant [that is] common to both suits." *Blackie,* 524 F.2d at 903 n. 19. *See also Harmsen v. Smith,* 693 F.2d 932, 943 (9th Cir.1982), *cert. denied,* 464 U.S. 822 (1983). In *Blackie,* the Ninth Circuit established that when a course of conduct or scheme is alleged and is common to all plaintiffs, it is immaterial whether plaintiffs purchased stock at different times and were affected by different statements or omissions in the general scheme of misconduct. Indeed, defendants' argument is untenable because if taken to its logical conclusion it would bar all class actions as "even a class period as short as one day could create [such] ... conflicts ... [To] accept[ ] these intra-class conflicts arguments at face value would prohibit the use of the class action mechanism in the vast majority of securities fraud actions." *In re Intelligent Elecs.,* No. 92-1905, 1996 U.S. Dist. LEXIS 1713, at * 14 (E.D.Pa. Feb. 13, 1996). In the present action a common scheme to defraud is alleged-plaintiffs contend that over a particular time period defendants made false and misleading statements. Thus any alleged conflicts between earlier and later purchasers do not operate to bar certification.

Moreover, the alleged conflict between Retention and In/Out Plaintiffs has been exhaustively considered by courts both before and after *Seagate,* the decision upon which defendants rely, and it has not been found to be an adequate basis upon which to deny class certification. *Seagate* is a minority decision as courts have continued to certify securities class actions despite the existence of these Retention and In/Out Plaintiffs. *See, e.g.,* 7 Newberg on Class Actions § 22.39, at 198 (4th ed.2002); *In re Schering-Plough Corp. Sec. Litig.,* No. 01-0829, 2003 U.S. Dist. LEXIS 26297, at *24 (D.N.J. Oct. 9, 2003); *In re Honeywell Int'l, Inc. Sec. Litig.,* 211 F.R.D. 255 (D.N.J. Nov. 14, 2002) (noting that *Seagate's* reasoning has been rejected by an overwhelming majority of courts); *Welling,* 155 F.R.D. at 663; *Ziemack v. Centel Corp.,* 164 F.R.D. 477, 479 (N.D.Ill.1995); *In re Proxima Corp. Sec. Litig.,* No. 93-1139 IEG, 1994 U.S. Dist. LEXIS 21443, at *53 (S.D.Cal. May 3, 1994); *Blackie,* 524 F.2d at 908; *In re LTV Sec. Litig.,* 88 F.R.D. 134, 149 (N.D.Tex.1980). Accordingly, this court declines to rule in contravention to established precedent and deny certification on the basis of a claimed conflict between In/Out and Retention Plaintiffs.

### III *Loss Causation*

**\*8** Alternatively, defendants argue that to the extent that plaintiffs' class is certified, it should be certified to exclude those individuals who sold their shares before the end of the Class Period on February 11, 2003. Defendants contend that since these individuals bought and sold their shares before the corrective disclosure, under the recently pronounced Supreme Court ruling in *Dura,* their claims are materially flawed because they cannot demonstrate loss causation. In *Dura,* the Supreme Court overturned the Ninth Circuit inflated share price approach, finding that there mere fact of an inflated share price did not necessarily mean there was any resultant economic loss. "If ... the purchaser sells the shares quickly before the relevant truth begins to leak out, *the misrepresentation will not have led to any loss.* If the purchaser sells later after the truth makes its way into the market place, an initially inflated purchase price *might* mean a later loss. But that is far from inevitably so ...". *Dura,* 125 S. Ct at 1631-32 (emphasis added).[FN4]

> FN4. As this court has previously noted, the Supreme Court in *Dura* endorsed the Second Circuit test for loss causation, as set forth in *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161 (2d Cir.2005) and *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.,* 343 F.3d 189 (2d Cir.2003). *See Bennett v. H & R Block Financial Advisors,* No. C 04-4848 MHP., 2005 WL 2811757 at *3 (N.D.Cal. Oct. 27, 2005) (Patel, J.); *Dura Pharms.,* 125 S.Ct. at 1633-34. Under the Second Circuit standard, plaintiffs must allege that the *subject* of the fraudulent statement or omission was the proximate cause of the actual loss suffered. *Lentell,* 396 F.3d at 173 (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 95 (2d Cir.2001)). Stated differently, plaintiffs must allege both that the loss was foreseeable and that the loss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                           Page 7
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888
**(Cite as: Slip Copy)**

was caused by the materialization of the concealed risk. *Id.*

Although defendants assert that corrective disclosure occurred on February 11, 2003, it is clear on the face of the complaint that plaintiffs allege partial corrective disclosure occurred on at least two prior occasions, beginning in 2001 after the press release of July 27, 2001 and culminating in a rash of disclosures in February 2003. Thus, the date indicating the start of corrective disclosure for loss causation purposes is alleged to be July 27, 2001 and not February 2003.

