UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BIOPURE CORPORATION SECURITIES LITIGATION | ) ) ) ) ) ) ) |

Civ. No. 03-12628-NG

LEAVE TO FILE GRANTED ON
OCT. 10, 2006

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

BIOPURE CORPORATION, THOMAS A.
MOORE, CARL W. RAUSCH, CHARLES
A. SANDERS, J. RICHARD CROUT,
RONALD F. RICHARDS AND HOWARD
P. RICHMAN

By their attorneys,

Robert A. Buhlman, BBO #554393
Donald J. Savery, BBO #564975
Michael D. Blanchard, BBO #636860
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

SEYFARTH SHAW, LLP

Christopher Robertson (BBO# 642094)

Jodi D. Luster (BBO # 657853)
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028

*Attorney for Defendant Ronald F. Richards*

EDWARDS ANGELL PALMER & DODGE
LLP

John D. Hughes (BBO# 243660)
John J. Tumilty (BBO # 560017)
Mary P. Cormier (BBO# 635756)
101 Federal Street
Boston, MA 02110
(617) 439-4444

Cathy A. Fleming (*pro hac vice*)
750 Lexington Avenue
New York, NY 10022
(212) 308-4411

*Attorneys for Defendant Howard P. Richman*

McDERMOTT WILL & EMERY, LLP

Edward P. Leibensperger (BBO# 292620)
Jeffrey S. Huang (BBO# 651854)
28 State Street
Boston, MA 02109
(617) 535-4000

*Attorneys for Defendant Thomas Moore*

October 13, 2006

## Preliminary Statement[1]

Like the old adage goes "When you have good facts, pound the facts. When you have the law, pound the law. And when you have neither, pound the table." As evinced by the empty rhetorical flourishes and straw man assaults pervading the Plaintiffs' Reply, class counsel's fists are badly bruised. Despite the undoubtedly splintered condition of class counsel's "table," the law in the First Circuit and elsewhere, as applied to the facts (and not Plaintiffs' creative rendition of them) dictates that both the class and sub-class as proposed may not be certified.

## I. THE LAW (AND NOT A BEATEN TABLE) DICTATES THAT NO CLASS MAY BE CERTIFIED

As a preliminary, but important point, contrary to Plaintiffs' assertion at page 1 of the Reply (and continuing throughout), Defendants have indeed relied upon the applicable Rule 23 First Circuit decisional law. Plaintiffs curiously assert that Defendants' Opposition "entirely avoided any citation to the first Circuit's decision in Andrews v. Bechtel Power Corp., 780 F.2d 124 (1st Cir. 1985), which sets forth the governing two-part test for Rule 23 adequacy in this Circuit." Reply at 1. Andrews (which incidentally was not cited by Plaintiffs in their opening brief) is an employment discrimination case. Defendants cited In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1534 (D. Mass. 1991), a securities class action decision, for exactly the same two-part test set forth in Andrews. Plaintiffs' argument is a straw man.

Plaintiffs' next "straw man" argument asserts that Defendants have relied on a discredited 5th Circuit decision. Plaintiffs are simply wrong. Defendants' Opposition begins with the first

---

[1] Defendants Biopure Corporation ("Biopure"), Thomas A. Moore, Carl W. Rausch, Charles A. Sanders, J. Richard Crout, Ronald F. Richards and Howard P. Richman (collectively, the "Defendants") submit this Sur-Reply in Response to Plaintiffs' Reply Brief in Support of Their Amended Motion for Class Certification (the "Plaintiffs' Reply").

sentence by quoting <u>In re Sonus Networks, Inc. Sec. Litig.</u>, 229 F.R.D. 339, 342 (D. Mass. 2005) for the simple proposition that the PSLRA "mandate[s] that class representatives, and not lawyers, must direct and control the litigation."  <u>Sonus</u> happened to cite <u>Berger v. Compaq Comp. Corp.</u>, 257 F.3d 475, 481 (5th Cir. 2001) for this same proposition, and <u>Berger</u> is quoted in the Opposition for the same.  In addition to espousing the unassailable, above-quoted proposition, <u>Berger</u> happened to imply that the PSLRA altered the Rule 23 inquiry -- a proposition <u>not</u> advanced by Defendants in their Opposition.  Attempting to distract attention from the facts of this case and the teachings of <u>Sonus</u> and other First Circuit and extra-jurisdictional authorities, Plaintiffs vehemently attack that portion of <u>Berger</u>, not relied upon by Defendants.

