# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE BIOPURE CORPORATION SECURITIES LITIGATION | ) ) ) ) ) ) | CIVIL ACTION NO. 03-12628-NG |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Court, this Stipulation is entered into among: (i) Lead Plaintiff Ronald Erickson ("Erickson") and Plaintiff John G. Esposito ("Esposito") (together the "Plaintiffs" or the "Class Representatives") on behalf of themselves and all Class Members (as hereinafter defined), by and through their undersigned attorneys; and (ii) Biopure Corporation ("Biopure"), Thomas A. Moore, Carl W. Rausch, Ronald F. Richards, Howard P. Richman, Charles A. Sanders and J. Richard Crout (collectively, "Defendants"), by and through their undersigned attorneys (collectively, Class Representatives and Defendants shall be referred to herein as the "Parties").

## I.    THE ACTION

### A.    The Filed Actions

On or after December 30, 2003, fifteen securities class actions were filed in the United States District Court for the District of Massachusetts against Biopure and certain of Biopure's present or former officers: *Greene v. Biopure Corporation et al.*, Civ. No. 03-12628-NG; *Esposito v. Biopure Corporation et al.*, Civ. No. 04-10013-NG; *King v. Biopure Corporation et al.*, Civ. No. 04-10038-NG; *Criden v. Biopure Corporation et al.,* Civ. No. 04-10046-NG;

*Shurkin et al. v. Biopure Corporation et al.*, Civ. No. 04-10055-NG; *Nizzo v. Biopure Corporation et al.*, Civ. No. 04-10065-NG; *Brooks v. Biopure Corporation et al.,* Civ. No. 04-10077-NG; *Perlegis v. Biopure Corporation et al.,* Civ. No. 04-10078-NG; *Weber v. Biopure Corporation et al.*, Civ. No. 04-10090-NG; *Haims v. Biopure Corporation et al.*, Civ. No. 04-10144-NG; *Model Partners Limited v. Biopure Corporation et al.,* Civ. No. 04-10155-NG; *Patenaude v. Biopure Corporation et al.,* Civ. No. 04-10179-NG; *Pinckney v. Biopure Corporation et al.*, Civ. No. 04-10189-NG; *Johnson v. Biopure Corporation et al.*, Civ. No. 04-10190-NG; and *Kruszka v. Biopure Corporation et al.*, Civ. No. 04-10202-NG.

On May 14, 2004, the Court ordered the complaints consolidated into a single action under the caption *In re Biopure Securities Litigation*, Civ. No. 03-12628-NG (the "Action"). The Court also appointed Ronald Erickson as Lead Plaintiff and approved Stull, Stull & Brody ("Stull") and Shapiro Haber & Urmy, LLP ("Shapiro") as Co-Lead Counsel (together, Stull and Shapiro shall be referred to as "Co-Lead Counsel").

### B.  <u>Procedural History</u>

On July 23, 2004, the Class Representatives and other named Plaintiffs filed a Consolidated Amended Class Action Complaint ("CAC") alleging claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, Section 20(a) of the Exchange Act and Section 20A of the Exchange Act.

On October 6, 2004, all Defendants filed a motion to dismiss the CAC.  On December 7, 2004, plaintiffs filed their opposition to the motion.  On January 24, 2005, Defendants filed their reply.  On January 5, 2006 the Plaintiffs filed a motion for leave to file a Second Consolidated Amended Complaint ("SCAC").  On January 23, 2006 the Defendants filed their opposition to that motion.

2

On February 2, 2006 the Court held a hearing on Defendants' motion to dismiss and the plaintiffs' motion for leave to file the SCAC. The Court issued a Memorandum and Order denying the Defendants' motion to dismiss and granting the Plaintiffs leave to file the SCAC ("the Order") on March 28, 2006. On the same date, the Plaintiffs filed the SCAC, which raised the same legal claims as were set forth in the CAC, but supported them with additional factual allegations.

On April 28, 2006 Defendants filed their Answer and Affirmative Defenses to the SCAC. On May 5, 2006 the Class Representatives and named Plaintiff Stuart Gottlieb filed a motion to certify: (i) a class of purchasers of Biopure common stock from April 9, 2003 through December 24, 2003, with Lead Plaintiff Erickson seeking to serve as Class representative; and (ii) a Sub-Class of purchasers of Biopure common stock who purchased contemporaneously with sales by Biopure and Rausch, with named Plaintiffs Esposito and Gottlieb as Sub-Class representatives. Defendants served Lead Plaintiff Erickson and Plaintiffs Gottlieb and Esposito with class certification related discovery, including document requests, interrogatories and deposition notices, and conducted third party class certification discovery with respect to Lead Plaintiff Erickson, Plaintiff Gottlieb and Plaintiff Esposito. Lead Plaintiff Erickson and Plaintiff Esposito sat for their depositions on May 30 and May 31, 2006, respectively.

