# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **IN RE: BIOPURE CORPORATION** | ) | **CIVIL ACTION** |
| **SECURITIES LITIGATION** | ) | **NO. 03-12628-NG** |
| | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR FINAL APPROVAL OF THE
## <u>PROPOSED CLASS ACTION SETTLEMENT</u>

<table>
<tr>
<td align="center">
Edward F. Haber, Esq.<br>
Matthew L. Tuccillo, Esq.<br>
<b>SHAPIRO HABER & URMY LLP</b><br>
53 State Street<br>
Boston, MA 02109<br>
Tel: (617) 439-3939
</td>
<td align="center">
Jules Brody, Esq.<br>
Howard Longman, Esq.<br>
<b>STULL, STULL & BRODY</b><br>
6 East 45th Street<br>
Suite 500<br>
New York, NY 10017<br>
Telephone: (212) 687-7230
</td>
</tr>
</table>

*Plaintiffs' Co-Lead Counsel*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   THE FORMS OF NOTICE APPROVED IN THE PRELIMINARY
      APPROVAL ORDER MEET THE REQUIREMENTS OF DUE
      PROCESS, RULE 23 OF THE FEDERAL RULES OF CIVIL
      PROCEDURE, AND THE PSLRA..........................................................................2

III.  FINAL CERTIFICATION OF THE PROPOSED CLASS FOR
      PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE .............3

      A.    The Requirements Of Rule 23(a) Are Satisfied.........................................3

            1.    The Proposed Class Is So Numerous That Joinder Of
                  All Members Is Impracticable………………………………………3

            2.    There Are Questions Of Law And Fact Common To
                  The Class…………………………………………………………..4

            3.    Plaintiffs' Claims Are Typical Of The Claims Of The Class……...6

            4.    Plaintiffs Will Fairly And Adequately Protect The Interests
                  Of The Class………………………………………………………7

      B.    The Requirements Of Rule 23(b)(3) Are Also Satisfied ............................8

            1.    Common Questions of Law And Fact Predominate Over
                  Individual Questions………………………………………………8

            2.    A Class Action Is Superior To Other Available Methods
                  Of Adjudication………………………………………………… 9

IV.   UNDER THE APPLICABLE STANDARDS, THE PROPOSED
      SETTLEMENT SHOULD BE APPROVED .......................................................10

      A.    Courts Favor Settlements, Particularly Of Class Actions..........................10

      B.    The Court Must Find That The Settlement Is Fair, Reasonable,
            And Adequate ...........................................................................................11

C.      The Relevant Factors All Militate In Favor Of Approving The
        Settlement ..................................................................................................13

        1.      The Complexity And Likely Duration Of This Litigation
                Through Trial And Appeals Favors The Settlement……………..13

        2.      The Reaction Of The Class To The Settlement Favors
                Approval Of The Settlement…………………………………..14

        3.      The Stage of The Proceedings Favors The Settlement…………..15

        4.      The Risks Concerning Plaintiffs' Likelihood Of Success
                On The Merits, Of Proving Damages, and Of Maintaining
                The Class Action Through Trial Favor The Settlement…...………15

        5.      The Range of Possible Recovery, The Ability of Defendants
                to Withstand a Greater Judgment, And The Reasonableness
                Of The Settlement Fund Favor The Settlement…...……………..17

        6.      The Settlement Is the Result of Arm's-Length Negotiations
                By Experienced Counsel…………………………………………18

V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE........................19

VI.     CONCLUSION...........................................................................................20

## I. **INTRODUCTION**

Lead Plaintiff Ronald Erickson ("Erickson") and Plaintiff Dr. John G. Esposito, Jr. ("Esposito") (together the "Plaintiffs" or the "Class Representatives") submit this Memorandum of Law pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of final approval of the proposed settlement (the "Settlement") of all claims asserted against Defendants in the above-captioned class action (the "Action"). The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of May 17, 2007 and its exhibits (the "Settlement Agreement"). The Settlement is proposed on behalf of a Class of all persons (the "Class") who purchased Biopure Corporation ("Biopure" or the "Company") common stock from April 9, 2003 through December 24, 2003, inclusive (the "Class Period").[1]

Through the Settlement Agreement, Plaintiffs have succeeded in obtaining for the benefit of the Class an all-cash settlement of $10,000,000, plus interest (the "Gross Settlement Fund"). The Settlement is an excellent result for the Class. Moreover, the overwhelmingly favorable reaction of the members of the Class underscores the reasonableness of the Settlement. On July 9, 2007, individual Notice of Proposed Settlement of Class Action Motion For Attorneys Fee and Settlement Fairness Hearing (the "Notice") was mailed to potential members of the Class. Shortly after the initial mailing, a Summary Notice of Settlement was published in the national edition of *The Wall Street Journal* on July 16, 2007. Overall, more than 17,000 copies of the Notice have been disseminated to potential Class members. The last day to object to the Settlement, September 11, 2007, has now passed and not a single objector has come forward.

