# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **IN RE BIOPURE CORPORATION SECURITIES LITIGATION** ) ) ) ) ) ) | **CIVIL ACTION NO. 03-12628-NG** |

### PLAINTIFFS' COUNSEL'S APPLICATION FOR AN AWARD
### OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Edward F. Haber, Esq.
Matthew L. Tuccillo, Esq.
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Tel: (617) 439-3939

Jules Brody, Esq.
Howard Longman, Esq.
**STULL, STULL & BRODY**
6 East 45th Street
Suite 500
New York, NY 10017
Telephone: (212) 687-7230

*Plaintiffs' Co-Lead Counsel*

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................2

III.    THE REQUESTED ATTORNEYS' FEES SHOULD BE APPROVED................3

    A.      Attorneys' Fees in Common Fund Cases Should Be Awarded As A
        Percentage Of The Fund ...............................................................................4

    B.      The Requested One-Third Fee Is Well Within The Applicable
        Range Of Fee Awards In This Circuit .........................................................7

    C.      The Relevant Factors Support Plaintiffs' Counsel's Request....................9

        1.      The Amount Of The Recovery Is
            Substantial…………………………..………………………..……9

        2.      Plaintiffs' Counsel Demonstrated Professional Skill And
            Efficiency………………………………………………………...10

        3.      This Action Was A Complex Securities Fraud Class
            Action Litigated For Nearly Four Years…………………………11

        4.      Plaintiffs' Counsel Undertook This Action On A
            Contingent Fee Basis With Substantial Risk That
            They Would Not Be Compensated At All………………………12

        5.      The Public Interest Favors Rewarding Attorneys Who
            Produce Benefits For Injured Classes of People…………………14

    D.      A Lodestar/Multiplier Analysis Confirms The Reasonableness Of
        The Fees Requested ...................................................................................15

    E.      The Lack Of Objections Supports Plaintiffs' Counsel's Fee and
        Cost Requests.............................................................................................17

IV.     THE EXPENSES REQUESTED WERE REASONABLE AND
        NECESSARY TO THE PROSECUTION OF THIS ACTION ............................18

V.      PLAINTIFFS  RONALD ERICKSON'S AND DR. JOHN G. ESPOSITO,
        JR.'S REQUESTS FOR EXPENSES AND LOST WAGES ARE
        REASONABLE AND LIKEWISE SHOULD BE APPROVED ........................19

VI.     CONCLUSION.....................................................................................................20

i

## I.    __INTRODUCTION__

The law firms of Shapiro Haber & Urmy LLP and Stull, Stull & Brody (together, "Plaintiffs' Counsel") respectfully submit this application for an award of attorneys' fees and reimbursement of their out-of-pocket expenses in connection with the prosecution and settlement of this securities class action against Biopure Corporation ("Biopure" or the "Company") and certain directors and/or officers of Biopure, including Thomas A. Moore, Carl W. Rausch, Ronald F. Richards, Charles A. Sanders, Howard P. Richman, and J. Richard Crout (collectively, "Defendants").[1]

Under the terms of the Stipulation and Agreement of Settlement dated May 17, 2007 (the "Settlement"), Plaintiffs' Counsel have created a $10,000,000 cash fund, plus interest since early July, 2007, for the benefit of the Class.  As of September 11, 2007, the fund, including accrued interest, was approximately $10,114,337.46  (the "Gross Settlement Fund").  Plaintiffs' Counsel litigated this case for over three and one half years on a wholly contingent basis without any guarantee that their legal fees would ever be compensated or that their significant financial outlay for costs would ever be reimbursed.  Plaintiffs' Counsel also forewent opportunities to handle other potentially profitable cases in order to devote their time to this matter.  A recovery was not a foregone conclusion and was achieved only as a result of Plaintiffs' Counsel's diligence, skill, and hard work against the determined opposition of Defendants.

Thus, Plaintiffs' Counsel now seek fair and reasonable compensation for their efforts on behalf of the Class.  Plaintiffs' Counsel respectfully request, as an award of attorneys' fees, one-third (33 1/3%) of the $10,114,337.46 Gross Settlement Fund, which amounts to $3,371,445.82.

---

[1] Plaintiffs' Counsel have also submitted: (i) Plaintiffs' Memorandum in Support of Their Motion for Final Approval of the Proposed Class Action Settlement (the "Settlement Memorandum"), which discusses the legal standards for final approval of the Settlement and demonstrates that the Settlement is fair, reasonable, and adequate given the risks and uncertainties of continued litigation; and (ii) the Joint Declaration Of Co-Lead Counsel In

Plaintiffs' Counsel also respectfully requests reimbursement from the Gross Settlement Fund of $135,642.04 for out-of-pocket expenses incurred in prosecuting Plaintiffs' claims.

As discussed below, the amounts requested are fair, reasonable, and appropriate. The requested fees are well within the range of attorneys' fees awarded by courts in the First Circuit and across the country in cases of this type, and are appropriate in view of the substantial risks assumed by Plaintiffs' Counsel in prosecuting this litigation and the excellent results achieved on behalf of the Class in the form of the Settlement. Significantly, <u>not a single member of the Class has objected to Plaintiffs' Counsel's request of attorneys' fees of one-third of the Gross Settlement Fund</u>. Nor has any member of the Class objected to Plaintiffs' Counsel's request for reimbursement of expenses.