In any event, plaintiffs respond that a finding that loss causation bars certification is premature as it involves damages issues not appropriate for a certification determination. Plaintiffs cite to a number of cases noting that damages questions should not bar class certification. *See, e.g.* Hoexter v. Simmons, 140 F.R.D. 416, 421 (D.Ariz.1991) (finding that the only differences between In/Out Plaintiffs and Retention Plaintiffs is the *amount* of damages each type of investor may recover); In re Honeywell, 211 F.R.D. at 262 (noting that these intra-class conflicts are really concerned with a determination of damages); In Re Rent-Way Sec. Litig., 218 F.R.D. 101, 119 (W.D.Pa.2003) (finding that the fact that plaintiff class included a relatively small number of plaintiffs who purchased and sold their stock before corrective disclosure would not result in numerous individualized determinations on economic loss. Loss causation determinations were more appropriate after some merits discovery.).

However, the issue of loss causation is not only relevant in determining the level of damages, but, pursuant to *Dura,* it is also relevant in establishing whether a securities fraud claim has been adequately pled. All the cases cited by plaintiff in support of its contention that these pre-corrective disclosure sellers' claims should be allowed to proceed were decided prior to the Supreme Court's *Dura* decision and are concerned with differences in the determination of the "amount" of damages. The plaintiffs in these cases had the possibility of recovering some damages for the alleged injury they incurred from the purported misrepresentations. Here, since corrective disclosure is alleged to have occurred only from July 2001 onwards, under *Dura* there can be no loss causation for plaintiffs who purchased and sold stock at the inflated share price prior to that disclosure, and thus these plaintiffs may not recover at all.[FN5]

FN5. It is worth noting that although plaintiffs predicate their damages claim on an artificially inflated purchase price, they do allege that they suffered actual economic loss. Thus, plaintiffs have adequately pled loss causation for those individuals who sold their stock after the relevant truth began to reach the market. The Complaint states in relevant part:

Plaintiff and the Class *have suffered damages* in that, in reliance on the integrity of the market, *they paid artificially inflated prices* for CornerStone common units. Plaintiff and the Class would not have purchased Cornerstone common units at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements. *As a direct and proximate result* of these defendants' wrongful conduct, Plaintiff and the other members of the Class *suffered damages* in connection with their purchase of CornerStone common units during the Class Period.

SAC ¶¶ 200, 201 (emphasis added).

**\*9** In In re Daou, 411 F.3d 1006 (9th Cir.2005) the Ninth Circuit has recently held that allegations that the stock price of a defendant company was trading at $18.50 on August 1998-lower than at the class high amount of $34.375-was insufficient to establish loss causation prior to August 1998. The court reasoned that "any loss suffered ... cannot be considered causally related to Daou's allegedly fraudulent accounting methods because before the revelations began in August 1998, the true nature of Daou's financial condition had not yet been disclosed." Id. at 1026-27. *See also* In re Compuware Sec. Litig., 386 F.Supp.2d 913, 920 (E.D.Mich.2005) (granting defendant's summary judgement motion on a 10(b) claim brought by an In/Out trader, stating that plaintiff was unable to demonstrate any resultant economic loss). The *In re Compuware* court found that the plaintiff in that case could not rely on the use of boilerplate language in its complaint such as "direct and proximate result" to satisfy loss causation; nor could the plaintiff "cit[e] to a disclosure that led to a sharp decline in the stock price ... after [plaintiff] had sold all [his] shares." *In re Compuware,* 386 F.Supp. at 918-19. To prove loss causation, plaintiffs must demonstrate "the causal connection between the material misrepresentation or omission and the economic loss suffered by the plaintiffs." *In re Winstar Communications,* No. 01

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                             Page 8
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888
**(Cite as: Slip Copy)**

CV 3014 GBD, 01 CV 11522, 2006 WL 473885 (S.D.N.Y.2006); *see also* In re Enron Corp. Securities, Derivative & "ERISA" Litig., No. MDL-1446, 2005 WL 3504860 (S.D.Tex.2005). In the present action, defendants are correct in their assertion that plaintiffs who sold their stock before July, 27 2001, when the first corrective disclosure occurred, did not suffer any loss causally related to defendants' alleged misrepresentations. The court finds that these plaintiffs are excluded from the definition of the Class.

IV. *Summary*

Defendants' assertion that Lead Plaintiff and the named representatives are atypical and inadequate as class representatives because of Lamphere's purported non-reliance on the CornerStone financial statements, the possibility of a statute of limitations defense, and the existence of potential intra-class conflicts is not supported by the relevant caselaw. Pursuant to the Supreme Court's holding in *Dura,* the Class may not include individuals who purchased and sold CornerStone stock prior to any corrective disclosure by the company.

CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification is GRANTED, subject to an amendment of the Class definition to exclude plaintiffs who purchased and sold their stock prior to any corrective disclosure in July 2001.