As demonstrated by the record, this is a case of lawyer driven litigation, with unaware plaintiffs doing little more than lending their name to a class action.  Plaintiffs' straw man arguments do not legitimately detract from the facts.

## II.    *MERE ASSERTIONS* IN THE REPLY CANNOT CHANGE *FACTS* DEMONSTRATING THAT PROPOSED LEAD PLAINTIFFS ARE TOKEN FIGUREHEADS LACKING BASIC KNOWLEDGE OF THE LITIGATION, AND THUS INADEQUATE

### A.    The Plaintiffs' Conclusory Assertions Are Refuted By The Record

As the law requires denial of class certification when the proposed representatives are inadequate due to their lack of basic knowledge of the litigation or having ceded control to their attorneys, and the facts of this case being what they are, the Plaintiffs are unsurprisingly left to advance mere conclusory assertions in an attempt to satisfy Rule 23.  The Plaintiffs' assertions do not stand up to the facts.

LITDOCS/654925.3/0078210-0000306811

For instance, Plaintiffs assert "Dr. Esposito and Mr. Erickson have demonstrated an exceptional knowledge of the allegations in the Complaint" (Reply at 18) and "Substantively, Mr. Erickson demonstrated a solid command of the core allegations of this litigation." Reply at 10. The only thing "exceptional" about Plaintiffs' knowledge of this litigation is the extent to which they have none. Mr. Erickson testified, for example only:

- He had never heard the term "complete response letter" before -- a term that is the epicenter of the Complaint; (Tr. 184:2 – 186:7)

- He does not know what a BLA is -- perhaps 95% of what this litigation is about; (Tr. 140:23 – 141:22)

- He believed that a "complete response letter" was something *Biopure* had to *submit to FDA*; (Tr. 185:18 – 186:7)

- He confused PDUFA (federal legislation) as a Biopure product; (Tr. 169:17-24)

- He could not answer whether FDA ever completed its review of the Hemopure BLA, a central allegation of the Complaint; (Tr. 170:5 – 172:11)

- He believes Biopure's clinical trials for *orthopedic surgery* had been put on hold (Plaintiffs only allege that clinical trials for trauma were put on hold) (Tr. 161:1-14).

Likewise, Dr. Esposito testified, for example only:

- He had no understanding of what the term "BLA" refers to; (Tr. 116:15-22)

- He had never seen any of the FDA/Biopure communications, nor had he ever seen the scores of allegedly fraudulent or misleading statements that are attacked in the Complaint; (Tr. 164:23 – 168:10)

- He did not know what court the case is pending in; (Tr. 109:1-6)

- He did not even know whether he was a representative of the class; (Tr. 150:10-14)

- He apparently has no idea of what Biopure holdings he purchased, when he purchased the stock, when he sold the stock, or if he sold the stock.[2]

---

[2] Dr. Esposito's ever-changing "vivid" recollections of his Biopure holdings, virtually all proven to be false, including his going so far as to submit an errata sheet that itself was incorrect, is detailed in the Opposition. Plaintiffs seem to think that these were "honest mistakes" and therefore excused. See Reply ay 32. While surely Dr. Esposito's credibility has been placed at issue, and that alone defeats adequacy, his total lack of understanding of the

These are only but a few examples.  This Court should not appoint would-be plaintiffs with such a striking lack of familiarity with the litigation as fiduciaries to the Class, and indeed, Rule 23 requires otherwise.[3]

> **B.**     **Plaintiffs Other Attempts At Rehabilitation Are Demonstrably Disingenuous**