On June 5, 2006, the Class Representatives filed an amended motion for class certification, seeking to certify: (i) a class of purchasers of Biopure common stock from April 9, 2003 through December 24, 2003, with Lead Plaintiff Erickson and named Plaintiff Esposito seeking to serve as class representatives; and (ii) a sub-class of purchasers of Biopure common stock who purchased contemporaneously with sales by Biopure and Rausch with named Plaintiff

3

Esposito seeking to serve as sub-class representative. The members of the above-referenced class and sub-class are collectively referred to herein as the "Class Members."

Defendants filed a memorandum in opposition to the amended motion for class certification on July 25, 2006. Plaintiffs replied on September 29, 2006 and Defendants sur-replied on October 13, 2006. The amended motion to certify the Class was pending on February 6, 2007, when the Parties notified the court that they had reached a settlement.

## II.    INVESTIGATION, DISCOVERY AND RESEARCH

### A.    <u>Investigation, Discovery and Research Conducted by Co-Lead Counsel</u>

Co-Lead Counsel have conducted extensive discovery and factual investigation during their prosecution of the Action. This discovery and investigation has included, *inter alia*, (a) review and analysis of Biopure's public filings, annual reports, and other public statements; (b) review of transcripts of testimony in a related proceeding by the SEC; (c) consultations with experts; (d) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (e) detailed review and analysis of over 40,000 pages of documents produced by Defendants in discovery.

Based upon their investigation to date, Co-Lead Counsel believe that the terms and conditions of this Stipulation are fair, reasonable and adequate to the Class Representatives and the Class Members, and in their best interests, and the Class Representatives have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits that Class Representatives and the Class Members will receive from the Settlement; (b) the attendant risks of litigation; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

### B.    <u>Settlement Negotiations and Mediation</u>

The Parties began to discuss a possible resolution of this action early in the proceedings. Discussions between the Parties continued for many months, resulting in a mediation held in September 2005 and conducted by the Honorable Layn Phillips (Ret.), United States District Court Judge for the Western District of Oklahoma. Although the mediation with retired Judge Phillips failed to result in a settlement, the Parties continued to discuss the possibility of settlement and engaged in another mediation on October 11, 2006, conducted by Professor Eric Green. Following the mediation with Professor Green, the Parties continued to negotiate the terms of a potential settlement and ultimately, the Parties reached the settlement set forth herein.

## III.    PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT

The Class Representatives believe that the causes of action asserted in the SCAC have merit and that the evidence developed to date supports their claims. The Class Representatives have collected evidence through discovery and investigation that they strongly believe would demonstrate at trial that Defendants knowingly and/or recklessly issued, or caused Biopure to issue, materially false and/or misleading statements concerning the business, operations and financial condition of Biopure, which caused the price of Biopure common stock to be artificially inflated during the Class Period (as defined below) and resulted in injury to the Class Representatives and the Class Members.

Even though the Class Representatives have survived Defendants' motion to dismiss, have briefed the issue of class certification, and believe their claims are strong, they recognize and acknowledge the expense and length of time which would be consumed by continued proceedings necessary to prosecute the Action against the Defendants through trial and appeals. Co-Lead Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays

ACTIVE/72007843.1

inherent in such litigation.  Co-Lead Counsel are also mindful of the inherent problems of proof

under, and possible defenses to, the securities law violations asserted in the Action.  Further, Co-

Lead Counsel also considered the ability to pay issues arising from the financial circumstances of

Biopure and the ability to fund a settlement or satisfy a verdict from insurance proceeds, which

have been used in part to defend this Action and a related action prosecuted by the SEC.

In light of the foregoing, the Class Representatives and Co-Lead Counsel believe that the

Settlement confers substantial benefits upon the Class and they have determined that the

Settlement set forth in the Stipulation is in the best interests of the Class Representatives and the

Class Members.

## IV.    DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims and contentions

alleged by the Class Representatives in the Action.  Defendants expressly have denied and

continue to deny all charges of wrongdoing or liability against them arising out of any conduct,

statements, acts or omissions alleged, or that could have been alleged, in the Action.  Defendants

have also denied and continue to deny, *inter alia*, the allegations that Class Representatives or

the Class have suffered damages, that the price of Biopure common stock was artificially inflated

by reasons of alleged misrepresentations, non-disclosures or otherwise, and that the Class

Representatives or the Class were harmed by the conduct alleged in the SCAC.

Nonetheless, Defendants have concluded that further conduct of the Action would be

protracted and expensive, and that it is desirable that the Action and any Settled Claims,

including Unknown Claims (as defined below), be fully and finally settled in the manner and

upon the terms and conditions set forth in this Stipulation.  Defendants have also taken into

account the uncertainty and risks inherent in any litigation, especially in complex securities cases

like this Action.  Defendants, therefore, have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## V.     TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW THEREFORE, without any admission or concession on the part of Class Representatives of any lack of merit of the Action whatsoever, and without any admission or concession of any fault, liability, wrongdoing or damage whatsoever, or lack of merit in the defenses whatsoever, by the Defendants, it is hereby STIPULATED AND AGREED, by and among the Parties to this Stipulation, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties hereto, that all Settled Claims (as hereinafter defined) as against the Released Parties (as hereinafter defined) and all Settled Defendants' Claims (as hereinafter defined) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions (the "Settlement"):

## DEFINITIONS

1.     As used in this Stipulation, the following terms shall have the following meanings:

(a)     "Authorized Claimant" means any Class Member who submits a timely and valid Proof of Claim and Release form ("Proof of Claim") that is accepted by the Claims Administrator.