---

[1] Excluded from the Class are the Defendants in this Action; members of the immediate family (parents, siblings and children) of each of the individual Defendants; the officers, directors, parents, subsidiaries and affiliates of Biopure; any person, firm, trust, corporation, or other entity in which any excluded person has a controlling interest; and the legal representatives, heirs, successors in interest, or assigns of any excluded person.

On May 23, 2007, this Court preliminarily approved the proposed Settlement. In light of the serious risks, uncertainties, delays, and expense of continued litigation, the likely difficulties to be encountered in establishing liability and damages, and the substantial and immediate benefit obtained for and lack of objections raised by the Class, Plaintiffs respectfully request that the Court give final approval to the Settlement as fair, reasonable, and adequate and in the best interests of the Class. The proposed Settlement, if approved, will result in a complete resolution of all claims in the action.[2]

## II.    THE FORMS OF NOTICE APPROVED IN THE PRELIMINARY APPROVAL ORDER MEET THE REQUIREMENTS OF DUE PROCESS, RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND THE PSLRA

The Court approved the notice procedures to be used in this case in its Preliminary Approval Order dated May 23, 2007 (the "Preliminary Approval Order"). Plaintiffs have now completed mailing out the Notice and publishing the Summary Notice as set forth in the Preliminary Approval Order. Beginning on July 9, 2007, over 17,000 copies of the Court-approved Notice were mailed to potential Class members or their nominees. *See* Affidavit of Michael Rosenbaum.[3] A Summary Notice of the Settlement was published in the national edition of *The Wall Street Journal* on July 16, 2007.

The forms of notice were tailored to reach as many Class members as possible. The mailed Notice explains the action, the terms of the Settlement, the Plan of Allocation, the anticipated fee and expense requests, and the rights and options of Class members to object to the Settlement or exclude themselves from the Class. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of

---

[2]  For a detailed description of the litigation, including the procedural history, claims alleged in the Complaint, and the settlement negotiations, Plaintiffs refer the Court to the Joint Declaration of Co-Lead Counsel in Support of Final Approval of Class Action Settlement and Application for Award of Attorneys' Fees and Reimbursement of Expenses (the "Joint Declaration").

[3]  A copy of the Affidavit of Michael Rosenbaum is filed herewith.

the full Notice. This program is similar to the settlement notice procedures commonly approved in other cases.[4] Accordingly, the notice program employed with regards to the Settlement has fully satisfied the requirements of process, Rule 23, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## III.    FINAL CERTIFICATION OF THE PROPOSED CLASS FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

Before addressing the substantive fairness, adequacy, and reasonableness of the Settlement, the Court must finally certify the Class, which was conditionally certified in the Preliminary Approval Order. Plaintiffs now move, with the agreement of Defendants, for final certification of the Class for purposes of the proposed Settlement. The Class is a Rule 23(b)(3) "opt out" class, which, with certain exclusions, is defined as all persons who purchased the common stock of Biopure during the time period between April 9, 2003 through December 24, 2003, inclusive. The parties agree that final certification is appropriate for settlement purposes because the Class meets the requirements of Rules 23(a) and 23(b)(3).

### A.    The Requirements Of Rule 23(a) Are Satisfied

#### 1.    The Proposed Class Is So Numerous That Joinder Of All Members Is Impracticable

The class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Adver. Specialty Nat'l Ass'n v. Fed. Trade*

---

[4] *See, e.g., In re: New England Mut. Life Ins. Co. Sales Practices Litig.*, 204 F.R.D. 6, 9 (D. Mass. 2001) (approving notice that explained procedure for opting out of class and consequences of failing to request exclusion from class settlement); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 61 (D. Mass. 1997) (noting class notice must be disseminated "to the greatest practical extent" and must apprise Class members of terms of settlement and options available to them); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (finding that notice was proper where it adequately informed class members of terms of settlement); *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974) (approving form of notice where notice apprised class members of date of fairness hearing, complaint's allegations, and settlement terms); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (holding notice generally describing terms of settlement and formula for computing awards mailed out 45 days before hearing met requirements of Rule 23 and due process).