## II.     <u>STATEMENT OF FACTS</u>

The background of the litigation is set forth in detail in the Joint Declaration. In summary, however, during the course of this litigation, Plaintiffs' Counsel, among other things:

- Conducted a wide ranging investigation on behalf of Plaintiffs to determine whether there were causes of action against Biopure and certain of its officers and directors;

- Reviewed publicly-available materials relating to Biopure, such as SEC filings and Wells notices, press releases, news articles, analyst reports, and industry publications;

- Prepared and filed an initial complaint on behalf of Plaintiff Dr. John G. Esposito, Jr. and the Class;

- Published notice of the litigation to the Class as required by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and communicated with persons who contacted Plaintiffs' Counsel;

- Drafted a motion for appointment of Plaintiff Ronald Erickson as Lead Plaintiff and of Plaintiffs' Counsel as co-lead counsel as required by the PSLRA, and appeared in Court to argue such motion;

- Drafted and filed a Consolidated Amended Complaint;

Support Of Final Approval Of Class Action Settlement And Application For Award Of Attorneys' Fees And Reimbursement Of Expenses (the "Joint Declaration").

- Researched, drafted and filed opposition to motion to dismiss the Consolidated Amended Complaint brought by Defendants;

- Continued and broadened investigation of the relevant facts, and prepared and filed the Second Consolidated Amended Complaint ("SAC");

- Argued in court against dismissal of this action;

- Drafted and filed a motion and amended motion for class certification and memoranda in support thereof;

- Engaged in class certification-related discovery served by Defendants, including responding to document requests and interrogatories, producing documents, and defending depositions of Representative Plaintiffs Erickson and Esposito;

- Researched and briefed various discovery issues;

- Received documents produced by third party financial services firms;

- Organized and analyzed over 40,000 pages of documents produced by Biopure related to SEC investigation;

- Consulted extensively with experts, including damages experts and a medical expert in Food and Drug Administration procedure ("FDA");

- Engaged in protracted, arm's-length negotiations with Defendants' counsel concerning a settlement of the action, and prepared for and engaged in multiple mediation sessions concerning possible settlement;

- Negotiated and drafted all settlement-related briefs, documents, and notices; and

- Currently overseeing administration of settlement by the claims administrator.

As discussed below, the risks assumed by Plaintiffs' Counsel in bringing this litigation and the result achieved through their efforts amply justify the requested fee, which is well within the range of fees that have been awarded in similar class actions.

## III.    THE REQUESTED ATTORNEYS' FEES SHOULD BE APPROVED

Courts have widely recognized that in order to realize the important purposes of the federal securities laws, it is necessary to adequately compensate attorneys who assume the risks of prosecuting class action securities cases. The Supreme Court has emphasized that private actions such as this one are "a most effective weapon in the enforcement" of the securities laws

and are "a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted). Similarly, in *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992), the Court noted:

> Attorneys who bring class actions are acting as "private attorneys general" and are vital to the enforcement of the securities laws. Accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions.

Id. at 657. A large segment of the public would be denied a remedy for securities law violations if contingent fees awarded by courts did not fairly and adequately compensate counsel for services provided, serious risks undertaken, and the delay before any compensation is received.

Now, having secured a substantial recovery for the Class, after years of hard work, Plaintiffs' Counsel seek reasonable compensation for their efforts. Plaintiffs' Counsel respectfully requests that the Court approve an award of attorneys' fees of $3,371,445.82 which is one third (33 1/3%) of the $10,114,337.46 Gross Settlement Fund, and reimbursement of expenses actually incurred in the amount of $135,642.04.

### A.    Attorneys' Fees in Common Fund Cases Should Be Awarded As A Percentage Of The Fund

The United States Supreme Court has long recognized that when a representative plaintiff successfully establishes a common fund in which others have a beneficial interest, the costs of litigation should be spread among the fund's beneficiaries. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 275 (1975); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970). In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court observed that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class."

4

Courts in the First Circuit have followed the clear national trend in favor of awarding attorneys' fees in a common fund case on a percentage of the fund basis. *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (pointing out advantages of percentage of fund approach over lodestar approach); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 108 (D.R.I. 1996). Reflecting a clear preference for the use of the percentage method, the PSLRA provides that "attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a <u>reasonable percentage</u> of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6) (emphasis added.)[2]

In a "megafund" case, the First Circuit affirmed the District Court's award of 31% of a $220 million common fund, <u>i.e.</u>, an award of roughly $68 million. *Thirteen Appeals*, 56 F.3d at 299. The First Circuit held that "use of the POF method in common fund cases is the prevailing practice" based upon the "distinct advantages that the POF method can bring to bear in such cases." *Id.* at 307. The First Circuit stressed that the percentage method is far less burdensome to administer than the lodestar method in that the percentage method does not "forc[e] the judge to review the time records of a multitude of attorneys in order to determine the necessity and