IT IS SO ORDERED.

N.D.Cal.,2006.
In re Cornerstone Propane Partners, L.P. Securities Litigation
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888

Briefs and Other Related Documents (Back to top)

• 2005 WL 4230466 (Trial Motion, Memorandum and Affidavit) Lead Plaintiff's Reply Memorandum in Support of Class Certification (Nov. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3142956 (Trial Motion, Memorandum and Affidavit) Officer Defendants' Opposition to Plaintiff's Motion for Class Certification (Oct. 28, 2005)
• 2005 WL 4230465 (Trial Pleading) Defendant Charles J. Kittrell's Answer to Second Amended Class Action Complaint for Violations of the Federal Securities Laws (Jul. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 4230464 (Trial Motion, Memorandum and Affidavit) Defendants William L. Woods and Charles J. Kittrell's Reply Memorandum in Support of Their Motion to Dismiss Second Amended Class Action Complaint (May 31, 2005) Original Image of this Document (PDF)
• 2005 WL 4230463 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants William L. Woods and Charles J. Kittrell's Motion to Dismiss the Second Amended Class Action Complaint (May 24, 2005) Original Image of this Document (PDF)
• 2005 WL 4230457 (Trial Pleading) Class Action Defendant Daniel K. Newell's Answer to Second Amended Class Action Complaint for Violations of the Federal Securities Laws (May 10, 2005) Original Image of this Document (PDF)
• 2005 WL 4230458 (Trial Pleading) Class Action Defendant Merle D. Lewis' Answer to Second Amended Class Action Complaint for Violations of the Federal Securities Laws (May 10, 2005) Original Image of this Document (PDF)
• 2005 WL 4230459 (Trial Pleading) Class Action Defendant Richard R. Hylland's Answer to Second Amended Class Action Complaint for Violations of the Federal Securities Laws (May 10, 2005) Original Image of this Document (PDF)
• 2005 WL 4230460 (Trial Pleading) Class Action Defendant Richard D. Nye's Answer to Second Amended Class Action Complaint for Violations of the Federal Securities Laws (May 10, 2005) Original Image of this Document (PDF)
• 2005 WL 4230461 (Trial Pleading) Class Action Defendant Ronald J. Goedde's Answer to Second Amended Class Action Complaint for Violations of the Federal Securities Laws (May 10, 2005) Original Image of this Document (PDF)
• 2005 WL 4230462 (Trial Pleading) Class Action Defendant Keith G. Baxter's Answer to Second Amended Class Action Complaint for Violations of the Federal Securities Laws (May 10, 2005) Original Image of this Document (PDF)
• 2005 WL 4230507 (Trial Pleading) Class Action Second Amended Class Action Complaint for Violations of the Federal Securities Laws (Apr. 1, 2005) Original Image of this Document (PDF)
• 2004 WL 2159299 (Trial Motion, Memorandum and Affidavit) Cornerstone Propane Partners, L.P.'s Reply Memorandum of Points and Authorities in Further Support of its Motion to Dismiss (Aug. 2, 2004) Original Image of this Document (PDF)

Slip Copy                                                                                                                  Page 9
Slip Copy, 2006 WL 1180267 (N.D.Cal.), Fed. Sec. L. Rep. P 93,888
**(Cite as: Slip Copy)**

• 2004 WL 2159309 (Trial Motion, Memorandum and Affidavit) Individual Defendant's Reply Memoranduim in Support of Their Motion to Dismiss Corrected Consolidated Amended Class Action Complaint (Jun. 3, 2004) Original Image of this Document (PDF)

• 2004 WL 2159295 (Trial Motion, Memorandum and Affidavit) Lead Plaintiff's Opposition to Defendants' Motions to Dismiss the Corrected Consolidated Amended Class Action Complaint (May 6, 2004) Original Image of this Document (PDF)

• 2003 WL 23793945 (Trial Pleading) Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (Oct. 27, 2003) Original Image of this Document (PDF)

• 2003 WL 23793929 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Appoint Santa Cruz holding Group as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead Counsel (Sep. 8, 2003) Original Image of this Document (PDF)

• 2003 WL 23793918 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of the Motion of Gilbert H. Lamphere to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel, and Request for Limited Discovery of Santa Cruz Group (Aug. 25, 2003) Original Image of this Document (PDF)

• 2003 WL 23793873 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of the Motion of Gilbert H. Lamphere to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel and in Opposition to Competing Motions (Aug. 18, 2003) Original Image of this Document (PDF)

• 2003 WL 24986890 (Trial Motion, Memorandum and Affidavit) Plaintiff Gilbert H. Lamphere's Memorandum of Points and Authorities in Support of Motion to Consolidate all Related Actions for All Purposes (Jul. 28, 2003) Original Image of this Document (PDF)

• 3:03cv02522 (Docket) (May 28, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.