Beyond conclusory assertions and colorful hyperbole, the Plaintiffs do attempt to address these difficult facts in their Reply, but the attempts are demonstrably disingenuous.  By way of illustration only:

| Plaintiffs' Counsel Asserts. . . | But The Record Demonstrates. . . |
|---|---|
| Plaintiffs contend that Defendants' perpetrate a "rather striking mischaracterization" of testimony by arguing that Dr. Esposito never saw the documents that are alleged to be false or misleading.  Plaintiffs' Reply at 22. | Tellingly, Plaintiffs never prove up that "striking mischaracterization" assertion -- because their own assertion is itself a striking mischaracterization.<br><br>On pages 165-168 of his Transcript, Dr. Esposito testified unequivocally to having never seen Exhibits 26-43 -- the very documents for which Plaintiffs would have Dr. |

---

most basic facts of this litigation from Dr. Esposito's individual perspective (i.e. his stock ownership) makes it extremely difficult to understand how he will be capable of representing an entire class of purchasers.  Plaintiffs' reliance upon In re Sepracor Inc. 233 F.R.D. 52, 56 (D. Mass. 2005) for the proposition that credibility issues are not sufficient to defeat certification is misplaced.  In Sepracor, the proposed lead plaintiff in pertinent part simply failed to list some of his stock transactions in his certification even though "[t]he information that [he] omitted in his certification was later fully provided in response to Sepracor's written discovery requests" -- he did not perpetrate the series of misstatements concerning his own holdings, and then have counsel attempt to rectify those misstatements through an errata sheet that itself turned out to be a misstatement, as did Dr. Esposito here.  Dr. Esposito's fiasco concerning the first fact that must be established to maintain a securities fraud suit -- i.e. purchases and sales of stock -- does not implicate credibility alone.  It goes to his basic lack of knowledge of the most fundamental facts, his lack of attentiveness to the litigation and his willingness to cede control to counsel.

[3]  Plaintiffs' reliance upon In re Transkaryotic Therapies, Inc. Sec. Litig., 2005 WL 3178162 (D. Mass., Nov. 28, 2005) to assert that the proposed lead plaintiffs here are somehow satisfactory is misplaced.  Nowhere in the Transkaryotic decision is there any hint that the plaintiffs were unaware of such basic matters as the fundamental allegations of the complaint, or which class they sought to represent (to name a few only).  While true that a class representative need not be an "expert" concerning "all details of the case," surely, if Rule 23 has any meaning at all, they must at least be generally familiar with the litigation.  Proposed lead plaintiffs here are not.

4

| Plaintiffs' Counsel Asserts. . . | But The Record Demonstrates. . . |
|---|---|
| | Esposito pursue securities fraud claims on behalf of a class. |
| • Putative class counsel claims, with respect to Mr. Erickson's testimony that a May 22 press release is not false or misleading, that he in fact testified that it was misleading. Plaintiffs' Reply at 22, n.12. | • Initially, Mr. Erickosn testified that a sentence in the press release was misleading. When, after a great deal of confusion on Mr. Erickson's part requiring further examination, he was asked whether he still viewed the press release as misleading, Mr. Erickson clarified "No, I was incorrect on that." Tr. 173:18. |
| • Class counsel then claims that Mr. Erickson's testimony "no I was incorrect on that" is taken out of context by Defendants in asserting that he had testified that he did not view the press release as misleading. Plaintiffs contend that Defendants have misled the Court because Mr. Erickson was in fact only asked whether a particular sentence was misleading, not the entire press release. Plaintiffs' Reply at 22, n.12. | • Indeed, Mr. Erickson was only asked about whether a particular sentence was false or misleading -- for a simple reason -- when originally asked "Is there anything in Exhibit 30 [i.e. the entire press release] that you contend is false or misleading?" Mr. Erickson identified that sole sentence as being misleading (albeit after he began to respond negatively and his attorney quickly interrupted to coach a more favorable answer: "Take your time to look through it.") Tr. 168:10-12. |
| Plaintiffs' counsel claims that, "on the very pages quoted by Defendants" Mr. Erickson demonstrated what a complete response letter was. Reply at 21, n.11. | The testimony speaks volumes.<br><br>Q.   Have you ever heard the term complete response letter in connection with this litigation?<br><br>A.   I might have.  I'm trying to -- it's been a long day, I'm going ahead and kind of trying to remember, it's a little cloudy.<br><br>Q.   Understood.  But you're not sure?<br><br>A.   Right.<br><br>Q.   And the term doesn't carry any significance for you in the context of this litigation?<br><br>MR. LONGMAN:    I think he just answered that.<br><br>[Plaintiffs quote the following as demonstrating Mr. Erickson's understanding]<br><br>A.   I mean in the context, I mean what comes to mind, okay, in a sense as far as to me |