(b)      "Claimant" means any Class Member who files a Proof of Claim.

(c)     "Claims Administrator" means Berdon Claims Administration LLC, which shall administer the Settlement.

7

(d)    "Class" and "Class Members" mean all persons or entities who purchased or otherwise acquired Biopure common stock from April 9, 2003 through December 24, 2003, inclusive.  Excluded from the Class are Defendants, the former and current officers and directors of Biopure, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

(e)    "Class Period" means the period of time from April 9, 2003 through December 24, 2003, inclusive.

(f)    "Court" means the United States District Court for the District of Massachusetts, the Honorable Nancy Gertner presiding.

(g)    "Defendants" means Biopure Corporation, Thomas A. Moore, Carl W. Rausch, Ronald F. Richards, Howard P. Richman, Charles A. Sanders and J. Richard Crout.

(h)    "Defendants' Counsel" means the law firm of Bingham McCutchen, LLP.

(i)    "Effective Date of Settlement" or "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective, as set forth in ¶27 below.

(j)    "Escrow Agents" means Co-Lead Counsel, Edward F. Haber and Howard Longman.

(k)    "Final" means: (i) if an appeal is filed, the date of final affirmance on an appeal from the Order and Final Judgment, the expiration of the time for a petition for a writ of certiorari to review the Order and Final Judgment or, if certiorari is granted, the date of final affirmance of the Order and Final Judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Order and Final Judgment and the final dismissal of any proceeding on certiorari to review the Order and Final Judgment; or (iii) if no appeal is

8

filed, the expiration date of the time for the filing or noticing of any appeal from the Order and

Final Judgment, *i.e.*, thirty (30) calendar days after entry of the Order and Final Judgment (or, if

the date for taking an appeal or seeking review shall be extended beyond this time by order of the

Court, by operation of law or otherwise, or if such extension is requested, the date of expiration

of any extension if any appeal or review is not sought); or (iv) if the Court enters an Order and

Final Judgment in a form other than that provided above ("Alternative Judgment") and none of

the Parties hereto elect to terminate the Settlement, the date that such Alternative Judgment

becomes final as defined in parts (i) to (iii) above and no longer subject to appeal or review.  Any

proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan

of allocation and/or application for attorneys' fees, costs or expenses, or compensatory award for

Class Representatives shall not in any way delay or preclude the Order and Final Judgment from

becoming final.

(l)    "Gross Settlement Fund" means the Settlement Amount, plus any interest

earned thereon.

(m)    "Insurers" means the Underwriters of Lloyd's, London; Old Republic

Insurance Company; and Carolina Casualty Insurance Company (the "Insurers").

(n)    "Class Representatives" means Lead Plaintiff Ronald Erickson and

Plaintiff John G. Esposito.

(o)    "Co-Lead Counsel" means Stull, Stull & Brody and Shapiro Haber &

Urmy, LLP.

(p)    "Net Settlement Fund" means the Gross Settlement Fund, as defined

herein, net of any taxes, as referred to in ¶7, on the income thereof, and net of any funds to pay

(i) the notice and administrative costs referred to in ¶11, (ii) taxes and escrow fees; (iii) the

9

attorneys' fees and expense award referred to in ¶12; and (iv) any award to Class Representatives granted by the Court referred to in ¶12.

(q)     "Notice" means the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Fairness Hearing, which is to be sent to members of the Class substantially in the form attached hereto as Exhibit 1 to Exhibit A.

(r)     "Order and Final Judgment" means the proposed order to be entered approving the Settlement substantially in the form attached hereto as Exhibit B.

(s)     "Person" means an individual, corporation (including all divisions and subsidiaries), partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assigns.

(t)     "Plan of Allocation" means a plan or formula for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

(u)     "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Class substantially in the form attached hereto as Exhibit A.

(v)     "Released Parties" means any and all of the Defendants, their past or present subsidiaries, parents, successors and predecessors, officers, directors, agents, employees, Insurers, co-insurers, reinsurers, controlling shareholders, attorneys, divisions, joint ventures, accountants, spouses, personal or legal representatives, assigns, heirs, any members of an Individual Defendant's immediate family and any trust of which any Individual Defendant is the settlor or which is for the benefit of an Individual Defendant's family, and any person, firm,

10

trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors in interest or assigns of any such party.