*Comm'n,* 238 F.2d 108, 119 (1st Cir. 1956). The "numerosity" requirement under Fed. R. Civ.

P. 23(a)(1) has been met here because the number and diverse location of putative class members

renders it impractical to join all of the Class members in one lawsuit. "With respect to

numerosity, in the context of securities litigation, often the 'exact number of Class members is

unknown . . . and can only be ascertained through appropriate discovery.'" *In re: Transkaryotic*

*Therapies, Inc. Sec. Litig.,* 2005 WL 3178162, *2 (D. Mass. Nov. 28, 2005) *citing Swack v.*

*Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005). Therefore, in determining

whether a proposed class meets the numerosity requirement, "courts may draw reasonable

inferences from the facts presented to find the requisite numerosity." *McCuin v. Sec'y of Health*

*& Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987); *Swack*, 230 F.R.D. at 258.

During the Class Period, Biopure common stock was actively traded on the National

Association of Securities Dealers Automated Quotation (NASDAQ). According to Biopure's

10-K for the fiscal year ended October 31, 2003, the total number of Biopure shares outstanding

was almost 45 million. The threshold for a presumption of impracticability of joinder is easily

exceeded. *See, e.g., Kinney v. Metro Global Media, Inc.*, 2002 U.S. Dist. LEXIS 18628, at *12

(D.R.I. Aug. 22, 2002) (finding that numerosity requirement had been met where stock traded on

NASDAQ small cap market and where "thousands, if not millions, of the shares were traded").

That over 17,000 Notices were mailed to potential Class members also confirms numerosity.

The numerosity requirement is clearly met here.

### 2.    There Are Questions Of Law And Fact Common To The Class

The "commonality" requirement under Fed. R. Civ. P. 23(a)(2) has also been satisfied.

Rule 23(a)(2) requires that there be "questions of law <u>or</u> fact common to the class." Fed. R. Civ.

P. 23(a)(2) (emphasis added). "The threshold of commonality is not a difficult one to meet,"

particularly where, as here, "there are a number of common issues of fact and law that the class

members would be required to establish to prove the defendants' liability, as well as their entitlement to damages." *In re: Relafen Antitrust Litig.,* 231 F.R.D. 52, 69 (D. Mass. 2005). "It does not require that class members' claims be identical. A single common legal or factual issue can suffice." *See Payne v. The Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) (quotations and internal citations omitted).

Here, the SAC alleges the following common questions of law and fact, among others, as pertaining to all members of the Class:

(i)     whether Defendants' statements concerning Biopure contained false or misleading statements and/or failed to disclose material facts;

(ii)     whether Defendants' conduct constitutes a "scheme" and/or "course of business" under Rule 10b-5(a) and (c);

(iii)     whether Defendants acted with *scienter*;

(iv)     whether Defendants' conduct caused the class members losses; and

(v)     whether the Class has sustained damages, and the measure of such damages.

Courts in this Circuit have repeatedly found that common questions of law and fact exist where, as here, the alleged wrongdoing involves material misrepresentations allegedly made in uniform statements disseminated to the investing public. *See Priest v Zayre Corp.*, 118 F.R.D. 552, 554 (D. Mass. 1988); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987); *Kinney v. Metro Global Media, Inc.*, 2002 U.S. Dist. LEXIS 18628, at *13 (D.R.I. 2002) (commonality is established where misrepresentations and omissions in defendants' "press releases and required filings with the SEC" caused their stock "to trade at artificially inflated prices"); *Randle v. SpecTran,* 129 F.R.D. 386, 390 (D. Mass. 1988) ("Plaintiffs present common questions in their allegations of misstatements and omission[s] in various [company] public

financial documents.").  Moreover, in a fraud-on-the-market case such as this, "all [P]laintiffs will have to prove the same misrepresentations and omissions, as well as their materiality and defendants' knowledge.  Thus, it is obvious that common questions exist."  *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989).

Accordingly, the requirements of Rule 23(a)(2) are satisfied.