---

[2]  Virtually every Circuit has either endorsed or required use of the percentage of recovery approach for awarding counsel fees in common fund cases. *See, e.g., Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (approving use of percentage method); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (authorizing percentage method); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 824 (1995) ("In common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered"); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) (district court has discretion to award a percentage of the common fund); *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 565-66 (7th Cir. 1994) ("[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration."); *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994) (fee award should be calculated using the percentage method; "use of the lodestar in common fund cases is 'out of fashion'"); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993) (district court has discretion to award a percentage of the common fund); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common

reasonableness of every hour expended," and it "lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation." *Id.* The First Circuit also noted that, unlike the lodestar method, the percentage method does not create "a monetary incentive to spend as many hours as possible" on the case; nor does the percentage method create a "disincentive to early settlement." *Id.* Thus, the percentage approach most closely aligns plaintiffs' counsel's interests with the interests of the class. *Id.*

Because the percentage method is "result-oriented rather than process-oriented," the First Circuit noted the percentage method "better approximates the workings of the marketplace." *Id.* In the private marketplace, contingent fee attorneys typically negotiate percentage fee agreements with their clients. *See Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *86 (M.D. Tenn. Aug. 10, 1999). "[C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). In non-class litigation, one-third contingency fees are the norm.[3]

Consistent with the First Circuit's opinion in *Thirteen Appeals*, and the decisions of other Circuits, the percentage method is clearly the preferred method for awarding attorney fees in

---

fund cases"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768,774 (11th Cir. 1991) (mandating use of percentage method).

[3] *Blum*, 465 U.S. at 903 n.* (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. . . . [T]he fee is directly proportional to the recovery."); *Manners*, 1999 U.S. Dist. LEXIS 22880, at *86-87 ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery") (citation omitted).*See also In re Prudential Bache Energy Income P'ships Sec. Litig,* MDL No. 888 Section E, 1994 U.S. Dist. LEXIS 6621, at *4 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); *In re Pub. Serv. Co.*, No. 91-0536M, 1992 U.S. Dist. LEXIS 16326, *20 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, *40-41 (N.D. Ill. Sept. 14, 1984) ("The percentages agreed on [in non-class action damage lawsuits] vary, with one-third being particularly common.").

common fund cases like this action. As such, Plaintiffs' Counsel respectfully submit that the Court should award a fee based upon a percentage of the recovery in this case.[4]

### B. The Requested One-Third Fee Is Well Within The Applicable Range Of Fee Awards In This Circuit

There exists no set formula for determining what percentage of a common fund should be awarded as attorneys' fees. The First Circuit in *Thirteen Appeals* did not provide a definitive list of factors for the fee determination. Rather, it remarked that "in respect to fee awards, the trial court's latitude is 'extremely broad.'" *Thirteen Appeals*, 56 F.3d at 309 (citation omitted). In *Thirteen Appeals*, the First Circuit approved an attorneys' fee award of about 31% of a $220 million recovery, or $68 million in attorneys' fees.

The requested fee of 33 1/3% of the Gross Settlement Fund is consistent with attorneys' fee awards in other securities fraud class action cases in this district. *See*, e.g., *In re: Ibis Tech. Sec. Litig.*, C.A. No. 04-10446-RCL (April 26, 2007) (33% award); *In re: Network Engines, Inc. Sec. Litig.*, C.A. No. 03-12529-JLT (July 25, 2006) (33% award); *Swack v. Credit Suisse First Boston LLC*, C.A. No. 02-11943-DPW (June 26, 2006); *Ahearn v. Credit Suisse First Boston LLC*, C.A. No. 03-10956 JLT (June 7, 2006) (33% award); *Stein v. Smith*, C.A. No. 01-10500-WGY (Oct. 18, 2005) (33% award); *In re: Nx Networks Sec. Litig.*, C.A. No. 00-11850-JLT (Nov. 22, 2004) (33% award); *In re: Allaire Corp. Secs. Litig.*, C.A. No. 00-11972-WGY (Dec. 1, 2003); *Wilensky v. Digital Equip. Corp.*, C.A. No. 94-10752-JLT (July 11, 2001) (33% award); *In re: Summit Tech. Sec. Litig.*, C.A. No. 96-11589-JLT (Apr. 25, 2001); *In re: Number Nine Visual Tech. Corp. Sec. Litig.*, Master File No. 96-11207 (Feb. 6, 2001) (awarding 33

---

[4]   This view is also consistent with the report of the Task Force appointed by the Third Circuit in January 2001 to re-analyze procedures for reviewing fee applications in class actions, which recommended the percentage of recovery method for awarding attorney's fees in common fund cases and explicitly rejected the lodestar/multiplier approach. *Third Circuit Task Force Report: Selection of Class Counsel* at 18, 21, 104-05 (October 3, 2001) ("A percentage fee, tailored to the realities of the particular case, remains superior to any other means of determining a reasonable fee for class counsel.") (emphasis added).