LITDOCS/654925.3/0078210-0000306811

| Plaintiffs' Counsel Asserts. . . | But The Record Demonstrates. . . |
|---|---|
| | would be in July when they had the 200 questions that they had to answer, <u>I assume that that would be what would be sent out, and that's what they'd have to do to go ahead and complete it</u>. Tr. 185:9 – 186:4 (emphasis added).<br><br>Thus Mr. Erickson, to the extent he had ever heard the term before, believes that a complete response letter is what <u>Biopure</u> had to send to <u>FDA</u>. Given that the central allegation of the complaint concerns Biopure's alleged failure to disclose the <u>receipt</u> of a complete response letter, clearly, Mr. Erickson is inadequate. |
| Plaintiffs argue that Defendants "misleadingly quoted" Mr. Erickson's testimony concerning his belief that the August 1 press release is not false or misleading. Plaintiffs' Reply at 22-23, n.13. | The assertion is curious given that Defendants provide the exact same quotation as Plaintiffs from Mr. Erickson's testimony (<u>see</u> Opp. at 25, n.57) to prove up this simple point. In any case, Mr. Erickson was asked "<u>**Is**</u> there anything false or misleading" ("is" refers to present tense) and he responded, perhaps inartfully, "No, at that point no." Tr. 183:8-13.<br><br>Plaintiffs appear to argue that Mr. Erickson meant that he did not view the press release as misleading "at that point" -- being August, 2003. While creative, the assertion falls flat given that the core allegation concerning the press release being misleading is the alleged failure to disclose the receipt of a complete response letter from FDA. As Mr. Erickson testifies a few lines later about not knowing what a complete response letter is -- in the present -- how <u>could</u> he view the press release as false or misleading? |

6

## C.    No Class Can Be Certified Based On This Record

The proposed lead plaintiffs are unaware of the substance of this litigation.  They have participated in this litigation by lending their names to the complaints, half-heartedly responding to discovery (for instance, Dr. Esposito provided a single piece of paper in response to Defendants' request for production), showing up for depositions, and no more.  They hired counsel, without bothering to negotiate any fee agreement on behalf of the class,[4] reviewed the complaints after the fact, and feel that they were wronged -- however unsure as to why.  They have not demonstrated (as they must given the burden on them under Rule 23) that they can or will adequately pursue the interests of the class.  Rather, they have left that task to their lawyers, unrestrained with carte blanche.  This is lawyer driven litigation, demonstrated perhaps most vividly by counsel's rewriting the Plaintiffs' deposition testimony through errata sheets as if it were a take home exam.  If Rule 23 presents any hurdle at all to certification of a class, these Plaintiffs cannot be deemed to have met it.  In short, the Plaintiffs have offered nothing to detract from the obvious conclusion that, in this case, the "tail is wagging the dog," the very circumstance which Rule 23 and the PSLRA are designed to prevent.

---

[4]  Plaintiffs attempt to avoid their failure to negotiate a fee agreement by asserting that Defendants' reliance upon In re Quintus Sec. Litig., 201 F.R.D. 475, 482 (N.D. Cal. 2001) is misplaced because, Plaintiffs say, the decision was vacated with respect to the very point relied upon -- that failure to negotiate a fee agreement demonstrates a lack of adequacy.  Not quite so.  Defendants concede that the decision was vacated and apologize to Plaintiffs and the Court for the oversight, however, the proposition that Defendants advanced is not "legally infirm" based on the Ninth Circuit's decision in In re Cavanaugh, 306 F.3d 726 (9th Cir. 2002).  Quintus was a decision concerning lead plaintiff appointment pursuant to the PSLRA -- not class certification pursuant to Rule 23 -- and the district court there considered the plaintiffs' failure to negotiate a fee agreement as bearing against appointment as lead plaintiff because that failure demonstrated inadequacy under Rule 23.  The Ninth Circuit's decision did not hold that the failure to negotiate a fee agreement is irrelevant to a Rule 23 analysis.  Rather, the Ninth Circuit granted mandamus because it disagreed with the district court's variation from the PSLRA's presumption that a plaintiff with the largest losses is the most adequate lead plaintiff.  The District Court's observation that failing to negotiate a fee agreement goes to inadequacy is still persuasive reasoning for Rule 23 purposes.