(w)     "Settled Claim(s)" means any and all claims, including both known claims and Unknown Claims (as defined below), debts, demands, rights or causes of action or liabilities of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, equitable or injunctive relief and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, known or unknown, whether concealed or hidden, asserted or that could have been asserted, including, without limitation, claims for negligence, gross negligence, breach of duty of care and/or breach of duty of loyalty, fraud, breach of fiduciary duty, or violations of any state or federal statutes, rules or regulations , (i) that have been asserted in this Action by the Class Members or their attorneys or any of them against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or their attorney or any of them or their successors and assigns or any of them against any of the Released Parties which arise out of or are based upon or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the SCAC or relate in any way to the purchase, sale or acquisition of Biopure common stock during the Class Period except for claims to enforce the Settlement.

(x)     "Defendants' Settled Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for

11

damages, interest, attorneys' fees, expert or consulting fees, equitable or injunctive relief and any

other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or

common law or any other law, rule or regulation, whether fixed or contingent, accrued or

unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class

or individual in nature, including both known claims and Unknown Claims (as defined below),

that have been or could have been asserted in the Action or any forum by the Defendants or any

of them or the successors and assigns of any of them against any of the Class Representatives,

Class Members or their attorneys, which arise out of or relate in any way to the institution,

prosecution, or settlement of the Action (except for claims to enforce the Settlement).

(y)     "Settlement Amount" means the consideration to be paid by the Insurers

on behalf of the Defendants pursuant to the Settlement set forth herein, which consideration shall

be TEN MILLION DOLLARS ($10,000,000.00) total, consisting of the First Deposit (as defined

below), the Second Deposit (as defined below), and the Third Deposit (as defined below).

(z)     "Summary Notice" means the Summary Notice of Settlement for

publication substantially in the form attached as Exhibit 3 to Exhibit A.

(aa)     "Unknown Claims" means any and all claims, rights or causes of action or

liabilities whatsoever, whether based on federal, state, local, statutory or common law or any

other law, rule or regulation which any Lead Plaintiff or Class Member does not know or suspect

to exist in his, her or its favor at the time of the release of the Released Parties, and any

Defendants' Settled Claims which any Defendant does not know or suspect to exist in his, her or

its favor at the time of the release of the Defendants' Settled Claims, which, if known by him,

her or it, could have been asserted in any forum by the Class Members or any of them against

any of the Released Parties which relate to the purchase, sale or acquisition of common stock of

ACTIVE/72007843.1

Biopure during the Class Period, even if unknown at the time of execution of this Stipulation, or could have been asserted by the Defendants against the Lead Plaintiff or Class Members relating to the Action, even if unknown at the time of the execution of this Stipulation. With respect to any and all Settled Claims and Defendants' Settled Claims, the Parties stipulate and agree that upon the Effective Date, the Class Representatives and the Defendants shall expressly, and each Class Member shall be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Class Representatives and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Settled Claims, but the Class Representatives shall expressly fully, finally and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever settled and released any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Class Representatives and Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown

13

ACTIVE/72007843.1

Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

### The Settlement Consideration

2.       The Settlement Amount consists of the total consideration to be paid by the Insurers on behalf of Defendants and equals TEN MILLION DOLLARS ($10,000,000.00). Under no circumstances will the Defendants be obligated to pay any portion of the Settlement Amount.  Within (1) the later of thirty calendar days of execution of the Stipulation or ten days of the Court's preliminary approval of the Settlement and (2) no sooner than thirty days after receipt of wire transfer instructions, including account name, account number, tax identification number for the putative class entity, executed W-9 Form on behalf of the putative class, bank name, ABA routing number, and SWIFT number, the Defendants shall cause the Underwriters of Lloyd's, London ("Lloyds") to deposit its contribution toward the Settlement Amount (the "First Deposit") into an interest-bearing escrow account in the name "In re: Biopure Corporation Securities Litigation Settlement Fund," with a tax identification number to be provided by Plaintiffs, with Robert A. Buhlman, Esq., Counsel to the Defendants, and Edward F. Haber, Esq. and Howard T. Longman, Esq., Counsel to the Class Representatives, serving as joint account holders, all of whose express authority is required for any account activity (the "Initial Escrow Account").  The amount of the First Deposit shall be the remaining limits of the Lloyds policy covering the Defendants for the Action.

3.       Within (1) the later of thirty calendar days of the execution of the Stipulation or ten days of the Court's preliminary approval of the Settlement and (2) no sooner than thirty days after receipt of wire transfer instructions, including account name, account number, tax identification number for the putative class entity, executed W-9 Form on behalf of the putative class, bank name, ABA routing number, and SWIFT number, the Defendants shall cause Old

ACTIVE/72007843.1

Republic Insurance Company ("Old Republic") to deposit its contribution toward the Settlement Amount (the "Second Deposit") into the Initial Escrow Account. The amount of the Second Deposit shall be FIVE MILLION DOLLARS ($5,000,000.).