### 3.    Plaintiffs' Claims Are Typical Of The Claims Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied where "plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims."  *Kinney*, 2002 U.S. Dist. LEXIS 18628, at *13-14; *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991); *In re: Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)(citation omitted).  In general, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *In re: Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005).  As alleged in the SCAC, Plaintiffs, like the absent Class members, purchased Biopure stock during the Class Period at prices that were artificially inflated due to Defendants' material misrepresentations and suffered losses as a result thereof.  Thus, Plaintiffs have met the typicality requirement of Fed. R. Civ. P. 23(a)(3), insofar as their claims arise from the same events as do the claims of all Class members.

In addition, Courts in this Circuit have repeatedly found the typicality requirement of Rule 23(a)(3) satisfied if Plaintiffs and the Class relied on the integrity of the market.  *See Adair*, 134 F.R.D. at 17 ("[w]hen a case is brought under a fraud on the market theory, typicality is established by a showing that the putative plaintiff relied on the integrity of the market"); *Grace*, 128 F.R.D. at 168 ("Typicality is established by showing that the putative plaintiffs relied on the integrity of the market. . . .  When a case is brought under a fraud on the market theory, reliance

on any public material misrepresentations is presumed.").  Here, Plaintiffs and the Class all rely upon the same fraud on the market theory predicated on their having relied on the integrity of the stock markets.  For this reason as well, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

This Circuit has identified two basic guidelines for satisfying the adequacy of representation test of Rule 23(a)(4):  (i) there must be an absence of potential conflict between the named plaintiffs and the class members, and (ii) there must exist an assurance that plaintiffs' counsel is qualified, experienced, and able to vigorously conduct the litigation.[5]  Both prongs of the adequacy of representation test are satisfied here.

Here, there are no conflicts between the Class Representatives and absent Class members who have damages and recognized losses under the Plan of Allocation, all of whom purchased and held the same securities (common shares of Biopure) during the same time period (the Class Period) and whose claims are based on the same conduct and legal theories.  Thus, both Class Representatives can fairly and adequately represent the interests of the Class.

Furthermore, in determining whether the action will be vigorously prosecuted or defended, courts have stressed the skill and experience of counsel.  *See Baffa v. Donaldson*, 222 F.3d 52, 60-61 (2d Cir. 2000); *In re: TCW/DW N. Am. Gov't Income Trust Secs. Litig.,* 941 F. Supp. 326, 341 (S.D.N.Y. 1996).  Plaintiffs in this action have retained counsel with extensive experience litigating complex securities class actions.   Plaintiffs and their counsel have demonstrated their willingness to represent the interests of all members of the Class by the considerable efforts devoted to the prosecution of this action since its inception.  Moreover,

---

[5]  *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *Bank of Boston*, 762 F. Supp. at 1534; *Adair*, 134 F.R.D. at 18); *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991); *Opiela v. Bruck*, 139 F.R.D. 257, 261 (D. Mass. 1990); *Tolan v. Computervision Corp.*, 696 F. Supp. 771, 780 (D. Mass. 1988).

Plaintiffs' Counsel are preeminent class action attorneys, who have previously served as lead counsel in many prior securities class actions, who have a proven track record in the prosecution of class actions, and who have successfully litigated and tried many major class action cases.

Accordingly, the adequacy requirement of Rule 23(a)(4) is met.

### B.    The Requirements Of Rule 23(b)(3) Are Also Satisfied

In addition to the Rule 23(a) requirements, Rule 23(b)(3) requires that the common questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  Here, Plaintiffs satisfy both requirements.

### 1.    Common Questions Of Law And Fact Predominate Over Individual Questions

It is well-established that in determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability.  Indeed, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003); *In re: Relafen Antitrust Litig.*, 218 F.R.D. 337, 345 (D. Mass. 2003). When common questions represent a significant aspect of a case and they can be resolved in a single action, class action status is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d, § 1788 at 528 (1986). The common questions, however, need not be dispositive of the entire action, because "predominate" as used in Fed. R. Civ. P. 23(b)(3) should not be equated with being "determinative."  *See Smilow*, 323 F.3d at 39 ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class").  A single, central issue as to the defendant's conduct vis-a-vis class members can satisfy the predominance requirement.  *Payne*, 216 F.R.D. at 27.

As discussed above, here, the Class Representatives and Class members face common issues of both fact and law that predominate over any individual questions. Were it not for the Settlement, the litigation would be focused on whether Defendants' statements were false or misleading, whether Defendants acted with *scienter,* and whether Class members suffered damages and how damages should be measured. These issues of liability and damages are common for the Plaintiffs and for all Class members. As such, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud actions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 592, 625, 117 S.Ct. 2231 (1997).