1/3%); *In re: Segue Software, Inc.*, C.A. No. 99-10891-RGS (July 31, 2001) (33% award); *In re: Peritus Software Svc., Inc. Sec. Litig.*, C.A. No. 98-CV-10578 (Feb. 28, 2000) (33% award); *Chalverus v. Pegasystems, Inc.*, C.A. No. 97-12570-WGY (Dec. 19, 2000) (award of 33% out of $5.25 million settlement); *Zeid v. Open Env't Corp.*, C.A. No. 96-12466-EFH (June 24, 1999) (fee of one-third of a $6 million settlement); *In re: Picturetel Corp. Sec. Litig.*, C.A. No. 97-12135-DPW (Nov. 4, 1999) (fee of one-third of $12 million fund); *In re: WebSecure Sec. Litig.*, C.A. No. 97-10662-GAO (Sept. 14, 1999) (33% award); *Morton v. Kurzweil Applied Intelligence, Inc.*, C.A. No. 10829-REK (Feb. 4, 1998) (one-third of settlement fund); *In re: Zoll Med. Corp. Sec. Litig.*, C.A. No. 94-11579-NG (Oct. 5, 1998) (33 1/3% of settlement); *In re: Copley Pharm., Inc. Sec. Litig.*, C.A. No. 94-11897-WGY (Feb. 8, 1996) (33 1/3% fee awarded out of a $6.3 million settlement fund); *In re: V-Mark Software, Inc. Sec. Litig.*, C.A. No. 95-12249-EFH (Nov. 24, 1998) (awarding one-third); *Abato v. Marcam Corp.*, C.A. 94-11625-WGY (July 29, 1996) (awarding one-third); *Malanka v. de Castro*, (CCH) Fed. Sec. L. Rep. ¶95,657 (1990) (awarding one-third of settlement fund); *Margaret Hall Found., Inc. v. Fin. Mgmt, Inc.*, C.A. No. 82-2543-S (May 9, 1989) (40% of settlement fund).[5]    In view of the

---

[5]  Courts throughout the country have also regularly made fee awards of one-third or more.  *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-93 (11th Cir. 1999) (upholding award of $13,333,333, or one-third of $40 million reversionary settlement fund, plus $2.4 million of expenses, notwithstanding that only $6.4 million of fund actually was paid to claimants); *In re: Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding one-third); *In re: Envoy Corp. Sec. Litig.*, C.A. No. 3:98-0760 (M.D. Tenn. Dec. 17, 2003) (awarding 33% of $11 million settlement fund); *In re: Corel Corp. Secs. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) ("the 33 1/3% fee request in this complex case is within the reasonable range"); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) (awarding one-third fee plus expenses); *In re: Party City Corporation Sec. Litig.*, C.A. No. 99-1353-DRD (D.N.J. May 14, 2003) (awarding 33% of $3.8 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (awarding one-third of $11 million Settlement Fund, plus $200,372 in costs); *Walsingham v. Biocontrol Tech., Inc.*, No. 96-809 (W.D. Pa. Sept. 3, 2002) (awarding one-third plus expenses); *In re Gen. Instrument Secs. Litig.*, 209 F. Supp. 2d 423, 439 (E.D. Pa. 2001) (awarding one-third of $48 million settlement as "fair and reasonable," plus $1.85 million in reimbursement of expenses); *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417, 424 (S.D. Iowa 2001) (awarding attorneys' fees of $2.5 million, or one-third of common fund plus expenses); *In re: Safety Components Int'l., Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 102 (D.N.J. 2001) (awarding one-third plus interest and expenses); *In re: APAC Teleservices, Inc. Sec. Litig.*, No. 97 Civ. 9145, 1999 U.S. Dist. LEXIS 17908, at *2 (S.D.N.Y. Dec. 10, 2001) (awarding one-third of $21 million settlement prior to commencement of depositions); *In re: Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 U.S. Dist. LEXIS 20160, at *11-12 (E.D. Pa. Dec. 6, 2001) (awarding one-third);

foregoing cases, Plaintiffs' Counsel respectfully submit that their request for a 33 1/3% fee award in a case that was prosecuted for three and one-half years is eminently fair and reasonable.

### C.    The Relevant Factors Support Plaintiffs' Counsel's Request

In addition to examining fee awards in similar cases, courts have considered a number of factors to determine whether a request is fair and reasonable, including, among others:  (1) the amount of the recovery; (2) the skill and efficiency of counsel; (3) the complexity of the litigation; (4) the risk of nonpayment; and (5) the amount of time devoted.  Manual for Complex Litig., Third § 24.121 at 190 (3d ed. 1995); *In re Lupron® Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456 *12 (D. Mass. 2005).  *See also Goldberger*, 209 F.3d at 50.[6]  Each of these factors, and additional factors considered by the courts, weighs heavily in support of Plaintiffs' Counsel's one-third fee request in this case.

### 1.    The Amount Of The Recovery Is Substantial

The benefit conferred by Plaintiffs' Counsel on the Class -- the recovery of $10,000,000 in cash, plus interest -- is an excellent result.  The recovery in this case represents a substantial portion of the damages that Plaintiffs would realistically have hoped for had it proceeded to trial,

---

*Faircloth v. Certified Fin. Inc.*, No. 99-3097, 2001 U.S. Dist. LEXIS 6793, at *37 (E.D. La. May 15, 2001) (awarding 35% of settlement plus interest and expenses); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D. Mich. 2000) (awarding one-third); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 386 (E.D. Pa. 2000) (awarding one-third); *In re: Neoware Sys. Sec. Litig.*, No. 98-CV-2582, 2000 U.S. Dist. LEXIS 11051, at *11-12 (E.D. Pa. July 27, 2000) (awarding approximately one-third of each of two settlement funds, plus interest and expenses); *Adair v. Bristol Tech. Sys.*, No. 97 Civ. 5874, 1999 U.S. Dist. LEXIS 17627, at *8 (S.D.N.Y. Nov. 12, 1999) (awarding 33% of settlement fund, and finding that "Courts in this District have previously awarded fees at or exceeding this level on numerous occasions"); *In re: Medical X-Ray Film Antitrust Litig.*, No 93-5904, 1998 U.S. Dist. LEXIS 14888, at *20 (E.D.N.Y. Aug. 7, 1998) (awarding one-third of $39 million antitrust class action settlement); *In re: Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (awarding 36% of $127 million settlement); *In re: Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) (awarding fees of $28 million, noting that counsel "rendered their services on a contingent fee basis" and "personally financed [the] case," and holding that the requested fee of "one-third of the settlement fund fairly reflects the service and benefit class counsel conferred"); *Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996) (awarding 38%), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *In re: Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding approximately 34% of $ 42 million settlement, plus $2 million of expenses).