## III.  THE REPLY ALSO FAILS TO DEMONSTRATE A BASIS FOR CERTIFYING THE SUB-CLASS UNDER SECTION 20A

While Dr. Esposito has recently been offered as a representative of the entire class, (a role that was unbeknownst to him until his counsel told him so at his deposition) he was originally offered as a representative of a sub-class only, for those purchasers of Biopure stock who purchased contemporaneously with alleged insider sales on different dates throughout the class period by two Defendants, Biopure and Mr. Rausch. The law in the First Circuit, which Plaintiffs suggest this Court should ignore in deference to the Fifth Circuit, dictates that a plaintiff's purchases must be on the "same day" as the insider's sale in order to meet the "contemporaneous" requirement. See, e.g., In re Stratus Comp., Inc. Sec. Litig., 1992 WL 73555, *6 (D. Mass. Mar. 27, 1992).[5]

Plaintiffs apparently concede that Dr. Esposito purchased on the same day with respect to only a single alleged Section 20A sale, occurring on August 12, 2003 by Defendant Rausch. Plaintiffs concede that Dr. Esposito made no purchase on any day that Biopure sold stock, or on any other days that Mr. Rausch sold stock. Plaintiffs' argument then boils down to the assertion that a plaintiff who has purchased on one day from one defendant can represent a class of purchasers concerning numerous other alleged Section 20A sales, occurring on different dates, by other defendants. Respectfully, the argument cannot withstand analysis. As courts have held,

---

[5] The Plaintiffs claim that "there is no hard and fast standard as to what constitutes 'contemporaneous' under Section 20A. Many federal courts have construed the Section 20A contemporaneity requirement far more liberally than the courts upon which Defendants rely -- those courts upon which Defendants rely being the District of Massachusetts. The Plaintiffs' citation to a Texas decision is curious, particularly when they have made the centerpiece of their brief an asserted failure by the Defendants to cite to applicable First Circuit decisions (which, as explained above, is a straw man argument given Defendants' citation to D. Mass. decisions quoting the First Circuit standards).

In any event,, in Copeland v. Grumet, 88 F. Supp. 2d 326, 338 (D.N.J. 1999) cited by plaintiffs themselves, (Reply at 36-37) the District of New Jersey agreed with the District of Massachusetts and dismissed a Section 20A claim where the plaintiff did not purchase on the same date as the defendant sold. Id. ("in order to satisfy the "contemporaneous" requirement applied in insider trading claims under §§ 10(b) and 20A of the Exchange Act, a plaintiff must at this stage plead that he or she bought stock on the same dates on which the defendant's sales took place.").

LITDOCS/654925.3/0078210-0000306811

a court must dismiss a claim by a plaintiff who has not purchased contemporaneously with an

alleged Section 20A sale, and accordingly, the plaintiff cannot represent a class of purchasers

concerning the same sale.  As illustrated in one decision:

> [P]laintiffs seek to name a subclass of three plaintiffs to bring a class action against all fourteen of the individual defendants under § 20A to recover for Rasterops shareholders who traded contemporaneously with the defendants. . . . Defendants urge that the named plaintiffs have failed to state a claim for relief under § 20A against most of the defendants because they do not allege trades contemporaneous with those defendants.
> . . .
> [After holding that the plaintiffs sufficiently pled contemporaneous trades for certain defendants] It is clear that the subclass plaintiffs have not alleged contemporaneous trades with the remaining seven individual defendants (Sarensen, Maietta, Saul, Sandison, Avis, Sarlo, and Tompkins).  <u>The subclass plaintiffs' claims against at least these defendants should be dismissed for failure to state a claim for relief.</u>  **Instead of disputing this point, plaintiffs argue that the named subclass plaintiffs can and should represent a class of plaintiffs who traded contemporaneously with defendants.**  This argument is premature and inappositive to whether plaintiffs have stated a claim for relief.  **Where a plaintiff is unable to assert an individual claim against defendants under § 20A, that plaintiff cannot represent a class of those who traded contemporaneously.**

<u>In re Rasterops Corp. Sec. Litig.</u>, 1993 WL 183510, *4-5 (N.D. Ca. Jan. 6, 1993) (emphasis

added).