4.     Within (1) the later of thirty calendar days of the execution of the Stipulation or ten days of the Court's preliminary approval of the settlement and (2) no sooner than thirty days after receipt of wire transfer instructions, including account name, account number, tax identification number for the putative class entity, executed W-9 Form on behalf of the putative class, bank name, ABA routing number, and SWIFT number, the Defendants shall cause Carolina Casualty Insurance Company ("Carolina Casualty") to deposit its contribution toward the Settlement Amount (the "Third Deposit") into the Initial Escrow Account. The amount of the Third Deposit shall be the total required which when added to the First Deposit and the Second Deposit equals exactly TEN MILLION DOLLARS ($10,000,000.).

5.     If the Effective Date as defined in ¶27 does not occur because Defendants do not cause the First Deposit, Second Deposit and Third Deposit to be deposited in conformity with ¶¶2-4, the Class Representatives through Co-Lead Counsel shall have the right, but not the obligation, to terminate this Stipulation pursuant to ¶28. The Initial Escrow Account will require signatures of Co-Lead Counsel Edward F. Haber and Howard T. Longman and Defendants' Counsel Robert A. Buhlman to release deposited funds prior to the Effective Date. In the event final approval of the Settlement is not obtained from or granted by the Court for any reason or in the event an appeal of final judgment is filed and the final judgment is vacated or remanded, or in the event the Settlement is terminated, then all monies in the Initial Escrow Account shall be wire-transferred or otherwise delivered back to Lloyds, Old Republic and Carolina Casualty to include (i) the full amount of their respective Deposits; (ii) less any amounts paid or owed as

15

reasonable costs and expenses associated with the Settlement as of that time; (iii) plus their pro rata portion of interest accrued, if any, and any portion of the Settlement Amount previously caused to be paid by Defendants, together with any interest earned thereon, within ten (10) business days of said termination. Otherwise, all interest accruing on the Initial Escrow Account shall accrue to the benefit of the Class.

6.     Within three business days after the Effective Date, all monies in the Initial Escrow Account shall be wire transferred to an escrow account designated by Co-Lead Counsel (the "Escrow Account"), with Co-Lead Counsel serving as sole escrow agents (the "Escrow Agents"). All interest accruing on both Escrow Accounts shall accrue to the benefit of the Class.

7.     (a)     The Settlement Amount and any interest earned thereon shall be the Gross Settlement Fund. The Gross Settlement Fund, net of any Taxes (as defined below) on the income thereof, shall be used to pay (i) the notice and administration costs referred to in ¶11 hereof, (ii) escrow fees; (iii) the attorneys' fee and expense award referred to in ¶12 hereof; and (iv) any award to Class Representatives granted by the Court referred to in ¶12 hereof. The balance of the Gross Settlement Fund after the above payments shall be the Net Settlement Fund, which shall be distributed to the Authorized Claimants as provided in this Stipulation and the Plan of Allocation.

       (b)     Any sums required to be held in the Initial Escrow Account and Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned to the persons paying the same pursuant to this Stipulation and/or further order of the Court. Any funds in excess of one-hundred thousand dollars ($100,000) shall be invested in short term

16

United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments), and shall collect and reinvest all interest accrued thereon. Any funds held in escrow in an amount of less than $100,000 may be held in an interest-bearing bank account insured by the FDIC. The parties hereto agree that the Gross Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-l and elect to have such Qualified Settlement Fund treatment apply as of the earliest possible date. The Escrow Agents, as administrator of the Gross Settlement Fund held in the Escrow Account within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns for the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with respect to the Gross Settlement Fund. Biopure agrees to provide to the Escrow Agents the statement described in Treasury Regulation § 1.468B-3(e) no later than February 15 of the year following the calendar year in which the Insurers make a transfer of the Settlement Amount.

(c)     All (i) taxes on the income of the Gross Settlement Fund and (ii) expenses and costs incurred in connection with the taxation of the Gross Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) (collectively "Taxes") shall be paid out of the Gross Settlement Fund, shall be considered to be a cost of administration of the Settlement and shall be timely paid by Escrow Agents without prior order of the Court. In no event shall the Defendants or the Released Parties have any responsibility for or liability with respect to the Taxes.

### Scope and Effect of Settlement; Releases

8.     (a)     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as against the Defendants and any and all Settled Claims as against all Released Parties and any and all Defendants' Settled Claims.

17

(b)     For purposes of this Settlement, the Parties stipulate to the certification of the Class as defined in ¶1(d) above.

9.     (a)     Upon the Effective Date of this Settlement, Class Representatives and members of the Class (other than Class Members who have timely requested to be excluded from the Class) on behalf of themselves, their heirs, executors, administrators, successors and assigns, shall be deemed to have, and by operation of the Judgment shall have, with respect to each and every Settled Claim, fully, finally and forever released, relinquished, and discharged, and shall forever be enjoined from prosecuting, either directly or in any other capacity, any Settled Claims against any of the Released Parties and their attorneys, whether or not such Class member executes and delivers a Proof of Claim and Release form.  By entering this Stipulation, Class Representatives represent and warrant that they have not assigned, hypothecated, transferred, or otherwise granted any interest in the Settled Claims, or any of them, to any other party or entity.