The predominance requirement of Rule 23(b)(3) is satisfied.

### 2. A Class Action Is Superior To Other Available Methods Of Adjudication

"The final hurdle that plaintiffs must clear under Rule 23 is the requirement to demonstrate that 'a class action is a fair and efficient method of adjudicating the controversy and would be superior to other methods.'" *Payne*, 216 F.R.D. at 29 *quoting Mack v. Suffolk County*, 191 F.R.D. 16, 25 (D. Mass. 2000) (finding by court that the proposed class meets all of the other Rule 23 criteria strongly suggests that a class action is desirable as a matter of judicial economy, that joinder is impracticable, and that common issues predominate.)

The superiority of a class action in securities fraud cases, which generally involve numerous defrauded investors whose claims are individually not large enough to make separate actions economically feasible, is well recognized. As the Court explained in *Randle*:

> [I]n light of plaintiffs' allegations concerning the large number of outstanding [company] shares during the class period, the relatively small financial stake of class members who may have been injured and the likely geographical dispersion of class members, a class action is superior to other methods of adjudicating this controversy.

129 F.R.D. at 393. *See also Grace*, 128 F.R.D. at 171; *Priest*, 118 F.R.D. at 553-54.

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because, absent a class action, this Court would be faced with the task of potentially litigating numerous individual lawsuits:

> [T]he benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions, clearly outweigh any problems which may arise in the management of the class action. Economy will undoubtedly be achieved. Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.

*Kirby*, 116 F.R.D. at 311 *quoting Berenson v. Faneuil Hall*, 100 F.R.D. 468, 471 (D. Mass. 1984).[6]

Finally, clearly, there will be no difficulties in the management of this case as a class action in view of the proposed Settlement. As the Supreme Court has explained: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. 591 at 620.

For all these reasons, the superiority requirement of Rule 23(b)(3) is met.

## IV.    UNDER THE APPLICABLE STANDARDS, THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A.    Courts Favor Settlements, Particularly Of Class Actions

Courts consistently favor the settlement of disputed claims, which spares the litigants the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial

---

[6] *See also Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of ... groups of people whose individual claims would be too small to warrant litigation."); *Amchem,* 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

resources.[7]  Nowhere is this policy more appropriate than in the context of class actions.  *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (noting "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved").[8]

**B.     The Court Must Find That The Settlement Is Fair, Reasonable, And Adequate**

Approval of a class action settlement is within the sound discretion of the trial court and will not be overturned absent clear abuse of that discretion.  *Greenspun*, 492 F.2d at 381; *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996) ("Great deference is given to the trial court.").  In deciding whether to approve a proposed settlement of a class action, the Court must conclude that the settlement is fair, reasonable, and adequate.  *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999); *In re: Fleet/Norstar Sec. Litig.*, 935 F. Supp. at 105.

In evaluating a settlement, however, the Court should not engage in a trial on the merits. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).  The settlement hearing should not become a trial or a rehearsal of the trial.  *See In re: Fleet/Norstar Sec. Litig.*, 935 F. Supp. at 106 ("In passing on a settlement agreement, it is not appropriate to adjudicate the merits of the dispute.").  Indeed, a full-blown trial would defeat the very purpose of a settlement: avoiding a sharply contested trial and unnecessary litigation.  *See Greenspun*, 492 F.2d at 381 ("A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose

---

[7]  *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Durrett v. Hous. Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re: Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11, 15 (1st Cir. 1980); *In re: First Commodity Corp. Customer Accounts Litig.*, 119 F.R.D. 301, 313 (D. Mass. 1987).

[8]  *See also* Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re: Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 105 (D.R.I. 1996) ("The district court's discretion is circumscribed by the long-recognized policy of encouraging settlements.") (citation omitted); *First Commodity*, 119 F.R.D. at 313; *In re: Warner Communications Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."  *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted).

of settlement is precisely to avoid such a trial."); *Duhaime*, 177 F.R.D. at 68; *First Commodity*, 119 F.R.D. at 314. Thus, in determining whether to approve a class action settlement, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [an appellate court] in reviewing that approval [has] the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Detroit v. Grinnell*, 495 F.2d 448, 456 (2d Cir. 1974); *see also Grunin v. Int'1 House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975); *Lewis v. Newman*, 59 F.R.D. 525, 527 (S.D.N.Y. 1973). Accordingly, judicial evaluation of a proposed settlement of a class action involves a limited inquiry into whether the possible rewards of litigation, with its risks, costs, and delays, are outweighed by the benefits of the settlement. In *Grinnell*, the Second Circuit, quoting *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (internal citation omitted), stated:

> The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and exercise business judgment in determining whether the proposed settlement is reasonable.