[6] Other Courts have considered similar factors.  *See, e.g., Rawlings*, 9 F.3d at 516-17 (considering: (1) the value of the benefit achieved for the plaintiff class; (2) the value of the attorneys' services; (3) whether counsel undertook the

and quite possibly could be as much as, or more than, what would have been obtained if Plaintiffs had prevailed at trial and on appeal. This is particularly true because the $10 million settlement represents a substantial portion of the remaining insurance coverage available to pay a judgment, and Biopure itself is a money-losing venture that lacks assets sufficient to pay a recovery in this action.[7] Thus, the first criterion has been clearly satisfied.

### 2. Plaintiffs' Counsel Demonstrated Professional Skill And Efficiency

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). Given the complexity of the issues presented in this action, which included not only issues arising under the federal securities laws but also matters within the rubric of the federal Food and Drug Administration and the regulatory framework that applies to biologic products such as Biopure's Hemopure blood substitute product, highly skilled counsel was required to achieve the benefit earned for the Class here. Plaintiffs' Counsel are nationally recognized among complex class action litigators, particularly in the areas of securities and shareholder litigation. This Settlement represents a highly favorable result for the Class – obtained without the risks and delays that would be caused by a full trial on the merits – attributable to the diligence, determination, hard work and skill of Plaintiffs' Counsel.

The litigation was vigorously contested. Defendants were represented by highly regarded lawyers, led by the firm of Bingham McCutchen LLP, which has a reputation as leading defense counsel in securities class action litigation. The Class would not have been able to obtain a

---

services on a contingent fee basis; (4) the public's interest in rewarding attorneys who produce such benefits; (5) the complexity of the action; and (6) the professional skill and standing of all counsel involved).

[7] At the time of settlement, Biopure stock was trading at under $1.00 per share and the Company was at risk of filing for bankruptcy. The insurance policies, which funded this settlement, were "wasting" policies – i.e., policies which funded defense costs. The expenses were reducing the insurance coverage at the rate of approximately $500,000 monthly due to the costs of defending this action and the SEC action against the Company and defendants in that action.

recovery if Plaintiffs' Counsel were not similarly skilled. Courts have frequently viewed the quality of opposing counsel as important in evaluating the quality of the services rendered by plaintiffs' class counsel. *See In re: Computron Software*, 6 F. Supp. 2d 313, 332 (D.N.J. 1998)**.**

### 3.    This Action Was A Complex Securities Fraud Class Action Litigated For Nearly Four Years

This was a complex and demanding case involving claims for relief under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule l0b-5 promulgated thereunder. A securities case such as this one, "by its very nature, is a complex animal. . . ." *See Maley*, 186 F. Supp. 2d. at 372 (citations omitted); *In re: Cell Pathways, Inc., Sec. Litig.*, No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359, at *26-27 (E.D. Pa. Sept. 23, 2002) (complexity and difficulty of case correlated with high risk of nonpayment).[8]

As further discussed in the Joint Declaration, Plaintiffs faced substantial factual and legal hurdles in meeting their burden of establishing a violation of the securities laws, including issues of proof of liability, loss causation, materiality, market knowledge, and damages. Plaintiffs' Counsel litigated this action for nearly four years, conducting two separate mediations before two well-regarded mediators before arriving at the Settlement. These facts favor the Court's awarding the requested fees and expenses.

---

[8]  Courts have long recognized the complexities and difficulties of prosecuting securities class actions. As the Court observed in *In re: King Res. Co. Sec. Litig.*:

> The litigation also involved unique and substantial issues of law in the technical area of SEC Rule l0b-5, . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages.

420 F. Supp. 610, 632 (D. Colo. 1976). *See also In re: Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

**4.    Plaintiffs' Counsel Undertook This Action On A Contingent Fee Basis With Substantial Risk That They Would Not Be Compensated At All**

Plaintiffs' Counsel litigated this case over the course of almost four years, solely on a contingency fee basis, with no assurance of adequate, or indeed any, compensation.  Courts have consistently recognized that the contingent fee risk of non-payment, or under-payment, is a major factor in assessing an award of attorneys' fees, particularly where a contingent fee arrangement is the sole means for injured parties with limited financial resources to obtain redress.  "Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost' factor' in determining an appropriate fee award."  *In re: Lupron*, 2005 U.S. Dist. LEXIS 17456 at *15, *citing Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000).  In *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), the Second Circuit explained:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

495 F.2d at 470 *quoting Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963). *See also Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").