Here, Plaintiffs must concede that there is no class representative who purchased stock on

any dates that Biopure sold, nor on date that Defendant Rausch sold except one.  While Dr.

Esposito may be able to represent a sub-class of purchasers on August 12 as against Defendant

Rausch (assuming he could otherwise satisfy Rule 23, and he cannot), he cannot, as a matter of

law, represent any subclass with respect to Biopure.  <u>See</u> <u>id.</u>; <u>In re MicroStrategy, Inc. Sec.</u>

<u>Litig.</u>, 115 F. Supp. 2d 620, 664 (E.D.Va. 2000) ("insofar as Plaintiff Schwartz [who did satisfy

Section 20A requirements for one defendant] lacks standing to bring a claim against [another

Section 20A defendant] personally, and she is the sole claimant and class representative on the

9

Section 20A count, Count III of the Complaint must be dismissed as to [the other Section 20A defendant]").[6]  And Plaintiffs have not sought to have certified a sub-class so limited.  Their motion for certification of the sub-class, concerning all of the alleged Biopure and Rausch insider sales, must be denied.

## IV.    CONCLUSION

For these reasons, Defendants Biopure, Thomas A. Moore, Carl W. Rausch, Charles A. Sanders, J. Richard Crout, Ronald F. Richards and Howard P. Richman respectfully request that the Court deny Plaintiffs' Certification Motion.

---

[6]  Plaintiffs erroneously cite In re Cendant Corp. Litig., 60 F. Supp. 2d 354 (D.N.J. 1999) for the proposition that Dr. Esposito's purchase of shares on one day that Defendant Rausch sold means that he has standing to pursue claims on behalf of a class for all of Rausch's sales.  Cendant was a decision on a motion to dismiss -- not class certification.  In that connection, the court simply held that an allegation of a single contemporaneous purchase meant that the Section 20A claim withstood a 12(b)(6) motion -- it did not hold that the plaintiff could pursue Section 20A claims on behalf of a class for other alleged insider sales that were not contemporaneous with the plaintiff's purchases.

LITDOCS/654925.3/0078210-0000306811

Respectfully submitted,

**BIOPURE CORPORATION, THOMAS A.
MOORE, CARL W. RAUSCH, CHARLES A.
SANDERS, J. RICHARD CROUT, RONALD F.
RICHARDS AND HOWARD P. RICHMAN**

By their attorneys,


/s/ Donald J. Savery_____
Robert A. Buhlman, BBO #554393
Donald J. Savery, BBO #564975
Michael D. Blanchard, BBO #636860
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
Dated: October 13, 2006      (617) 951-8000


SEYFARTH SHAW, LLP

/s/ Christopher Robertson_____
Christopher Robertson (BBO# 642094)
Jodi D. Luster (BBO # 657853)
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028

*Attorney for Defendant Ronald F. Richards*

11

EDWARDS ANGELL PALMER & DODGE
LLP

/s/ Cathy A. Fleming
John D. Hughes (BBO# 243660)
John J. Tumilty (BBO # 560017)
Mary P. Cormier (BBO# 635756)
101 Federal Street
Boston, MA 02110
(617) 439-4444

Cathy A. Fleming (*pro hac vice*)
750 Lexington Avenue
New York, NY 10022
(212) 308-4411

*Attorneys for Defendant Howard P. Richman*


McDERMOTT WILL & EMERY, LLP

/s/ Edward P. Leibensperger
Edward P. Leibensperger (BBO# 292620)
Jeffrey S. Huang (BBO# 651854)
28 State Street
Boston, MA 02109
(617) 535-4000

*Attorneys for Defendant Thomas Moore*


CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was electronically served upon
the attorney of record for each party on October 13, 2006.

/s/ Donald J. Savery
Donald J. Savery

12