(b)     Upon the Effective Date of this Settlement, each of the Defendants, on behalf of themselves and the Released Parties, shall release and forever discharge the Class Members, the Class Representatives and their attorneys from each and every of the Settled Defendants' Claims, and shall forever be enjoined from prosecuting the Defendants' Settled Claims against the Class Members , the Class Representatives and their attorneys.

<u>**Administration**</u>

10.     Co-Lead Counsel may designate the settlement Claims Administrator, subject to Court approval.  Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, including directing its transfer agent or agents to provide all available information from Biopure's transfer records concerning the identity of Class Members and their transactions during the Class Period.  Biopure shall direct its transfer agent or agents to provide the shareholder lists for the Class Period to Co-Lead Counsel

ACTIVE/72007843.1

within fourteen (14) calendar days of the Courts' execution of the Preliminary Approval Order. Biopure or its transfer agent or agents shall also provide a list of Persons who are excluded from the Class pursuant to the definition set forth in ¶1(d).

11.    Co-Lead Counsel may pay from the Gross Settlement Fund up to one-hundred thousand dollars ($100,000) without further approval from the Defendants or the Court except for Mr. Robert A. Buhlman's signature pursuant to Paragraph 5, for the reasonable costs and expenses associated with identifying members of the Class and effecting mailed Notice and Summary Notice to the Class, and the administration of the Settlement, including without limitation, the actual costs of publishing the Summary Notice, printing and mailing the Notice, engaging third party services to identify or update the mailing addresses of Class members, reimbursements to nominee owners for forwarding notice to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims, when these costs are incurred.  In the event final approval is not obtained or granted for any reason, any and all funds so expended shall not be owed to or recoverable by the Defendants, Lloyds, Old Republic or Carolina Casualty.

### Attorneys' Fees and Expenses

12.    Co-Lead Counsel will apply to the court for: (a) an award on behalf of Co-Lead Counsel from the Gross Settlement Fund of attorneys' fees and reimbursement of expenses, plus interest on such amounts; and (b) a compensatory award on behalf of Class Representatives, which if awarded, will be paid from the Gross Settlement Fund when the Order and Final Judgment becomes Final.  Such amounts of attorneys' fees and reimbursement of expenses, plus interest on such amounts, as are awarded by the Court shall be payable from the Gross Settlement Fund when the Order and Final Judgment becomes Final.  The award of attorneys'

ACTIVE/72007843.1

fees shall be allocated among Co-Lead Counsel in a fashion which, in the opinion of Co-Lead Counsel, fairly compensates Co-Lead Counsel for their respective contributions in the prosecution of the Action. Any order or proceedings related to the fees or expenses or interest thereon, application, or any appeal from any order relating thereto or reversal or modification thereof, shall not modify, terminate, or cancel this Stipulation, or affect or delay the finality of the Order and Final Judgment approving the Stipulation and the Settlement of the Action. Defendants and the Released Parties shall have no responsibility for or liability with respect to any payment of attorneys' fees and expenses to Co-Lead Counsel separate and apart from the Gross Settlement Fund.

### Distribution to Authorized Claimants

13.    Any member of the Class who does not submit a valid Proof of Claim will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Action and the releases provided for herein, and will be barred from asserting any Settled Claim against any of the Released Parties, as provided herein.

14.    The Claims Administrator shall process the Proofs of Claim and, after entry of an order for class distribution (the "Class Distribution Order"), distribute the Net Settlement Fund to the Authorized Claimants. Co-Lead Counsel shall have the right, but not the obligation, to direct the Claims Administrator to waive what they deem to be formal or technical defects in any Proofs of Claim submitted in the interests of achieving substantial justice.

15.    For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an "Authorized Claimant," the following conditions shall apply:

(a)    Each Class Member shall be required to submit a Proof of Claim (*see* attached Exhibit 2 to Exhibit A), supported by such documents as are designated therein,

including proof of the transactions claimed and the losses incurred thereon, or such other documents or proof as the Claims Administrator, in its discretion, under the direction of Co-Lead Counsel, may deem acceptable;

(b)     All Proofs of Claim must be submitted by the date specified in the Notice unless such period is extended by order of the Court.  Any Class Member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by order of the Court, a later submitted Proof of Claim by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties asserting the Settled Claims.  Provided that it is received before the motion for the Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the direction given by Co-Lead Counsel the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)     Proofs of Claim that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant in order to remedy the curable deficiencies in the Proof of Claim submitted.

ACTIVE/72007843.1

The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below;

(e)     If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved by the Claims Administrator, Co-Lead Counsel and the Claimant, Co-Lead Counsel shall thereafter present the request for review to the Court; and

(f)     The administrative determinations of the Claims Administrator accepting and rejecting claims, after review by Co-Lead Counsel, shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

(g)     All proceedings with respect to the administration, processing and determination of claims described by ¶ 15(a) - 15(f) of this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

16.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim.  All proceedings with respect to the administration, processing and determination of claims described in ¶15 of this Stipulation and the determination

22

of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court. No discovery shall be allowed on the merits of the Action or Settlement in connection with the processing of Proofs of Claim.