495 F.2d at 462.[9] Courts in this Circuit use a similar approach.[10]

---

[9] The *Grinnell* decision also set forth the following non-exhaustive list of factors which a trial court may consider in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (citations omitted).

[10] *See, e.g., In re: Fleet/Norstar*, 935 F. Supp. at 105 ("In determining whether a proposed settlement is fair, reasonable and adequate, courts consider the merits and complexity of the claims, the circumstances of the settlement, the terms of the settlement, and objections to the settlement."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) ("This fairness determination is not based on a single inflexible litmus test but, instead, reflects [the court's] studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation.") *citing M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-23 (D. Mass. 1987).

**C.    The Relevant Factors All Militate In Favor Of Approving The Settlement**

**1.    The Complexity And Likely Duration Of This Litigation Through Trial And Appeals Favors The Settlement**

The delay inherent in continuing this complex litigation through trial and appeals is a factor weighing strongly in favor of the Settlement.  This Settlement provides the Class an immediate benefit without further delays beyond the four years during which this case already has been litigated.  Further discovery, summary judgment motions, and trial, with various pre-trial motions and inevitable appeals, await all parties in the event this Settlement is not approved.  Clearly, approval of the Settlement will obviate the need for the trial, the resulting burden on the Court, and the reality of further delay in payment (if any after trial) to the Class.  *See, e.g., Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000); *In re: First Commodity Corp. Customer Accounts Litigation*, 119 F.R.D. 301, 314 (D. Mass. 1987); *In re: Baldwin-United Corp.*, 607 F. Supp. 1312, 1320 (S.D.N.Y. 1985).  Class members will receive their settlement proceeds much sooner under the proposed Settlement than if the action went to trial and through potentially lengthy appeals, particularly given that the Class could receive nothing in the event of a disfavorable trial outcome or appellate decision.

Moreover, all trials involve risks, particularly in shareholder class actions.  Courts have long recognized that "[s]tockholder litigation is notably difficult and unpredictable."  *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).  *See also Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976) ("[s]tockholder litigation is notably difficult and unpredictable and in these circumstances the courts have displayed a healthy skepticism in the face of optimistic forecasts or large demands").  As demonstrated in the Joint Declaration and discussed in greater detail below, this case is no different.  The Settlement avoids such risks and uncertainties and provides the Class with a substantial benefit now.  Therefore, given the prospects for a long and arduous trial and appeal process, as well as the

substantial risks and expense involved in any complex litigation, settlement at this stage is highly beneficial to Class members. *See First Commodity*, 119 F.R.D. at 314.

> **2.    The Reaction Of The Class To The Settlement Favors Approval Of The Settlement**

The response of Class members is an important factor in evaluating the fairness, reasonableness, and adequacy of the Settlement. *See Greenspun*, 492 F.2d at 380 ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a proposed settlement]."); *In re: Fleet/Norstar*, 935 F. Supp. at 107 ("a small number of objectors should not interfere with the approval of an otherwise fair and reasonable settlement."); *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("Another indication of the fairness of a class action settlement is the lack of, or small number of, objections."). Also, "any prospective class member who received the class notice and failed to request exclusion from the class has judged retrospectively for himself that his interests have been adequately represented in the negotiation of the proposed settlement agreement." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 824 (D. Mass. 1987).

Here, no one has objected to the Settlement. Over 17,000 copies of the Notice were mailed to potential Class members and a Summary Notice was published months ago in *The Wall Street Journal*. The Notice advised members of the Class of their rights to object to the Settlement. The deadline for mailing objections to the Settlement passed on September 11, 2007, and not a single objection has been received. The Notice also advised Class members of their right to exclude themselves from the Class by submitting a written request to the Claims Administrator postmarked no later than September 11, 2007. To date, not a single request for exclusion has been submitted. Thus, the overwhelmingly favorable response by the Class is powerful evidence that the Settlement is fair, reasonable, and adequate, particularly given that the Class includes sophisticated institutional investors.