There are numerous class actions in which plaintiffs' counsel expend thousands of hours and yet receive no remuneration whatsoever despite their diligence and expertise.[9]  Cases far less

---

[9]  To wit:

> The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever.  Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award . . . .  In evaluating [the contingent fee] factor the Court will not ignore the

complex than this one have been dismissed on summary judgment or have been lost at trial, on post-trial motions, or on appeal.[10]

The riskiness of a case must be judged *ex ante* rather than *ex post* – that is, as of the outset of the litigation, rather than with the hindsight benefit of subsequent events. *See Harman v. Lymphomed, Inc.*, 945 F.2d 969, 974, 976 (7th Cir. 1991) (multiplier needed because at outset of litigation there was possibility of no recovery); *In re: Cont'l Ill.*, 962 F.2d at 569-70 (rejecting, as legally insufficient grounds for denying contingent multiplier, lower court's assumption that settlement was virtually certain). The risk factors discussed herein and in the Joint Declaration all existed at the beginning of the case. Plaintiffs' Counsel agreed to prosecute this case on a wholly contingent fee basis, assuming the significant risk that they would not be compensated at all for the time and resources expended. Unlike counsel for the Defendants, who are paid substantial hourly rates and reimbursed for their out-of-pocket expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any of their time or reimbursed for any of the out-of-pocket expenses incurred over the nearly four years that have passed since the commencement of the litigation. Moreover, Plaintiffs' Counsel would not have been compensated for their time at all had they been unsuccessful in this action. The risk of non-

---

pecuniary loss suffered by plaintiff's counsel in other actions where counsel receive little or no fee.

*Ressler v. Jacobson*, 149 F.R.D. 651, 656-657 (M.D. Fla. 1992), (citations omitted). As another Court noted: "Plaintiffs and their counsel faced the significant risk that they could have walked away from a litigation of this matter empty-handed." *Manners*, 1999 U.S. Dist. LEXIS 22880 at *78.

[10] *See, e.g., Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (substantial class jury verdict reversed and case dismissed after 11 years of litigation); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on loss causation grounds); *In re: Convergent Tech. Secs. Litig.*, 721 F. Supp. 1133, 1134 (N.D. Cal. 1988), *aff'd*, 948 F.2d 507 (9th Cir. 1991) (granting summary judgment for defendants after almost 5 years of litigation); *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1250 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991) (judgment for defendants after bench trial); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, [1990-91 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,671 (S.D.N.Y. 1990), *aff'd*, 936 F.2d 759 (2d Cir. 1991) (dismissing third amended complaint without leave to replead); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd* 440 F.2d 1079 (2d Cir. 1971).

payment (or under-payment) assumed by Counsel in bringing this action was very real and substantial, and further confirms that the fees requested are fair, reasonable, and appropriate. *See Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great N. Paper, Inc.*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the high fees"; also noting that "the appearance of Plaintiff's counsel in this case precluded Plaintiff's counsel from engaging in other lucrative work").

### 5.    The Public Interest Favors Rewarding Attorneys Who Produce Benefits For Injured Classes of People

Important public policy considerations also support the requested attorneys' fees. Absent a class action such as this action, small individual claimants would lack the resources to litigate a case of this magnitude. "Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources." *In re: Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001). Private lawsuits, such as this one, are essential to effectuate the federal securities laws' vital purposes of protecting investors and ensuring the integrity of the financial markets. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-34 (1988) (fundamental purpose of securities laws is assuring full disclosure and honest markets; private action "constitutes an essential tool for enforcement of the 1934 Act's requirements").[11] "The role of class actions in the public interest has long been noted." *Manners*, 1999 U.S. Dist. LEXIS 22880, at *91. Thus, fair compensation to class counsel is essential:

> Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection

---

[11] *See also Bateman,* 472 U.S. at 310 ("we repeatedly have emphasized that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities & Exchange] Commission action'") (citations omitted); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 386 (1983) ("A cumulative construction of the securities laws also furthers their broad remedial purposes.").

> laws would be jeopardized. As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. *Eisen_v. Carlisle & Jacquelin*, 417 U.S. 156, 161, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974). Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process.

*Id.*, 1999 U.S. Dist. LEXIS 22880, at *91 *quoting In re: Rio Hair*, 1996 WL 780512, at *17.

Litigation to effect the remedial purposes of the federal securities laws should not be chilled by an award of fees that fails to compensate counsel adequately for the substantial risks and costs of pursuing such litigation. Private attorneys – like Plaintiffs' Counsel – must be encouraged to take the risks and commit the resources required to represent those who otherwise would have no protection from securities fraud or other corporate misconduct. Given its limited resources, the SEC relies on private actions such as this one to protect investors and enforce the federal securities laws. Such suits not only provide a necessary means of obtaining redress for injured investors, who otherwise would be left without a remedy, but also provide a powerful deterrent that protects all investors and ensures the honesty of the financial markets.

### D.    A Lodestar/Multiplier Analysis Confirms The Reasonableness Of The Fees Requested

While Plaintiffs' Counsel believe that the percentage of the fund method is the appropriate and preferable method for calculating their fees in this common fund case, a "lodestar/multiplier" analysis "can be a check or validation of the appropriateness of the percentage of funds fee…" and, in this case, confirms that the requested fees are fair and reasonable and should be approved. *In re: Lupron,* 2005 U.S. Dist. LEXIS 17456 at *21 *citing In re: Thirteen Appeals*, 56 F.3d at 307. As articulated by this Court, the "lodestar/multiplier" method entails a two-step analysis.