17.    Payment pursuant to this Stipulation shall be deemed final and conclusive against all Class Members. All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Settled Claims.

18.    The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after: (i) all claims have been processed, and all Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) all objections with respect to all rejected or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (iii) all matters with respect to attorneys' fees, costs, compensatory awards, and disbursements have been resolved by the Court, all appeals therefrom have been resolved or the time therefor has expired; (iv) all costs of administration, including those set forth in ¶11, have been paid, and (v) all attorneys' fees and expenses, as described in ¶12, have been paid.

19.    Co-Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for the Class Distribution Order approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted herein and approving any fees

ACTIVE/72007843.1

and expenses not previously applied for, including any fees and expenses of the Claims Administrator that require such application, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

20.     By the determination of the Claims Administrator, each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his or her accepted claim compared to the total accepted claims of all accepted Claimants, as defined in the Plan of Allocation described in the Notice annexed hereto as Exhibit 1 to Exhibit A, or in such other Plan of Allocation as the Court approves.  Defendants shall have no involvement in reviewing or challenging claims.

21.     The Plan of Allocation proposed in the Notice is not a necessary term of this Stipulation, and it is not a condition of this Stipulation that any particular Plan of Allocation be approved.  It is understood and agreed by the Parties hereto that the proposed Plan of Allocation is not part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Order and Final Judgment approving the Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

22.     No person shall have any claim against any of the Class Representatives, Class Members, Co-Lead Counsel, the Claims Administrator, the Defendants or their counsel based on the Claims Administrator's decisions as to acceptance or rejection of Proofs of Claims or based on investments or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation or further orders of the Court.

24

23.     The Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to:

(a)     any act, omission or determination of the Escrow Agent, Claims Administrator, Co-Lead Counsel or any designees or agents of Co-Lead Counsel, Escrow Agent or Claims Administrator;

(b)     any act, omission or determination of Co-Lead Counsel or their designees or agents in connection with the administration of the Settlement;

(c)     the management, investment or distribution of the Gross Settlement Fund after it is transferred to the Escrow Account;

(d)     the determination, administration, calculation or payment of any claims asserted against the Gross Settlement Fund; or

(e)     the Plan of Allocation.

## Terms of the Preliminary Approval Order

24.     Promptly after execution of this Stipulation and concurrently with their application for preliminary court approval of the Settlement contemplated by this Stipulation, Co-Lead Counsel and Defendants' Counsel shall jointly move the Court for entry of a Preliminary Approval Order, substantially in the form annexed hereto as Exhibit A.

## Terms of Order and Final Judgment

25.     If the Settlement contemplated by this Stipulation is approved by the Court, counsel for the Parties shall request that the Court enter an Order and Final Judgment substantially in the form annexed hereto as Exhibit B.

ACTIVE/72007843.1

## Supplemental Agreement

26.    Simultaneously herewith, Co-Lead Counsel and Defendants' Counsel are executing a "Supplemental Agreement" setting forth certain conditions under which this Stipulation may be terminated by Defendants, if potential Class Members purchased or acquired above a certain threshold number of the outstanding shares of Biopure common stock during the Class Period opt out of the Class.  The Supplemental Agreement shall not be filed with the Court unless a dispute arises as to its terms.  In the event Defendants terminate this Stipulation pursuant to the Supplemental Agreement, this Stipulation shall become null and void and of no further force and effect and the provisions of ¶28 shall apply.  Notwithstanding the foregoing, the Stipulation shall not become null and void as a result of the election by Defendants to exercise their option to terminate the Stipulation pursuant to the Supplemental Agreement until the conditions set forth in the Supplemental Agreement have been satisfied.

## Effective Date of Settlement, Waiver or Termination

27.    The Effective Date of Settlement shall be the date when all the following shall have occurred:

(a)    entry of the Preliminary Approval Order in all material respects in the form annexed hereto as Exhibit A;

(b)    Defendants have caused the Settlement Amount to be deposited pursuant to ¶¶2-4;

(c)    approval by the Court of the Settlement, following notice to the Class, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(d)    entry by the Court of an Order and Final Judgment, substantially in the form attached hereto as Exhibit B, and the expiration of any time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final

Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the court enters an Alternative Judgment and none of the Parties hereto elects to terminate this Settlement, the date that such Alternative Judgment becomes final and no longer subject to appeal or review.