### 3.    The Stage Of The Proceedings Favors The Settlement

Courts should also consider the stage of the proceedings and discovery in evaluating a proposed settlement.  The purpose of considering the stage of the proceedings is to ensure that the factual record is sufficient to support an informed judgment as to the adequacy of the settlement proposal.  *See In re: Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).  Here, although discovery was not yet completed, Plaintiffs' Counsel were clearly able to make an informed judgment regarding the proposed Settlement.  Plaintiffs' Counsel had undertaken an extensive investigation of the underlying facts, had obtained substantial discovery from Defendants concerning Biopure, including documents produced to and depositions taken by the SEC, and had consulted extensively with experts in the biotechnology field and on the issue of damages and loss causation.  Plaintiffs' investigation allowed them to assess carefully the risks they would face in continuing to litigate the case through summary judgment and trial.  In short, Plaintiffs' Counsel's decision to enter into this Settlement was made with the benefit of a clear picture of the facts and circumstances underlying the claims, the strengths and weaknesses of those claims, and the substantial risks, expense, and time unavoidable in prosecuting the action through remaining discovery, summary judgment, trial, post-trial motions, and likely appeals.

### 4.    The Risks Concerning Plaintiffs' Likelihood Of Success On The Merits, Of Proving Damages, and Of Maintaining The Class Action Through Trial Favor The Settlement

Recognizing the uncertainty of litigation, courts have held that to justify a proposed settlement, a plaintiff must establish only that, all things considered, "it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960).

Plaintiffs faced numerous significant risks to proving liability and establishing damages if they had proceeded with the litigation. Here, although Plaintiffs were confident that a class would be certified, the Court had not made a ruling on class certification, as well as on certain motions to compel discovery and for protective orders, and full blown discovery had not yet commenced due to the PSLRA discovery stay. In addition to facing an inevitable motion for summary judgment, there would have been a battle of experts as to whether the defendants had made any misleading statements at all; whether any of these misleading statements had artificially inflated Biopure common shares during the Class Period; and whether these misleading statements had, in fact, caused any damages to Plaintiffs and members of the Class. To succeed at trial on the claims under Section 10(b) of the Securities Exchange Act of 1934, Plaintiffs would have had to establish by clear and convincing evidence, *inter alia*, that Defendants were responsible for omissions or misstatements regarding the status of the Food and Drug Administration's approval process regarding Biopure's Hemopure product, that such misstatements and omissions were material, that they caused damage to the Class, and that Defendants acted with the requisite state of mind or *scienter* (actual knowledge or reckless disregard for the truth).[11] While Plaintiffs' Counsel believe that Plaintiffs have a strong case, they recognize that their burden is a heavy one and that, as discussed at length in the Joint Declaration, there are substantial risks and uncertainties involved in continuing to litigate the claims raised in this Action. If a fact finder found that Plaintiffs were unable to meet such burdens, then the Class could have received nothing.

---

[11]  Plaintiffs would have had to establish either Defendants' intentional misconduct or recklessness, not merely negligence or mismanagement. *See, e.g., Greebel v. FTP Software, Inc.,* 194 F.3d 185, 199 (1st Cir. 1999) (discussing the high standard for recklessness, which, in the securities context, "comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence") (quotations omitted). There is no assurance that Plaintiffs would have succeeded in establishing those required elements of *scienter* as to each Defendant at trial. Defendants denied, and continue to deny, Plaintiffs' allegations of liability, deny they committed any violation of the securities laws, and deny Plaintiffs or the Class were damaged.

In sum, successful prosecution of this case through summary judgment, trial, and appeals was attendant with substantial risk making a positive outcome for the Class anything but a foregone conclusion.  Plaintiffs faced a heavy burden of proof, and there was a substantial risk that either Plaintiffs would recover considerably less than their full damages or that Defendants would prevail at trial or on appeal.

5.     **The Range of Possible Recovery, The Ability of Defendants to Withstand a Greater Judgment, And The Reasonableness Of The Settlement Fund Favor The Settlement**

The determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement . . . ."  *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972); *Warner,* 618 F. Supp. at 745.  Courts routinely approve proposed settlements even though the benefits amount to significantly less than a full recovery.[12]  "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell,* 495 F.2d at 455.  *Accord Weinberger*, 698 F.2d at 65 (Second Circuit upheld settlement which amounted to "only a negligible percentage of the losses suffered by the class").