First, to determine the lodestar, the Court multiplies the number of hours spent on the case by each professional's hourly rate. To compensate for the long delay Plaintiffs' Counsel

encountered in receiving any compensation for their work in this case (almost four years), it is appropriate to use Plaintiffs' Counsel's current fee rates in calculating the lodestar. *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989) (current rates, rather than historical rates, should be applied in order to compensate for delay in payment); *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment."). It is also appropriate to include paralegal and law clerk time in calculating the lodestar.[12] Where appropriate, Plaintiffs' Counsel used paralegals to minimize the expense to the Class. Plaintiffs' Counsel also made every effort to avoid duplication of work in this matter. As shown in the Declarations of Plaintiffs' Co-Lead Counsel, they collectively devoted almost 3,571 hours of professional time to the prosecution of this case for an aggregate lodestar of over $1,913,393.40.

Second, the Court adjusts the lodestar figure by applying a multiplier to reflect such factors as the risks, contingent fee arrangement, result obtained, and quality of the attorneys' work. *See generally, M. Berenson Co. v. Faneuil Hall Market Place & Faneuil Gallery, Inc.*, 671 F. Supp. 819 (D. Mass. 1987).[13] The Seventh Circuit held it was reversible error to refuse to

---

[12] *See Missouri*, 491 U.S. at 282-85 (1989); *In re Union Carbide Corp.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989).

[13] Professor Newberg acknowledges the propriety of risk multipliers in common fund cases such as this action:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation. These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time expended criteria that failed to give the results obtained factor primary consideration.

H. Newberg, *Attorney Fee* Awards, §1.09, at 15 (1986)(footnote omitted). As one court has stated:

> If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

award a risk multiplier "in a case in which the lawyers had no sure source of compensation for

their services." *In re Cont'l Ill.*, 962 F.2d at 569. The Seventh Court went on to state:

> The need for such an adjustment is particularly acute in class
> action suits. The lawyers for the class receive no fee if the suit
> fails, so their entitlement to fee is inescapably contingent. . . .
> <u>[T]he failure to make any provision for risk of loss may result in
> systematic undercompensation of plaintiffs' counsel in a class
> action case, where as we have said the only fee that counsel can
> obtain is, in the nature of the case, a contingent one.</u>

<u>Id.</u>, 962 F.2d at 569 (emphasis added).[14] Here, the requested fee represents a multiplier of 1.76,

which is easily justified under prevailing law.[15]

### E.    The Lack Of Objections Supports Plaintiffs' Counsel's Fee And Cost Requests

Courts have recognized that the lack of objections from members of the class is one of

the most important factors in determining an appropriate fee award. *See, e.g., Foley v. City of*

*Lowell, Mass.*, 948 F.2d 10, 19-20 (1st Cir. 1991); *In re: Crazy Eddie Sec. Litig.*, 824 F. Supp.

---

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988) (awarding multiplier of 3). Courts uniformly have held that, in common fund cases, it is important to recognize the risk of nonpayment and compensate reasonably for it. *See Harman*, 945 F.2d at 976 (vacating district court's failure to award risk multiplier); *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) ("to account for the contingent nature of the compensation, a court should assess the riskiness of litigation"). Multipliers are "necessary to reflect the possibility of no recovery." *Faircloth v. Certified Fin. Inc.*, 2001 U.S. Dist. LEXIS 6793, at *23 (E.D. La. May 15, 2001) (citation omitted).

[14] *See also Harmon*, 945 F.2d at 976 (contingent multiplier "is designed to reflect the fact that, no matter how many hours were invested, there was, at the outset, the possibility of no recovery"; vacating district court's failure to award risk multiplier); *Skelton*, 860 F.2d at 258 ("when attorneys' receipt of payment is contingent on the success of the litigation, reasonable compensation may demand more than the hourly rate multiplied by the hours worked").

[15] *See, e.g., Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (awarding a multiplier of 6); *Maley*, 186 F. Supp. 2d at 369 (S.D.N.Y. 2002) (4.65 multiplier awarded was "well within the range awarded by courts . . . throughout the country"); *Faircloth*, 2001 U.S. Dist. LEXIS 6793, at *36 (multiplier of 3 warranted); *In re: Aetna, Inc. Secs. Litig.*, No. MDL 1219, 2001 U.S. Dist. LEXIS 68, at *49 (E.D. Pa. Jan. 4, 2001) (finding 3.6 multiplier to be reasonable); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (multiplier between 2.5 and 4.0 would be reasonable); *In re: Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (finding fee award equivalent to 4.5 to 8.5 lodestar multiplier "unquestionably reasonable"); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee that resulted in multiplier of 9.3 times hourly rate), *aff'd*, 66 F.3d 314 (3d Cir. 1995); *In re: RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 U.S. Dist. LEXIS 12702, at *16 (S.D.N.Y. Aug. 24, 1992) (6 multiplier); *Glendora Cmty. Redevelopment Agency v. Demeter*, 202 Cal. Rptr. 389, 398-99 (1984) (12 times lodestar); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y.

320, 327 (E.D.N.Y. 1993); *In re: SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990); *Grier v. Chase Manhattan Auto. Fin. Co.,* No. 99-180, 2000 U.S. Dist. LEXIS 1339, at *17 (E.D. Pa. Feb. 16, 2000) (noting that no objections to attorneys' fees were presented at Court hearing when awarding fees of one third of settlement); *Brotherton,* 114 F. Supp. 2d at 907 (noting, when awarding requested fee, that no objection to attorneys' fees was raised at fairness hearing); *Ressler v. Jacobson*, 149 F.R.D. at 656  (lack of objections is "strong evidence of the propriety and acceptability" of fee request).