28.      (a) Defendants or Class Representatives through Co-Lead Counsel shall have the right, but not the obligation, to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) business days of: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Order and Final Judgment in any material respect; (d) the date upon which an order of the Court of Appeals, modifying the Order and Final Judgment in any material respect, becomes final; (e) the date upon which an order of the Supreme Court; modifying the Order and Final Judgment in any material respect, becomes final;  (f) the date upon which an order of the Court of Appeals, modifying in any material respect, an Alternative Judgment (in the event that none of the Parties had elected to terminate the Settlement because of the Alternative Judgment), becomes final; (g) the date upon which an order of the Supreme Court, modifying the Alternative Judgment (in the event that none of the Parties had elected to terminate the Settlement because of the Alternative Judgment) in any material respect, becomes final.

(b)  The Class Representatives, through Co-Lead Counsel, shall have the right, but not the obligation, to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) business days of:the Settlement Amount not having been paid pursuant to ¶¶2-4;

27

29.     Except as otherwise provided herein, in the event the Settlement is terminated or fails to become effective for any reason, then the Parties to this Stipulation shall be deemed to have reverted to their respective status in the Action as of the date and time immediately prior to the execution of this Stipulation.  If the Settlement is terminated or fails to become effective, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered and within ten (10) days thereafter shall file with the Court  a status report.

### No Admission of Wrongdoing

30.     The Parties agree that the Settlement Amount, as well as the other terms of the Settlement, were negotiated in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.  Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties or Class Representatives; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties or Class Representatives in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (c) is or may be deemed as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or (d) is or may be construed as or received as evidence as an admission, concession or presumption against Lead Plaintiff or any of the Class Members that any of their claims are without merit, or that any defenses by the Defendants have merit, or that damages recoverable under the SCAC would not have exceeded the Gross Settlement Fund.  The Released Parties may file the Stipulation and/or

28

the Final Order and Judgment of this Action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Defendants have denied and continue to deny each and every claim alleged against them in the Action and any wrongdoing whatsoever and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim of any fault, liability, wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have asserted.

## **Miscellaneous Provisions**

31.    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

32.    If a case is commenced with respect to any of the Defendants or the Insurers under Title 11 of the Bankruptcy Code, or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Gross Settlement Fund or any portion thereof to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Gross Settlement Fund by others, then, at the election of Co-Lead Counsel, the Parties shall jointly move the Court to vacate and set aside the releases given and Order and Final Judgment entered in favor of the Defendants pursuant to this Stipulation, which releases and Order and Final Judgment shall be null and void, and the Parties shall be restored to their respective positions in the Action as of the date a day prior to the date of this Stipulation and any cash amounts in the Gross Settlement Fund shall be returned as provided in ¶29 above.

29

33.    The Parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could have been asserted by the Class Representatives, the Class or their attorneys against the Released Parties with respect to the Settled Claims.  Defendants will not deny that the litigation is being settled voluntarily after consultation with competent legal counsel.  Class Representatives, Defendants, and their counsel shall not make any applications for fees, costs or sanctions, pursuant to Rule 11, Rule 37, Rule 45, or any other court rule or statute, with respect to any claims or defenses in this Action or to any aspect of the institution, prosecution or defense of this Action.  The Parties are aware of no facts or circumstances that would give rise to any violations of Rule 11 of the Federal Rules of Civil Procedure relating to this Action.  The final judgment will contain a statement that each side shall bear its own costs unless otherwise specified herein.  The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

34.    This Stipulation may not be modified or amended, nor may any of its provisions be waived except by a writing signed by all Parties hereto or their successors-in-interest.

35.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

36.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Co-Lead Counsel, compensatory awards to Class Representatives, and enforcing the terms of this Stipulation.

ACTIVE/72007843.1

37.    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

38.    This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties hereto concerning the Settlement of the Action, and no representations, warranties or inducements have been made by any Party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

39.    This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Stipulation shall exchange among themselves original signed counterparts.

40.    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

41.    The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the Commonwealth of Massachusetts without regard to conflicts of laws, except to the extent that federal law requires that federal law governs.

42.    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

43.    All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full

31

authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

44.     Co-Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking this Court's approval of the Preliminary Approval Order, the Stipulation and the Settlement and entry of the Order and Final Judgment and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

Dated:  May 17, 2007                                    Dated:  May 17, 2007

/s/ Edward F. Haber_____          /s/ Howard T. Longman_____
Edward F. Haber, Esq.                               Howard T. Longman, Esq.
Matthew L. Tuccillo, Esq.                           Stull, Stull & Brody
Shapiro Haber & Urmy LLP                        6 East 45th Street
53 State Street                                          New York, NY  10017
Boston, MA 02109                                     Tel:  (212) 687-7230
Tel: (617) 439-3939                                   Fax:  (212) 490-2202
Fax: (617) 439-0134                                   **Counsel for Plaintiffs**
**Counsel for Plaintiffs**

Dated:  May 17, 2007

/s/  Robert A. Buhlman_____
Robert A. Buhlman, Esq.
Michael D. Blanchard, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Tel: (617) 951-8000
Fax: (617) 951-8736
**Counsel for Defendants**

ACTIVE/72007843.1

## <u>Certificate of Service</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the 17th day of May, 2007.

/s/ Edward F. Haber
Edward F. Haber