Here, in light of all the attendant risks and uncertainties, the settlement represents an excellent recovery.  Plaintiffs faced a multitude of significant challenges in continuing to prosecute this case through summary judgment, trial, and appeals.  Plaintiffs submit that the $10,000,000 cash Settlement, plus interest, is a significant portion of even the maximum recovery that Plaintiffs could realistically hope to obtain at trial, and is thus fair, reasonable, and adequate.  This is particularly true insofar as the $10,000,000 figure represents a substantial

---

[12] *See Officers For Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *In re: Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1391, 1417 (D. Ariz. 1989), *aff'd, Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1992).

majority of Biopure's remaining insurance coverage and Biopure itself is an unprofitable company that continuously must raise money to fund ongoing operations.

### 6.    The Settlement Is the Result of Arm's-Length Negotiations By Experienced Counsel

The Settlement is the product of arm's-length negotiations by highly experienced counsel.  In lieu of a more extended inquiry into the claims asserted and result achieved by plaintiffs, courts considering whether to approve settlements have examined the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).  Courts have focused on whether the settlement was achieved through "arm's-length negotiations" by counsel who have "the experience and ability . . . necessary to effective representation of the class's interests." *Id.  See also In re: Fleet/Norstar,* 935 F. Supp. at 106 (considering fact that settlement was reached through "arm's-length negotiations" in finding that settlement was fair, reasonable and adequate); *City P'ship Co.*, 100 F.3d at 1043 (noting that, in addition to other factors, "there is a presumption in favor of the settlement, . . . [when] the parties have bargained at arms-length") (citations omitted); *M. Berenson*, 671 F. Supp. at 822 (same).

The Settlement before the Court was made at arm's-length and was reached only after numerous discussions with the Defendants and two separate face-to-face mediation sessions with Defendants and their insurance carriers on September 20, 2005 and October 11, 2006.  The settlement discussions took place over several months.  After extensive negotiations between the parties, and with class certification and various class discovery motions still pending before this Court, a settlement of $10,000,000 plus interest was reached to resolve the action.  Even after the basics of the Settlement had been agreed upon, additional months were required to iron out the details and enter into the Agreement and Stipulation of Settlement.  Numerous drafts of the Stipulation of Settlement and accompanying exhibits circulated among the parties over many

months until an agreed-to form of the Stipulation and exhibits were ultimately filed with the Court.

In assessing the fairness of a proposed settlement, courts have given weight to the views of experienced counsel. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citing *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975). Here, Plaintiffs' Counsel have decades of experience litigating securities fraud class actions and have negotiated numerous other class action settlements approved by courts throughout the country. Plaintiffs' Counsel have conducted a substantial investigation, taken critical discovery, and consulted with experts on key issues. They urge approval of this Settlement which they believe is fair, reasonable, adequate, properly balancing of the risks of continued lengthy litigation versus potential benefits, and represents the best overall resolution for members of the Class.

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

A plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P. 23 must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284-85. District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able,* 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re: Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd* 41 F.3d 402 (8th Cir. 1994); *In re: Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

Plaintiffs respectfully submit that the Plan of Allocation of the Net Settlement Fund also should be approved as fair and equitable, as it provides a fair and practical method to distribute

the Net Settlement Fund among Class members.  The Plan, which is described in the Joint Declaration, provides that Class members who submit acceptable Proof of Claim forms, postmarked on or before October 31, 2007, evidencing a loss in their transactions in Biopure common stock during the Class Period may be eligible for a recovery.  Authorized Claimants will essentially share the Net Settlement Fund, after payment of taxes, costs, and approved fees, pro rata in proportion to their "Recognized Loss."  The Plan of Allocation is designed to promote the ease of claims administration and thereby reduce costs to the Class, and was fully described in the Notice.  Notably, no Class member has objected to the Plan of Allocation.

## VI.    CONCLUSION

For all the foregoing reasons and those set forth in the Joint Declaration, Plaintiffs respectfully request that the Court issue final approval of the proposed Settlement.

DATED: September 17, 2007

/s/ Edward F. Haber
Edward F. Haber, Esq. (BBO# 215620)
Matthew L. Tuccillo, Esq. (BBO# 643336)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: 617-439-3939

Jules Brody, Esq.
Howard T. Longman, Esq.
Melissa Emert, Esq.
STULL STULL & BRODY
6 East 45th Street
New York, NY 10017
Telephone: 212-687-7230

*Plaintiffs' Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as nonregistered participants on the 17th day of September, 2007.

**/s/ Edward F. Haber**
Edward F. Haber