Approximately 17,000 copies of the Notice were mailed to potential Class members.  See Affidavit of Michael Rosenbaum ¶ 6.)  A Summary Notice was published in *The Wall Street Journal* on July 16, 2007.  The Notice and Summary Notice advised Class members that Plaintiffs' Counsel would seek a fee "in an amount not greater than one-third (33 1/3%) of the Gross Settlement Fund" plus reimbursement of their expenses "of approximately $175,000" plus a proportionate share of the interest earned by the Settlement Fund.  **As of the date of this filing, not a single objection to the fee or expense request has been received**.  The lack of objections to Plaintiffs' Counsel's fee and expense request strongly supports the requested fee award.

## IV.    THE EXPENSES REQUESTED WERE REASONABLE AND NECESSARY TO THE PROSECUTION OF THIS ACTION

It is well-settled that plaintiffs who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in doing so.[16]  Plaintiffs' Counsel seek reimbursement of $135,642.04 in expenses actually incurred in successfully prosecuting and settling this action.  The expenses include filing fees, service costs, costs for

---

1991) (multiplier of 8.74); *In re: Beverly Hills Fire Litig.*, 639 F. Supp. 915, 924 (E.D. Ky. 1986) (5.0 multiplier); *Boston & Me. Corp.*, 778 F.2d at 894 (6.0 multiplier).

[16]  *See, e.g., Mills*, 396 U.S. at 389-98; *Gottlieb v. Wiles,* 150 F.R.D. 174, 185 (D. Colo. 1993) ("An award of expenses is warranted to class counsel under the common fund doctrine."); *SmithKline*, 751 F. Supp. at 534.

damage and FDA experts, necessary travel to attend Court conferences and mediation sessions, legal research, mediation costs, and copying costs, all of which are the sorts of expenses for which "the paying, arms' length market" reimburses attorneys and all of which are therefore properly chargeable to the Settlement Fund. *See In re: San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 220 (1st Cir. 1997); *In re: Cont'l Ill.*, 962 F.2d at 570; *Miltland Raleigh-Durham*, 840 F. Supp. at 239 ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted). The submitted expenses were all reasonable, necessary, and directly related to the prosecution of this action.

## V.    PLAINTIFFS RONALD ERICKSON'S AND DR. JOHN G. ESPOSITO, JR.'S REQUESTS FOR EXPENSES AND LOST WAGES ARE REASONABLE AND LIKEWISE SHOULD BE APPROVED

The PSLRA expressly permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party suing on behalf of a class." 15 U.S.C. §78u4(a)(4). *See Walsingham*, No. 98-809, at ¶17 (awarding reimbursement to Lead Plaintiffs). The Class Notice informed Class members that the named Plaintiffs would seek such reimbursement, not to exceed $15,000 in total. To date, no Class member has objected to Plaintiffs' request.

In connection with his representation of the Class, Lead Class Representative and Lead Plaintiff Erickson requests reimbursement of expenses and lost wages in the amount of $5,850.00 for 25 hours of missed work. As set forth in his declaration, Mr. Erickson has spent at least 25 hours of his time working on this matter, including preparing for and attending his deposition, and that a reasonable estimate of the value of the time and wages he lost would be $5,850.00. Decl. of Ronald Erickson ¶ 7.

Class Representative Dr. Esposito submits an application for expenses and lost wages in the amount of $6,000 for 16 hours of missed work.   As reflected in his declaration, Dr. Esposito devoted approximately 16 hours to the litigation, including time spent preparing for and attending an out-of-state deposition in this case. As a result of this time Dr. Esposito's reasonable estimate of lost wages is $6,000.00.  Decl. of Dr. John Esposito, Jr. ¶ 7.

## VI.    CONCLUSION

For all the reasons stated above and in the Joint Declaration, Plaintiffs' Counsel respectfully request that the Court approve an award of attorneys' fees in the amount of one-third (33⅓%) of the $10,114,337.46 Gross Settlement Fund, which amounts to $3,371,445.82, plus reimbursement of Plaintiffs' Counsel's expenses in the amount of $135,642.04.   Plaintiffs also request that the Court approve payments to Plaintiff Erickson in the amount of $5,850.00 and to Plaintiff Dr. Esposito in the amount of $6,000.00 as reimbursement of their lost income due to the time they expended assisting in this action.

DATED: September 17, 2007

**/s/ Edward F. Haber**
Edward F. Haber, Esq. (BBO# 215620)
Matthew L. Tuccillo, Esq. (BBO# 643336)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: 617-439-3939

Jules Brody, Esq.
Howard T. Longman, Esq.
Melissa Emert, Esq.
STULL STULL & BRODY
6 East 45th Street
New York, NY 10017
Telephone: 212-687-7230

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I hereby certify that the parties' counsel conferred in a good faith effort to narrow or resolve the issues raised in this application. As a result, Defendants have assented to the relief sought herein.

**/s/ Edward F. Haber**
Edward F. Haber

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as nonregistered participants on the 17th day of September, 2007.

**/s/ Edward F. Haber**
Edward F. Haber

21